IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ART SHY, et al.,                                :

    Plaintiffs,                          :
                                                       Case No. 3:92cv333

    vs.                                    :
                                                       JUDGE WALTER HERBERT RICE

NAVISTAR INTERNATIONAL         :
CORPORATION, et al.,                  :

    Defendants.                        :

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PLAINTIFFS' MOTION FOR AN INJUNCTION TO COMPEL
COMPLIANCE WITH THE SETTLEMENT AGREEMENT (DOC. #343);
DECISION AND ENTRY OVERRULING, AS MOOT, PLAINTIFFS'
MOTION TO EXPEDITE CONSIDERATION OF MOTION TO COMPEL
COMPLIANCE (DOC. #344); CONFERENCE CALL SET

This lawsuit arose out of an effort by Navistar International Corporation ("Navistar") to reduce its costs for retiree life and health insurance benefits.[1] On May 27, 1993, this Court approved a Settlement Agreement into which the parties to this lawsuit had entered.[2] See Shy v. Navistar International Corp., 1993 WL

---

[1]The Defendants are Navistar and its subsidiaries. The Court will refer to those entities collectively as Navistar. The Plaintiffs are retirees from Navistar, both those who were represented by unions while employed by Navistar, principally the UAW, and non-union employees.

[2]This lawsuit was brought as a putative class action and was certified as such with the class defined as follows:

1318607 (S.D.Ohio 1993). On June 8, 1993, this Court entered a Judgment Entry (Doc. #327), with which it adopted the Settlement Agreement as a Consent Decree, and a Supplemental Opinion and Order (Doc. #326), with which it agreed to exercise continuing jurisdiction over that Consent Decree.

The Settlement Agreement/Consent Decree divided retirees into two classes, those eligible for Medicare and those who were not.[3] The present dispute which brings this matter before the Court relates solely to retirees who are eligible for Medicare; consequently, the Court discusses only the aspects of the Settlement Agreement and accompanying documents, relating to Navistar's Medicare eligible retirees.

The Settlement Agreement/Consent Decree established the Retiree Health Benefit and Life Insurance Plan and a Supplemental Benefit Program. Herein, the dispute between the parties involves the Retiree Health Benefit and Life Insurance Plan, Exhibit A to the Settlement Agreement/Consent Decree and described in the Summary Plan Description ("SPD"), Appendix A-1 thereto. For Medicare eligible retirees, the SPD established Medical Plan 2, as the Supplemental Benefit Program. The SPD describes Medical Plan 2 as "a Medicare supplement plan that helps pay

---

> Present Retirees, Present Surviving Spouses, Eligible Dependents of Class Members; Present Eligible Former Employees, and Present Non-Represented Employees who will be eligible for Health and Life Insurance Benefits after the Effective Date, and all labor organizations which presently are or were in the past parties to collective bargaining agreements ("CBAs") pursuant to which Navistar maintains an Existing Plan.

Since this litigation had been certified as a class action, Court approval of the Settlement Agreement was necessary. See Fed. R. Civ. P. 23(e).

[3]The Settlement Agreement/Consent Decree also addresses life insurance benefits, which are not implicated by the current dispute between the parties. Consequently, the Court does not discuss those benefits.

- 2 -

for expenses covered by Medicare, but not paid in full by the government program." Participants in Medical Plan 2 are required to purchase Medicare Part B.[4] They are also required to pay a capped, monthly premium to participate in that Medical Plan. Once a participant has paid the annual out-of-pocket maximum,[5] Medical Plan 2 will pay 100% of the difference between a participant's Medicare-approved expenses and the amount Medicare actually pays. Failure to purchase Medicare Part B would require a retiree to pay whatever Medicare Part B would have covered for a particular service and that amount would not count toward the retiree's out-of-pocket maximum for a year or be in any manner reimbursable under Medical Plan 2. Thus, in the main, Medicare eligible retirees were required to make three types of payments for the health insurance benefits provided to them in accordance with the Settlement Agreement/Consent Decree and its accompanying documents, to wit: 1) monthly premiums for Medicare Part B; 2) capped, monthly premiums for Medical Plan 2; and 3) the annual out-of-pocket maximum.

