**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| ART SHY, et al.,<br><br>         Plaintiffs,<br><br>    v.<br><br>NAVISTAR INTERNATIONAL CORPORATION, et al.,<br><br>         Defendants. | No. C-3-92-333 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
"FURTHER OPPOSITION AND MOTION TO
SUPPLEMENT RECORD CONCERNING
PRESCRIPTION DRUG PLAN BENEFITS"**

Seeking to persist in the violation of the Settlement Agreement/Consent Decree that this Court found in February and which continues unabated to this day, Navistar has (without seeking leave of court) filed a "Further Opposition" (Doc. #380) to plaintiffs' request that the Court provide relief for that violation.[1]  In that filing, Navistar argues for the first time that "[t]he question whether Plan 2 Participants are entitled to different prescription drug benefits than those administered under the regime that Navistar implemented in July 2010 is an issue expressly carved out [of] the Court's retained jurisdiction." Further Opposition at 3.  Navistar relies on the language in Section 15.4 of the Settlement Agreement which provides that the Court retains

---

[1] In its Further Opposition Navistar also asks the Court to supplement the record to include the Position Papers the parties submitted with respect to that issue.  Plaintiffs do not oppose that request.

jurisdiction "except for disputes relating solely to eligibility or entitlement to benefits hereunder." Further Opposition at 2 (emphasis omitted). According to Navistar, "that exclusion matches up precisely," *id.* at 2, with the authority of the Health Benefit Program Committee (HBPC) "to resolve disputes with respect to determinations of the Plan Administrator regarding benefits and eligibility in its sole discretion in accordance with the dispute resolution procedure set forth in the relevant SPD." *Id.* at 3 (quoting Base Plan, § 6.2(b)).

    1.    Navistar has waived this contention. The question that Navistar now asserts to be outside this Court's retained jurisdiction is the very question that was raised in plaintiffs' motion to enforce the Settlement Agreement/Consent Decree, filed fourteen months ago.[2] Throughout this lengthy period, Navistar never has argued that the Medicare Part D issue is a "dispute[] relating solely to eligibility or entitlement to benefits" within the meaning of Section 15.4 of the Settlement Agreement/Consent Decree, or that it falls within the provisions of Section 6.2(b) of the Plan. Having for fourteen months tested the waters of this Court's adjudication of this dispute, Navistar cannot change course now that it has found the waters to be too hot.

---

[2] Navistar says as much, stating (albeit without foundation) that the parties had shared Navistar's view of the Court's limited authority "until Class Counsel filed the Motion for Injunction concerning Part D in April 2010." Further Opposition at 3. *See also id.* at 3 n.1 (asserting that "[t]o the extent the February 2011 order is interpreted as a ruling concerning 'entitlement' to benefits, that Order too was outside the Court's jurisdiction").

2

Navistar's new contention has been waived and should not be considered by the Court.³

2. Even had it not been waived, Navistar's belated contention would be unfounded.

The sole subject of the Settlement Agreement/Consent Decree is Navistar's obligation to provide specified benefits to the Retirees. That being the case, the Court hardly could "retain exclusive jurisdiction to resolve any dispute relating to or arising out of or in connection with the enforcement, interpretation or implementation of th[e] Settlement Agreement," as Section 15.4 recites,⁴ if the Court's hands would be tied whenever an exercise of the Court's authority would affect the Retirees' benefits. The exclusion in Section

---

³ The fact that Section 15.4 refers to the Court's "retain[ing] exclusive *jurisdiction* . . . except for disputes relating solely to eligibility or entitlement to benefits hereunder" does not mean that Navistar's contention is not subject to waiver. "[T]he word 'jurisdiction' has been used by courts, including [the Supreme] Court, to convey 'many, too many meanings.'" *United Pac. R.R. Co. v. Brotherhood of Locomotive Eng'rs,* 130 S. Ct. 584, 596 (2009), quoting *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 90 (1998). Only when the term refers to subject matter jurisdiction does it refer to a matter that cannot be waived. *Id.* But here, there can be no question that the Court has subject matter jurisdiction, because a federal court has "inherent power to enforce its judgments." *Peacock v. Thomas,* 516 U.S. 349, 356 (1996). *See also Frew v. Hawkins,* 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered a consent decree may be enforced.") Hence, the reference in Section 15.4 of the Settlement Agreement/Consent Decree to an exception to this Court's "jurisdiction" does not operate to limit the Court's *subject matter* jurisdiction, and arguments as to whether a particular matter does or does not fall within the ambit of Section 15.4 therefore can be waived.

⁴ *See also* Order entered June 8, 1993 at 11-12 (Doc # 326) (the Court "retains continuing jurisdiction . . . for the purposes of implementing, enforcing and administering the Settlement Agreement and exhibits thereto").

15.4 therefore cannot be given the breadth Navistar now ascribes to it, lest the exception swallow the rule; for, under Navistar's reading, the Court *never* could exercise its authority to "implement" and "enforce" the Settlement Agreement/Consent Decree, and rarely, if ever, could the Court exercise its authority to "interpret" the Agreement and Decree.

