## Navistar Inc. Retiree Supplemental Benefit Plan

November 14, 2011

RECEIVED BY
NOV 1 6 2011
GROOM LAW GROUP

John V. Mulvaney, Sr.
Vice President, Finance Special Projects
Navistar, Inc.
4201 Winfield Road
Warrenville, IL  60555

    Re:    Supplemental Benefit Trust Profit Sharing Plan under the Navistar, Inc.
              Retiree Supplemental Benefit Program

Dear Mr. Mulvaney:

    This letter is sent on behalf of the Supplemental Benefit Committee (the "Committee") established under the Navistar International Transportation Corporation Retiree Supplemental Benefit Program.

### OVERVIEW AND SUMMARY

    On May 4, 2010, the Committee sent a letter to Navistar addressing some general and specific concerns relating to the Schedules of Qualifying Profits that Navistar had provided, or neglected to provide, to the Committee per the terms of the Supplemental Profit Sharing Plan (the "Plan").  Specifically, the Committee: 1) noted that Navistar had not been timely meeting all of its reporting obligations under the Plan; 2) disputed the Company's calculation of Qualifying Profits for each of the years 2009, 2008, and 2007; 3) noted that the Schedules did not provide sufficient information to verify the accuracy and reasonableness of the Company's calculations; and 4) pointed out that the Schedules lacked information relating to "Qualifying Hours," as required under Sections 8.1, 8.2 and 8.3 of the Plan.  Other than providing a 2010 Schedule of Qualifying Profits, the Company has failed to respond to the Committee's letter.

    In addition, the Committee is concerned about the cessation of Contributions starting in or around 2000 when the Company apparently changed its business accounting model from the system that was in place at the time the Settlement Agreement was negotiated and approved by the Court.  Among other things, this had the effect of allocating the Company's profits away from certain entities within the controlled group to other entities within the same controlled group.  Not coincidentally, this change also had a dramatic effect on the Company's Contribution Obligation.  For example, Contributions averaged over $30 million per year from 1995-2001, with payments of over $60 and $70 million in 1999 and 2000, respectively, just before the change was made.  In the ten years since the change was made, the Company has made exactly one payment – of approximately $1.4 million.

November 14, 2011
Page 2 of 5

The Committee has a fiduciary obligation to investigate whether the Company's change in methodology, as it affected Navistar's obligations under the Settlement Agreement, was consistent with the language and intent of that Agreement and in compliance with the Court's Order that approved that Agreement. Indeed, Section 8.1 of the Plan provides that the Committee has the right to "all information reasonably necessary to review the calculation of Qualifying Profits," and Section 8.6 requires the Company to provide the Committee with "information supporting any computation made by the Company" with respect to the Contribution Obligation. Pursuant to these provisions, the Committee has prepared the following request for the information it needs in order to understand and evaluate how the Company is now interpreting and implementing the Settlement Agreement.

## II.

## SPECIFIC REQUESTS

A. The Committee requests that Navistar provide a worksheet detailing each of the elements that it used to calculate the Contribution obligation from 2001-2010, including an identification of each category of data it used to calculate Qualifying Hours[1] and Qualifying Profits. With respect to the requested worksheets, the internally prepared spreadsheet format used by the Company for the Supplemental Trust Profit Sharing Calculation for the year ended October 31, 2010 that was provided and sent to the Committee with the outside audit report would be an acceptable format. Regarding the identification of each category of data the Company used to calculate Qualifying Profits, please provide an annual Statement of Operations (Income Statement) in the same or similar format as included in Navistar's Annual Report filed with the U.S. Securities and Exchange Commission for each individual entity or entity grouping included on the requested worksheet.

B. In order to adequately and appropriately understand and evaluate how Navistar is interpreting and implementing the Settlement Agreement as well as to properly review the Schedules of Qualifying Profits, the Committee requests an explanation as to how the Company defines certain terms used in the calculation of Qualifying Profits, and how such terms, and other phrases, have been defined in the past:

  1. Section 5.2.3 provides that "pre-tax income or losses of continuing Covered Operations," excluding "gain or loss on the sale of assets, other than sale of inventory in the ordinary course of business and trade," shall be included in the sum of Qualifying Profits.

---

[1] Though Navistar has provided the Qualifying Hours for FY2006, the Company has not reported the Qualifying Hours for FYs 2004, 2005, 2007, 2008, 2009, or 2010.

