*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0407p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ART SHY, et al.,

　　*Plaintiffs-Appellees*,

v.

NAVISTAR INTERNATIONAL CORPORATION;
NAVISTAR INTERNATIONAL TRANSPORTATION
CORPORATION, n/k/a Navistar, Inc.;
NAVISTAR FINANCIAL CORPORATION; HARCO
NATIONAL INSURANCE COMPANY; NAVISTAR
INTERNATIONAL TRANSPORTATION CORP.
HEALTH PLAN; INDIANAPOLIS CASTING
CORPORATION,

　　*Defendants-Appellants*.

Nos. 11-3215/4143

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:92-cv-333—Walter H. Rice, District Judge.

Argued: October 4, 2012

Decided and Filed:  December 14, 2012

Before:  SILER and COOK, Circuit Judges; STEEH, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Cary R. Perlman, LATHAM & WATKINS LLP, Chicago, Illinois, for Appellants. Jeremiah A. Collins, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., for Appellees. **ON BRIEF:** Cary R. Perlman, LATHAM & WATKINS LLP, Chicago, Illinois, Laurence H. Levine, LAURENCE H. LEVINE LAW OFFICES, Chicago, Illinois, David P. Pierce, COOLIDGE WALL CO., L.P.A., Dayton, Ohio, for Appellants. Jeremiah A. Collins, Julia Penny Clark, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., Frederick G. Cloppert, Jr., Columbus, Ohio, for Appellees.

---

[*]The Honorable George C. Steeh, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

---

## OPINION

---

SILER, Circuit Judge.  The class action plaintiffs ("Shy Class") initiated the current litigation by seeking an injunction against Navistar International Corp. ("Navistar"), claiming that Navistar's unilateral move to substitute Medicare Part D into their medical plan violated the parties' 1993 settlement agreement (the "Agreement"). The district court found that Navistar's actions were in violation of the Agreement and ordered Navistar to reinstate, retroactively, the prescription drug benefit that was in effect before Navistar made the unilateral substitution.

On appeal, Navistar raises three issues. First, whether Navistar has discretionary authority to construe and interpret the Health Benefit Program. Second, whether the Agreement grants Navistar the power to substitute Medicare Part D for the prescription drug plan described in the Agreement. And third, whether the district court erred when it ordered Navistar to retroactively reinstate the prescription drug benefit from the Agreement. For the reasons that follow, we **AFFIRM**.

I.

This case originated as a class action lawsuit in 1992 when Navistar attempted to reduce its costs for retired employee health and life insurance benefits. Navistar asserted that it would soon become insolvent if it were unable to reduce its retiree health and life insurance obligations. In 1993, the U.S. District Court for the Southern District of Ohio approved the Agreement between the parties. *Shy v. Navistar Int'l Corp.*, No. 6-3-92-333, 1993 WL 1318607, at *12 (S.D. Ohio May 27, 1993). The district court entered a judgment adopting the Agreement as a consent decree while retaining continuing jurisdiction over the parties for the purposes of enforcing and administrating the Agreement.

The Agreement established the Retiree Health Benefit and Life Insurance Plan (the "Plan"). In turn, the Plan established the Health Benefit Program Summary Plan Description (the "Manual"). The Manual contains a description of the health benefits and is furnished to all beneficiaries.

Through the Manual, the Agreement divides health benefits into two different plans for retirees: Medical Plan 2 for those who are eligible for Medicare and Medical Plan 1 for those who are not eligible. The Manual describes Plan 2 as a "Medicare supplement plan that helps pay for expenses covered by Medicare, but not paid in full by the government program." Plan 2 participants who enroll in Medicare Part B are required to pay the Medicare Part B premium. Additionally, any Plan 2 participants who are eligible for Medicare but who are required to pay the Medicare Part A premium (because of social security benefit ineligibility or other reasons), "are encouraged to enroll and pay the required" premium because Plan 2 benefits are payable as if Medicare Part A coverage were in effect. Plan 2 also has a monthly premium and an annual out-of-pocket maximum.

After a participant has paid the annual out-of-pocket maximum, Plan 2 covers 100% of the difference between the Medicare-approved expenses and the amount that Medicare actually pays. In sum, Medicare eligible retirees were required to make three types of payments for health insurance benefits under the Agreement: (1) monthly premiums for Medicare Part B; (2) monthly premiums for Medical Plan 2; and (3) the annual out-of-pocket maximum.

