IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ART SHY, et al.,                              :

        Plaintiffs,

    v.                                        :       Case No. 3:92cv333

NAVISTAR INTERNATIONAL                                JUDGE WALTER H. RICE
CORPORATION, et al.,
                                              :
        Defendants.

---

DECISION AND ENTRY SUSTAINING THE SUPPLEMENTAL BENEFIT
COMMITTEE OF THE NAVISTAR INTERNATIONAL
TRANSPORTATION CORPORATION RETIREE SUPPLEMENTAL
BENEFIT PROGRAM'S MOTION TO INTERVENE (DOC. #394) UNDER
RULE 24 OF THE FEDERAL RULES OF CIVIL PROCEDURE;  SAID
INTERVENOR IS ORDERED TO FILE A PLEADING, IN ACCORDANCE
WITH RULE 24(c), IN ORDER TO BRING ITS MOTION INTO
COMPLIANCE WITH THE RULE'S PROCEDURAL REQUIREMENTS FOR
INTERVENTION.

---

The Supplemental Benefit Committee of the Navistar International

Transportation Corporation Retiree Supplemental Benefit Program (the

"Committee") is the administrator and fiduciary of the Supplemental Benefit

Program and Trust ("Supplemental Program"), a creation of the Settlement

Agreement approved by this Court on June 8, 1993.  Doc. #327.  The Settlement

Agreement terminated the above-captioned class action which retired employees

and their union representatives had brought against Defendant Navistar

International Corporation ("Navistar"), after the company had reduced the medical benefits of its retired employees.

Pending before the Court is the Committee's Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court SUSTAINS the Committee's Motion to Intervene. However, the Committee did not file a pleading with its original motion to intervene, as required by Rule 24(c). Therefore, the Court ORDERS the Committee to file such a pleading with the Court so that its motion complies with all procedural requirements of Rule 24. Said pleading must be filed within ten (10) calendar days from the date of this Decision and Entry.

## I.  BACKGROUND AND PROCEDURAL HISTORY

This litigation arose out of a decision by Navistar, announced on July 28, 1992, to make major reductions in the insurance and health benefits offered to the company's retired employees and their dependents. Doc. #324 at 1. During the 1980s, Navistar suffered a decline in revenue, the fate of many American manufacturing concerns during that decade and the decades since. *Id.* By 1992, Navistar's annual revenue had declined to $3.8 billion after reaching highs during the late 1970s of $8.25 billion. *Id.* The company reduced its workforce during the same time period, shrinking its base of employees from over 100,000 to approximately 13,500 by 1992. *Id.* In addition, Navistar shuttered or sold many of its manufacturing facilities as it "downsized" its workforce. *Id.* Even as it did

2

so, the company retained the obligation to pay for the insurance and health benefits it owed to its retired employees. *Id.* at 1-2.

However, by 1992, Navistar no longer had the financial ability to provide the retirees' benefits and at the same time remain solvent. *Id.* at 5. Negotiations between the company and the retirees' union occurred during much of that year. *Id.* at 5. The talks broke down, in July of 1992, after Navistar announced that it was unilaterally making drastic changes to the retirees' health insurance benefits. *Id.* at 6-8. The Navistar retirees filed suit as a class in August of 1992, along with a number of unions that had represented them during their years of employment with the company. *Id.* at 9. After hundreds of meetings, the parties reached a Settlement Agreement. *Id.* at 10.

The Court's Opinion of May 27, 1993, announced its factual findings and certified the class of retirees. Doc. #324. In its Opinion, the Court described the Settlement Agreement in part as follows (the passage is quoted at length because of its particular relevance to the motion before the Court):

> The settlement agreement contains two plans, the Base Plan and the Supplemental Plan. The Base Plan provides basic life and health insurance benefits to retirees. Navistar is obligated to provide $1 billion to the Base Plan. Under the Base Plan, retirees' health and life insurance benefits would be reduced. For instance, company-provided life insurance would be reduced to a maximum of $5,000. In addition, retirees would be required to pay monthly premiums for their health insurance, as well as deductibles and, for those under the age of 65, co-payments. **However, the Supplemental Plan, which is a truly innovative concept, turns over much of the ownership of Navistar to the very retirees who must sacrifice benefits under the settlement agreement, a Plan which could well alleviate some (perhaps as much as one-half or more) of the hardship which the**

