IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ART SHY, et al. | |
| Plaintiffs, | |
| v. | Case No. C-3-92-333 |
| | Judge Walter Herbert Rice |
| NAVISTAR INTERNATIONAL CORPORATION, et al. | |
| Defendants. | |
| SUPPLEMENTAL BENEFIT COMMITTEE OF THE NAVISTAR INTERNATIONAL TRANSPORTATION CORP. RETIREE SUPPLEMENTAL BENEFIT PROGRAM, | |
| Intervenor-Plaintiff, | |
| v. | |
| NAVISTAR INTERNATIONAL CORPORATION, | |
| Defendant. | |

**COMPLAINT FOR BREACH OF SETTLEMENT AGREEMENT
AND FOR INJUNCTIVE RELIEF**

COMES NOW Intervenor-Plaintiff, the Supplemental Benefit Committee of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (the "Committee"), by and through its undersigned counsel, and in response to this Court's February 6, 2013 Decision and Entry of an Order Sustaining the Supplemental Benefit Committee of the Navistar International Transportation Corporation's Retiree Supplemental Benefit Program's Motion to

1

Intervene under Rule 24 of the Federal Rules of Civil Procedure (the "Intervention Decision"), hereby files this Complaint for Breach of Settlement Agreement and for Injunctive Relief against Defendant Navistar International Corporation ("Navistar" or "Company"), and alleges as follows:

## NATURE OF ACTION

1.      This is a civil action seeking injunctive relief based upon Defendant's breach of a settlement agreement into which it entered with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and other parties in 1993, arising out of the Defendant's obligation to provide medical benefits to its retirees.

2.      In general, the settlement agreement creates a health and life insurance plan for Navistar retirees, as well as a Supplemental Benefit Program and Trust ("Supplemental Program"), which is intended to defray the cost of premiums, co-pays, and deductibles that retirees are required to pay to obtain benefits from the main plan.

3.      The settlement agreement created the Committee to serve as named fiduciary and administrator of the Supplemental Program.  The Committee is comprised of two members designated by the UAW, and three members representing various sub-classes of other Plaintiffs.

4.      The initial funding of the Supplemental Program consisted of stock contributed by Navistar.  Navistar also agreed to make additional contributions based on profitability, and the settlement agreement created the Supplemental Benefit Trust Profit Sharing Plan ("PSP") to receive, invest, and make decisions with respect to those additional contributions.  The Committee is the named fiduciary and administrator of the PSP.

5.      This Complaint seeks to aid this Court in enforcing the terms of the settlement agreement so that the Committee may fulfill its fiduciary duty to protect the interests of the PSP participants and beneficiaries.  All parties entered into the settlement agreement willingly and with

knowledge of its terms and obligations. Navistar has subsequently failed to comply with certain terms and obligations of the settlement agreement, even after repeated requests by the Committee for compliance. Thus, the Committee requests that this Court enforce the terms of the settlement agreement, and order that Navistar fully comply with the terms of the settlement agreement, including fully responding to the Committee's requests for information regarding Navistar's contribution obligations.

## JURISDICTION

6. This Court has subject matter jurisdiction and personal jurisdiction over this matter pursuant to the Section 15.4 of the Shy Agreement. *See supra*, ¶ 7. Such jurisdiction was confirmed by this Court in its Intervention Decision. *See* Intervention Decision, Civ. No. 3:92:cv:333-WHR, Dkt. No. 414 (S.D. Ohio Feb. 6, 2013).

## FACTUAL BACKGROUND

Litigation and Settlement

7. In 1992, the UAW, along with other named parties, commenced a class action lawsuit in the United States District Court for the Southern District of Ohio seeking declaratory and injunctive relief against Defendant related to the provision of retiree medical benefits. This action was captioned *Art Shy, et. al. v. Navistar International Corporation, et. al.*, Case No. C-3-92-333 (hereinafter, referred to as the "Shy Litigation").

8. On March 30, 1993, and after extensive negotiations, the parties to the Shy Litigation entered into a settlement agreement to resolve issues related to the provision of medical care to retirees, which was approved by this Court on May 26, 1993.[1]

---

[1] On June 8, 1993, this Court issued a supplemental opinion and entered Judgment approving the settlement agreement.

