IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| ART SHY, et al.<br>       Plaintiffs,<br>vs.<br>NAVISTAR INTERNATIONAL CORPORATION, et al.<br>       Defendants.<br><br><br>SUPPLEMENTAL BENEFIT COMMITTE OF THE NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION RETIREE SUPPLEMENTAL BENEFIT PROGRAM,<br>       Plaintiff,<br>vs.<br>NAVISTAR INTERNATIONAL CORPORATION,<br>       Defendant. | Case No. 3:92-CV-00333<br><br>District Judge Walter H. Rice<br><br><br><br><br><br><br><br>**DEFENDANT'S MEMORANDUM IN OPPOSITION TO INTERVENOR-PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT** |

The Supplemental Benefit Committee (the "SBC") of the Navistar International Transportation Corp. (now Navistar Inc.) Retiree Supplemental Benefit Program has filed a motion to enforce (Dkt. No. 395) the 1993 Settlement Agreement and Consent Decree entered into by Defendant Navistar Inc.[1] and other affiliated entities with a class of active and retired Navistar employees and various unions who represented some of the class members while they

---

[1] The SBC named Navistar International Corporation ("NIC"), the parent/holding company as the defendant, but NIC is not the proper defendant for the claims made here because it is actually the operating company, Navistar Inc. (formerly known as Navistar International Transportation Corp.) that has the obligation to provide information to the SBC under the Supplemental Benefit Trust Profit Sharing Plan. For simplicity, both NIC and Navistar Inc. will be collectively referred to as "Navistar."

1

927521.5

were employed.[2] The SBC's motion to enforce claims that Navistar has not met its obligations under the Supplemental Benefit Trust Profit Sharing Plan (the "PSP") established by the Settlement Agreement. The SBC alleges that Navistar has provided incomplete information relating to Navistar's calculation of profit sharing contributions to the Supplemental Benefit Trust and has refused to provide information that the SBC believes is required under the PSP. The SBC seeks to have the Settlement Agreement enforced by this Court.

As a preliminary matter, Navistar respectfully disagrees with the motion's characterizations of pertinent events and submits that it has fully satisfied its obligations under the Settlement Agreement to provide information to the SBC. Indeed, the exhibits filed with the SBC's recently filed complaint (which are only a portion of the information trading that has actually taken place) demonstrate that Navistar has provided a great deal of information to the SBC over several years and has explained its bases for declining other requests. While some responses have been delayed over the years, these delays have, to a great extent, been caused by the massive financial restatement process undertaken by Navistar during some of this period which extended over three years.

Importantly, for purposes of the present motion, Navistar does not dispute the legitimacy of the issues raised by the SBC and appreciates the SBC's position that is has an obligation to pursue additional information from Navistar where deemed appropriate. However, the proper forum for SBC to pursue these claims is not in this Court, but instead through the dispute resolution procedures set forth in the PSP. Specifically, because the SBC was not a party to the

---

[2] The SBC's Motion to Enforce was filed in March 2012 (Dkt. No. 395), along with a Motion to Intervene. (Dkt. No. 394). The SBC supplemented both motions in early April 2012 (Dkt. Nos. 398, 399), and moved to amend the Motion to Enforce on June 14, 2012. (Dkt. No. 407). The Motion to Enforce was held in abeyance until the Motion to Intervene was granted on February 6, 2013. The Court then ordered the SBC to file a complaint (which it did on February 15, 2013) (Dkt. No. 415), and ordered Navistar to respond to the Motion to Enforce. (Dkt. No. 414). Certain information and documents cited herein were attached to the SBC's complaint.

927521.5

lawsuit that resulted in the Settlement Agreement, under established Sixth Circuit precedent, it has no standing to bring a motion to enforce the Settlement Agreement in federal court. Even if the SBC was intended to be a third-party beneficiary under the Settlement Agreement, it has no standing to bring this action. Accordingly, the motion should be dismissed.

Notably, however, the SBC is not left without recourse. Under the unambiguous terms of the PSP disputes over the appropriateness or adequacy of the information provided must be resolved through the binding dispute resolution process set forth in Section 8.4 of the PSP. Thus, the SBC's recourse for this dispute is to pursue the dispute through the PSP dispute resolution procedures. Accordingly, Navistar respectfully requests that the Court deny the SBC's motion to enforce the Settlement Agreement.

