IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| ART SHY, et al.<br>                  Plaintiffs,<br>vs.<br><br>NAVISTAR INTERNATIONAL CORPORATION, et al.<br>                  Defendants.<br><br><br>SUPPLEMENTAL BENEFIT COMMITTE OF THE NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION RETIREE SUPPLEMENTAL BENEFIT PROGRAM,<br>                  Plaintiff,<br>vs.<br><br>NAVISTAR INTERNATIONAL CORPORATION,<br>                  Defendant. | Case No. 3:92-CV-00333<br><br>District Judge Walter H. Rice<br><br><br><br><br><br><br><br><br><br>**DEFENDANT'S MOTION TO DISMISS INTERVENOR-PLAINTIFF'S COMPLAINT** |

Navistar, Inc., ("Navistar")[1] through its undersigned counsel, respectfully moves to dismiss the complaint (Dkt. No. 415) filed by the Supplemental Benefit Committee (the "SBC") of the Navistar International Transportation Corp. (now Navistar, Inc.) Retiree Supplemental Benefit Program under Federal Rule of Civil Procedure 12(b)(6), for the reasons more fully set forth in the attached Memorandum in Support.

---

[1] The SBC named Navistar International Corporation ("NIC"), the parent/holding company, as the defendant in its complaint, but NIC is not the proper defendant for the claims made here because it is actually the operating company, Navistar, Inc. (formerly known as Navistar International Transportation Corp.), that has the obligation to provide information to the SBC under the Supplemental Benefit Trust Profit Sharing Plan. For simplicity, both NIC and Navistar, Inc. will be collectively referred to herein as "Navistar."

1

926956.4

                                               Respectfully submitted,

                                               *s/ David P. Pierce*
                                               David P. Pierce (0061972)
                                               COOLIDGE WALL CO., L.P.A.
                                               33 W. First Street, Suite 600
                                               Dayton, OH 45402
                                               Phone: 937-223-8177
                                               Fax:    937-223-6705
                                               E-mail: pierce@coollaw.com

                                               *TRIAL ATTORNEY FOR DEFENDANTS*
                                               *NAVISTAR INTERNATIONAL*
                                               *CORPORATION, et al.*

OF COUNSEL:
David P. Radelet, Esq.
Sally J. Scott, Esq.
William R. Pokorny, Esq.
Joshua D. Meeuwse, Esq.
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone: (312) 986-0300
Fax: (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendants*
*Navistar International Corporation, et al.*

926956.4

## MEMORANDUM IN SUPPORT

I. **INTRODUCTION**

The Supplemental Benefit Committee (the "SBC") of the Navistar International Transportation Corp. (now Navistar, Inc.) Retiree Supplemental Benefit Program brings this complaint alleging that Defendant Navistar International Corporation[2] ("Navistar") has failed to meet its obligations to provide certain information to the SBC under the Settlement Agreement that was entered as a Consent Decree in this case in June 1993. The SBC seeks to "compel compliance with the letter and spirit" of the Supplemental Benefit Trust Profit Sharing Plan ("PSP"), which is a part of the Settlement Agreement.

As a preliminary matter, Navistar respectfully disagrees with the complaint's characterizations of pertinent events and submits that it has fully satisfied its obligations under the Settlement Agreement to provide information to the SBC. Indeed, the exhibits to the complaint (which are only a portion of the information trading that has actually taken place) demonstrate that Navistar has provided a great deal of information to the SBC over several years and has explained its bases for declining other requests. While some responses have been delayed over the years, these delays have, to a great extent, been caused by the massive financial restatement process undertaken by Navistar during some of this period which extended over three years.

Even taking the complaint's allegations as true, however, some significant threshold issues must be addressed. Importantly, for purposes of the present motion, Navistar does not dispute the legitimacy of the issues raised by the SBC and appreciates the SBC's position that is

---

[2] The SBC named Navistar International Corporation ("NIC"), the parent/holding company, as the defendant in its complaint, but NIC is not the proper defendant for the claims made here because it is actually the operating company, Navistar, Inc. (formerly known as Navistar International Transportation Corp.), that has the obligation to provide information to the SBC under the Supplemental Benefit Trust Profit Sharing Plan. For simplicity, both NIC and Navistar, Inc. will be collectively referred to herein as "Navistar."

3

926956.4

has an obligation to pursue additional information from Navistar where deemed appropriate. However, the proper forum for SBC to pursue these claims is not in this Court, but instead through the dispute resolution procedures set forth in the PSP. Specifically, because the SBC was not a party to the lawsuit that resulted in the Settlement Agreement, under established Sixth Circuit precedent, it has no standing to seek to enforce the Settlement Agreement in federal court. Even if the SBC were intended to be a third-party beneficiary under the Settlement Agreement, it has no standing to bring this action. Accordingly, the complaint should be dismissed under Federal Rule of Procedure 12(b)(6).

