UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ART SHY, et al., | |
| Plaintiffs, | |
| v. | Case No. 3:92-cv-333-WHR |
| | Judge Walter Herbert Rice |
| NAVISTAR INTERNATIONAL CORPORATION, et al., | |
| Defendants. | |
| SUPPLEMENTAL BENEFIT COMMITTEE OF THE NAVISTAR INTERNATIONAL TRANSPORTATION CORP. RETIREE SUPPLEMENTAL BENEFIT PROGRAM, | |
| Intervenor-Plaintiff, | |
| v. | |
| NAVISTAR INTERNATIONAL CORPORATION, | |
| Defendant. | |

## INFORMATION REQUEST

Pursuant to this Court's March 29, 2013 Order and Section 8.6 of the Supplemental Benefit Program Profit Sharing Plan (the "Plan"), the Supplemental Benefit Committee of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (the "Committee") files this request detailing the information it requires from Navistar International Corporation and its subsidiaries and affiliates (including Navistar, Inc.) (collectively referred to as "Navistar" or the "Company"), in order to perform its fiduciary duties under the Navistar

International Transportation Corp. Retiree Supplemental Benefit Program. The Committee hereby requests that the Company provide the following information:

1. A list of every entity (including, but not limited to, corporations, partnerships, limited liability companies or partnerships, joint ventures, unincorporated associations, business trusts, special purpose entities, etc.) that the Company owned or controlled an interest in as of the effective date of the settlement agreement between Navistar and certain other entities that was approved by this Court on June 8, 1993 (the "Shy Agreement"). For each entity, provide the following information:

    a. The entity's name

    b. The state, province or country of organization

    c. The entity's principal place of business

    d. The physical locations of the entity's income producing assets

    e. The entity number or identifier used by the Company internally to identify the entity

    f. The type of entity (corporation, partnership, limited liability company, etc.)

    g. The owner(s) of the entity as well as the applicable percentage(s) owned

If the ownership or percentages owned changed over time, provide a history of the ownership or interest changes subsequent to the effective date of the Shy Agreement including, but not limited to, the names of applicable new or revised owners, dates of and percentage ownership changes, along with any additional amounts subsequently invested or contributed.

    h. If applicable, the date any such entity was legally dissolved, legally merged or disposed of after the effective date of the Shy Agreement

  i. If any such entity or business was disposed of subsequent to the effective date of the Shy Agreement, the name of the entity or individual to whom it was sold or transferred and the consideration received

  j. If legally merged subsequent to the effective date of the Shy Agreement, the name of the entity that it was merged into and any consideration paid or received

2. A list of every entity (including, but not limited to, corporations, partnerships, limited liability companies or partnerships, joint ventures, unincorporated associations, business trusts, special purpose entities, etc.) that the Company organized, formed, acquired, capitalized or invested in subsequent to the effective date of the Shy Agreement.  For each entity, provide the following information:

  a. The entity's name

  b. The state, province or country of organization

  c. The entity's principal place of business

  d. The physical locations of the entity's income producing assets

  e. The entity number or identifier used by the Company internally to identify the entity

  f. The type of entity (corporation, partnership, limited liability company, etc.)

  g. The date organized, formed, acquired or invested in

  h. The owners of the entity on the date organized, formed, acquired or invested in, as well as the applicable percentage(s) owned, along with the amount of initial capital, equity investment or equity contribution provided by each such owner.  If all or any portion of the initial capital provided or equity investment was not paid in cash, a description of the investment, how it was valued and who valued it.

If the entity's ownership or percentages owned changed over time, provide a history of the ownership or interest changes including, but not limited to, applicable owner names, dates and percentage changes, along with any additional amounts subsequently invested or contributed.

    i.    If the entity was acquired subsequent to the effective date of the Shy Agreement, the name of the entity or individual from whom it was purchased or acquired and the consideration paid

    j.    If the entity was acquired subsequent to the effective date of the Shy Agreement, a copy of the pre-acquisition financial statements (balance sheet, income statement, cash flow statement, notes to the financial statements and any audit or accountants' report regarding said financial statements) directly for or related to the acquired entity or business for the two years preceding the acquisition date or date the acquisition was initially agreed to

    k.    If the entity was acquired, organized or formed subsequent to the effective date of the Shy Agreement, a list of all assets transferred by the Company from an existing entity to the acquired or newly organized or formed business (excluding financial assets, but including any fixed or intangible assets, as well as any intellectual property, trade secrets, proprietary information, etc.) by fiscal year. Please include (by fiscal year) the entity transferring the applicable assets, the consideration paid by the acquired business, and the amount of any gain or loss recorded in connection with the transfer by the transferee entity.

