IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| ART SHY, et al. ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| NAVISTAR INTERNATIONAL ) | Case No.: 3:92-cv-00333 |
| CORPORATION, et al., ) | |
| Defendants. ) | Judge Walter Herbert Rice |
| ) | |
| SUPPLEMENTAL BENEFIT COMMITTEE OF ) | |
| THE NAVISTAR INTERNATIONAL ) | |
| TRANSPORTATION CORP. RETIREE ) | |
| SUPPLEMENTAL BENEFIT PROGRAM, ) | |
| ) | |
| Intervenor-Plaintiff, ) | |
| v. ) | |
| ) | |
| NAVISTAR, INC., ) | |
| Defendant. ) | |

**DEFENDANT NAVISTAR'S BRIEF IN OPPOSITION TO INTERVENOR-PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

In March 2013, the Court permitted the Supplemental Benefit Program Committee (the "SBC") of the Navistar International Transportation Corp.[1] Retiree Supplemental Benefit Program to intervene in this matter to enforce the Settlement Agreement that was entered as a Consent Decree in this case in June 1993. The SBC thereafter filed a complaint alleging that Defendant Navistar failed to disclose certain information that it was required to provide under the Supplemental Benefit Trust Profit Sharing Plan ("PSP"), which is a part of the Settlement

---

[1] Navistar International Transportation Corp. is now known as Navistar, Inc., which is referred to as "Navistar" or the "Company" in this brief.

Agreement. The Court ordered Navistar to produce the information requested by the SBC by May 10, 2013, and Navistar fully complied with the Court's order.

The SBC now seeks to file an amended complaint asserting two new claims against Navistar: a breach of contract claim (Count I) and an ERISA claim (Count II). Both counts allege that Navistar incorrectly calculated its profit-sharing contributions to the Supplemental Benefit Trust under the terms of the PSP.

The SBC should be denied leave to file the proposed amended complaint because the claims asserted in the amended complaint are futile. The Settlement Agreement explicitly requires that if the SBC disputes Navistar's calculations of its profit-sharing obligation, that dispute must be resolved by the dispute resolution procedure prescribed in the PSP. Because the SBC has not availed itself of these contractually-mandated procedures, its proposed claims do not state valid claims for relief in this Court.

Moreover, permitting the SBC to sidestep the dispute resolution processes required by the PSP would greatly prejudice Navistar and deprive the company of the assurances it obtained when it settled this matter 20 years ago. In settling this matter, the parties to the underlying *Shy* litigation negotiated and agreed that the very issues raised in the proposed amended complaint would be resolved through the dispute resolution processes provided in the PSP. The Court should enforce the express will of the parties to the Settlement Agreement by denying the SBC's request to circumvent those procedures and pursue these claims in a judicial forum.

For these and other reasons as further detailed below, the SBC's motion for leave to file an amended complaint should be denied.

1001771.3

## RELEVANT FACTS

### A. Settlement Agreement and Consent Decree

In 1993, Navistar and other affiliated entities entered into a Settlement Agreement with a class of active employees and retired employees, along with several unions that had represented some of the class members. This Court entered final judgment approving the Settlement Agreement as a Consent Decree in June 1993. (Dkt. Nos. 326, 327). The Court retained jurisdiction over the parties "for the purpose of implementing, enforcing and administering the Settlement Agreement and exhibits thereto." (Dkt. No. 326, pp. 11-12).

The SBC was not a party to the original litigation; rather, it was formed pursuant to the Settlement Agreement. (Dkt No. 415, ¶¶ 1-3; Dkt. No. 327; *see also* Dkt. No. 395-1, p. 2 n.1). Specifically, the Settlement Agreement established a Retiree Health Benefit and Life Insurance Plan, which included the Retiree Supplemental Benefit Program. (Dkt. No. 399-2, p. 6). The SBC was created to administer the Retiree Supplemental Benefit Program, which includes the PSP. (Dkt. No. 399-3, pp. 25-26).

