IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| ART SHY, et al., | ) | Case No. 3:92-cv-00333-WHR |
| | ) | |
| Plaintiffs, | ) | (District Judge Walter H. Rice) |
| | ) | |
| vs. | ) | |
| | ) | |
| NAVISTAR INTERNATIONAL | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| SUPPLEMENTAL BENEFIT | ) | |
| COMMITTEE OF THE NAVISTAR | ) | |
| INTERNATIONAL TRANSPORTATION | ) | |
| CORP. RETIREE SUPPLEMENTAL | ) | |
| BENEFIT PROGRAM, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | DEFENDANT NAVISTAR'S MOTION |
| | ) | TO DISMISS INTERVENOR- |
| v. | ) | PLAINTIFF'S AMENDED |
| | ) | COMPLAINT AND COMPEL |
| NAVISTAR, INC., | ) | DISPUTE RESOLUTION PROCESS |
| | ) | |
| Defendant. | ) | |

Defendant Navistar, Inc. ("Navistar" or the "Company") moves to dismiss the Amended Complaint (Dkt. No. 432-1) filed by the Supplemental Benefit Program Committee (the "SBC") of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for the reasons more fully set forth in the attached Memorandum in Support.

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

 s/ David P. Pierce
        DAVID P. PIERCE (0061972)
        33 W. First Street, Suite 600
        Dayton, OH  45402
        Phone:  937-223-8177
        Fax:  937-223-6705
        E-mail:  pierce@coollaw.com

*TRIAL ATTORNEY FOR DEFENDANT*
*NAVISTAR, INC.*

OF COUNSEL:
David P. Radelet
Sally J. Scott
William R. Pokorny
Abizer Zanzi
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone:  (312) 986-0300
Fax:  (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendant*
*Navistar, Inc.*

## <u>MEMORANDUM IN SUPPORT</u>

The SBC intervened in this matter to enforce the Settlement Agreement that was entered as a Consent Decree in June 1993. The SBC has filed an amended complaint against Navistar asserting claims for breach of contract (Count I) and violations of ERISA (Count II). Both counts allege that Navistar incorrectly calculated profit-sharing contributions under the Supplemental Benefit Trust Profit Sharing Plan ("PSP"), which is part of the Consent Decree.

The Amended Complaint should be dismissed pursuant to FRCP 12(b)(6) because it fails to state a claim upon which relief may be granted in this Court. The Consent Decree mandates that disputes regarding Navistar's calculations of its profit-sharing obligation must be resolved by a third party or accounting firm under the dispute resolution procedure prescribed in the PSP. The SBC has not availed itself of this procedure and cannot, under the terms of the Consent Decree, obtain the relief it is seeking in court. Navistar agreed to settle this matter 20 years ago with written assurances that profit-sharing disputes arising from the Consent Decree would be resolved through a dispute resolution process outside of court. The SBC should not be permitted to circumvent the negotiated and Court-approved terms of the Consent Decree.

The SBC's failure to utilize the dispute resolution process also amounts to a failure to exhaust administrative remedies, which bars its claim under ERISA. Further, to the extent the SBC seeks money damages from its ERISA claim, its claim should be dismissed because ERISA Section 502(a)(3) permits only equitable relief, not money damages.

Navistar also seeks dismissal of the SBC's breach of contract claim pursuant to FRCP 12(b)(1) on the grounds that the SBC lacks standing to assert this claim.

1

For these and other reasons as detailed below, the Court should dismiss the Amended Complaint with prejudice and compel resolution of this matter to the dispute resolution process prescribed in the PSP.

## RELEVANT FACTS

### I. Settlement Agreement and Consent Decree

In 1993, Navistar and other affiliated entities entered into a Settlement Agreement with a class of active and retired employees, along with several unions that represented some of the class members. In June 1993, this Court entered final judgment approving the Settlement Agreement as a Consent Decree. (Dkt. Nos. 326, 327). The SBC was not a party to the original litigation; rather, it was formed pursuant to the Settlement Agreement. (Dkt No. 415, ¶¶ 1-3; Dkt. No. 327; *see also* Dkt. No. 395-1, p. 2 n.1). Specifically, the Settlement Agreement established a Retiree Health Benefit and Life Insurance Plan, which included the Retiree Supplemental Benefit Program. (Dkt. No. 399-2, p. 6). The SBC was created to administer the Retiree Supplemental Benefit Program, which includes the PSP. (Dkt. No. 399-3, pp. 25-26).