A prescription drug benefit is also provided to retirees who are covered by Medical Plan 2. That benefit pays for participants' prescription medications in excess of $8.00 for a 30-day supply of any generic prescription drugs and in excess of $18.00 for a 30-day supply of any brand-name prescription drugs. The

---

[4] Retirees and their dependents who are required to to purchase Medicare Part A, by reason of being ineligible for Social Security Benefits, are also required to purchase Medicare Part A, by the terms of the Settlement Agreement/Consent Decree.

[5] When the Settlement Agreement was approved by this Court in 1993, the annual out-of-pocket maximum was $200. That amount was subject to annual adjustments based upon increases or decreases in the cost of benefits.

- 3 -

prescription drug benefit covers all prescribed, legend drugs and certain prescribed, non-legend drugs.[6]

The parties are now embroiled in a dispute over the prescription drug benefit for Medicare eligible retirees. Effective July 1, 2010, Navistar has unilaterally eliminated the prescription drug benefit for Medicare eligible retirees, provided to retirees covered by Medical Plan 2, and forced them to participate in Medicare Part D. Medicare Part D, which under the new state of affairs would replace the prescription drug benefit provided retirees covered by Medical Plan 2, differs from the prescription drug benefit, under which such retirees were previously covered, in that they are now required to pay a monthly premium of $35.00, and medications not listed on the formulary of the private company administering Medicare Part D for Navistar's retirees would not be covered.[7] Parenthetically, a formulary is the list of prescription medications a private company will supply under Medicare Part D. The retirees will continue to be responsible for the same co-payments they were required to pay under the prescription drug benefit established by the Settlement Agreement/Consent Decree.

Before July 1, 2010, the Plaintiffs filed a motion, requesting an injunction, compelling Navistar to comply with the Settlement Agreement/Consent Decree. See Doc. #343. In essence, Plaintiffs are requesting that this Court enjoin Navistar from eliminating the prescription drug benefit established by the Settlement

---

[6] A legend drug is defined as one required by federal law to bear the legend "Caution: Federal Law prohibits dispensing without a prescription."

[7] In its communication with Medicare eligible retirees under date of April 9, 2010, announcing the change in the prescription drug benefit, Navistar referred to the overhaul as an administrative change.

- 4 -

Agreement/Consent Decree, provided retirees covered by Medical Plan 2, and replacing it with Medicare Part D.[8] As a means of analysis, the Court will initially review the provisions of the Settlement Agreement/Consent Decree and other filings, which authorize this Court to exercise continuing jurisdiction over this matter, following which it will review the principles it must apply whenever it is called upon to resolve a dispute concerning a consent decree. Finally, the Court will turn to the parties' arguments in support of and in opposition to the Plaintiffs' request for relief.[9]

Section 15.4 of the Settlement Agreement/Consent Decree provides that this Court "will retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of this Settlement Agreement, except for disputes relating solely to

---

[8] Also pending is the Plaintiffs' Motion to Expedite Consideration of Motion to Compel Compliance (Doc. #344). Given that the Court rules on Plaintiffs' Motion for an Injunction to Compel Compliance with the Settlement Agreement (Doc. #343) herein, it overrules, as moot, their Motion to Expedite Consideration of Motion to Compel Compliance (Doc. #344).