It is plain enough what Section 15.4 actually means.  As Navistar states, "th[e] exclusion [in Section 15.4] matches up precisely" with Section 6.2(b) of the Plan; and the latter provision makes clear that the benefit-entitlement issues which must be presented to the HBPC rather than to the Court are confined to *individual benefit claims that have been pursued through the Plan's routine claims process.*

By its terms, Section 6.2(b) of the Plan gives the HBPC authority to review "determinations of the Plan Administrator regarding benefits and eligibility in its sole discretion *in accordance with the dispute resolution procedure set forth in the relevant SPD."*  Such HBPC review is the end-point of the process for resolving garden variety claims for benefits that arise whenever a Retiree incurs a medical or drug expense.  *See* SPD at 151-163 (attached hereto as Exhibit A).  The SPD explains that for Retirees who are covered under Plan 2, "filing a claim" begins with forwarding the Retiree's medical bill to Medicare.  *Id.* at 151.  When the Retiree receives from Medicare the Explanation of Benefits form which states the portion of the bill that Medicare will pay, the Retiree may then submit a claim form to the Plan Benefits

4

Payment Office, seeking reimbursement of the portion of the remaining charge that is payable by Navistar. *Id.* at 151-161. The SPD includes the specific form that is to be used to submit such a claim. *See id.* at 153. The SPD then states that "[i]f a claim is wholly or partially denied under the Navistar Retiree Health Benefit Program," the Retiree will receive notice in writing within 90 days, stating the reason for the denial and giving "[a]n explanation of the claim review procedure." *Id.* at 162. The Retiree then may appeal, at any time within one year, to Navistar's "Manager, Employee Insurance." *Id.* If that Manager denies the appeal, the Retiree may appeal to the HBPC, which "has been established to resolve disputes *following the regular claims procedure.*" *Id.* at 163 (emphasis added). *See also id.* (HBPC "may review and resolve benefit and eligibility disputes *after the claim review procedure*") (emphasis added).

In short, the SPD – and, through incorporation by reference, 6.2(b) of the Plan – only authorizes the HBPC to resolve benefit disputes that have been raised through "the regular claims procedure," which is triggered by a Retiree's submitting a bill to Medicare and then seeking payment of the unpaid portion through the regular Plan procedures. The matter before this Court is *not* a matter that was raised through "the regular claims procedure," nor does the Settlement Agreement/Consent Decree, the Plan or the SPD contain any provision stating that a dispute of this nature must be raised in that manner.

It is one thing to say that Retirees cannot run to this Court whenever Navistar refuses to pay a particular medical bill; the Plan's claims procedure is intended and designed to resolve such disputes without the Court's

5

involvement. But it would be quite another thing to say that plaintiffs cannot submit a motion to this Court seeking to enforce compliance with the Settlement Agreement/Consent Decree and to remedy Navistar's noncompliance, when Navistar has renounced obligations it owes to *all* of the Retirees. Nothing in the Settlement Agreement/Consent Decree, the Plan or the SPD purports to withdraw such core compliance issues from this Court's authority.

Thus, because Plaintiffs are not presenting to the Court a dispute that arose through "the regular claims procedure" of the Plan, the matter is not within the review authority of the HBPC. Presumably that is why, until this week, Navistar never suggested that this dispute is subject to Section 6.2(b) of the Plan. Because, on Navistar's own submission, the exception to this Court's dispute-resolution authority "matches up precisely with the authority . . . that is subject to review by the HBPC" under 6.2(b), Further Opposition at 2-3, and because the dispute here was *not* subject to review by the HBPC under that provision, Navistar has no basis for asserting that the Court lacked authority to resolve the dispute presented by plaintiffs' April 2010 motion, or that the Court

is without power to require Navistar to cease violating the Agreement and Decree and to make the Retirees whole for the Company's violation.

                                  Respectfully submitted,

                                  *s/ Julia Penny Clark*

| | |
|---|---|
| MICHAEL NICHOLSON | JULIA PENNY CLARK |
| MICHAEL F. SAGGAU | JEREMIAH A. COLLINS |
| Legal Department | Bredhoff & Kaiser, P.L.L.C. |
| International Union, | 805 15th Street, N.W. |
| United Automobile, | Washington, D.C. 20005 |
| Aerospace & Agricultural | 202-842-2600 |
| Implement Workers of America | |
| 8000 East Jefferson Avenue | |
| Detroit, MI  482140-2699 | |
| | FREDERICK G. CLOPPERT, JR. (0010371) |
| *Counsel for Defendant* | Trial Attorney |
| *UAW* | Cloppert, Latanick, Sauter & Washburn, LLF |
| | 225 East Broad Street |
| | Columbus, Ohio 43215 |
| | 614-461-4455 |
| | |
| | *Counsel for Defendants* |
| | *Art Shy, et al.* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 29, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                              *s/ Julia Penny Clark*
                                              Julia Penny Clark