November 14, 2011
Page 3 of 5

    a. Please provide an explanation of what the Company includes in its definition of "assets," and whether this definition has been consistently used from 1994-2010 when calculating Qualifying Profits?

    b. Please provide a list of all "sale(s) of assets" in any of the years from 1994-2010 that have been excluded from the pre-tax income or loss of the Covered Operations, including the amount of any income or loss associated with each such sale?

2. Section 5.2.4 provides that "pre-tax (loss) of NFC; pre-tax losses of NIC on an entity basis; pre-tax income (loss) of any business acquired after the Effective Date; dividends received from Navistar International Corporation Canada; [and] equity in income (loss) from affiliates included in Covered Operations on the Effective Date" shall be excluded in the sum of Qualifying Profits.

    a. Please provide a list or explanation of the business units (including, but not limited to, subsidiaries, affiliates, joint ventures, etc.), profit and/or cost centers, departments, or business functions that are included in the NIC entity as well as the categories of transactions that are included in the Company's calculation of pre-tax income or losses "of NIC on an entity basis."

    b. Please provide a detailed explanation of how the Company now defines "business acquired." This should include, but not be limited to, an explanation of whether the Company includes any entities that it organized and/or started as an "acquired business" for purposes of the Profit Sharing calculation.

    c. Please provide a list of all "business(es) acquired after the Effective Date" within the Company's current interpretation of this phrase along with the following information for each "acquired" business:

        1) The date and amount of consideration paid for the acquisition;
        2) The entity from which such business was acquired;
        3) A copy of the pre-acquisition financial statements filed with the U.S. Securities and Exchange Commission or a copy of the Company's evaluation regarding why the filing of such financial statements was not required;
        4) An explanation of the nature of each acquired business' operations and revenue streams when it was acquired and currently;
        5) A list of all assets transferred by the Company from a non-acquired entity to an allegedly "acquired" business (excluding financial assets, but including any fixed or

November 14, 2011
Page 4 of 5

        intangible assets as well as any intellectual property, trade secrets, proprietary information, etc.);

    6) A list of any financial guarantees of the acquired business' obligations (including leases) by a non-acquired business.

3. In order to understand how the Settlement Agreement has been implemented, the Committee needs additional information regarding the Company's management reporting methodology, processes, procedures, policies and senior management's directives. Accordingly, please provide us with the following explanations or information:

a. Please describe and explain the Company's approach to management reporting, including whether the Company uses a profit and cost center model or something similar, and whether a typical business unit includes multiple profit or cost centers.

b. Please describe and explain the Company's management and financial reporting hierarchy.

c. Please explain whether individual business units are included in multiple legal entities or just one legal entity.

d. Please describe the Company's methodology for allocating costs incurred for corporate functions, centralized or shared services, and similar costs to its various operating business units.

e. Please describe the Company's method for allocating interest and other financing costs to its operating business units.

f. Please describe the Company's method for allocating costs incurred and expensed for research and development activities to its operating business units, both foreign and domestic.

g. Please identify the individual who was responsible for maintaining and implementing changes to the Company's management and financial reporting hierarchy in and around 2000, and who is currently responsible for that function. Please describe the internal controls in place (including required management reviews and approvals) in 2000 and currently regarding requested changes to the reporting hierarchy.

h. Please explain the business purpose of the following entities: Navistar Cayman Islands Intellectual Property Company, Navistar Luxembourg Intellectual Property Company, International Truck Intellectual Property Company, LLC and International Engine Intellectual

November 14, 2011
Page 5 of 5

        Property Company, LLC? Please confirm whether these are "acquired businesses" as Navistar defines this term.

C. During the fiscal year ended October 31, 2000, the Company's Annual Report filed with the U.S. Securities and Exchange Commission reported an accrued liability to the Supplemental Profit Sharing Trust of $24 million. However, the Company only paid approximately $3.6 million. What caused the difference between the obligation reported in the Annual Report (which was never reversed) and the amount paid?

    The Committee requests that all information requested in this letter be provided no later than sixty (60) days after the date of this letter. If such information is not provided in a timely manner, the Committee will consider the Company's action a failure to adhere to the terms of the Settlement Agreement and the Plan, and will seek the assistance of the Court.

    Thank you for your prompt attention to the matters described above.

                         Sincerely,

                         Donn J. Viola

cc:    Thomas Hennigan
       Tim Bresller
       Bob Mikulan
       David Radelet
       Janis Bair
       Douglas Hunter
       Michael Lacour
       Jeffrey Dokho
       Wayne Krzysiak