A prescription drug benefit was also provided under the Agreement. The Prescription Drug Plan is presented in a separate section of the Manual and the benefits provided are identical for both Plan 1 and Plan 2. The participants are required to pay up to an $8.00 co-pay for a 30-day supply of any generic prescription drug and up to an $18.00 co-pay for a 30-day supply of any brand-name prescription drug. After the co-pay, which does not count toward the Plan 2 annual out-of-pocket maximum, any further costs for prescription drugs is generally covered under the Prescription Drug Plan. The Prescription Drug Plan covers all legend drugs and certain prescribed, non-legend drugs.

A legend drug is defined as one required by federal law to bear the legend "Caution: Federal Law prohibits dispensing without a prescription."

The Medicare Prescription Drug, Improvement, and Modernization Act of 2003, which created Medicare Part D, became effective in 2006. *See* Pub. L. No. 108-173, 117 Stat. 2066 (codified in scattered sections of 42 U.S.C.). In September 2005, Navistar sent a letter to all Medicare-eligible retirees stating that Medicare beneficiaries could stay in their current plan (coverage under Medical Plan 2) and choose not to enroll in the new Medicare Part D because their current coverage equaled or exceeded the new Medicare drug benefit. Then, in 2010, Navistar announced that Plan 2 participants would receive primary prescription drug coverage through Medicare Part D, effective July, 1, 2010. The announcement required Plan 2 participants to pay the Medicare Part D premiums, which were $35.00 per month at the time. The announcement also stated that participants would be enrolled in the SilverScript plan offered by CVS Caremark, and only the drugs on the SilverScript plan formulary would be covered. Participants were required to pay for the entire cost of any prescription drug that was not on the SilverScript formulary, even if it was previously covered under the Prescription Drug Plan in the Manual.

In 2010, the Shy Class filed a motion to compel Navistar to comply with the Agreement. In February 2011, the district court sustained the plaintiffs' motion for an injunction in part, declaring that Navistar was without authority to unilaterally substitute Medicare Part D for the prescription drug benefit adopted by the parties in the Agreement, and overruled the motion for an injunction in part by denying the plaintiffs injunctive relief. Navistar appealed the ruling, resulting in case number 11-3215.

In April 2011, at the court's request, both parties tendered to the court position papers concerning the need and appropriateness of additional orders in connection with the February 2011 district court order. Subsequently, in September 2011, the district court ordered Navistar to immediately reinstate, retroactively, the prescription drug benefit that was in effect before Navistar unilaterally substituted Medicare Part D. The district court ordered Navistar to reimburse the plaintiffs for the Medicare Part D

Nos. 11-3215/4143     *Shy, et al. v. Navistar Int'l, et al.*                                         Page 5

premiums that had been paid in the interim and any extra cost for the prescriptions that were filled under Medicare Part D. Navistar again appealed, resulting in case number 11-4143.

II.

Generally, we review a district court's interpretation of a consent decree *de novo*. *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007). However, where the court is reviewing an interpretation of a consent decree by the district court that crafted the judgment, the standard of review is more accurately described as "deferential de novo." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371-72 (6th Cir. 1998); *see also Brown v. Neeb*, 644 F.2d 551, 558 n.12 (6th Cir. 1981) (the district judge's interpretation of a consent decree deserved deference where that judge oversaw and approved the consent decree); *G.G. Marck & Assocs. v. Peng*, 309 F. App'x 928, 935 (6th Cir. 2009) ("[W]e give some deference to a district court's interpretation of a consent decree where that court was involved in creating the decree.").

Navistar argues that because Judge Rice, the district court judge who made the orders below, did not personally draft the Agreement, his interpretation of the consent decree is due no deference. In *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, we ruled that the district judge's interpretation was due no deference because he was not the district judge who oversaw and approved the original consent decree. 475 F.3d 805, 810 (6th Cir. 2007). However, nine years earlier, we did give deference to an interpretation by the district court judge who oversaw and drafted the same consent decree. *Engler*, 146 F.3d at 371-72. Therefore, the distinction is not whether the district judge personally drafted the consent decree, but whether the district judge "oversaw and approved" the consent decree and later interpreted the same consent decree. *Brown*, 644 F.2d at 558 n.12.