3

**settlement will require retirees to endure. The Supplemental Plan is a trust which will be administered by retirees and their representatives.** Navistar must contribute 50% of the shares of its common stock and a portion of its future profits to the trust established under the Supplemental Plan. The income generated by the Supplemental Plan can be used, for instance, to reduce the premiums which retirees must pay for their health insurance. Thus, if the retirees' sacrifices allow Navistar to return to prosperity, the retirees will own a significant share of the consequent gain in the value of the company. The $1 billion which Navistar must contribute to the Base Plan will reduce retiree health and life insurance benefits to 38% of the former value of those benefits, $2.6 billion; however, conservative projections set the value of the stock and Navistar's profits which will be contributed to the Supplemental Plan at $750 million; thus, the value of the settlement agreement could rise to 68% of the former amount of $2.6 billion, or even more. Indeed, 67% of the value of the restructured Navistar will be in the Base and Supplemental Plans, and thus be owned by the retirees.

*Id.* at 10-11 (emphasis added).

On June 8, 1993, the Court approved the Settlement Agreement in its Supplemental Opinion (Doc. #326), and entered final judgment as a consent decree (Doc. #327).

On March 23, 2012, the Committee filed a Motion to Intervene under Rule 24 of the Federal Rules of Civil Procedure, "seek[ing] to intervene in order to request this Court to enforce the terms of the settlement agreement" pertaining to Navistar's obligations to the Supplemental Program and the Committee. Doc. #394. Navistar filed a Memorandum in Opposition to the Committee's Motion to Intervene on April 25, 2012. Doc. #404. The Committee filed its Reply to Navistar's Memorandum in Opposition to the Motion to Intervene on April 27, 2012. Doc. #405.

4

II.     **ANALYSIS**

Under Rule 24 of the Federal Rules of Civil Procedure, a non-party may move to intervene in a civil action.  The rule provides for two types of intervention: 1) intervention of right, which requires that the Court allow a non-party to intervene, and 2) permissive intervention, which is granted at the Court's discretion.  Fed. R. Civ. P. 24(a), (b).  A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  When possible, Rule 24 is to be construed broadly in favor of intervention.  *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (citing *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

The Committee argues that it qualifies as an intervenor in this matter under both provisions.  The Court will address each argument for intervention and Navistar's arguments in opposition in turn.  The Court will first address the threshold issue of the timeliness of the Committee's Motion to Intervene.  *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (holding that untimeliness of proposed intervention made it unnecessary to consider other proposed bases for intervention).

### A.    Timeliness

Regardless of whether a movant requests intervention of right or permissive intervention, the preliminary determination to make is whether the motion was "timely" made.  *See NAACP v. New York*, 413 U.S. 345, 365 (1973) (reasoning that because "the initial words of both Rule 24(a) and Rule 24(b)" require timely filed motions, "the court where the action is pending must first be satisfied as to timeliness").  The following five factors guide the determination of timeliness:

> 1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention.

*Blount-Hill*, 636 F.3d at 284 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)).  The evaluation of timeliness should be made "in the context of all relevant circumstances" of the case.  *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir. 1987).  "The absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important of these circumstances," particularly in light of the circumstances of the "*particular* case" before the Court.  *Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Thus, an examination of the timing of the intervenor's motion in light of "the point to which the suit has progressed" is most relevant when the motion arrives

6

at a point in time that would require reopening discovery, delaying trial, or some other prejudicial delay to the parties. *See Stupak-Thrall*, 226 F.3d at 475 (upholding denial of intervention where motion to intervene was filed ten weeks after the close of discovery and seven weeks before the deadline for filing of dispositive motions).  Although the Court entered judgment in this action in 1993, the indefinite duration of rights and duties created by the Settlement Agreement is unique, and therefore, the particular circumstances of this case render the lapse of time between the Court's entry of judgment and the filing of the Committee's motion of little relevance to the timeliness inquiry.  The Settlement Agreement contemplated providing the benefits it established to the retirees for the duration of their lives, as well as providing benefits to the retirees' dependents as long as the dependents remained eligible.  Doc. #398-2 at 7.  The Settlement Agreement established trusts to finance these benefits and specifically established the Committee to administer the trust for Supplemental Benefits.  The project has been ongoing for two decades, will continue for the foreseeable future, and, for that duration of time, Navistar has been and will be bound to comply with the terms of the Settlement Agreement.  There is ample precedent for postjudgment intervention under Federal Rule 24.  *See, e.g.*, *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989) (reversing denial of intervention because the remedy fashioned by district court was what "triggered [the intervenor's] clear interest in the action").  Because of these particular circumstances, factors other than the

"progression of the suit" will weigh more upon the determination of the timeliness of the Committee's motion.