3

9.      On June 30, 1993, the parties restated the March 30, 1993 settlement agreement, an action which was approved by this Court.  The restated settlement agreement (hereinafter, referred to as the "Shy Agreement") consisted of two principal mechanisms:  the Health Benefit Trust and the Supplemental Benefit Trust (the "Supplement Trust"), the latter which is at issue here.  (Doc. 398, Ex. A).

The Profit Sharing Plan

10.     The funding of the Supplement Trust consisted of two elements:  (1) Navistar was required to issue new common stock to the Supplemental Trust in an amount to make the Supplemental Trust the owner of 50% of Navistar's then-outstanding common shares, and (2) Navistar was required to make ongoing contributions pursuant to a profit-sharing formula included in the Shy Agreement, and as prescribed under the PSP.

11.     Per Section 6.2 of the Supplemental Program's governing plan document, the Committee was established to act as the named fiduciary and administrator of the Supplemental Program, including the PSP.  In essence, the Committee was created to protect the interests of the Navistar retirees that are eligible for benefits under the Supplemental Program.  As part of their role, the Committee has the duty to review and enforce Navistar's compliance with their obligations under the Supplemental Program, including the PSP.

12.     The PSP sets out the formulae for calculating the Company's contribution obligations using such metrics as "Qualifying Profits" from "Covered Operations" attributable to "Qualifying Hours."  *See* PSP Plan Document, (Doc. 398, Ex. A).

13.     The PSP also imposes on Navistar several annual reporting and disclosure requirements intended  to allow the Committee to ascertain whether the Company's contributions have been calculated correctly.

14.     Section 7.1 of the PSP requires the Company to make annual profit sharing contributions to the Supplemental Trust calculated on Qualifying Profits, an amount which is defined in Section 5 of the PSP and which is based on the plan years of the Company.[2]

15.     Section 8.1 of the PSP requires the Company to provide both the UAW and the Committee with a worksheet detailing the calculations of the contributions obligations, the qualifying hours, and the qualifying profits utilized to determine whether Defendant is required to make an annual contribution to the Supplement Trust.  These worksheets should include a listing by category of employees included and excluded in the calculation of Qualifying Hours and all information reasonably necessary to review the calculation of Qualifying Profits.

16.     Per Section 8.2 of the PSP, "data on profits, hours worked, Qualifying Profits, and Qualifying Hours shall be reviewed by a certified public accounting firm [. . .] and the report [. . .] shall be delivered to the UAW and the Supplemental Benefit Committee.  A letter report setting forth the procedures performed and conclusions reached shall be prepared by such firm and delivered to the Company, the UAW and the Supplemental Benefit Committee."

17.     Section 8.3 of the PSP requires the reports, as noted in Paragraph 12 above, to "be delivered to the UAW and the Supplemental Benefit Committee on or before the date that the contribution obligation, if any, is required to be paid [. . .] [or if] no contribution obligation is required to be paid, the Company will deliver [the] information [. . .] to the UAW and the Supplemental Benefit Committee within 90 calendar days following the end of the plan year for which no contribution is required."

18.     Per Section 8.6 of the PSP, Navistar is required to respond as soon as practicable to any reasonable requests from the Committee for information supporting any computation made to compute the Contribution obligation, and provide such information as requested.

---

[2] The Profit Sharing Plan plan year is the same as the fiscal year of the Company.

5

Navistar's Contribution to the Plan

19. Between the years 1995-2001, Navistar made contributions to the Profit Sharing Plan per the terms of the Plan. The contribution ranged from $126,070 in plan year 1997 to $71,568,920 in 2001, for an average of over $30 million per year. *See* Chart of Profit Sharing Payments, attached as Exhibit A.

20. Between the years 2002 and 2010, however, Navistar has only made one contribution to the Profit Sharing Plan. This contribution was made subsequent to the Company's fiscal year ending in 2004, and the correlating Profit Sharing Plan plan year, in the amount of $1.4 million. *See id.* The contribution was made in February 2005.