I. **RELEVANT FACTS**

    A. **The Settlement Agreement And Navistar's Obligations Under The PSP**

In 1993, Navistar and other affiliated entities entered into a Settlement Agreement with a class of active and retired employees, along with several unions that had represented some of the class members. This Court entered final judgment approving the Settlement Agreement as a Consent Decree in June 1993. (Dkt. Nos. 326, 327). The Court retained jurisdiction over the parties "for the purpose of implementing, enforcing and administering the Settlement Agreement and exhibits thereto." (Dkt. No. 326, pp. 11-12).

The SBC was not a party to the original litigation; rather, it was formed pursuant to the Settlement Agreement. (Dkt No. 415, ¶¶ 1-3; Dkt. No. 327; *see also* Dkt. No. 395-1, p. 2 n.1). Specifically, the Settlement Agreement established a Retiree Health Benefit and Life Insurance Plan, which included the Retiree Supplemental Benefit Program. (Dkt. No. 399-2, p. 6). The

927521.5

SBC was established to administer the Retiree Supplemental Benefit Program, and the PSP is a part of that program. (Dkt. No. 399-2, pp. 25-26).

Under the PSP, Navistar must make contributions to the Supplemental Benefit Trust based on a particular measurement of profitability. (Dkt. No. 399-5). The amount is determined by a formula contained in the PSP. (*Id.* at §§ 6.1-6.7 & 7.1-7.3). The PSP sets forth calculations for determining employees' "Qualifying Hours" and Navistar's "Qualifying Profits," two central components of the formula. (*Id.* at §§ 4.1-4.10 & 5.1-5.8). If there are sufficient Qualifying Profits, Navistar must make a contribution to the Supplemental Benefit Trust. If a contribution is made, Navistar must provide the SBC with a worksheet detailing the calculation of the contribution obligation, the Qualifying Hours and the Qualifying Profits. (*Id.* at §§ 7.1 & 8.1). Navistar's data must also be reviewed by a certified public accounting firm, which must issue a report to the SBC. (*Id.* at § 8.2). If Navistar does not have sufficient Qualifying Profits for the year, it is not obligated to contribute any money to the Supplemental Benefit Trust. (*Id.* at §§ 7.3 & 8.3). If no contribution obligation is required, then Navistar is obligated to provide the SBC information on profits and Qualifying Profits only. (*Id.* at § 8.3). Additionally, Navistar is required to respond to reasonable requests from the SBC for information supporting the Company's computations. (*Id.* at § 8.6).

**B.     The Dispute Resolution Process**

The PSP has a specific mechanism for resolving disputes about information and calculations. If the SBC disputes the information or calculations provided by Navistar, it has thirty calendar days from receipt of the information to inform Navistar of the dispute. (*Id.* at § 8.4). Thereafter, the Company and the SBC are required to attempt, for a period of thirty days, to resolve the dispute. (*Id.*). If the parties are unsuccessful, they are to identify a mutually

4

927521.5

acceptable third party to resolve the dispute. (*Id.* at §§ 8.4.1 & 8.4.2). Thus, if the SBC claims that Navistar's calculations are incorrect or that Navistar owes it additional or more detailed information under the PSP, and the parties cannot reach a mutually agreeable solution, the dispute must be resolved by a third party under the PSP. (*See id.* at § 8.4). After hearing the parties' arguments, the third party "shall render a decision which shall be final and binding on all parties to the dispute." (*Id.* at § 8.4.3).

      C.    **Navistar Has Produced The Calculations And Worksheets Required By The PSP And Additional Information Not Required By The PSP**

In each of the years from 2004 through 2010, Navistar had negative Qualifying Profits. (Dkt. No. 415-2, pp. 5, 10, 14, 19, 23, 27, 31). Thus, Navistar was only obligated to provide worksheets showing its calculation of profits and Qualifying Profits to the SBC. (Dkt. No. 399-5, § 8.3). It was not contractually obligated to provide information on Qualifying Hours. (*Id.* at § 8.3).

For each of these years, Navistar has fully satisfied its obligations under the PSP. As shown by the documents attached as Exhibit B to the SBC's recently filed complaint, Navistar produced worksheets to the SBC that detailed its calculation of profits and Qualifying Profits for each year from 2004 through 2010 and an audit report for all of those years. (Dkt. No. 415, ¶¶ 24-26, 28; Dkt. No. 415-2, pp. 3-38).