Second, the complaint should be dismissed under the clear terms of the PSP, which is a part of the Settlement Agreement. In its complaint, the SBC alleges that Navistar has provided incomplete and inadequate information relating to Navistar's calculation of profit sharing contributions to the Supplemental Benefit Trust and has refused to provide information that the SBC believes is required under the PSP. The SBC asks the Court to order Navistar to produce the additional information. Under the unambiguous terms of the PSP, however, disputes over the appropriateness or adequacy of the information provided must be resolved through the binding third party dispute resolution process set forth in Section 8.4 of the PSP. Thus, the SBC's recourse for this dispute is to pursue the dispute through the PSP dispute resolution procedures. Accordingly, on both of these grounds, the Court should dismiss the complaint under Rule 12(b)(6) for failure to state a claim.

II.     **RELEVANT FACTS**

    A.    **The Settlement Agreement And Navistar's Obligations Under The PSP**

In 1993, Navistar and other affiliated entities entered into a Settlement Agreement with a class of active and retired employees, along with several unions that had represented some of

those class members. This Court entered final judgment approving the Settlement Agreement as a Consent Decree in June 1993. (Dkt. Nos. 326, 327). The Court retained jurisdiction over the parties "for the purposes of implementing, enforcing and administering the Settlement Agreement and exhibits thereto." (Dkt. No. 326, pp. 11-12).

The SBC was not a party to the original litigation; rather, it was formed pursuant to the Settlement Agreement. (Dkt No. 415, ¶¶ 1-3; Dkt. No. 327; *see also* Dkt. No. 395-1, p. 2 n.1). Specifically, the Settlement Agreement established a Retiree Health Benefit and Life Insurance Plan, which included the Retiree Supplemental Benefit Program. (Dkt. No. 399-2, p. 6). The SBC was established to administer the Retiree Supplemental Benefit Program, and the PSP is a part of that program. (Dkt. No. 399-2, pp. 25-26).

Under the PSP, Navistar must make contributions to the Supplemental Benefit Trust based on a particular measurement of profitability. (Dkt. No. 399-5).[3] The amount is determined by a formula contained in the PSP. (*Id.* at §§ 6.1-6.7 & 7.1-7.3). The PSP sets forth calculations for determining employees' "Qualifying Hours" and Navistar's "Qualifying Profits," two central components of the formula. (*Id.* at §§ 4.1-4.10 & 5.1-5.8). If there are sufficient Qualifying Profits, Navistar must make a contribution to the Supplemental Benefit Trust and provide the SBC with a worksheet detailing the calculation of the contribution obligation, the Qualifying Hours and the Qualifying Profits. (*Id.* at §§ 7.1 & 8.1). Navistar's data must also be reviewed by a certified public accounting firm, which must issue a report to the SBC. (*Id.* at § 8.2). If Navistar does not have sufficient Qualifying Profits for the year, it is not obligated to contribute any money to the Supplemental Benefit Trust. (*See id.* at §§ 7.3 & 8.3). If no

---

[3] The SBC's Complaint specifically cites and relies on numerous provisions in the PSP and the PSP is central to the SBC's claims. (*See* Dkt. No. 415, ¶¶ 12-18, 34-40). It is also part of the Settlement Agreement, and so is already part of the record in this case. Consequently, the Court may consider the PSP without converting Navistar's motion to a motion for summary judgment under Rule 56. *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680-681 (6th Cir. 2011).

contribution obligation is required, then Navistar is obligated to provide the SBC information on profits and Qualifying Profits only. (*Id.* at § 8.3). Additionally, Navistar is required to respond to reasonable requests from the SBC for information supporting the Company's computations. (*Id.* at § 8.6).

### B. The Dispute Resolution Process

The PSP has a specific mechanism for resolving disputes about information and calculations. If the SBC disputes the information or calculations provided by Navistar, it has thirty calendar days from receipt of the information to inform Navistar of the dispute. (*Id.* at § 8.4). Thereafter, the Company and the SBC are required to attempt, for a period of thirty days, to resolve the dispute. (*Id.*). If the parties are unsuccessful, they are to identify a mutually acceptable third party to resolve the dispute. (*Id.* at §§ 8.4.1 & 8.4.2). Thus, if the SBC claims that Navistar's calculations are incorrect or that Navistar owes it additional or more detailed information under the PSP, and the parties cannot reach a mutually agreeable solution, the dispute must be resolved by a third party under the PSP. (*See id.* at § 8.4). After hearing the parties' arguments, the third party "shall render a decision which shall be final and binding on all parties to the dispute." (*Id.* at § 8.4.3).