    l.    If applicable, the date any such entity was legally dissolved, legally merged or disposed of after the effective date of the Shy Agreement

   m. If any such entity or business was disposed of subsequent to the effective date of the Shy Agreement, the name of the entity or individual to whom it was sold or transferred and the consideration received

   n. If legally merged subsequent to the effective date of the Shy Agreement, the name of the entity that it was merged into and any consideration paid or received

3. For each of the entities in Items 1 and 2 above, beginning with the fiscal year ended October 31, 1997, provide the fiscal year-end trial balance (which might also be referred to as a "company ledger"), the fiscal year-end balance sheet, and the annual income statement and cash flow statement for each fiscal year through the fiscal year ended October 31, 2012.  If a requested trial balance (company ledger) or financial statements for an entity are not available, explain why and provide any fiscal year financial information that was used to prepare, or was incorporated into the financial information used to prepare, any applicable state, federal or foreign income tax return.

  By entity and fiscal year, specifically identify and/or break out any item and the related amount the Company considers to be either a reconciling item to, specifically excluded from, or specifically included in the calculation of profit sharing amounts due to the Plan, and include the specific reference (*i.e.*, the Section Number) in Plan document that the Company believes justifies this treatment (subsequently referred to as an "Entity's Reconciling Amounts").

  In addition to the information customarily included in the applicable financial statements, for each entity and fiscal year, please break out, separately identify and present the following information on each respective financial statement:

5

a. Balance sheet:

1) Amounts due from (*i.e.,* receivables or advances) affiliated companies or entities

2) The amount of remaining inventory purchased or received from affiliated companies or entities

3) Loans or notes due from affiliated companies or entities

4) Investments in affiliated companies or entities

5) Amounts due to (*i.e.,* payables or advances) affiliated companies or entities

6) Loans or notes due to affiliated companies or entities

b. Income statement:

1) Sales to affiliates

2) Sales to third parties

3) Management fee income from affiliates

4) Dividend income from affiliates

5) Interest income from affiliates

6) Cost allocations to affiliates (either considered revenue/income or contra-expense)

7) Purchases from affiliates

8) Operating expenses purchased or allocated from affiliates

9) Interest expense related to borrowings from affiliates

10) Interest expense related to borrowings from third parties

11) The expense for management fees to affiliates

        12)     The expense for other cost allocations from affiliates

        13)     Equity in earnings (losses) of affiliates

  c.     Cash flows statement:

        1)     Dividends or distributions received from affiliates

        2)     Dividends or distributions paid to affiliates

        3)     Proceeds of advances or loans received from affiliates

        4)     Loans or advances made to affiliates

        5)     Investments made in affiliates

        6)     Proceeds from the sale or disposition of affiliates

        7)     Capital expenditures

        8)     Other cash received from affiliates

        9)     Other cash paid to affiliates

        10)     Interest paid to affiliates

        11)     Interest received from affiliates

        12)     Cash income taxes paid

4.     Using the applicable pre-tax or after-tax income (loss) amounts, as well as any applicable Entity's Reconciling Amounts, set forth in the annual fiscal year-end income statements provided in Item 3 above, provide a detailed (by entity) annual Calculation of Qualifying Profits (which is also referred to by Navistar as the "Supplemental Trust Profit Sharing Calculation") beginning with the fiscal year ended October 31, 1997 and continuing through the fiscal year ended October 31, 2012.  Please identify the specific reference (*i.e.,* the Section Number) of the Agreement that the Company believes justifies its treatment of each entity.

5.      Since the Committee is not aware of any generally accepted accounting principles regarding the transfer pricing of goods and services between entities that are either directly or indirectly owned or controlled by an ultimate common parent company, describe how the Company determines the fair transfer value of products, goods and services charged between affiliated entities.

Beginning with the fiscal year ended October 31, 1997, quantify and present, by fiscal year, the total gain or loss (defined as sales less cost of goods sold) recorded by the entity now known as Navistar, Inc. (and previously known as ITEC) in connection with the transfer of products to other affiliated entities.

6.      The Committee understands the audited Profit Sharing schedules for the fiscal years ended October 31, 2011 and 2012 are not yet available.  Please provide the unaudited Profit Sharing calculations or schedules, along with a copy of any work papers or analyses provided to the accounting firm conducting the audits of the schedules, for the fiscal years ended October 31, 2011 and 2012.

7.      A copy of all documentation prepared or retained pursuant to the requirements of Section 740-10 of the Accounting Standards Codification (also known as "FIN 48") from the Company's initial adoption of the requirement through the present date.