The PSP requires Navistar to make contributions to the Supplemental Benefit Trust based on a particular measurement of profitability. (Dkt. No. 399-5). The contribution amount is determined by a formula prescribed in the PSP. (*Id*. at §§ 6.1-6.7 & 7.1-7.3). The PSP sets forth calculations for determining employees' "Qualifying Hours" and Navistar's "Qualifying Profits," two central components of the formula. (*Id*. at §§ 4.1-4.10 & 5.1-5.8). The PSP defines which Navistar entities and affiliates are "Covered Operations" for purposes of calculating Qualifying Hours and Qualifying Profits, and the extent to which the operating results of businesses acquired after the Effective Date of the Settlement Agreement are to be included in Qualifying Profits. (*Id.* at §§ 3.1, 4.9, 5.5).

Under the PSP, if there are sufficient Qualifying Profits, Navistar must make a contribution to the Supplemental Benefit Trust.  (*Id*. at §§ 7.1 & 8.1).  If Navistar does not have sufficient Qualifying Profits for the year, it is not obligated to contribute any money to the Supplemental Benefit Trust.  (*Id*. at §§ 7.3 & 8.3).

Section 8.1 of the PSP requires that Navistar provide the SBC with certain information, including "a worksheet detailing the calculation of the Contribution obligation, the Qualifying Hours, and the Qualifying Profits. . . . and a listing by category of the employees included and excluded in the calculation of Qualifying Hours and all information reasonably necessary to review the calculation of Qualifying Profits." (*Id*. at § 8.1).  Navistar's data on profits, hours worked, Qualifying Profits and Qualifying Hours must be reviewed by a certified public accounting firm selected by the Company, which in turn issues a report to the SBC "setting forth the procedures performed and the conclusions reached."  (*Id.* at § 8.2).

If the SBC disputes the information or calculations provided by Navistar as required under Sections 8.1 through 8.3, then the SBC has thirty calendar days from receipt of the information to inform Navistar of the dispute.  (*Id.* at § 8.4).  Thereafter, the Company and the SBC are required to attempt, for a period of thirty days, to resolve the dispute. (*Id.*).  If the parties are unsuccessful, they are to identify a mutually acceptable third party to resolve the dispute.  (*Id.* at §§ 8.4.1 & 8.4.2).  If the parties cannot agree on a third party to resolve the matter, the matter shall be referred to an accounting firm. (*Id.* § 8.4.2).  Thus, under the dispute resolution provisions of the PSP, if the SBC claims that Navistar's calculations are incorrect and the parties cannot reach a mutually agreeable solution, the dispute must be resolved by a third party or an accounting firm.  (*See id*. at § 8.4).  After hearing the parties' evidence and

4

arguments, the third party or accounting firm "shall render a decision which shall be final and binding on all parties to the dispute." (*Id*. at § 8.4.3).

**B.     The Instant Proceedings**

In March 2012, the SBC filed a motion to intervene in the *Shy* litigation. (Dkt. No. 394). At the same time, the SBC filed a motion to enforce, requesting the Court to compel Navistar to provide calculation worksheets and other information the SBC claimed it needed to verify Navistar's calculations of its Qualifying Hours and Qualifying Profits for certain fiscal years. (Dkt. No. 395). On February 6, 2013, the Court granted the SBC's motion to intervene and directed the SBC to file a complaint in compliance with Federal Rule of Civil Procedure 24(c). (Dkt. No. 414). On February 15, the SBC filed a complaint against Navistar alleging the Company breached the PSP by failing to provide the information requested in its motion to enforce. (Dkt. 415). On March 29, the Court granted the SBC's motion to enforce the Settlement Agreement, and it set a schedule for the SBC to file an information request and for Navistar to comply with the request or otherwise object. (Dkt. No. 426). On May 10, Navistar notified the Court that it fully complied with the Court's March 29, 2013 Order and timely produced over 75,000 pages of documents and detailed written responses to the SBC's information requests. (Dkt. No. 428). The SBC has not disputed Navistar's compliance with the Court's order.