The PSP requires Navistar to make contributions to the Retiree Supplemental Benefit Trust based on a particular measurement of profitability. (Dkt. No. 399-5). The contribution amount is determined by a formula prescribed in the PSP. (*Id*. at §§ 6.1-6.7 & 7.1-7.3). The PSP sets forth calculations for determining employees' "Qualifying Hours" and Navistar's "Qualifying Profits," two central components of the formula. (*Id*. at §§ 4.1-4.10 & 5.1-5.8). The PSP defines which Navistar entities and affiliates are "Covered Operations" for purposes of calculating Qualifying Hours and Qualifying Profits, and the extent to which the operating results of businesses acquired after the Effective Date of the Settlement Agreement are to be included in Qualifying Profits. (*Id*. at §§ 3.1, 4.9, 5.5). Under the PSP, if there are sufficient

2

Qualifying Profits, Navistar must make a contribution to the Retiree Supplemental Benefit Trust. (*Id*. at §§ 7.1 & 8.1).  If Navistar does not have sufficient Qualifying Profits for the year, it is not obligated to contribute any money to the Retiree Supplemental Benefit Trust.  (*Id*. §§ 7.3 & 8.3).

Section 8.1 of the PSP requires that Navistar provide the SBC with certain information, including "a worksheet detailing the calculation of the Contribution obligation, the Qualifying Hours, and the Qualifying Profits. . . . and a listing by category of the employees included and excluded in the calculation of Qualifying Hours and all information reasonably necessary to review the calculation of Qualifying Profits." (*Id*. at § 8.1).  Navistar's data on profits, hours worked, Qualifying Profits and Qualifying Hours must be reviewed by a certified public accounting firm, which prepares a report that is delivered to the SBC "setting forth the procedures performed and the conclusions reached." (*Id*. at § 8.2).

If the SBC disputes the information or calculations provided by Navistar pursuant to Sections 8.1 through 8.3 of the PSP, then the SBC has thirty calendar days from receipt of the information to inform Navistar of the dispute.  (*Id*. at § 8.4).  Thereafter, the Company and the SBC are required to attempt, for a period of thirty days, to resolve the dispute. (*Id*.).  If the parties are unsuccessful, they are to identify a mutually acceptable third party to resolve the dispute.  (*Id*. at §§ 8.4.1 & 8.4.2).  If the parties cannot agree on a third party to resolve the matter, the matter shall be referred to an accounting firm.  (*Id*. § 8.4.2).  Thus, under the dispute resolution provisions of the PSP, if the SBC claims that Navistar's calculations are incorrect and the parties cannot reach a mutually agreeable solution, the dispute must be resolved by a third party or an accounting firm. (*See id*. at § 8.4).  After hearing the parties' evidence and arguments, the third party or accounting firm "shall render a decision which shall be final and binding on all parties to the dispute."  (*Id*. at § 8.4.3).

## II.    The Instant Proceedings

In March 2012, the SBC filed a motion to intervene in the *Shy* litigation.  (Dkt. No. 394).  At the same time, the SBC filed a motion to enforce the Consent Decree, requesting the Court to compel Navistar to provide calculation worksheets and other information the SBC claimed it needed to verify Navistar's calculations of its Qualifying Hours and Qualifying Profits for certain fiscal years.  (Dkt. No. 395).  On February 6, 2013, the Court granted the SBC's motion to intervene and directed the SBC to file a complaint in compliance with Federal Rule of Civil Procedure 24(c).  (Dkt. No. 414).  On February 15, the SBC filed a complaint against Navistar alleging the Company breached the PSP by failing to provide the information requested in its motion to enforce. (Dkt. 415).  On March 29, the Court granted the SBC's motion to enforce the Consent Decree, and it set a schedule for the SBC to file an information request and for Navistar to comply with the request or otherwise object.  (Dkt. No. 426).  On May 10, Navistar notified the Court that it had fully complied with the Court's March 29, 2013 Order and timely produced over 75,000 pages of documents and detailed written responses to the SBC's information requests.  (Dkt. No. 428).  The SBC never disputed Navistar's compliance with the Court's order and has not maintained its original claim (failure to provide information) in its Amended Complaint.

After reviewing the information Navistar provided, the SBC filed a Motion for Leave to File an Amended Complaint.  (Dkt. No. 432).  Navistar objected to the motion on the grounds that the proposed amended complaint was futile and would prejudice the Company.  (Dkt. No. 433).  The Court permitted the SBC to file the amended complaint without deciding whether the amended complaint stated valid claims for relief.  (Dkt. No. 437).