[9] On January 28, 2011, the Plaintiffs, without seeking leave of Court, filed their Submission of Supplemental Evidence in Support of Motion for an Injunction to Compel Compliance with Settlement Agreement (Doc. #369). That evidence consists of a notice that retirees will be required to pay an increased monthly premium for Medicare Part D in 2011, and documents indicating that Navistar anticipates being more profitable in 2011, than it was in 2009. In response, the Defendants, on February 10, 2011, submitted documents which demonstrate that stock analysts are concerned about Navistar's Accumulated Post-Retirement Benefit Obligation. See Doc. #370. The Court has not relied on any of those documents herein, since none is relevant to the issue before this Court, i.e., whether Navistar had the authority to unilaterally substitute Medicare Part D for the prescription drug plan adopted under the Settlement Agreement/Consent Decree for those retirees covered by Medical Plan 2.

- 5 -

the eligibility or entitlement to benefits hereunder" and that "[e]ach of the parties hereto expressly and irrevocably submits to the jurisdiction of the Court in connection with any proceedings in connection with the enforcement, interpretation or implementation of this Settlement Agreement, except for disputes relating solely to the eligibility or entitlement to benefits hereunder." In its Supplemental Opinion and Order of June 8, 1993, this Court adopted the Settlement Agreement as a Consent Decree and retained "continuing jurisdiction over all parties hereto for the purposes of implementing, enforcing and administering the Settlement Agreement and exhibits thereto." Doc. #326 at 11-12.

The Supreme Court has noted that "consent decrees bear some of the earmarks of judgments entered after litigation" and that "[a]t the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." Local Number 93, International Ass'n of Firefighters AFL-CIO v. City of Cleveland, 478 U.S. 501, 519 (1986). In United States v. Armour & Co., 402 U.S. 673 (1971), the Supreme Court discussed consent decrees and their interpretation:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.

> Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.

Id. at 681-82 (footnote omitted). In National Ecological Foundation v. Alexander, 496 F.3d 466 (6th Cir. 2007), the Sixth Circuit explained:

> "A consent decree is essentially a settlement agreement subject to continued judicial policing." Williams v. Vukovich, 720 F.2d 909, 920 (6th Cir. 1983). It is a hybrid in the law, sharing features of both a voluntary settlement agreement that requires no judicial intervention and a final judgment order that throws the prestige of the court behind the compromise struck by the parties. Vanguards of Cleveland v. City of Cleveland, 23 F.3d 1013, 1017 (6th Cir. 1994). The court's task in interpreting a consent decree is "to ascertain the intent of the parties at the time of settlement." Huguley v. Gen. Motors Corp., 67 F.3d 129, 134 (6th Cir. 1995).

Id. at 477-78.

In its communication with its retirees, Navistar attempted to justify replacing the prescription drug program called for by the Settlement Agreement with Medicare Part D, by pointing out that Medical Plan 2, which covers Navistar's Medicare eligible retirees, defines itself as supplementing Medicare.[10] That communication quotes the SPD, which provides that "[Medical] Plan 2 will supplement your Medicare coverage by helping you pay expenses Medicare covers, but does not pay in full." By requiring Medicare eligible retirees to enroll in

---

[10]Notably, Navistar did not conclude that its Medicare eligible retirees were required to participate in Medicare Part D, in lieu of the prescription drug benefit established by the Settlement Agreement/Consent Decree, when Medicare Part D initially became effective on January 1, 2006. On the contrary, Navistar told its Medicare eligible retirees, in September, 2005, that they were not required to sign up for Medicare Part D.

- 7 -

Medicare Part D, Navistar's argument continues, Medical Plan 2 will continue to be supplemental to Medicare, i.e., by replacing the prescription drug benefit, which was part of Medical Plan 2, with Medicare Part D, which will be part of Medical Plan 2 in the future. In short, Medical Plan 2 would continue to be supplemental to Medicare, only the components of that supplemental package would differ. Navistar continues to take that position in its memorandum opposing the Plaintiffs' Motion for an Injunction to Compel Compliance with Settlement Agreement (Doc. #343). See Doc. #354. For reasons which follow, this Court cannot agree with Navistar that it was entitled to unilaterally alter the Settlement Agreement, as a result of the adoption of Medicare Part D.