Here, Judge Rice, whose interpretation of the Agreement is at issue on appeal, oversaw and approved the original settlement agreement/consent decree. Therefore, his interpretation "deserves deference" because "[f]ew persons are in a better position to

understand the meaning of a consent decree than the district judge who oversaw and approved it." *Id.*

### III.

The Plan is a registered employee health benefit plan under the Employee Retirement Income Security Act (ERISA). The Agreement established Navistar as the "named fiduciary" within the meaning of 29 U.S.C. § 1102(a)(2) and the plan "administrator" within the meaning of 29 U.S.C. § 1002(16)(A). In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court recognized that "ERISA abounds with the language and terminology of trust law," and that "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers." 489 U.S. 101, 110, 111 (1989). Citing *Firestone*, Navistar argues that it has discretionary power to construe and interpret the Plan and therefore its interpretation of the Plan is due deference by this court under the arbitrary and capricious standard.

ERISA defines a fiduciary as anyone who "exercises any discretionary authority or discretionary control respecting management of [a] plan." 29 U.S.C. § 1002(21)(A)(i). A fiduciary has "authority to control and manage the operation and administration of the plan," and must provide "a full and fair review" of claim denials. 29 U.S.C. §§ 1102(a)(1), 1133(2). These statutes indicate that one is characterized as a fiduciary to the extent he exercises *any* discretionary authority or control, and not that a fiduciary exercises *complete* discretionary authority or control. *See Firestone Tire & Rubber Co.,* 489 U.S. at 113. Therefore, as the plan administrator, Navistar is a fiduciary and while it may have discretionary authority to control and manage the plan, that does not necessarily mean that Navistar has discretionary authority to construe and interpret the plan. *See Anderson v. Great W. Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir. 1991) ("[D]iscretion is *not* an all-or-nothing proposition. A plan can give an administrator discretion with respect to some decisions, but not others.").

The question of whether deference is due relies entirely on whether discretion has been expressly granted in the plan for the specific decision at issue because "discretion is the exception, not the rule," and "[u]nless the plan grants discretion, the court should

Nos. 11-3215/4143     *Shy, et al. v. Navistar Int'l, et al.*                                Page 7

review the actions of the administrator *de novo*." *Id*. A plan's grant of discretionary authority should be both "express" and "clear" before application of the highly deferential arbitrary and capricious standard. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996); *see also Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989). Therefore, whether Navistar's interpretation of the Plan is due any deference depends on whether Navistar is expressly and clearly granted discretionary authority to construe and interpret the Plan.

Navistar specifically argues that Article V of the Plan grants it broad discretionary authority to construe and interpret the Health Benefit Program. However, a plain reading of Article V does not support this assertion. Article V states that Navistar "is responsible for the administration of the Health Benefit Program . . . subject to review by the Health Benefit Program Committee." Article V further states that "[s]ubject to such review," Navistar has the "power[], right[], and dut[y] . . . to construe and interpret the Health Benefit Program and . . . to decide all questions of eligibility under such programs."

This grant of authority fails to meet the discretionary authority requirements of being "express" and "clear." *Yeager*, 88 F.3d at 380. Not only does Article V not state that Navistar's authority to construe and interpret the Health Benefit Program is discretionary, it specifically states that Navistar's authority is subject to review by the Health Benefit Program Committee (the "Committee").[1] Article V further states that Navistar shall perform its duties "on a reasonable and non-discriminatory basis and shall apply uniform rules to all persons similarly situated." Thus, although Navistar has the power to construe and interpret the Plan, that power is not discretionary. Therefore, Navistar's interpretations of the Agreement, the Plan, and the Manual shall be given no deference.

---

[1] The Committee consists of seven members: three appointed by Navistar, two appointed by United Auto Workers (UAW), one appointed by the non-UAW retirees, and a seventh member appointed by a majority of the other members.