The purpose for which the intervention is sought, according to the Committee, is to "enforce the express terms" of the Settlement Agreement. Doc. #394-1 at 8. As long as the Settlement Agreement is in force and the Committee's duties to administer the trust are active, the need to enforce its terms may arise. Thus, this factor also argues for the timeliness of the Committee's motion.

The Committee's purported need to intervene arises from an alleged series of actions (or lack thereof) on the part of Navistar pertaining to the company's duties of disclosure under the Settlement Agreement. Doc. #394-1. The Committee alleges that Navistar's profit sharing contributions to the Supplemental Plan have decreased, from an annual average of $30 million between 1995 and 2001, to only one $1.4 million contribution between 2002 and 2010. *Id.* at 5. Furthermore, the Committee alleges that Navistar's disclosure of financial statements occurred two to three years after their deadlines, and that the Committee still lacks "several schedules and reports to which it is entitled." *Id.* On May 4, 2010, the Committee sent a letter to Navistar outlining its concerns over Navistar's lack of timely disclosure of financial reports as well as the manner in which the company calculated qualifying profits for the Supplemental Program. Doc. #398-7. Navistar's response included a schedule demonstrating that no

8

qualifying profits were earned for 2010, but the company's letter did not address the rest of the Committee's concerns. Doc. #398-8.

Navistar's response prompted the Committee to retain an expert, who was tasked with evaluating whether Navistar's "lack of contributions was based on actual financial performance" or whether the company was shielding profits to avoid making contributions to the Supplemental Plan. Doc. #394-1 at 6. On November 15, 2011, based on the recommendations of the expert, the Committee sent another demand letter to Navistar, requesting a detailed list of disclosures and explanations. *Id.*; *see also* Doc. #398-9. Navistar responded on February 15, 2012. Doc. #394-1 at 6. The Committee alleges that Navistar's response contained only part of the financial information requested, and that the company refused to explain its methods for calculating the portion of the profits that it was obligated to contribute to the Supplemental Program. *Id.* The Committee filed its Motion to Intervene on March 23, 2012. Doc. #394.

In the context of the correspondence between the Committee and Navistar, over the year previous to the February 15, 2012, letter, after which the Committee "concluded that Navistar was simply never going to respond in good faith and decided it had no choice other than to" request intervention, the Court concludes that no excessive length of time elapsed prior to the filing of the Committee's motion. Doc. #394-1 at 9. Clearly, the February 15, 2012, letter was the proverbial straw that broke the camel's back, prompting the Committee to file its motion five weeks later. Against the backdrop of years of alleged ongoing non-

9

disclosure, the Committee's decision to file its motion five weeks after receiving Navistar's letter does not constitute an unreasonable delay.

The fourth factor for evaluating timeliness, "the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case," does not apply due to the unique circumstances of this case. *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011). Like the "progression of the suit" factor, possible prejudice from dilatory intervention often weighs against non-parties seeking to intervene after the expense of discovery or on the eve of trial. *See Stupak-Thrall v. Glickman*, 226 F.3d 467, 478 (6th Cir. 2000). In this case, the Court discerns no prejudice to the original parties that would result from the Committee's intervention. With regard to the retirees, the opposite is true. Because the Committee is a creature of the Settlement Agreement between the original parties, and was designed to administer the trust created specifically for the retirees' benefits, harm to the retirees' legal rights could result if the Committee is not allowed to intervene. Furthermore, Navistar, in its Memorandum in Opposition to the Committee's Motion to Intervene, did not present a single example of the prejudice it might face if the Committee's motion were granted.