21. Beginning in January 2006, Navistar undertook a comprehensive review of its previous financial statements.

22. In April 2006, the audit committee of Navistar's board of directors concluded that the Company's previously prepared and audited financial statements could not be relied upon and should be restated. The effects of this review and related restatements included a $2.4 billion reduction to the Company's previously reported stockholders' equity, the de-listing of the Company's common stock by the New York Stock Exchange, and a formal investigation by the U.S. Securities and Exchange Commission that resulted in actions against the former senior Company officers who had direct responsibility for Navistar's financial and management reporting.

Compliance with Terms of the PSP

23. During this time, Navistar informed the Committee that it was unable to provide accurate information pursuant to its PSP obligations. The Committee agreed to wait for the information. On December 7, 2007, subsequent to making the 2004 profit sharing contribution, Navistar

6

released their consolidated financial statements for the fiscal years 2004 and 2005. Notably, the 2004 consolidated financial statement (released in 2007) was a restatement of the Company's originally released statement. *See* Schedules of Qualifying Profits, attached as Exhibit B.

24. On June 9, 2009, in conjunction with releasing these financial statements, Navistar sent to the Committee schedules of calculations of Qualifying Profits for the plan years ending 2004 and 2005. Navistar's delivery of those schedules was far beyond the time stipulated for delivery of such worksheets under Sections 8.1 and 8.3 of the PSP. Moreover, the schedules indicated that no profit-sharing contribution was required for either the 2004 or 2005 PSP plan years. *See id.*

25. On June 9, 2009, Navistar also provided a partially-complete schedule of Qualifying Profits for 2006. The Company supplemented this 2006 schedule of Qualifying Profits on August 3, 2009. The complete 2006 schedule indicated that no profit sharing contribution was required. *See id.*

26. Navistar released its audited financial statements for 2007 and 2008 to the public on May 29, 2008 and December 30, 2008, respectively. Navistar released an amended financial statement for the 2009 fiscal year on March 31, 2009. Though Section 8.3 requires that Navistar provide to the Committee a calculation of the Qualifying Profits within 90 calendar days following the end of the plan year, Navistar did not provide the these plan-required schedules until the summer of 2011. *See id.*

27. On May 4, 2010, to address Navistar's non-compliance with the express terms of the PSP, the Committee sent the Company a letter expressing both general and specific concerns relating to the schedules of Qualifying Profits that Navistar had provided, or neglected to provide, to the Committee per the terms of the PSP. Specifically, the Committee: 1) noted that Navistar had not been timely meeting all of its reporting obligations under the Plan; 2) disputed the

7

Company's calculation of Qualifying Profits for each of the years 2007, 2008, and 2009; 3) noted that the schedules did not provide sufficient information to verify the accuracy and reasonableness of the Company's calculations; and 4) pointed out the schedules lacked information relating to "Qualifying Hours," as required under Sections 8.1, 8.2, and 8.3 of the Plan.[3] *See* May 4, 2010 Letter to Navistar, attached as Exhibit C.

28. On April 6, 2011, in response to the Committee's May 4, 2010 letter, the Company provided the Committee with a schedule detailing the Qualifying Profits for plan year 2010. *See* April 6, 2011 Letter to the Committee, attached as Exhibit D. The Company declined to respond to any of the other questions or concerns set forth in the Committee's May 4, 2010 letter.

29. Concerned about the lack of disclosure and the glaring discrepancy between the substantial contributions made in the early years versus the lack of contributions post-2002, the Committee retained an expert to evaluate the public information released by the Company to see whether the lack of contributions was based on actual financial performance, or whether the Company has made internal accounting and management decisions in order to shield profits in a manner that is inconsistent with the intent of the parties, as expressed in the Shy Agreement. Based on that review, and pursuant to Section 8.6 of the Shy Agreement, the Committee sent a detailed request for information to Navistar on November 15, 2011. *See* Nov. 14, 2011 Letter to Navistar, attached as Exhibit E. The letter gave the Company sixty (60) days to respond, but the Committee later agreed to extend the time to respond to ninety (90) days.

30. On February 15, 2012, Navistar finally responded to the Committee's 2011 requests and promised to respond to the Committee's 2010 request "in the near future." However, the response consisted of a series of "General Objections" and summaries claiming to establish that

---

[3] To date, Navistar has only reported the Qualifying Hours for fiscal year 2006.