To illustrate Navistar's compliance, this chart summarizes Navistar's obligations under the PSP and the information that was provided to the SBC, satisfying its obligations:

| Year | Required Information | Information Provided by Navistar | Proof of Production |
|---|---|---|---|
| 2004 | • Profits & Qualifying Profits<br>• A report by a certified public accounting firm setting forth the procedures performed and conclusions reached | • Schedule of pre-tax and net income, exclusions, Qualifying Profits, a restatement of adjustments<br>• An independent audit report certifying that the Schedule presented | Dkt. No. 415-2, pp. 2-7 |

927521.5

| | | fairly, in all material respects, the calculation of Qualifying Profits in accordance with the PSP | |
|---|---|---|---|
| 2005 | • Profits & Qualifying Profits<br>• A report by a certified public accounting firm setting forth the procedures performed and conclusions reached | • Schedule of pre-tax and net income, exclusions, Qualifying Profits<br>• An independent audit report certifying that the Schedule presented fairly, in all material respects, the calculation of Qualifying Profits in accordance with the PSP | Dkt. No. 415-2, pp. 8-11 |
| 2006 | • Profits & Qualifying Profits<br>• A report by a certified public accounting firm setting forth the procedures performed and conclusions reached | • Schedule of pre-tax and net income, exclusions, Qualifying Profits<br>• An independent audit report certifying that the Schedule presented fairly, in all material respects, the calculation of Qualifying Profits in accordance with the PSP | Dkt. No. 415-2, pp. 12-15 |
| 2007 | • Profits & Qualifying Profits<br>• A report by a certified public accounting firm setting forth the procedures performed and conclusions reached | • Schedule of pre-tax and net income, exclusions, Qualifying Profits<br>• An independent audit report certifying that the Schedule presented fairly, in all material respects, the calculation of Qualifying Profits in accordance with the PSP | Dkt. No. 415-2, pp. 16-20 |
| 2008 | • Profits & Qualifying Profits<br>• A report by a certified public accounting firm setting forth the procedures performed and conclusions reached | • Schedule of pre-tax and net income, exclusions, Qualifying Profits<br>• An independent audit report certifying that the Schedule presented fairly, in all material respects, the calculation of Qualifying Profits in accordance with the PSP | Dkt. No. 415-2, pp. 21-24 |
| 2009 | • Profits & Qualifying Profits<br>• A report by a certified public accounting firm setting forth the procedures performed and conclusions reached | • Schedule of pre-tax and net income, exclusions, Qualifying Profits<br>• An independent audit report certifying that the Schedule presented fairly, in all material respects, the calculation of Qualifying Profits in accordance with the PSP | Dkt. No. 415-2, pp. 25-28 |
| 2010 | • Profits & Qualifying Profits<br>• A report by a certified public accounting firm setting forth the procedures performed and conclusions reached | • Schedule of pre-tax and net income, exclusions, Qualifying Profits<br>• An independent audit report certifying that the Schedule presented fairly, in all material respects, the calculation of Qualifying Profits in accordance with the PSP | Dkt. No. 415-2, pp. 33-38 |

927521.5

As indicated in the Auditor's Reports, the accounting firm's audit of Navistar's financial records found that the worksheets "present[ed] fairly, in all material respects, the calculation of Qualifying Profits . . . in accordance with the provisions of the [PSP]." (Dkt. No. 415-2, pp. 3-4, 9, 13, 18, 22, 26, 36). Further, although not required, Navistar produced reports on Qualifying Hours for years 2004 through 2009 and reconciliation schedules for its Qualifying Profits for years 2004 through 2010, per the SBC's request. (Dkt. Nos. 415-4 & -6).

## II. <u>LEGAL ANALYSIS</u>

### A. The SBC Lacks Standing To Bring A Motion To Enforce The Settlement Agreement

The Sixth Circuit, following United States Supreme Court precedent, has consistently held that third parties lack standing to enforce a consent decree. *Aiken v. City of Memphis*, 37 F.3d 1155, 1167-1168 (6th Cir. 1994); *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992); *S.E.C. v. Dollar Gen. Corp.*, 378 F. App'x 511, 514-516 (6th Cir. 2010); *Sanders v. Republic Servs. of Kentucky, LLC*, 113 F. App'x 648, 650 (6th Cir. 2004).