### C. Navistar Has Produced The Calculations And Worksheets Required By The PSP

In each of the years from 2004 through 2010, Navistar had negative Qualifying Profits. (Dkt. No. 415-2, pp. 5, 10, 14, 19, 23, 27, 31). For each of these years, Navistar has fully satisfied its obligations under the PSP, and it has provided all information that was required. As shown by the documents attached as Exhibit B to the SBC's complaint, Navistar produced worksheet schedules to the SBC that detailed its calculation of profits and Qualifying Profits for each year from 2004 through 2010. (Dkt. No. 415, ¶¶ 24-26, 28; Dkt. No. 415-2, pp. 3-38). In

addition, Navistar provided audit reports from a certified public accounting firm for each year from 2004 through 2010. (Dkt. No. 415-2, pp. 3-4, 9, 13, 18, 22, 26, 36). Navistar has also provided a substantial amount of additional information requested by the SBC, as reflected in the complaint (Dkt. Nos. 415-2, -4, & -6).

### III. LEGAL ANALYSIS

#### A. The SBC Lacks Standing To Bring A Complaint To Enforce The PSP

The Sixth Circuit, following United States Supreme Court precedent, has consistently held that third parties lack standing to enforce a consent decree. *Aiken v. City of Memphis*, 37 F.3d 1155, 1167-1168 (6th Cir. 1994); *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992); *S.E.C. v. Dollar Gen. Corp.*, 378 F. App'x 511, 514-516 (6th Cir. 2010); *Sanders v. Republic Servs. of Kentucky, LLC*, 113 F. App'x 648, 650 (6th Cir. 2004).

The Sixth Circuit's reasoning comes from the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), as explained by the Sixth Circuit in *Aiken v. City of Memphis*:

> In *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992), we held that third parties to a consent decree lack standing to enforce their understanding of its terms. In so holding, we relied on the following language in *Blue Chip Stamps v. Manor Drug Stores*, . . . : "[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it *even though they were intended to be benefited by it.*" *Id.* at 750, 95 S.Ct. at 1932 (emphasis added). Despite this language, plaintiffs argue that their cases are distinguishable from *Vogel* because, in plaintiffs' view, they were intended third-party beneficiaries of the consent decrees. . . .
>
> We reject plaintiffs' argument. The plain language of *Blue Chip* indicates that even *intended* third-party beneficiaries of a consent decree lack standing to enforce its terms. Although other circuits have held to the contrary, *see Hook v. Arizona Dep't of Corrections*, 972 F.2d 1012, 1015 (9th Cir. 1992) (concluding that the holding of *Blue Chip* "does not apply to intended third party beneficiaries"); *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir. 1985) ("we think that [*Blue Chip*] was not intended

7

> to preclude nonparties from intervening to enforce a consent decree where otherwise authorized by the federal rules of civil procedure"), we are unable to join them until the Supreme Court revisits the unequivocal language of *Blue Chip*.

37 F.3d at 1167-1168.

The Sixth Circuit applies this rule unequivocally and has held that intended beneficiaries of a consent decree, other entities within the "zone of interests" protected by a consent decree, and other parties to litigation do not have standing if they were not a party to the consent decree. *Aiken*, 37 F.3d at 1168 (holding that intended third party beneficiaries lack standing to enforce the terms of the consent decree); *Dollar Gen. Corp.*, 378 F. App'x at 515 (holding that other litigants who were not parties to the consent decree do not have standing to enforce it); *Sanders*, 113 F. App'x at 650 (rejecting the argument that entities within the decree's "zone of interests" have standing).

This Court has also applied the Sixth Circuit's rule. In *Ragland v. City of Chillicothe*, Judge Frost noted:

> Though other Circuits have distinguished *Blue Chip Stamps* and held that *intended* third-party beneficiaries of a consent decree have standing to enforce it in federal court, the Sixth Circuit has notably refused to follow suit. . . . Thus, in the Sixth Circuit, only the *parties* to the consent decree have standing to enforce its terms. Nonparties to a consent decree, even if they are intended third-party beneficiaries of the decree, lack standing to seek enforcement of the decree in the Sixth Circuit. (internal citations and footnote omitted).

No. 2:10-cv-879, 2012 WL 1389949, at *5 (S.D. Ohio Apr. 20, 2012).

In this case, the SBC was not a party to the Consent Decree entered by this Court in June 1993, as it acknowledges in its complaint. (Dkt. No. 415, p. 2; *see also* Dkt. No. 395-1, p. 2 n.1). Consequently, the SBC does not have standing to seek to enforce the Settlement Agreement/Consent Decree, and its complaint must, therefore, be dismissed.