8.      Section 4.8 of the Agreement refers to various bonus or incentive plans that were in effect on the effective date of the Shy Agreement.  Beginning with the fiscal year ended October 31, 1997 and continuing through the fiscal year ended October 31, 2012, provide the following information regarding each of the Company's incentive or bonus plans:

    a.      The name and a brief description of each bonus or incentive plan used by the Company

8

    b.    The entity or entities where each such bonus or incentive plan was used or in effect, as well as the dates or periods such plan was used or in effect

    c.    The class(es) or group(s) of employees each such bonus or incentive plan included or covered

9.    For each fiscal year beginning with the fiscal year ended October 31, 1997 and continuing through the fiscal year ended October 31, 2012, provide the Company's Calculation of Qualifying Hours for each entity for which financial statements are provided in response to Item No. 3 above.

10.    For each fiscal year beginning with the fiscal year ended October 31, 1997 and continuing through the fiscal year ended October 31, 2012, provide the number of hours worked by "Bonus Eligible" employees, as that term is defined in Section 4.8 of the Agreement, for each entity for which financial statements are provided in response to Item No. 3 above.

11.    A complete copy of the following forms and any required subsidiary schedules or related attachments filed with the U.S. Department of the Treasury or the Internal Revenue Service beginning with the fiscal year ended October 31, 1997 and continuing through the latest such form filed for the fiscal year ended either October 31, 2011 or October 31, 2012:

    a.    Form 5471 (Information Returns of U.S. Persons with Respect to Certain Foreign Corporations)

    b.    Form 5472 (Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business)

    c.    Form 8858 (Information Return U.S. Persons with Respect to Foreign Disregarded Entities)

12.    Please provide the following information for the specific corporate entities now known as Navistar International Corporation and Navistar, Inc. (and previously known as ITEC) by fiscal year, beginning with the fiscal year ended October 31, 1997 and continuing through the fiscal year ended October 31, 2012:

    a.    A complete list of the components or management reporting units (including, but not limited to, sales or profit centers, cost centers, departments, manufacturing units or plants, etc.) that make up or compose each corporate entity

    b.    A description of the purpose and function of each component

    c.    A listing of the products or services each component provides to the other affiliated legal entities besides the corporate entities now known as Navistar International Corporation and Navistar, Inc. (and previously known as ITEC)

    d.    A description of the methodology used by the corporate entities now known as Navistar International Corporation and Navistar, Inc. (and previously known as ITEC) for allocating costs incurred for corporate functions, centralized or shared services, and similar costs to affiliated business units (both foreign and domestic) outside of these two corporate entities

    e.    A description of the methodology used by the corporate entities now known as Navistar International Corporation and Navistar, Inc. (and previously known as ITEC) for allocating interest and other financing costs to affiliated business units (both foreign and domestic) outside of these two corporate entities

    f.    A description of the methodology used by the corporate entities now known as Navistar International Corporation and Navistar, Inc. (and previously known as ITEC) for allocating costs incurred and expensed for research and development

        activities to affiliated business units (both foreign and domestic) outside of these two corporate entities

   g.   A description of the methodology used by the corporate entities now known as Navistar International Corporation and Navistar, Inc. (and previously known as ITEC) for determining and charging management or other fees to affiliated business units (both foreign and domestic) outside of these two corporate entities

13.    For each fiscal year beginning with the fiscal year ended October 31, 1997 and continuing through the fiscal year ended October 31, 2010, a copy (regardless of form) of each work paper, analysis or other document requested by or provided to the outside auditing firm engaged by the Company to audit the profit sharing calculation set forth in the Shy Agreement.

14.    During the fiscal year ended October 31, 2000, the Company's Annual Report filed with the U.S. Securities and Exchange Commission reported an accrued liability to the Trust of $24 million.  However, the Company only paid approximately $3.6 million.  What caused the difference between the obligation reported in the Annual Report (which was never reversed) and the amount paid?

Dated:  April 19, 2013                       Respectfully submitted,

                                              /s/ Kevin L. Murphy  
                                              Kevin L. Murphy (#0021810)  
                                              Graydon Head & Ritchey LLP  
                                              2400 Chambers Center Drive  
                                              Suite 300  
                                              Ft. Mitchell, KY  41017  
                                              Phone: 859-578-3060  
                                              Fax:    859-525-0214  
                                              kmurphy@graydon.com

                                              *Trial Attorney for Intervenor-Plaintiff Supplemental Benefit Program Committee*

        Edward A. Scallet (admitted via *pro hac vice*)
        Will E. Wilder (admitted via *pro hac vice*)
        Groom Law Group, Chartered
        1701 Pennsylvania Avenue, NW
        Washington, DC 20006
        202-857-0620 (p)
        202-659-4503 (f)
        eas@groom.com
        wwilder@groom.com

        *Attorneys for Intervenor-Plaintiff Supplemental Benefit Program Committee*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 19th day of April, 2013, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail, postage prepaid, to those parties to whom electronic notice has not been sent.

        /s/ Kevin L. Murphy
        Kevin L. Murphy (#0021810)

4180486.1