After reviewing the information Navistar provided, on August 21, 2013, the SBC filed a Motion for Leave to File an Amended Complaint. (Dkt. No. 432). The proposed amended complaint would replace the SBC's original breach of contract claim with a new breach of contract claim and an ERISA claim. Both proposed counts allege that Navistar incorrectly calculated the profit sharing payments due under the PSP, and thus breached the terms of the Settlement Agreement (specifically, the PSP) by: (1) treating newly formed entities as acquired

5

businesses and then not properly allocating revenues, costs and expenses in its profit calculations; (2) excluding dividends and other payments from its calculations of Qualifying Profits; (3) excluding Medicare Part D subsidy payments from its calculation of Qualifying Profits; and (4) failing to exclude Bonus Eligible employees from its calculation of Qualifying Hours. (Dkt. No. 432-1 ¶¶ 60, 65). The SBC claims that these alleged calculation errors impacted a period spanning a dozen years or more. (*Id.* ¶¶ 1, 33-34).

### ARGUMENT

The decision whether to grant or deny leave to file an amended complaint lies within the discretion of this Court. *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, the court should consider several factors, including whether the proposed amendment would prejudice the non-moving party. *Id.* Further, the court should deny leave to amend if the proposed amendment would be futile, *i.e.*, if "the amended complaint would not be able to survive a motion to dismiss." *See Shaughnessy v. Interpublic Grp. of Cos., Inc.*, 506 Fed. Appx. 369, 372 (6th Cir. 2012). As explained below, the SBC's proposed amended complaint is futile and would prejudice Navistar, so leave to amend should be denied.

**I.     The SBC's Breach of Contract Claim Is Futile Because It Must Be Resolved through the PSP's Dispute Resolution Process**

Consent decrees are interpreted according to principles of contract law. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). Thus, the court's task in interpreting a consent decree is "to ascertain the intent of the parties at the time of settlement." *Nat'l Ecological Found. v. Alexander,* 496 F.3d 466, 478 (6th Cir. 2007). As the Supreme Court has explained:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. . . . For these reasons, the scope of a consent decree must be discerned within

6

1001771.3

> its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written.

*United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971).

Here, the Settlement Agreement requires that Navistar provide information to the SBC detailing its calculation of its Contribution obligation and including "all information reasonably necessary to review the calculation of Qualifying Profits." The Agreement also unambiguously states that if the SBC disputes the information or calculations provided to it by Navistar, the dispute must be resolved by the dispute resolution process prescribed in Section 8.4 of the PSP. (Dkt. No. 399-5, §§ 8.1, 8.4). The SBC's proposed breach of contract claim challenges Navistar's calculations of its Qualifying Profits and Qualifying Hours over a number of years, and alleges the Company failed to include or exclude certain information from those calculations. (Dkt. No. 432-1 ¶¶ 60, 65). These allegations fall squarely within the scope of Section 8.4 of the PSP, and, therefore, these disputes must be resolved by the process described therein.

As the terms of the PSP make clear, the parties to the underlying *Shy* litigation contemplated the possibility that the SBC and Navistar would disagree over how the Company calculated its profits and whether Navistar had a Contribution obligation to the Supplemental Benefit Trust, and they intended and agreed that such disputes should be resolved by a third party or accounting firm possessing the special expertise to decide these issues. The SBC's proposed amended complaint materially alters the terms of the Settlement Agreement, and should not be allowed. *See EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 80 (2d Cir. 1996) ("[T]he court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree.").

7

Indeed, the tasks involved in resolving these disputes are precisely the type of work that accountants – not courts – regularly perform: *i.e.*, examining corporate books, interpreting accounting terms, and verifying the bases and support for revenue, cost and profit calculations. The SBC itself acknowledges this in its proposed amended complaint. The SBC's primary claim is that Navistar incorrectly classified entities as businesses acquired after the effective date of the Settlement Agreement, which resulted in those entities' income being included on an after-tax, rather than a pre-tax, basis. The SBC notes that the PSP does not define a "business acquired," but that Section 5.8 requires that items shall be "calculated in accordance with generally accepted accounting principles." The SBC then proffers its version of generally accepted accounting principles for a "business acquired," and concludes that Navistar has improperly classified entities as acquired businesses. (Dkt. No. 432-1, Am. Comp.¶ 38). With its assertion that generally accepted accounting principles must be used to interpret the PSP terms, the SBC acknowledges that an accounting firm is uniquely qualified to resolve the parties' dispute.