4

The Amended Complaint asserts claims for breach of contract (Count I) and violations of ERISA (Count II). Both counts allege that Navistar incorrectly calculated the profit-sharing payments due under the PSP and thus breached the terms of the PSP by: (1) treating newly formed entities as acquired businesses and then not properly allocating revenues, costs and expenses in its profit calculations; (2) excluding certain dividends and other payments from its calculations of Qualifying Profits; (3) excluding Medicare Part D subsidy payments from its calculation of Qualifying Profits; and (4) failing to exclude Bonus Eligible employees from its calculation of Qualifying Hours. (Dkt. No. 432-1 ¶¶ 60, 65). The SBC claims that these alleged calculation errors impacted a period spanning a dozen years or more. (*Id.* ¶¶ 1, 33-34).

## ARGUMENT

Navistar files this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of claims that fail to state a claim upon which relief can be granted. In order to survive a Rule 12(b)(6) motion to dismiss, the claim must be supported by facts that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. v. Twombley*, 550 U.S. 544, 555-56 (2007). The Court may dismiss a complaint for breach of contract where, as here, the grounds for dismissal are based on an issue of contract interpretation and thus are matters of law. *See Jewell Coke Co., L.P. v. Arcelor Mittal USA, Inc.*, 2010 WL 4628756, at *3 (N.D. Ohio 2010); *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012). Similarly, a Rule 12(b)(6) motion may be based on certain affirmative defenses, such as the failure to exhaust administrative remedies, where the affirmative defense is established by the pleadings. *See Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 947, n.3 (S.D. Ohio 2003) (citing *Dixon v. Alexander,* 741 F.2d 121, 122 (6th Cir.1984)).

Navistar also seeks an order compelling resolution of the allegations in the Amended Complaint by the dispute resolution procedures prescribed in Section 8.4 of the PSP.

## I.  The SBC's Breach of Contract Claim Must Be Resolved through the PSP's Dispute Resolution Process

### A.  The Plain Language of the PSP Mandates the Dispute Resolution Process

Consent decrees are interpreted according to principles of contract law. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975). As the Supreme Court has explained:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. . . . For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written.

*United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971).

The Consent Decree unambiguously states that if the SBC disputes the information or calculations provided to it by Navistar, the dispute must be resolved by the dispute resolution process prescribed in Section 8.4 of the PSP. (Dkt. No. 399-5, §§ 8.1, 8.4). The SBC's breach of contract claim challenges Navistar's calculations of its Qualifying Profits and Qualifying Hours over a number of years and alleges the Company failed to include or exclude certain information from those calculations. (Dkt. No. 432-1 ¶¶ 60, 65). These allegations fall squarely within the scope of Section 8.4 of the PSP, and, therefore, these disputes must be resolved by the process described therein.

The Federal Arbitration Act established an "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 132 S.Ct. 23, 25 (2011). The Supreme Court has

long held that "where the contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Any doubts about the scope of the PSP's arbitration clause "should be resolved in favor of arbitration." *Granite Rock Co. v. International Bhd. of Teamsters*, 130 S.Ct. 2847, 2857 (2010); *see AT&T Techs., Inc.*, 475 U.S. at 650; ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

Although the term "arbitration" is not defined in the FAA, a contract provision is given the federal protections and deference of an arbitration clause if the provision resembles the characteristics of classic arbitration. *Salt Lake Tribune Pub. Co. v. Mgmt. Planning, Inc.*, 390 F.3d 684, 689 (10th Cir. 2004); *see also Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004) ("common incidents" of arbitration include final, binding remedy by an independent adjudicator applying substantive standards, and an opportunity for each side to present its case). Section 8.4 of the PSP contains all of the hallmarks of an arbitration clause including: resolution by an independent third party applying substantive accounting principles, presentation of evidence and arguments, and a final and binding remedy. Federal courts have routinely enforced similar provisions with the same force as an arbitration clause. *See, e.g., Isaac v. Ebix, Inc.*, 2012 WL 1020296, at *6 (S.D. Ohio 2012); *Omni Tech. Corp. v. MPC Solutions Sales, LLC*, 432 F.3d 797, 798-99 (7th Cir. 2005) (contract provision calling for final binding decision by an independent accountant treated as arbitration); *Fit Tech*, 374 F.3d at 6-7 (accounting remedy in purchasing agreement treated as arbitration). Because the dispute resolution procedures in Section 8.4 cover the allegations in the Amended Complaint, the Court

should defer the matter to those procedures consistent with the long line of Supreme Court and other authority cited above.