As an initial matter, the discussion in the SPD of Medical Plan 2 supplementing Medicare appears in the context of a discussion of Medicare Parts A and B. There is no indication in the SPD, in the Retiree Health Benefit and Life Insurance Plan or in the Settlement Agreement/Consent Decree, itself, that any additional, unspecified benefit which Congress would adopt for Medicare in the future would be supplemented by Medical Plan 2. Indeed, it would have been quite simple for the parties to have added a declaratory sentence to one of those documents, indicating that any benefits later added to Medicare would be supplemented by Medical Plan 2.[11]

---

[11]In an effort to show that Navistar's interpretation of the Settlement Agreement/Consent Decree is erroneous, Plaintiffs use the example of Medicare adopting a long-term care provision, which the Court will call Medicare Part E. Long-term care is not available under Medical Plan 2, and, indeed, is excluded therefrom. Nevertheless, under Navistar's interpretation of Medical Plan 2, it would be required to compensate Medicare eligible retirees for the difference between the Medicare-approved amount for long-term care and the charges for which Medicare actually paid, even though the Settlement Agreement/Consent Decree did not contemplate long-term care coverage.

Moreover, the SPD states that Medical Plan 2 will be the secondary plan for Medicare eligible retirees, whose Medicare coverage will be their primary plan of coverage. See SPD at 119. The SPD then explains that Medical Plan 2 will pay such retirees the difference between the Medicare-approved amount and the amount Medicare has paid. Id. The phrase "Medicare-approved amount" is explained by the SPD as follows:

> Medicare payments are based on <u>the fee schedule amount for Part B physician and supplier services</u>. It takes into account geographic variation in the costs of medical practice. The Medicare-approved amount is the lower of the actual charge or the fee schedule amount.

Id. at 177 (emphasis added). Since the phrase "Medicare-approved amount" refers only to the fee schedule amount for Medicare Part B, there is no "Medicare-approved amount" for prescription drugs dispensed under Medicare Part D or for any other new benefit Medicare should decide to add.[12] Therefore, the SPD does not contain a formula by which it could be determined how Medical Plan 2 would financially supplement Medicare Part D, which is indicative that the parties, when they entered into the Settlement Agreement/Consent Decree, did not intend that Medical Plan 2 would supplement any additional benefits which Congress might decide to adopt for Medicare.

In addition, with § 3.8 of the Retiree Health Benefit and Life Insurance Plan, the parties crafted a detailed protocol to address possible future adoption of changes in any "State or National Health Insurance Program." That protocol provides that Navistar will be given credit, through the formula set forth in that

---

[12]Navistar does not contend that the amount paid by Medicare for prescription drugs, in accordance with Part D, is set forth in the fee schedule for Part B.

Plan, for the apportionment of the costs between Navistar and its retirees for any new taxes, premiums or additional amounts Navistar might be required to pay as a result of such changes. Thus, the parties were aware that legislative changes in the health care system could occur and provided a contingency to address such changes should they occur. The change brought about by Medicare Part D, however, does not require Navistar to pay additional taxes or premiums; therefore, that change does not come within the contingency for legislative changes to the health care system set forth in the Retiree Health Benefit and Life Insurance Plan. This further demonstrates that, when the Settlement Agreement/Consent Decree was adopted, the parties did not intend that the statement in the SPD, that Medical Plan 2 supplements Medicare, to mean that Medical Plan 2 would supplement any new benefit Congress should in the future adopt for Medicare.

It also bears emphasis that Medicare Part D requires Navistar's Medicare eligible retirees to pay more for a prescription drug benefit than they were required to pay before Navistar made its unilateral substitution, given that they are required to pay the monthly premium under Medicare Part D, which they had not been previously required to pay. In addition, those retirees will receive less coverage under Medicare Part D, since the formulary of SilverScript,[13] the prescription drug plan selected by Navistar to provide coverage under Medicare Part D, does not cover all prescription medications. For these reasons, this Court rejects Navistar's assertion that its unilateral substitution of Medicare Part D for the prescription drug benefit was permissible, because its Medicare eligible retirees would continue to

---

[13]SilverScript is a prescription drug plan offered by CVS Caremark.