Nos. 11-3215/4143   *Shy, et al. v. Navistar Int'l, et al.*                                      Page 8

### IV.

#### A.

The main crux of this appeal involves the question of whether the Agreement authorized Navistar to substitute Medicare Part D into the Health Benefit Program. The district court, whose interpretation is due some deference, found that Navistar was not authorized to do so. Navistar relies on Article V of the Plan and statements in the Manual to argue not only that the Agreement authorized the substitution of Medicare Part D, but that the change in question was a required administrative change. The Shy Class relies on statements in both the Plan and the Manual to refute this assertion.[2]

The Supreme Court has noted that "consent decrees bear some of the earmarks of judgments entered after litigation" and that "[a]t the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986). It is this resemblance to contracts that requires that the scope of a consent decree "be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to" the consent decree. *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). Therefore, while Navistar's argument that the parties' original intent was to permanently reduce Navistar's retiree healthcare costs might be relevant in a motion to modify the consent decree, the interpretation of the consent decree as written should focus only within the four corners of the consent decree.

#### B.

The structure and presentation of the Manual indicate that the Medical Plans (1 and 2) are separate and distinct from the Prescription Drug Plan. First, the Manual is separated into five different sections in its table of contents: Introduction, Medical

---

[2] The Agreement explains that in resolving any discrepancies between the Agreement and either the Plan or the Manual, the Agreement controls, while the Plan controls in any discrepancies between the Plan and the Manual.

Plan 1, Medical Plan 2, Prescription Drug Plan, and General Information. Second, in the Introduction section, on page 6 of the Manual, there is a chart that lists what the participants in Plan 1 and Plan 2 will pay under each plan. This chart lists the Medicare Part B premium, but does not list any of the expenditures associated with the Prescription Drug Plan. The prescription drug expenditures for Medical Plan 1 and 2 participants (which are the same) are listed in a separate chart on page 9 of the Manual, entitled "Summary of Prescription Drug Benefits." This configuration of the Manual indicates that while participants are eligible for either Medical Plan 1 or Medical Plan 2 (but not both), the Prescription Drug Plan is separate and complementary to both plans.

It is noted in several places throughout the Manual that "Medical Plan 2 is a Medicare supplement plan that helps pay for expenses covered by Medicare, but not paid in full by the government program." However, the Manual also specifically notes that "[p]rescription drugs are not covered under Medicare." Further, the Manual states that "**[i]f Medicare doesn't cover an expense, Plan 2 won't cover it either, except for prescription drug expenses.**" These statements in the Manual indicate that while prescription drugs are not covered by Medicare, they are provided to participants enrolled in Medical Plan 2.

Additionally, the Manual notes in several places that Medicare consists specifically of two parts: Medicare Part A and Medicare Part B. More importantly, the Manual specifically addresses the possibility of changes to Medicare in the future:

> Future legislation may change Medicare. If the Medicare changes are minor, the Company has the ability to change the Program accordingly, without any effect on overall benefits available the Program. If Medicare makes major changes (such as an increase in the Medicare Part B annual deductible), the Health Benefit Committee will redesign the benefits as long as the Company's liability is not increased.

This statement directly correlates to the powers, rights, and duties distributed in the Plan.

First, under section 8.1(a) of Article VIII (Amendment and Termination) of the Plan, as plan administrator, Navistar's right to make amendments to the Health Benefit Program (the "Program") are limited to "non-material technical and administrative

amendments thereto . . . which are necessary to comply with . . . applicable legal requirements; provided, that no such amendment shall adversely affect the level of benefits to any Class Member." Just as stated in the Manual, Navistar may only make minor changes that do not affect the level of overall benefits available to participants.

Second, section 3.8 of the Plan, titled "State or National Health Insurance Programs," states that in the event of any legislative change in a state or national health insurance program that results in participants receiving post-retirement health care benefits greater or lesser than those provided under the plan, "the Health Benefit Program Committee *may* redesign the Health Benefit Program, including, *in its sole discretion*, by modifying the benefits thereunder and the amount of contributions required to be made by or on behalf of Enrolled Participants." (Emphasis added). This correlates directly with the statement in the Manual that after a legislative change to Medicare, only the Committee can make major changes to the Program that will effect the benefits available to participants. Additionally, the Committee may, but is not required to, redesign the Program in the event of legislative changes to Medicare.

Third, in Article VI (describing the Committee and its powers, rights, and duties), section 6.3 reiterates the power granted to the Committee "reasonably to redesign benefits under the Health Benefit Program as provided in Section 3.8 as it may deem appropriate in its sole discretion." This power is again reiterated in section 8.1(c) of Article VIII.