The final factor asks if there are "unusual circumstances militating against or in favor of intervention." *Blount-Hill*, 636 F.3d at 284. The Court finds that Section 15.4 of the Settlement Agreement militates in favor of intervention. Section 15.4 provides that "[t]his Court will retain exclusive jurisdiction to resolve

10

any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of this Settlement Agreement except for disputes relating solely to eligibility of entitlement to benefits hereunder." Doc. #398-2 at 23. Thus, when the Settlement Agreement was drafted, the parties contemplated the possibility of postjudgment involvement of the Court in "any" dispute. The broad language of this provision did not limit it to disputes arising only between the parties.

Based on the foregoing, the Court finds that the Committee's Motion to Intervene was timely filed under Federal Rule 24.

**B.      Intervention of Right**

Rule 24(a) of the Federal Rules of Civil Procedure provides for intervention of right, stating:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Sixth Circuit has interpreted Rule 24(a) to require any potential intervenor of right to show the following:

> (1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest.

11

*Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999). "Each of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule." *Blount-Hill*, 636 F.3d at 283 (citing *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005)). As stated above, the Court finds that the Committee's motion was timely filed, and will thus turn to the other three factors.

### 1. The Committee has a substantial legal interest in the subject matter of the case.

First, the movant must show that it has a "substantial legal interest in the subject matter of the case" in which intervention is sought. *Grutter*, 188 F.3d at 398. The Sixth Circuit has adopted "a 'rather expansive notion of the interest sufficient to invoke intervention of right.'" *Id.* (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). The party seeking intervention "need not possess the standing necessary to initiate [the] lawsuit." *Purnell v. City of Akron,* 925 F.2d 941, 948 (6th Cir. 1991) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972)).

Here, the Committee has a substantial legal interest in the subject matter of the case. Indeed, it was created in order to administer the benefits program at issue to Navistar retirees and to monitor Navistar's compliance with the Settlement Agreement. Section 6.1 of the Navistar International Transportation Corporation Retiree Supplemental Benefit Program, Exhibit B to the Settlement Agreement, describes the establishment of the Committee. Doc. #399-3 at 25. In the section

12

describing its "Powers and Duties," the Committee is described as "the Program Administrator and Named Fiduciary under the Supplemental Benefit Program" and is expressly "responsible for the administration of the Supplemental Benefit Program." *Id.* at 26. Among other "powers, rights, and duties" of the Committee, it has the duty "to review and enforce Parent's and Company's compliance with their obligations under the Supplemental Benefits Program." *Id.* Both "Parent" and "Company" are defined as "Navistar International Corporation, and each successor thereto," according to the Settlement Agreement. *See*, Doc. #399-4 at 60, Exhibit D, Definition Supplement to the Settlement Agreement.

The Committee's substantial legal interest is underscored by the Sixth Circuit's reasoning when interpreting an analogous provision of the Navistar Retiree Health Benefit and Life Insurance Plan, also a product of the Settlement Agreement, and, like the Supplemental Program, the subject of recent litigation. *See Shy v. Navistar Int'l Corp.*, 701 F.3d 523 (6th Cir. 2012). Navistar unsuccessfully appealed this Court's order to reinstate the original Settlement Agreement's prescription drug benefits after the company unilaterally substituted them with Medicare Part D. *Id.* On appeal, Navistar claimed that because the Settlement Agreement established it as the "named fiduciary" and plan "administrator" under the Employee Retirement Income Security Act ("ERISA"), its decision to alter the prescription drug benefits was due deference "under the arbitrary and capricious standard" because of its expansive powers to interpret the Settlement Agreement. *Id.* at 529; *see* 29 U.S.C. §§ 1002(16)(A), 1102(a)(2);

13

Doc. #398-4 at 69, 71.  The Sixth Circuit disagreed, because nothing in the language of the Health Benefit and Life Insurance Plan "expressly and clearly" granted such authority:

> Not only does Article V not state that Navistar's authority to construe and interpret the Health Benefit Program is discretionary, it specifically states that Navistar's authority is subject to review by the Health Benefit Program Committee (the "Committee").  Article V further states that Navistar shall perform its duties "on a reasonable and non-discriminatory basis and shall apply uniform rules to all persons similarly situated."  Thus, although Navistar has the power to construe and interpret the Plan, that power is not discretionary.  Therefore, Navistar's interpretations of the Agreement, the Plan, and the Manual shall be given no deference.