8

the Company, despite its overall profitability, owed no profit-sharing contributions. The Company flatly refused to respond to any of the Committee's questions about the components of the profit-sharing calculation that are set forth in the Shy Agreement, claiming generally that it did not have to explain itself to the Committee. *See* Feb. 15, 2012 Letter to the Committee, attached as Exhibit F.

31. Navistar has since failed to provide a calculation of the contribution obligation, Qualifying Profits and Qualifying Hours for the 2011 plan year.

32. Navistar has also failed to file and/or send to participants various reports required under the law, such as annual reports and summary annual reports.

33. Navistar's failure to comply with the Shy Agreement, and certain disclosure requirements under the law, has obstructed the Committee from carrying out the fiduciary duties imposed upon it by the express terms of the Shy Agreement.

## COUNT I – BREACH OF CONTRACT

34. The Committee repeats and re-alleges the allegations set forth in all preceding paragraphs of this Complaint, as if fully set forth herein.

35. Navistar executed the court-approved Shy Agreement, understanding and appreciating the terms of the agreement.

36. Navistar failed to timely provide the worksheets to the Committee, including listing by category of the employees included and excluded in the calculation of Qualifying Hours and all information reasonably necessary to review the calculation of Qualifying Profits, as required under Sections 8.1 and 8.3 of the Shy Agreement. Specifically, Defendant failed to timely provide the contribution worksheets for Plan Years 2004 – 2010.

9

37. Navistar has failed to provide any contribution worksheets for plan year 2011, as required under Section 8.1 of the Shy Agreement.

38. Navistar has failed to appropriately respond to, or provide documentation regarding, the reasonable requests from the Committee for information supporting any computation made by Navistar to compute the annual contribution obligations, pursuant to Section 8.6 of the Shy Agreement.

39. Navistar has knowingly and intentionally withheld, and refused to timely provide, such information to the detriment of the Committee. Navistar's intransigence has impaired not only the Committee's ability to protect its fiduciary duty and interest in administering the Supplemental Program, but also the interests of the Navistar retirees in receiving benefits under the Supplemental Program.

40. Accordingly, Navistar has breached the terms of the Shy Agreement, and the Committee is entitled to injunctive relief requiring the Company to comply with its obligations under that Agreement.

## **PRAYER FOR RELIEF**

Wherefore, the Supplemental Benefit Committee of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program prays for the following:

A. That this Court find that Navistar is not in compliance with the terms of the Shy Agreement;

B. That this Court enter an order requiring Navistar to timely provide the worksheets as prescribed in Section 8.1 of the Shy Agreement;

C. That this Court enter an order requiring Navistar to fully respond to the information requests submitted by the Committee, pursuant to Section 8.6 of the Shy Agreement;

  D. That this Court enter any other such orders as necessary to compel compliance with the letter and spirit of the Shy Agreement;

  E. That this Court award the Committee attorneys' fees and costs related to the enforcement of the Shy Agreement and the initiation of this action; and

  F. That this Court grants such other and further relief in favor of the Committee as is deemed just and necessary.

Dated:  February 15, 2013     Respectfully submitted,

            /s/ Kevin L. Murphy
            Kevin L. Murphy (#0021810)
            Graydon Head & Ritchey LLP
            2400 Chambers Center Drive
            Suite 300
            Ft. Mitchell, KY  41017
            Phone: 859-578-3060
            Fax:    859-525-0214
            kmurphy@graydon.com

            *Trial Attorney for Defendants Douglas Hunter, Donn Viola, Jeff Dokho, Michael LaCour, and Jack McCaskey (in their capacity as members of the Supplemental Benefit Program Committee)*

            Edward A. Scallet (admitted via *pro hac vice*)
            Will E. Wilder (admitted via *pro hac vice*)
            Groom Law Group, Chartered
            1701 Pennsylvania Avenue, NW
            Washington, DC 20006
            202-857-0620 (p)
            202-659-4503 (f)
            eas@groom.com
            wwilder@groom.com

            *Attorneys for Defendants Supplemental Benefit Program Committee*