The Sixth Circuit's reasoning comes from the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), as explained by the Sixth Circuit in *Aiken v. City of Memphis*:

> In *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992), we held that third parties to a consent decree lack standing to enforce their understanding of its terms. In so holding, we relied on the following language in *Blue Chip Stamps v. Manor Drug Stores*, . . . : "[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it *even though they were intended to be benefited by it.*" *Id.* at 750, 95 S.Ct. at 1932 (emphasis added). Despite this language, plaintiffs argue that their cases are distinguishable from *Vogel* because, in plaintiffs' view, they were intended third-party beneficiaries of the consent decrees. . . .

> We reject plaintiffs' argument. The plain language of *Blue Chip* indicates that even *intended* third-party beneficiaries of a consent decree lack standing to enforce its terms. Although other circuits have held to the contrary, *see Hook v. Arizona Dep't of Corrections*, 972 F.2d 1012, 1015 (9th Cir. 1992) (concluding that the holding of *Blue Chip* "does not apply to intended third party beneficiaries"); *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir. 1985) ("we think that [*Blue Chip*] was not intended to preclude nonparties from intervening to enforce a consent decree where otherwise authorized by the federal rules of civil procedure"), we are unable to join them until the Supreme Court revisits the unequivocal language of *Blue Chip*.

37 F.3d at 1167-1168.

The Sixth Circuit applies this rule unequivocally and has held that intended beneficiaries of a consent decree, other entities within the "zone of interests" protected by a consent decree, and other parties to litigation do not have standing if they were not a party to the consent decree. *Aiken*, 37 F.3d at 1168 (holding that intended third party beneficiaries lack standing to enforce the terms of the consent decree); *Dollar Gen. Corp.*, 378 F. App'x at 515 (holding that other litigants who were not parties to the consent decree do not have standing to enforce it); *Sanders*, 113 F. App'x at 650 (rejecting the argument that entities within the decree's "zone of interests" have standing).

This Court has also applied the Sixth Circuit's rule. In *Ragland v. City of Chillicothe*, Judge Frost noted:

> Though other Circuits have distinguished *Blue Chip Stamps* and held that *intended* third-party beneficiaries of a consent decree have standing to enforce it in federal court, the Sixth Circuit has notably refused to follow suit. . . . Thus, in the Sixth Circuit, only the *parties* to the consent decree have standing to enforce its terms. Nonparties to a consent decree, even if they are intended third-party beneficiaries of the decree, lack standing to seek enforcement of the decree in the Sixth Circuit. (internal citations and footnote omitted).

No. 2:10-cv-879, 2012 WL 1389949, at *5 (S.D. Ohio Apr. 20, 2012).

927521.5

In this case, the SBC was not a party to the Settlement Agreement or Consent Decree entered into by this Court in June 1993, as it acknowledges in its complaint. (Dkt. No. 415, p. 2; *see also* Dkt. No. 395-1, p. 2 n.1). Consequently, the SBC does not have standing to file a motion to enforce the Settlement Agreement entered in this case.

> **B.     The SBC Fails To Establish That Navistar Did Not Meet The Terms Of The PSP**

The SBC's motion to enforce should be denied for the additional reason that it fails to establish that Navistar has failed to comply with the Settlement Agreement. The SBC's motion asserts that Navistar should be compelled to "provide each and every report that it has failed to provide," to "provide worksheets, schedules and reports as prescribed in Section 8.1 of the Settlement Agreement." As summarized in the chart above, however, the record in this case establishes that Navistar has provided all of these worksheets and reports for all years through 2010. The SBC further contends that Navistar should be compelled to "respond promptly and fully to the requests of the Committee set forth in Exhibits D and F and any related follow-up requests." (Dkt. No. 395-1, pp. 8, 10). However, the SBC does not specify what reports it believes Navistar has failed to provide or what requests remain unanswered.

In contrast to the SBC's assertions, Navistar has provided all of the information required under the PSP. The SBC refers to PSP Section 8.1, which states that Navistar must provide a "worksheet detailing the calculation of the Contribution obligation, the Qualifying Hours, and the Qualifying Profits" to the SBC. (Dkt. No. 399-5, § 8.3). Section 8.3 makes clear, however, that this obligation does not apply if there is no profit sharing contribution due under the PSP: "In years in which no Contribution obligation is required to be paid, the Company will deliver information on profits and Qualifying Profits to the UAW and the Supplemental Benefit Committee . . . ." (*Id.* at § 8.3). The logic here is that if there is no contribution obligation, then

9

927521.5

there is no need to calculate Qualifying Hours. No contribution was required under the PSP for each of the years in question, so Navistar was obligated to provide only information on profits and Qualifying Profits. There is no dispute that Navistar met this obligation as set forth in the Statement of Facts above. (Dkt. No. 415, ¶¶ 24-26, 28; Dkt. No. 415-2, pp. 3-38). Regardless, though, Navistar did provide the Qualifying hours for 2004 through 2009, even though not required to do so.