8

926956.4

B.  **Under The Profit Sharing Plan, The SBC Must Pursue Its Claims Through The PSP Dispute Resolution Process**

Consent decrees are interpreted according to principles of contract law. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975). Thus, "the court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." *EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 80 (2d Cir. 1996) (quoting *Berger v. Heckler*, 771 F.2d 11556, 1568 (2d Cir. 1985)). The court's task in interpreting a consent decree is "to ascertain the intent of the parties at the time of settlement." *Nat'l Ecological Found. v. Alexander,* 496 F.3d 466, 478 (6th Cir. 2007) (quoting *Huguley v. Gen. Motors Corp.* 67 F.3d 129, 134 (6th Cir. 1995)). As the Supreme Court has explained:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. . . . For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written . . . .

*United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971).

Here, the Settlement Agreement provides that if the SBC raises disputes arise regarding information or calculations provided by Navistar to the SBC pursuant to the PSP, those disputes must be decided by a third party selected by the SBC and Navistar. All timely raised disputes between Navistar and the SBC over the calculations that Navistar used to determine its contribution obligation, the adequacy of information produced, and whether Navistar is contractually obligated to produce additional information that the SBC claims to be

926956.4

"reasonable," must be decided by the third party dispute resolution process in Section 8 of the PSP. (Dkt. No. 399-5, § 8.4). In this regard, it is important to note that the SBC is not without recourse. Although it cannot bring an action in court to enforce the Settlement Agreement, it has recourse through the dispute resolution procedures set forth in the PSP to bring forth disputes that it has timely identified.

This dispute resolution procedure applies squarely to the claims that the SBC raises in its complaint. The SBC claims that Navistar has produced incomplete or inadequate information (Dkt. No. 415, ¶ 36), that it needs additional information to further examine Navistar's calculations of its annual contribution obligations, and that Navistar has failed or refused to provide additional information that the SBC believes to be "reasonable" under the PSP. (Dkt. No. 415, ¶¶ 38-39). In other words, the SBC disputes that Navistar provided sufficient information. Thus, under the clear language of Section 8.4 and 8.4.3 of the PSP, this dispute must be resolved through the dispute resolution process, and Navistar is prepared to do so. (Dkt. No. 399-5, § 8.4). Accordingly, the Court should dismiss the complaint because the SBC has to pursue this dispute through these contractual procedures.

    C.    **The Remaining Portion Of The SBC's Complaint Is Predominately Moot**

The SBC alleges that from 2004 through 2010, Navistar did not produce information in a timely manner. (Dkt. No. 415, ¶ 36). This claim, however, is moot. The SBC admits that Navistar submitted worksheets of its calculations and the Qualifying Profits for 2004 through 2010, but claims it did not do so on a timely basis. (Dkt. No. 415, ¶¶ 24-26, 28). In fact, the SBC has attached to its complaint copies of many (but not all) of the worksheets, calculations and information that Navistar has already provided to the SBC. (Dkt. Nos. 415-2 & 415-6).

926956.4

Finally, the SBC alleges that Navistar has not yet produced information for 2011. (Dkt. No. 415, ¶ 37). Navistar does not dispute this claim and recognizes that it has not yet provided calculations of its 2011 contribution obligations, Qualifying Profits, and Qualifying Hours (if applicable) and the related certified public accounting firm report. Navistar intends to provide this information to the SBC as soon as it becomes available.

## IV. CONCLUSION

For the reasons stated more fully above, Navistar respectfully requests that the Court dismiss the SBC's complaint with prejudice.

                          Respectfully submitted,

                          */s/ David P. Pierce*
                          David P. Pierce (0061972)
                          COOLIDGE WALL CO., L.P.A.
                          33 W. First Street, Suite 600
                          Dayton, OH 45402
                          Phone: 937-223-8177
                          Fax:    937-223-6705
                          E-mail: pierce@coollaw.com

                          *TRIAL ATTORNEY FOR DEFENDANTS*
                          *NAVISTAR INTERNATIONAL*
                          *CORPORATION, et al.*

OF COUNSEL:
David P. Radelet, Esq.
Sally J. Scott, Esq.
William R. Pokorny, Esq.
Joshua D. Meeuwse, Esq.
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone: (312) 986-0300
Fax: (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendants*
*Navistar International Corporation, et al.*

926956.4

## CERTIFICATE OF SERVICE

     I hereby certify that on the 11th day of March 2013 a copy of the foregoing *MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS INTERVENOR-PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT* were filed electronically. Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail, postage prepaid, to those parties to whom electronic notice has not been sent. Parties may access the filing through the Court's system.

                                              */s/ David P. Pierce*
                                              David P. Pierce

926956.4