Section 8.4.3 of the PSP further demonstrates that the parties intended the designated third party to resolve disputes regarding Navistar's calculations of its Qualifying Profits and Qualifying Hours. Section 8.4.3 states that the parties are to "present evidence and argument in support of their position," and that the third party "shall render a decision which shall be final and binding on all parties to the dispute." There can be no more clear indication that the third party's role is to resolve disputes between the parties, or else "evidence and argument" would not be necessary and the third party would not be given authority to render a decision.

Previously in this litigation, in response to the SBC's original Complaint in which the SBC sought to compel Navistar to produce certain information, Navistar argued that the SBC's claims fell within the scope of the PSP's dispute resolution procedure. (Dkt. No. 422 at 9-10).

1001771.3

The SBC argued, and the Court agreed, that the dispute resolution process would not be triggered until after Navistar disclosed the requested information. (Dkt. No. 423 at 4-5; Dkt. No. 426 at 25-28). In its March 29, 2013 Order, the Court reasoned that it was premature to refer this matter to the dispute resolution process because the SBC had "not yet conducted the kind of substantive review that would trigger the dispute resolution process." (Dkt. No. 426 at 26). Now that the information requested has been provided and reviewed and the SBC has decided to dispute Navistar's calculations, the Court's reasoning compels the conclusion that this matter must now be deferred to the agreed alternative dispute resolution process.[2]

Further, the SBC's attempt to bypass the dispute resolution process is contradictory to its own past invocation of the process to resolve some of the very same disputes that are now raised in the proposed amended complaint. Specifically, as the Court noted in its March 29, 2013 Order, the SBC "provided notice of dispute and expressly invoked Section 8.4 of the PSP in its May 4, 2010, letter to Navistar." (Dkt. No. 426 at 26-27; *see also* Dkt. No. 415-3). In that May 4, 2010 letter, the SBC challenged Navistar's exclusion of the Medicare Part D subsidy from its calculation of Qualifying Profits for fiscal years 2007 through 2009. (Dkt. No. 415-3). On that particular occasion, Navistar declined to participate in the dispute resolution process on the grounds that the dispute was moot because the amount in controversy was insufficient to create a profit-sharing payment obligation even if the SBC were to have prevailed on its claim. The SBC

---

[2] In addition to the futility arguments set forth above, the proposed amended complaint also raises substantial issues as to the timeliness of some or all of the claims being asserted by the SBC in light of the 30 day limitations period established by the PSP and the applicable statutes of limitations. (Dkt. No. 399-5 at § 8.4). Those arguments are hereby reserved and will be presented once the pending Motion for Leave to Amend is resolved by the Court. Moreover, for reasons explained in its motion to dismiss the SBC's original complaint, Navistar also asserts that the SBC's proposed breach of contract claim is futile because the SBC lacks standing as a non-party to the Settlement Agreement to enforce the PSP. (Dkt. No. 422 at 7-8). Navistar recognizes that the Court previously ruled on this issue in its March 29, 2013 Order, but reasserts the argument here. (Dkt. No. 426 at 21-25).

1001771.3

never pursued the matter further nor sought to compel resolution through the dispute resolution process. The SBC's express recognition of the applicability of the dispute resolution process in the past disputes belies any argument that the process does not apply now. Nor can the SBC argue based on this past event that Navistar will decline to participate in the dispute resolution process on this occasion. Indeed, to be clear, Navistar is prepared to participate in the dispute resolution process in order to resolve the claims now asserted in the proposed amended complaint.

For all of these reasons, the SBC's revised breach of contract claim fails to state a valid claim for relief, and the Court should deny leave to amend to add this proposed claim.

## II. The SBC's ERISA Claim Is Futile Because the SBC Has Failed to Exhaust a Clear Administrative Remedy that Is Readily Available

Similarly, the SBC's claim for relief under Section 502(a)(3) of ERISA is futile because the SBC has failed to comply with the unambiguous administrative resolution process set forth in Section 8.4 of the PSP. Widely-recognized exhaustion of administrative remedies principles under ERISA prevent the SBC from avoiding the clear administrative remedies available to it under the PSP by pursuing its ERISA claims directly in court.