### B. The Parties Intended these Matters Be Resolved Through Dispute Resolution

The Court's task in interpreting a consent decree is "to ascertain the intent of the parties at the time of settlement." *Nat'l Ecological Found. v. Alexander,* 496 F.3d 466, 477-78 (6th Cir. 2007). By creating a dispute resolution process in the PSP, it is clear that the parties to the underlying *Shy* litigation intended for the type of disputes brought here to be resolved outside of court. The parties contemplated the possibility that the SBC and Navistar would disagree over how the Company calculated its profits and whether Navistar had a Contribution obligation to the Retiree Supplemental Benefit Trust, and they intended and agreed that such disputes should be resolved by a third party or accounting firm possessing the special expertise to decide these issues. Indeed, the tasks involved in resolving these disputes are precisely the type of work that accountants – not courts – regularly perform: *i.e.*, examining corporate books and verifying the bases and support for revenues, costs and profit-sharing calculations. *See Omni Tech.*, 432 F.3d at 799.

The scope of the designated third party's responsibilities described in Section 8.4.3 of the PSP further demonstrates that the parties intended the designated third party to do exactly what the SBC is now asking the Court to do, to resolve disputes regarding Navistar's calculations of its Qualifying Profits and Qualifying Hours. Section 8.4.3 states that the parties are to "present evidence and argument in support of their position," and that the third party "shall render a decision which shall be final and binding on all parties to the dispute." There can be no more clear indication that the third party's role is to resolve disputes between the parties, or else

"evidence and argument" would not be necessary and the third party would not be given authority to render a final and binding decision.

The SBC's attempt to ignore the terms of the PSP deprives the parties to the Settlement Agreement of the terms and conditions they negotiated over twenty years ago. The parties who settled this matter (before the SBC was even created) deliberately chose to have disputes like those at issue in this case decided in a forum other than a court. Parties have many reasons for agreeing to dispute resolution processes like the one prescribed in Section 8.4 of the PSP, such as "allow[ing] for efficient, streamlined procedures tailored to the type of dispute," requiring "that the decision maker be a specialist in the relevant field," or "that the proceedings be kept confidential." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46, 1748-49 (2011). Moreover, "the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Id.*

These considerations apply here. First, the parties desired to have financial and accounting disputes decided by experts applying industry-accepted methods. Second, the parties intended to avoid the expense and fees of litigation and discovery every time the SBC and Navistar had a dispute over the Company's profit calculations. Instead, the dispute resolution process permits the parties to obtain a "final and binding" decision, as provided in the agreement, without resorting to full-blown federal court litigation. (Dkt. No. 399-5 at § 8.4).

As the U.S. Supreme Court has held: "Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written." *United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971). As written, the Settlement Agreement requires the parties to resolve the disputes raised in the SBC's

Amended Complaint through the dispute resolution process. That was one of the conditions under which Navistar entered into the Consent Decree, and that condition must be respected.

### C. The SBC's Arguments against the Dispute Resolution Process are Unavailing

With its Amended Complaint, the SBC both urges this Court to enforce the Consent Decree and simultaneously ignores the terms of the Decree requiring the use of the dispute resolution process. The SBC cannot pick and choose which provisions should be enforced. "[T]he court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree." *EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 80 (2d Cir. 1996). The Court must enforce the PSP's dispute resolution process as it would any other provision of the Consent Decree.

In support of its motion to amend the complaint, the SBC contended that the dispute resolution process in the PSP is "far too narrow to encompass the issues" alleged in the Amended Complaint. (Dkt. No. 434 at 2-3). The SBC argued that the breach of contract claim involves issues of interpretation of the Consent Decree, whereas the dispute resolution process only governs disputes regarding Navistar's calculations of its profit-sharing contributions. In so arguing, the SBC seeks to grossly limit the third party's role, so that instead of resolving disputes it would simply verify math.

### 1. The SBC's position is contradicted by the terms of the PSP

The SBC's limited view of the PSP's dispute resolution procedures makes no sense when read in conjunction with other sections of the PSP. Section 8.2 requires a certified public accounting firm to review Navistar's data on "profits, hours worked, Qualifying Profits, and Qualifying Hours" and prepare "[a] letter report setting forth the procedures performed and conclusions reached" which is provided to the SBC. (Dkt. No. 399-5 at § 8.2). Thus a process to

10

independently verify Navistar's calculations is already contained in Section 8.2 of the PSP, and this process of verifying calculations occurs regardless of whether a dispute arises. The dispute resolution process in Section 8.4 is clearly intended to go beyond simple math verification, as shown by its detailed procedures, which include informal resolution, selection and striking of accounting firms, presentation of evidence and arguments, and a final and binding decision. There is no need for the detailed procedures in Section 8.4 if the sole purpose of the dispute resolution process is to verify math, particularly when that work has already been reviewed by a certified public accounting firm pursuant to Section 8.2.