- 10 -

receive all prescription drug benefits provided by the Settlement Agreement/ Consent Decree.

Based upon all of the foregoing, this Court concludes that the statement in the SPD that Medical Plan 2 supplements Medicare did not authorize Navistar to unilaterally replace the prescription drug program set forth therein with Medicare Part D.[14]

Alternatively, Navistar also argues that it was permitted to unilaterally substitute Medicare Part D for the prescription drug program established by the Settlement Agreement/Consent Decree, in accordance with Article V of the Retiree Health Benefit and Life Insurance Plan. In particular, Navistar points out that, in accordance with Article V, it is the Plan Administrator and Named Fiduciary and that, as such, its powers, rights and duties include:

---

[14]Plaintiffs argue that the fact that, although Medical Plan 2 states that it will supplement Medicare coverage, it does not address the question of whether Medicare eligible retirees will be required to pay the premium for Medicare Part D. Although this Court cannot disagree with Plaintiffs' statement in that regard, it is not necessary to address the issue of whether the Plaintiffs or Navistar are liable to pay the premium for Medicare Part D, given that it concludes that the Settlement Agreement/Consent Decree did not authorize Navistar to unilaterally substitute Medicare Part D for the prescription drug benefit provided by the settlement.

In addition, Plaintiffs argue that Navistar lacks the authority to exclude from coverage certain prescription medications. As is indicated above, the SPD states that all legend drugs and certain non-legend drugs are covered by the prescription drug benefit provided by the Settlement Agreement/Consent Decree. However, under the Medicare Part D plan administered by SilverScript, retirees will be required to pay the full price of any prescription medication that is not on its formulary. Once again, since the Court concludes that the Settlement Agreement/Consent Decree did not authorize Navistar to unilaterally substitute Medicare Part D for the prescription drug benefit provided by the settlement, it is not necessary to address separately the issue of whether Navistar can unilaterally limit the availability of some prescription medications.

> (b) [construing] and [interpreting] the Health Benefit Program and the Life Insurance Program and to decide all questions of eligibility under such program.

While this argument is focused upon to counter Plaintiffs' assertion that § 3.8 of the Retiree Health Benefit and Insurance Plan sets forth the means by which Navistar's obligations can be altered as a result of changes in the National or State health insurance programs, Navistar, in effect, contends that giving it the power to construe and to interpret the Retiree Health Benefit and Life Insurance Program means that it has the unilateral right to substitute Medicare Part D for the prescription drug benefit the parties had carefully crafted in accordance with the Settlement Agreement/Consent Decree. This Court will, therefore, decide whether Article V supports Navistar's position. For reasons that follow, this Court rejects that argument.

In the context of a discussion of Medicare Parts A and B, the SPD mentions that Medical Plan 2 will supplement Medicare. Indeed, certain of the terms used in that discussion are defined in a manner which would render the supplementation of Medicare Part D for the prescription drug plan as part of Medical Plan 2 an absurdity, since there would be no way of computing the "Medicare-approved benefit." The SPD does not state that Medical Plan 2 will supplement any new programs or benefits which are added to Medicare in the future. Indeed, the parties included § 3.8 in the Retiree Health Benefit and Life Insurance Plan, in order to address the eventuality of changes to a State or National insurance program. Simply stated, the power bestowed upon Navistar by Article V did not empower it to amend or to rewrite the Settlement Agreement/Consent Decree, the Retiree Health Benefit and Life Insurance Plan and/or the prescription drug benefit itself, as

set forth in the SPD, in order to substitute Medicare Part D for the prescription drug benefit provided under the settlement. Accordingly, the Court rejects the proposition that Navistar was authorized by Article V to make the substitution that brings this matter before the Court.