Navistar's actions were in direct contradiction to these powers, rights, and duties. The example used in the Manual to identify a "major" change to Medicare was the increase in the annual Medicare Part B deductible. By comparison, the addition of an entire new part to Medicare, with its own monthly premium, could only be classified as a major change to Medicare. If this is not obvious on its face, it is so because Medicare Part D and the SilverScript plan have their own formulary that is smaller than the Manual's Prescription Drug Plan in that it does not include all legend drugs. This resulted in a lesser available benefit to Medical Plan 2 participants. Additionally, Medical Plan 2 participants were required to pay the Medicare Part D premiums,

increasing their required contributions. For these reasons, Medicare Part D was a major and material change to both Medicare, and, when substituted for the Prescription Drug Plan in the Manual, to the Program.

This contradicts Navistar's assertion that implementing Medicare Part D into the Program was a required administrative change and not a substitution. Implementing Medicare Part D was a major change to Medicare that could have only been implemented by the Committee as a discretionary redesign of the Program. Therefore, the substitution of Medicare Part D for the Prescription Drug Plan in the Manual was not required under the Agreement and Navistar was not authorized to make the substitution.

V.

Navistar next argues that the district court erred when it issued its September 2011 order directing Navistar to retroactively reinstate the former prescription drug benefit, for three reasons: (1) the court lacked jurisdiction to enter the September 2011 order; (2) the Shy Class members have no individual right to recover money damages from Navistar; and (3) no evidence of class damages was presented. For the reasons that follow, we conclude that the district court did not err in ordering Navistar to retroactively reinstate the former prescription drug benefit.

A.

The district court's subject matter jurisdiction is well established. Courts "have a duty to enforce . . . their consent decrees as required by circumstance." *Waste Mgmt. of Ohio v. City of Dayton*, 132 F.3d 1142, 1146 (6th Cir. 1997); s*ee also United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 69 (2d Cir. 1995) ("[A] consent decree is an order of the court and thus, by its very nature, vests the court with equitable discretion to enforce the obligations imposed on the parties."); *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) ("A consent decree is essentially a settlement agreement subject to continued judicial policing.").

Further, section 15.4 of the Agreement provides that the district court "will retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in

Nos. 11-3215/4143   *Shy, et al. v. Navistar Int'l, et al.*   Page 12

conjunction with the enforcement, interpretation or implementation of this Settlement Agreement, except for disputes relating solely to eligibility or entitlement to benefits hereunder." In its supplemental opinion and order in 1993, the district court adopted the Agreement as a consent decree and retained "continuing jurisdiction over all parties hereto for the purposes of implementing, enforcing and administering the Settlement Agreement and exhibits thereto."

When a party to a consent decree is injured by the violation of the consent decree, "the injured party must ask the court for an equitable remedy." *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999); s*ee also Waste Mgmt. of Ohio*, 132 F.3d at 1145 (a court is required to "protect the integrity of the decree with its contempt powers"). In enforcing a consent decree "[a] federal court has broad equitable remedial powers" and "[t]he court's choice of remedies is reviewed for an abuse of discretion." *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992); s*ee also Screw Machine Tool Co. v. Slater Tool & Eng'g Corp.*, 683 F.2d 159, 163 (6th Cir. 1982) (the standard of review of an order granting relief for the violation of a consent decree is abuse of discretion).

The dispute at hand does not fit within Section 15.4's exception for disputes relating solely to eligibility or entitlement to benefits under the Agreement. The current dispute regards whether the Agreement, the Plan, and the Manual can be interpreted to allow for the substitution of Medicare Part D for the Prescription Drug Plan described in the Manual for all Medical Plan 2 participants. Therefore the Agreement and well-established precedent provided the district court with jurisdiction to enforce the settlement agreement/consent decree through the use of an equitable remedy and we review the district court's September 2011 order under the abuse of discretion standard.

B.

Navistar argues that the September 2011 order was improper because the Shy Class members have no individual right to recover money damages. However, the district court did not grant individual damages, but in fact granted equitable relief in response to the Shy Class motion for an injunction to compel compliance with the

Agreement. Relief that enforces a consent decree, "[e]ven if compensatory in purpose and effect . . . is . . . an equitable order." *Cook*, 192 F.3d at 695 (italics removed). Where a consent decree is violated, the court should fashion equitable relief that is "designed to make the party whole for his or her loss." *Id*. Here, that is exactly what the district court has done – ordered equitable relief that is compensatory in nature and designed to make the Shy Class whole for their loss.