*Shy*, 701 F.3d *.* at 530.

Here, the analogous provision of the Supplemental Program, Article VI, differs in two notable aspects.  First, the Supplemental Program defines the *Committee*, not Navistar, as both its "Program Administrator" and "Named Fiduciary" under ERISA.  *Compare* Doc. #398-3 at 26 (Article VI of the Supplemental) *with* Doc. #398-2 at 53 (Article V of the Health Benefit and Life Insurance Plan).  Second, the Supplemental Program places no "subject to review" constraint on the Committee, as the Health Benefit and Life Insurance Plan does on Navistar.  *Id.*  Based on these indicia of the Committee's express and clear authority to administer and enforce the Supplemental Program, it is difficult to imagine a non-party actor with a greater legal interest in the funding and administration of the benefits of Navistar's retirees.

14

2.    *The Committee's ability to protect its interest will be impaired without intervention.*

The Committee must also show that its "ability to protect [its] interest may be impaired" if not allowed to intervene.  *Grutter*, 188 F.3d at 398.  "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied" and the "burden is minimal."  *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).

In its Memorandum in Support of its Motion to Intervene, the Committee argues that "[u]nless this Motion is granted, no one will be able to enforce the terms of the Settlement Agreement and the plaintiffs to the original action will be severely prejudiced."  Doc. #394-1 at 9.  The Committee alleges that, over the course of several years and with limited success, it has attempted to extract from Navistar the financial documents necessary to protect its interest in administering the trust of the retirees.  If the Committee's allegations are correct, its ability to protect this interest has already been impaired by Navistar's intransigence.  In addition, if the allegations are true, the interest of the retirees in receiving benefits from the Supplemental Program has already been impaired and will continue to be impaired without intervention.  These considerations demonstrate ample impairment of the Committee's abilities to protect its interests, as well as those of the retirees, surpassing the "minimal" showing required to support intervention.

15

3.    *The existing parties may not adequately represent the Committee's interest.*

Finally, there must be a showing that the existing parties before the Court "may not adequately represent" the interest asserted by the Committee. *Grutter*, 188 F.3d at 398. As with impairment, the proposed intervenor must only make a minimal showing that its interests will not be adequately represented. *Miller*, 103 F.3d at 1247. Here, the Committee is, in essence, an entity created to protect the interests of one of the parties, the diverse and numerous class of retirees. Since its establishment, the Committee has acted as the administrator and fiduciary for the Supplemental Program and its trust. No individual retiree or original plaintiff has the experience and knowledge of its duties and responsibilities that the Committee itself has. The Court therefore finds that the Committee meets the "adequate representation" factor as well.

Navistar presents two arguments against intervention of right by the Committee. First, it asserts that the postjudgment state of the case means that the Committee "cannot demonstrate that 'disposing of the action' may 'impede or impair' its ability to protect its interests, because there is no action to be disposed of." Doc. #404 at 3. In other words, Navistar believes that a prejudgment state of active litigation is a prerequisite for intervention of right under Rule 24. There is no basis for this proposition in the case law, which features a multitude of examples of postjudgment motions allowed under Rule 24. *E.g.*, *Grubbs v. Norris*, 870 F.2d 343 (6th Cir. 1989).

16

Second, Navistar argues that the Committee's failure to include a pleading dooms its motion, based on the "plain language of the Rule." Doc. #404 at 4. In support, Navistar cites *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309 (6th Cir. 2005), in which the Sixth Circuit held that it was an abuse of discretion for a district court to overrule a motion to intervene on the basis that the potential intervenor failed to attach a pleading to its motion, a requirement of Rule 24(c). Navistar seeks to distinguish that case on the basis that in *Providence Baptist*, the proposed intervenor finally submitted an answer with its motion for relief from judgment, while here, the Committee has submitted no pleading. Doc. #404 at 5. In essence, Navistar is arguing that because the Committee has not yet filed a pleading, the Court should summarily dispose of the Committee's motion. However, in *Providence Baptist*, the Sixth Circuit prioritized the substance of the motion over the movant's procedural error, reasoning that "neither party has ever claimed that any prejudice would result from granting the motion to intervene despite the failure to attach a pleading; the parties are clearly on notice as to [the intervenor's] position and arguments." *Providence Baptist*, 425 F.3d at 314.