Further, as also explained above, Navistar has met its obligations under Section 8.6 as it has provided a substantial amount of additional information when the SBC made reasonable requests to Navistar asking for information to support its computations for 2004 through 2010. To the extent that Navistar has not provided information requested by the SBC, it is because the requests are not "reasonable" as is required in the PSP. For example, the SBC has requested narrative responses in the nature of interrogatories on a wide variety of information, such as explaining internal management decisions and asking that Navistar provide definitions for terms that are undefined in the PSP. The SBC has also asked for information going back to 1993, even though the PSP contains a thirty day time limit for the SBC to dispute information or calculations the Company has provided. (Dkt. No. 399-5, § 8.4). These requests are outside the scope of information and timing contemplated by the PSP and so are unreasonable. Consequently, the SBC's Motion to Enforce should be denied for the additional reason that the SBC, at this juncture, has not demonstrated that Navistar failed to provide specific information to which the SBC is entitled under the PSP.[3]

---

[3] Given the factual disputes between the parties and the SBC's failure to delineate specifically the information to which it believes it is entitled and were not produced, Navistar submits that if this Court finds that the SBC has standing to bring this motion forward and is not required to bring its claims under the PSP dispute resolution process, then the record needs to be more fully developed before the Court can rule on the merits of the motion to enforce.

As a final matter, in its amended motion to enforce, the SBC alleges that Navistar has not yet produced information for 2011. (Dkt. No. 407). Navistar does not dispute this claim and recognizes that it has not yet provided calculations of its 2011 contribution obligations, Qualifying Profits, and Qualifying Hours (if applicable) and the related certified public accounting firm report. Navistar intends to provide this information to the SBC as soon as it becomes available.

> C. **The SBC's Recourse Is The PSP Dispute Resolution Process**

Consent decrees are interpreted according to principles of contract law. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). Thus, "the court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." *EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 80 (2d Cir. 1996) (quoting *Berger v. Heckler*, 771 F.2d 11556, 1568 (2d Cir. 1985)). The court's task in interpreting a consent decree is "to ascertain the intent of the parties at the time of settlement." *National Ecological Found. v. Alexander,* 496 F.3d 466, 478 (6th Cir. 2007) (quoting *Huguley v. Gen. Motors Corp.* 67 F.3d 129, 134 (6th Cir. 1995)).

As set forth above, Navistar believes it has fully complied with its obligations under the PSP. To the extent that the SBC disputes that assertion, that dispute must be decided by a third party through the dispute resolution process set forth in PSP Section 8.4. Under Section 8, timely identified disputes over the adequacy of information produced and whether Navistar is obligated to produce additional information must be decided by a third party. (Dkt. No. 399-5, § 8.4). It necessarily follows that the same neutral third party is also responsible for determining if the requests for additional information are "reasonable." Accordingly, for this reason also this Court should deny the SBC's motion to enforce the Settlement Agreement.

927521.5

### III. CONCLUSION

For the reasons stated above, the Court should deny the SBC's motion to enforce the Settlement Agreement.

                    Respectfully submitted,

                    */s/ David P. Pierce*
                    David P. Pierce (0061972)
                    COOLIDGE WALL CO., L.P.A.
                    33 W. First Street, Suite 600
                    Dayton, OH 45402
                    Phone: 937-223-8177
                    Fax:    937-223-6705
                    E-mail: pierce@coollaw.com

                    *TRIAL ATTORNEY FOR DEFENDANTS*
                    *NAVISTAR INTERNATIONAL*
                    *CORPORATION, et al.*

OF COUNSEL:
David P. Radelet, Esq.
Sally J. Scott, Esq.
William R. Pokorny, Esq.
Joshua D. Meeuwse, Esq.
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone: (312) 986-0300
Fax: (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendants*
*Navistar International Corporation, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March 2013 a copy of the foregoing *DEFENDANT'S MEMORANDUM IN OPPOSITION TO INTERVENOR-PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail, postage prepaid, to those parties to whom electronic notice has not been sent. Parties may access the filing through the Court's system.

/s/ *David P. Pierce*
David P. Pierce

927521.5