In other ERISA contexts, the Sixth Circuit Court of Appeals has held that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994). The Sixth Circuit has not yet decided whether a fiduciary must exhaust administrative remedies before pursuing a claim under Section 502(a)(3) of ERISA,[3] but Sixth

---

[3] In an unpublished decision, the Sixth Circuit has considered the unique factual situation of an insurer seeking to enforce the terms of a plan's coordination of benefits provision under federal common law, and has found that the insurer did not have a duty to exhaust administrative remedies. *See Prudential Prop. & Cas. Ins. v. Delfield Co. Grp. Health Plan*, 187 F.3d 637 (6th

10

Circuit decisions suggest that an exhaustion requirement would apply in factual circumstances that are analogous to this case. *See Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005) (noting in another ERISA context that the court has not decided whether a beneficiary must exhaust administrative remedies prior to bringing claims based on statutory rights, and that the court instead resolves such cases on whether exhaustion would be futile); *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504-05 (6th Cir. 2004) (affirming dismissal of ERISA statutory claims for failure to exhaust, where court found that administrative remedies would not be futile).

Many of the policies for requiring exhaustion articulated by the Sixth Circuit in *Costantino* apply in this case.  The court in *Costantino* noted that exhaustion of administrative remedies serves a number of important policies, such as helping to reduce the number of frivolous lawsuits under ERISA, promoting the consistent treatment of claims, providing a non-adversarial method of claims settlement, and minimizing the costs of claims settlement for all concerned.  *Costantino*, 13 F.3d at 975.  Each of those considerations is present here.  The PSP provides an administrative process, and sound policy under ERISA suggests that the SBC should be required to utilize that process rather than using a federal court to supplant that process.

The exhaustion requirement is particularly compelling here because the PSP provides a clear administrative remedy that addresses the SBC's precise factual claims in the Amended Complaint.  In particular, Section 8.4 of the PSP states:

---

Cir. 1999).  However, unlike the present case, it is unclear what administrative procedure would have been available to the plaintiff in *Prudential Property*.

1001771.3

- If the Supplemental Benefit Committee disputes the calculations for profit-sharing, the Supplemental Benefit Committee "<u>shall</u> inform the Company of such dispute within 30 calendar days." (Dkt. No. 399-5, PSP § 8.4).

- Navistar and the Supplemental Benefit Committee "<u>shall</u> thereafter attempt, for a period not to exceed 30 calendar days, to resolve such dispute." (*Id.*).

- Following the selection of the third party to resolve the dispute, the parties "<u>shall</u> present evidence and argument in support of their position." (*Id.* § 8.4.3).

- Then, the third party "<u>shall</u> render a decision which <u>shall</u> be final and binding." *Id.*

Importantly, these procedures are not permissive; they are mandatory. The Court should not permit the SBC to avoid mandatory procedures that were established to resolve the exact type of disputes that are being pursued here.

While the claims pursued here are different than the typical single-plaintiff claim for benefits under ERISA, Sixth Circuit law nevertheless supports the application of an exhaustion requirement here. For example, the court in *McLaren Inv. & Ret. Comm. v. Whitehead*, 2009 WL 2777244 (W.D. Mich. 2009), required the parties to submit additional information so that the court could consider whether the plan document provided a review procedure that should have been exhausted. Like the amended complaint proposed here by the SBC, the *McLaren* case involved a suit brought by a plan fiduciary under Section 502(a)(3) of ERISA. The court noted that cases involving the interpretation of a plan under ERISA could be subject to a duty to exhaust. *Id.* at *3. Similarly, this matter involves the interpretation of the PSP, not an independent statutory violation of ERISA. The court in *McLaren* also pointed to many of the

12

same policy reasons summarized above that supported the exhaustion of administrative remedies in *Costantino*. *Id*. at *2.