Rather, the third party's responsibilities to hear arguments and render decisions regarding disputes over Navistar's profit calculations require interpretation and application of accounting terms. The SBC itself acknowledges this in its Amended Complaint. The SBC's primary claim is that Navistar incorrectly classified entities as businesses acquired after the effective date of the Settlement Agreement, which resulted in the income or loss of those entities' being included on an after-tax, rather than a pre-tax, basis. The SBC notes that the PSP does not define a "business acquired," but that Section 5.8 requires that items shall be "calculated in accordance with generally accepted accounting principles." The SBC then proffers its version of generally accepted accounting principles for a "business acquired," and concludes that Navistar has improperly classified entities as acquired businesses. (Dkt. No. 432-1, Am. Comp.¶ 38). With its assertion that, pursuant to Section 5.8 of the PSP, generally accepted accounting principles must be used to calculate Qualifying Profits, the SBC acknowledges that an accounting firm is uniquely qualified to resolve the parties' dispute.

The SBC also wrongly contends that "only a court can provide the type of relief that the Committee seeks in its Amended Complaint." (Dkt. No. 434 at 2). Section 8.4.3 of the PSP

11

prescribes that the designated third party or accounting firm "shall render a decision which shall be final and binding on all parties to the dispute," and nothing precludes either party from enforcing the third party's decision, if necessary, through this Court's remedial powers.

### 2. The SBC's past conduct confirms the applicability of the dispute resolution process

The SBC's position that the dispute resolution process does not cover its present claims is contradicted by its own past invocation of the process to resolve one of the disputes raised in the Amended Complaint. As the Court noted in its March 29, 2013 Order, the SBC "provided notice of dispute and expressly invoked Section 8.4 of the PSP in its May 4, 2010, letter to Navistar." (Dkt. No. 426 at 26-27; *see also* Dkt. No. 415-3).[1] In that May 4, 2010 letter, the SBC challenged Navistar's exclusion of the Medicare Part D subsidy from its calculation of Qualifying Profits for fiscal years 2007 through 2009. (Dkt. No. 415-3 at 2). Specifically, as stated in the letter: "The Committee disputes the Company's calculation of Qualifying Profits for each of the years 2009, 2008 and 2007" and provides "notice of that dispute pursuant to section 8.4 of the Supplemental Benefit Plan." (*Id.*) The SBC further described in its letter that the Company's exclusion of the Medicare Part D subsidy from its Qualifying Profits "has no basis in law or in the Supplemental Profit Sharing Plan document." (*Id.*). The SBC disputed Navistar's interpretation of the terms of the PSP, not just its math. The dispute required analysis and interpretation of the PSP, and the SBC rightfully acknowledged that the dispute should be resolved through the PSP dispute resolution process. In its Amended Complaint, the SBC again disputes the Company's exclusion

---

[1] On that occasion, Navistar declined to participate in the dispute resolution process because the dispute was moot as the amount in controversy was insufficient to create a profit-sharing payment obligation even if the SBC were to have prevailed on its claim. The SBC never pursued the matter further nor sought to compel resolution through the dispute resolution process. The SBC cannot argue based on this past event that Navistar is seeking to delay or evade resolution of the present dispute. Navistar is prepared to immediately commence the dispute resolution process to resolve the claims asserted in the Amended Complaint.

of the Medicare Part D subsidy from its calculation of Qualifying Profits (expanded for the years 2004-2010). (Dkt. No. 432-1, Am. Comp.¶ 48-51). Thus the SBC's express recognition of the applicability of the dispute resolution process in the past belies any argument that the process does not apply now to the same dispute.