Navistar also argues that, even if its interpretation of the SPD is erroneous, Plaintiffs are not entitled to the requested injunctive relief, because they have failed to establish irreparable harm.[15] The Plaintiffs requested such relief, in order to prevent Navistar from implementing its unilateral substitution of Medicare Part D for the prescription drug benefit adopted in accordance with the Settlement Agreement/Consent Decree. Since Navistar's substitution has in the interim gone into effect, the ability to impose such injunctive relief has become moot. Nevertheless, Section 15.4 of the Settlement Agreement/Consent Decree provides, inter alia, that this Court "will retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement ..." of that document. Herein, this Court has concluded that Navistar violated same and can utilize its enforcement power to order Navistar to come into compliance with the

---

[15]Navistar also argues that, from its perspective, the central purpose of the settlement was to permanently reduce its adjusted post-retirement benefit obligation ("APBO"). Indeed, the Settlement Agreement/Consent Decree provides that, unless definite and swift action is taken to permanently reduce Navistar's APBO, it was faced with insolvency. According to Navistar, its APBO has not been permanently reduced. Navistar has not, however, provided information of what its APBO would currently be, if the parties had not entered into the Settlement Agreement/Consent Decree. Nevertheless, whether the failure to permanently reduce Navistar's APBO has destroyed the benefit of the bargain that it sought through the settlement, whether Navistar has been denied the benefit of the settlement and, if so, whether that provides the basis for some sort of relief for Navistar are issues that will be resolved in the companion civil action, Navistar International Corporation, et al. v. Art Shy, et al., Case No. 3:10cv211 (S.D.Ohio).

Settlement Agreement/Consent Decree, regardless of whether the Plaintiffs have suffered irreparable injury.

However, even if it were necessary for the Plaintiffs to establish irreparable injury, in order for this Court to be able to exercise its enforcement authority, the Court would conclude that the Plaintiffs have established same. The general rule in the Sixth Circuit is that "a plaintiff's harm is not irreparable if it is fully compensable by money damages." Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992). See also Beacon Theatres v. Westover, 359 U.S. 500, 506-07 (1959) (noting that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies"); Taubman Co. v. Webfeats, 319 F.3d 770, 778 (6th Cir. 2003) (finding that plaintiff had failed to establish irreparable injury, because any harm suffered would be economic and could be compensated with monetary damages). Herein, Navistar's Medicare eligible retirees have been required to pay the monthly premium for Medicare Part D or have no coverage for prescription drugs. There is nothing, however, in the Settlement Agreement/Consent Decree, indicating that individual members of the class (i.e., those retirees) have a private right of action against Navistar to recover the premiums which they have been wrongfully required to pay for Medicare Part D. Therefore, the Court would have, if necessary, concluded that the Plaintiffs and the class they represent are suffering irreparable injury as a result of Navistar's unilateral substitution of Medicare Part D for the prescription drug benefit adopted by the parties pursuant to the Settlement Agreement/Consent Decree.

Based upon the foregoing, the Court sustains in part and overrules in part the Plaintiffs' Motion for an Injunction to Compel Compliance with the Settlement

- 14 -

- 15 -

Agreement (Doc. #343). That motion is sustained to the extent that the Plaintiffs seek to have the Court declare that Navistar was without authority to unilaterally substitute Medicare Part D for the prescription drug benefit adopted by the parties in accordance with the Settlement Agreement/Consent Decree. That motion is overruled, to the extent that the Defendants seek injunctive relief.

Counsel will note that the Court has scheduled a telephone conference call on Thursday, March 3, 2011, at 4:00 p.m., for the purpose of selecting a date for a settlement conference in this case and in the companion case, Navistar International Corporation, et al. v. Art Shy, et al., Case No. 3:10cv211 (S.D.Ohio).

February 24, 2011

　　　　　　　　　　　　　　　　　　　　WALTER HERBERT RICE, JUDGE
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.