 The district court specifically ordered Navistar to "reinstate the drug benefit plan which existed prior to its unilateral action and to make whole the Plaintiffs' class for their losses." This order was consistent with the court's February 2011 order, which noted that there was nothing in the Agreement "indicating that individual members of the class have a private right of action against Navistar to recover the premiums which they have been wrongfully required to pay for Medicare Part D." Thus, the district court, after awaiting settlement negotiations between the two parties, ordered equitable relief to the class as a whole where there was no adequate remedy at law for the individual plaintiffs.

C.

 Lastly, Navistar argues that the district court was required to hold an evidentiary hearing because the district court did not have an evidentiary basis for class damages. The district court's decision not to conduct an evidentiary hearing before issuing its September 2011 order is subject to review for an abuse of discretion. *Cf. Ford Motor Co. v. Mustangs Unlimited, Inc.*, 420 F. App'x 522, 527 (6th Cir. 2011) (district court decision not to hold an evidentiary hearing before terminating a consent decree is reviewed for an abuse of discretion).

Navistar's argument ignores the underlying legal determinations and factual findings by the district court. In its February 2011 order, the district court declared that "Navistar was without authority to unilaterally substitute Medicare Part D for the prescription drug benefit adopted by the parties" in the Agreement. It also found, and Navistar does not dispute, that the Shy Class members who were in Medical Plan 2 paid the premiums for Medicare Part D after July 1, 2010 and were required to pay for all

Nos. 11-3215/4143     *Shy, et al. v. Navistar Int'l, et al.*                               Page 14

prescription drugs that were not on SilverScript formulary. These findings were all that was needed to prove that the Shy Class suffered damages in the amount of the Medicare Part D premiums and any costs associated with prescriptions that were not on the SilverScript formulary.

Navistar contends that a small number of low-income class members paid less under Medicare Part D because they qualified for a low-income subsidy from the federal government and paid lower co-payments. However, this ignores the fact that the low-income class members were still subjected to Medicare Part D premiums in violation of the consent decree. Therefore, any reduction in co-payments under Medicare Part D and any federal subsidies provided are irrelevant to the district court's order. Thus, the district court did not abuse its discretion by refusing to hold an evidentiary hearing and retroactively reinstating the former prescription drug benefit.

**AFFIRMED**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 11-3215/4143

ART SHY, et al.,

    Plaintiffs - Appellees,

v.

NAVISTAR INTERNATIONAL CORPORATION;
NAVISTAR INTERNATIONAL TRANSPORTATION
CORPORATION, n/k/a Navistar, Inc.; NAVISTAR
FINANCIAL CORPORATION; HARCO NATIONAL
INSURANCE COMPANY; NAVISTAR INTERNATIONAL
TRANSPORTATION CORP. HEALTH PLAN;
INDIANAPOLIS CASTING CORPORATION,

    Defendants - Appellants.

```
                                              FILED
                                          Dec 14, 2012
                                       DEBORAH S. HUNT, Clerk
```

Before: SILER and COOK, Circuit Judges; STEEH, District Judge.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Dayton.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: December 14, 2012

Ms. Julia Penny Clark
Mr. Jeremiah A. Collins
Bredhoff & Kaiser
805 Fifteenth Street, N.W.
Suite 1000
Washington, DC 20005

Mr. Frederick Gerald Cloppert Jr.
Cloppert, Latanick, Sauter & Washburn
225 E. Broad Street
Columbus, OH 43215

Mr. Laurence H. Levine
Law Office
190 S. LaSalle
Suite 3120
Chicago, IL 60603

Mr. Cary R. Perlman
Latham & Watkins
233 S. Wacker Drive
Suite 5800 Sears Tower
Chicago, IL 60606

Mr. David Philip Pierce
Coolidge Wall
33 W. First Street
Suite 600
Dayton, OH 45402

Re: Case Nos. 11-3215/11-4143, *Art Shy, et al v. Navistar International Corp, et al*
Originating Case No. 3:92-CV-333

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                Yours very truly,

                Deborah S. Hunt, Clerk

                Dixie Aerni
                Deputy Clerk

Enclosures

Mandate to issue.