Similarly, the Court here sees no prejudice to Navistar resulting from the omitted pleading, in spite of its claim that the Committee's motion and supporting exhibits "omit crucial information, such as the legal basis for [its] attempt to enforce a contract to which it is not a party." Doc. #404 at 5. The Court notes that page 9 of the Committee's Memorandum in Suppport of its Motion to Intervene quotes the language of the Settlement Agreement, a legally binding

17

agreement signed by Navistar, designating the Committee as the fiduciary of the Supplemental Program and empowering it to enforce the relevant provisions of the agreement.  Doc. #394-1.  The Committee has fully provided Navistar with the legal basis for its attempt to enforce the provisions of the Settlement Agreement and otherwise complied with the substance of the rule.

The Court does not agree with Navistar that the Committee's motion should be overruled without providing the Committee the opportunity to file a pleading. To do so would be to employ the type of "exacting application of Rule 24(c)" criticized by the Sixth Circuit in *Providence Baptist. Providence Baptist*, 425 F.3d at 314.  However, the Court agrees that in addition to Rule 24's substantive requirements, the Committee should comply with its procedural requirements as well.  Therefore, in accordance with Rule 24(c) of the Federal Rules of Civil Procedure, the Committee is ordered to file a pleading with the Court that "set[s] out a claim or defense for which intervention is sought."  Said pleading must be filed within ten (10) calendar days from the date of this Decision and Entry.

Based on the foregoing, the Committee is entitled to intervene as of right, under Rule 24(a) of the Federal Rules of Civil Procedure.

**C.     Permissive Intervention**

Even if the Committee's intervention were not mandatory under Rule 24(a), the Court also would also allow it to intervene permissively under Rule 24(b). Permissive intervention requires that the "proposed intervenor [] establish that the

motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)). "Once these two requirements are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *United States v. Michigan*, 424 F.3d at 445.

As stated above in Part II.A, the Court finds that the Committee's motion is timely. The Committee's allegations arise from Navistar's purported noncompliance with the Settlement Agreement, a document that both created the Committee and bound Navistar by its terms. The question of Navistar's compliance is common to both the Committee and Navistar. The Court also finds, as before, that there will be no prejudice to either party, and that "undue delay" is not an applicable consideration due to the postjudgment posture of the case.

The Court finds that two factors are particularly relevant in concluding that the Committee should be allowed to intervene. Both factors arise from the language that bound the original parties. First, Article 6.2 of the Supplemental Benefit Program invested the Committee with certain powers and duties, including the duty to "review and enforce" compliance with Navistar's obligations to the Supplemental Program. Doc. #398-3 at 6. If there is a factual basis for the Committee's assertion that Navistar is not in compliance with its obligations under the Supplemental Program, the Committee is thus acting in accordance with the

19

duties for which it was created by seeking to involve the Court, after its own efforts have failed to achieve Navistar's compliance.

Second, Section 15.4 of the Settlement Agreement specifically provides that "[t]his Court will retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of this Settlement Agreement except for disputes relating solely to eligibility of entitlement to benefits hereunder."  Doc. #398-2 at 27.  Based on this language, the Sixth Circuit has held that this Court retained jurisdiction to enforce the Settlement Agreement after Navistar's unilateral alteration of the retirees' prescription drug benefits.  *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 533 (6th Cir. 2012).  As with that controversy, "[t]he dispute at hand does not fit within Section 15.4's exception for disputes relating solely to eligibility or entitlement to benefits under the Agreement."  *Id.*  Based on the exclusive jurisdiction of this Court to which the parties agreed, the Court would be remiss in its own responsibilities to the parties and the Settlement Agreement if it did not permit the Committee's intervention.

## III.   **CONCLUSION**

Accordingly, for the reasons set forth above, the Court SUSTAINS the Committee's Motion to Intervene under Rule 24 of the Federal Rules of Civil Procedure.  Furthermore, the Court ORDERS the Committee to file a pleading in

20

accordance with Rule 24(c) "that sets out the claim or defense for which intervention is sought," not later than ten (10) calendar days from the date of this Decision and Entry.


Date: February 6, 2013          _____

                                     WALTER H. RICE
                                     UNITED STATES DISTRICT JUDGE