Finally, while the Sixth Circuit does not require exhaustion of administrative remedies where the remedies would be "futile," futility of exhaustion cannot be shown in this case and it has not been plead in the proposed amended complaint. The standard for determining the futility of resorting to the administrative remedies provided by the plan "is whether a clear and positive indication of futility can be made." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). In order to successfully argue the futility of exhaustion, a claimant bears the burden of proving futility beyond mere conclusory allegations. Rather, the claimant must make a "clear and positive" indication of futility. *Id*. at 419 (*citing*, *inter alia, Costantino v. TRW Inc*., 13 F.3d 969 (6th Cir.1994)). To avoid the exhaustion requirement, the SBC "must show that 'it is certain that [its] claim will be denied on appeal, not merely that [it] doubts that an appeal will result in a different decision.'" *Id.* (*quoting Lindemann v. Mobil Oil Corp.*, 79 F.3d 647 (7th Cir. 1996)). The SBC has no basis for arguing that its claims are "certain" to be denied if the PSP administrative process is used. The parties have the opportunity to pick a "mutually acceptable third party" or to strike names from a list to identify an accounting firm to resolve the dispute. Each party has the opportunity to present evidence and arguments in support of its positions. There is simply no basis for the SBC to assert that its claim "will be denied" if it goes through the PSP's dispute resolution process, and indeed, the SBC has made no such allegation of futility.

In short, the SBC has asked this Court to enforce certain provisions of the PSP (governing the calculation and payment of profit-sharing contributions), but has also asked the Court to ignore another key provision of the PSP (Section 8.4, which provides a dispute

resolution procedure, with an impartial third party, to decide the exact remedy that they seek). The SBC should not be permitted to file a complaint under ERISA to enforce certain terms of the PSP and simultaneously ignore other terms of the PSP.

**III.     Navistar Will Be Prejudiced If the SBC Is Granted Leave to File Its Proposed Amended Complaint**

The SBC's request that that the Court ignore the terms of the PSP deprives the parties to the Settlement Agreement of the terms and conditions they negotiated over twenty years ago. The parties who settled this matter (before the SBC was even created) deliberately chose to have disputes like those at issue in this case decided in a forum other than a court. They had many reasons for adopting the dispute resolution process in Section 8.4 of the PSP. First, as described above, the parties desired to have financial and accounting disputes decided by experts applying industry-accepted methods. Second, the parties intended to avoid the expense and fees of litigation and discovery every time the SBC and Navistar had a dispute over the Company's profit calculations. Instead, the dispute resolution process permits the parties to obtain a "final and binding" decision, as provided in the agreement, without resorting to full-blown federal court litigation. (Dkt. No. 399-5 at § 8.4). As the U.S. Supreme Court held: "Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written." *United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971). As written, the Settlement Agreement requires the parties to resolve the disputes raised in the SBC's amended complaint through the dispute resolution process. That was one of the conditions by which Navistar entered into the Consent Decree, and that condition must be respected.

For these additional reasons, the SBC should not be permitted to sidestep the dispute resolution process.

## CONCLUSION

The Settlement Agreement and PSP require that disputes between the SBC and Navistar over profit-sharing calculations and contributions are to be resolved by an alternative dispute resolution procedure that is outlined in the PSP.  The SBC, in its proposed amended complaint, disputes Navistar's calculations and contributions.  Because this mandatory dispute resolution procedure exists, SBC's Motion for Leave to File an Amended Complaint is futile and should be denied.

                  Respectfully submitted,

                */s/ William R. Pokorny*
                  William R. Pokorny, Esq.
                  FRANCZEK RADELET P.C.
                  300 South Wacker Drive, Suite 3400
                  Chicago, IL 60606

David P. Pierce (0061972)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH  45402
Phone:  937-223-8177
Fax:     937-223-6705
E-mail: pierce@coollaw.com
*TRIAL ATTORNEY FOR DEFENDANTS*
*NAVISTAR INTERNATIONAL CORPORATION, et al.*

OF COUNSEL:
David P. Radelet, Esq.
Sally J. Scott, Esq.
William R. Pokorny, Esq.
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone:  (312) 986-0300
Fax:  (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendants*
*Navistar International Corporation, et al.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 11th day of September 2013 a copy of the foregoing *DEFENDANT NAVISTAR'S BRIEF IN OPPOSITION TO INTERVENOR-PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT* were filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail, postage prepaid, to those parties to whom electronic notice has not been sent.  Parties may access the filing through the Court's system.

                                              */s/ William R. Pokorny*
                                              William R. Pokorny, Esq.