Previously in this litigation, in response to the SBC's original Complaint in which the SBC sought to compel Navistar to produce certain information, Navistar argued that the SBC's claims fell within the scope of the PSP's dispute resolution procedure. (Dkt. No. 422 at 9-10). The SBC argued, and the Court agreed, that the dispute resolution process would not be triggered until after Navistar disclosed the requested information. (Dkt. No. 423 at 4-5; Dkt. No. 426 at 25-28). In its March 29, 2013 Order, the Court reasoned that it was premature to refer this matter to the dispute resolution process because the SBC had "not yet conducted the kind of substantive review that would trigger the dispute resolution process." (Dkt. No. 426 at 26). Now that the information requested has been provided and reviewed and the SBC has decided to dispute Navistar's calculations, the Court's reasoning compels the conclusion that this matter must now be deferred to the agreed alternative dispute resolution process.[2]

## II.     The SBC Lacks Standing to Assert a Breach of Contract Claim

In addition, Navistar seeks dismissal of Count I pursuant to Federal Rule 12(b)(1) on the grounds that the SBC, which was not a party to the Consent Decree and did not exist at the time the Consent Decree was entered, lacks standing to enforce the Decree. *See, e.g., Aiken v. City of Memphis*, 37 F.3d 1155, 1167-1168 (6th Cir. 1994); *Vogel v. City of Cincinnati*, 959 F.2d 594,

---

[2] The Amended Complaint also raises substantial issues as to the timeliness of some or all of the claims being asserted by the SBC in light of the 30 day limitations period established by the PSP and the applicable statutes of limitations. (Dkt. No. 399-5 at § 8.4). Those issues will materially impact the scope of the present dispute and should be decided before the parties litigate the merits, regardless of the forum in which this matter proceeds. Navistar reserves its arguments on this issue and will be present them promptly after the motion to dismiss is decided.

598 (6th Cir. 1992); *S.E.C. v. Dollar Gen. Corp.*, 378 F. App'x 511, 514-516 (6th Cir. 2010); *Sanders v. Republic Servs. of Kentucky, LLC*, 113 F. App'x 648, 650 (6th Cir. 2004). Navistar previously raised this argument in its memorandum in support of its motion to dismiss the SBC's original complaint, and the Court ruled on this issue in the SBC's favor. (Dkt. Nos. 422 at 7-8, 426 at 21-25), but Navistar again raised the argument with this pleading. Accordingly, Navistar incorporates the legal arguments asserted in its previous motion to dismiss and supporting memorandum on this issue as though stated herein.

**III.  The SBC Fails to State an ERISA Claim Because the SBC Has Failed to Exhaust a Clear Administrative Remedy that Is Readily Available**

Similar to Count I, the SBC's claim in Count II under Section 502(a)(3) of ERISA should be dismissed because the SBC failed to comply with the unambiguous administrative resolution process set forth in Section 8.4 of the PSP. Widely-recognized exhaustion of administrative remedies principles under ERISA prevent the SBC from avoiding the clear administrative remedies available to it under the PSP by pursuing its ERISA claims directly in court.

In other ERISA contexts, the Sixth Circuit Court of Appeals has held that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994). The Sixth Circuit has not yet decided whether a fiduciary must exhaust administrative remedies before pursuing a claim under Section 502(a)(3) of ERISA,[3] but Sixth Circuit decisions suggest that an exhaustion requirement would apply in factual circumstances

---

[3] In an unpublished decision, the Sixth Circuit considered the unique factual situation of an insurer seeking to enforce the terms of a plan's coordination of benefits provision under federal common law and found the insurer did not have a duty to exhaust administrative remedies. *See Prudential Prop. & Cas. Ins. v. Delfield Co. Grp. Health Plan*, 187 F.3d 637 (6th Cir. 1999). However, unlike the present case, it is unclear what administrative procedure would have been available to the plaintiff in *Prudential Property*.

14

that are analogous to this case. *See Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005) (noting in another ERISA context that the court has not decided whether a beneficiary must exhaust administrative remedies prior to bringing claims based on statutory rights, and that the court instead resolves such cases based on whether exhaustion would be futile); *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504-05 (6th Cir. 2004) (affirming dismissal of ERISA statutory claims for failure to exhaust, where court found that administrative remedies would not be futile).

Many of the policies for requiring exhaustion articulated by the Sixth Circuit in *Costantino* apply in this case. The court in *Costantino* noted that exhaustion of administrative remedies serves a number of important policies, such as helping to reduce the number of frivolous lawsuits under ERISA, promoting the consistent treatment of claims, providing a non-adversarial method of claims settlement, and minimizing the costs of claims settlement for all concerned. *Costantino*, 13 F.3d at 975. Each of those considerations is present here. The plan-mandated dispute resolution process will reveal the SBC's claims to be frivolous, and that process will be efficient and ultimately less expensive than federal court litigation. Most importantly, it would do nothing to promote the consistent treatment of claims if the plan-mandated process was ignored on the whim of the SBC. The PSP provides an administrative process, and sound policy under ERISA confirms that the SBC should be required to utilize that process rather than using a federal court to supplant that process. In fact, the Sixth Circuit recently forced ERISA claims into arbitration where an arbitration provision clearly applied. *VanPamel v. TRW Vehicle Safety Systems, Inc.*, 723 F.3d 664, 669-70 (6th Cir. 2013) ("ERISA claims can be the subject of arbitration pursuant to a collective bargaining agreement, even

without an express listing of 'ERISA claims' in the arbitration provision, because the genesis of the claim is the agreement, not a statute.").

The exhaustion requirement is particularly compelling here because the PSP provides a clear administrative remedy that addresses the SBC's precise factual claims in the Amended Complaint. In particular, Section 8.4 of the PSP states:

- If the SBC disputes the calculations for profit-sharing, the SBC "<u>shall</u> inform the Company of such dispute within 30 calendar days." (PSP § 8.4).

- Navistar and the SBC "<u>shall</u> thereafter attempt, for a period not to exceed 30 calendar days, to resolve such dispute." (*Id.*).

- Following the selection of a third party to resolve the dispute, the parties "<u>shall</u> present evidence and argument in support of their position." (§ 8.4.3).

- Then, the third party "<u>shall</u> render a decision which <u>shall</u> be final and binding." *Id.*

Importantly, these procedures are not permissive; they are mandatory. The Court should not permit the SBC to avoid mandatory procedures that were established to resolve the exact type of disputes that are being pursued here.

While the claims pursued here are different from the typical single-plaintiff claim for benefits under ERISA, Sixth Circuit law nevertheless supports the application of an exhaustion requirement here. For example, the court in *McLaren Inv. & Ret. Comm. v. Whitehead*, 2009 WL 2777244 (W.D. Mich. 2009), required the parties to submit additional information so that the court could consider whether the plan document provided a review procedure that should have been exhausted. Like the ERISA claim asserted here, the *McLaren* case involved a suit brought by a plan fiduciary under Section 502(a)(3) of ERISA. The court noted that cases involving the interpretation of a plan under ERISA could be subject to a duty to exhaust. *Id.* at *3. Similarly, this matter involves the interpretation of the PSP, not an independent statutory violation of

ERISA. The court in *McLaren* also pointed to many of the same policy reasons summarized above that supported the exhaustion of administrative remedies in *Costantino. Id.* at *2.

Finally, while the Sixth Circuit does not require exhaustion of administrative remedies where the process would be "futile," futility of exhaustion cannot be shown in this case and it has not been plead in the Amended Complaint. The standard for determining the futility of resorting to the administrative remedies provided by the plan "is whether a clear and positive indication of futility can be made." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). In order to successfully argue the futility of exhaustion, a claimant bears the burden of proving futility beyond mere conclusory allegations. To avoid the exhaustion requirement, the SBC "must show that 'it is certain that [its] claim will be denied on appeal, not merely that [it] doubts that an appeal will result in a different decision.'" *Id.* (*quoting Lindemann v. Mobil Oil Corp.*, 79 F.3d 647 (7th Cir. 1996)). The SBC has no basis for arguing that its claims are "certain" to be denied if the PSP administrative process is used. The parties have the opportunity to pick a "mutually acceptable third party" or to strike names from a list to identify an accounting firm to resolve the dispute. Each party has the opportunity to present evidence and arguments in support of its positions. There is simply no basis for the SBC to assert that its claim "will be denied" if it goes through the PSP's dispute resolution process, and indeed, the SBC has made no such allegation of futility.

In short, the SBC has asked this Court to enforce certain provisions of the PSP (governing the calculation and payment of profit-sharing contributions), but has also asked the Court to ignore another key provision of the PSP (Section 8.4, which provides a dispute resolution procedure, with an impartial third party, to decide the exact remedy that they seek).

The SBC should not be permitted to pursue a claim under ERISA to enforce certain terms of the PSP and simultaneously ignore other terms of the PSP.

## IV. The SBC Fails to State a Valid ERISA Claim To the Extent That it is Seeking Money Damages That Are Not Available Under ERISA

The SBC has sought a variety of remedies in its prayer for relief, including "damages" equal to the profit sharing contributions that it alleges are owed to the Retiree Supplemental Benefit Trust. (Compl., Art. VI, Prayer for Relief §§ A, B). The SBC also states it seeks equitable relief, but it is unclear what equitable relief is even available. After all, the Consent Decree already constitutes a court order to follow the terms of the PSP, and seeking an injunction to pay money is simply artful pleading for money damages. In reality, the SBC has included the words "appropriate equitable relief" in its prayer for relief because it knows that it must – otherwise, its ERISA claim could not go forward. ERISA Section 502(a)(3) permits only equitable relief; it does not permit money damages. Therefore, the relief sought by the SBC's ERISA claim should be strictly limited by the Court to the equitable relief permitted under Section 502(a)(3), and the SBC's ERISA claim should be dismissed to the extent it seeks any other type of relief, including money damages.

The SBC brings its ERISA claim under Section 502(a)(3) of ERISA. Section 502(a)(3) of ERISA permits a suit by, *inter alia*, a fiduciary "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA Title I] or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has long held that the only relief available under that section is that which was "typically available in equity." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256-57 (1993) (noting that "injunction, mandamus, and restitution, but not compensatory damages" were available under ERISA Section 502(a)(3)).

18

Since *Mertens*, the Supreme Court has further articulated the types of remedies that are available under Section 502(a)(3) and those which are not. In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court noted that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 210-11. The Court further noted that even restitution would not be an appropriate remedy under Section 502(a)(3) where the plaintiff could not identify "particular" property in the defendant's possession. *Id.* at 214. Where the plaintiff argues more generally that he is "contractually entitled to *some* funds," rather than a particular identifiable fund in the defendant's possession, no cause of action was permissible. *Id.*

Following the path of the Supreme Court, the Sixth Circuit has also limited the remedies that are available under Section 502(a)(3) to traditional equitable relief. For example, in *Helfrich v. PNC Bank, Inc.*, 267 F.3d 477 (6th Cir. 2001), a retirement plan participant sued under Section 502(a)(3), claiming that the plan administrator failed to timely roll over his funds and sought the difference in the amount he would have received had the roll over been effectuated as instructed. The court held that the plaintiff's claim was not one for restitution, but rather for money damages, and dismissed the case. *Id.* at 482-83. Similarly, in *Crosby v. Bowater Inc. Retirement Plan*, 382 F.3d 587 (6th Cir. 2004), a retirement plan participant sued for additional benefits he claimed were owed to him. The prayer for relief asked the court to order the defendant to "[r]e-compute any and all lump sum benefits previously paid" and "pay all Plan participants…the difference between the amount [sp] computed…and the lump sum amount…received from the Plan, plus pre-judgment and post-judgment interest on this amount." *Id.* at 591. Citing *Knudson* and *Mertens*, the court noted that Section 502(a)(3) only authorizes suits for injunctive or other equitable relief and not "an action for money claimed to be due and owing." *Crosby*, 382 F.3d at

19

589.  Because the court found that the plaintiff's lawsuit was essentially one seeking money damages, it reversed the district court's judgment and dismissed the case.

While it remains unclear what, if any, equitable relief the SBC is seeking under ERISA, one thing is clear: the Court cannot award money damages to redress any violation of Section 502(a)(3).  Therefore, the Court should dismiss Plaintiff's ERISA claim to the extent that it seeks money damages, an injunction to pay money, or any other type of relief that is not typically available in equity.

## CONCLUSION

The Settlement Agreement and PSP require that disputes between the SBC and Navistar over profit-sharing calculations and contributions are to be resolved by an alternative dispute resolution procedure that is outlined in the PSP.  The SBC, in its Amended Complaint, disputes Navistar's calculations and contributions. Therefore, the Amended Complaint should be dismissed with prejudice and the matter should be referred to the PSP's dispute resolution process.

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

 s/ David P. Pierce
          DAVID P. PIERCE (0061972)
          33 W. First Street, Suite 600
          Dayton, OH  45402
          Phone:  937-223-8177
          Fax:  937-223-6705
          E-mail:  pierce@coollaw.com

*TRIAL ATTORNEY FOR DEFENDANT*
*NAVISTAR, INC.*

OF COUNSEL:
David P. Radelet
Sally J. Scott
William R. Pokorny
Abizer Zanzi
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone: (312) 986-0300
Fax: (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendant*
*Navistar, Inc.*


## CERTIFICATE OF SERVICE

    I hereby certify that on October 17, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail to those parties to whom electronic notice has not been sent. Parties may access the filing through the Court's system.


                s/ David P. Pierce
                David P. Pierce

w:\wdox\client\009025\00382\00649965.docx