## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ART SHY, et al. | |
|     Plaintiffs, | |
| v. | Case No. C-3-92-333 |
| NAVISTAR INTERNATIONAL CORPORATION, et al. | Judge Walter Herbert Rice |
|     Defendants. | |
| SUPPLEMENTAL BENEFIT COMMITTEE OF THE NAVISTAR INTERNATIONAL TRANSPORTATION CORP. RETIREE SUPPLEMENTAL BENEFIT PROGRAM, | |
|     Intervenor-Plaintiff, | |
| v. | |
| NAVISTAR, INC., | |
|     Defendant. | |

**INTERVENOR-PLAINTIFF'S OPPOSITION TO DEFENDANT NAVISTAR'S MOTION TO DISMISS INTERVENOR-PLAINTIFF'S AMENDED COMPLAINT AND COMPEL DISPUTE RESOLUTION PROCESS**

Intervenor-Plaintiff Supplemental Benefit Committee of the Navistar International Corporation Retiree Supplemental Benefit Program (the "Committee") respectfully submits this memorandum in opposition to the motion of Defendant Navistar, Inc. ("Navistar" or the "Company") to dismiss Intervenor-Plaintiff's Amended Complaint and to compel the dispute resolution process, Dkt. No. 438 ("Motion" or "Mot."). For the reasons set forth below, Navistar's Motion should be denied.

Navistar's latest attempt to avoid judicial review of its actions relies on the Federal Arbitration Act, as if legislation that allows private parties to keep out of court altogether applies in full force to an agreement between litigants settling a lengthy court battle that was reviewed by a court and embodied in a judicial order.  Indeed, both this Court and the Sixth Circuit have time and again rebuffed similar attempts by Navistar, affirming and reaffirming this Court's dominant role in the interpretation and enforcement of the Amended and Restated Settlement Agreement entered in *Shy v. Navistar International Corp.*, Civ. No. 3:92-cv-333-WHR (S.D. Ohio), Dkt. No. 398-2 – 398-4 (the "Shy Agreement").  This time is no different.  As we show below, a process for settling calculation errors cannot possibly be the right way to address the complex questions presented by the Amended Complaint.

**I.      Process Considerations Prove That the Parties Could Not Have Intended This Type of Dispute to be Resolved by the Dispute Resolution Process.**

Contrasting how the matter would proceed in this Court with how it would proceed before an accountant makes clear that the dispute resolution process is ill suited for this dispute.

**A.  The Decision-Maker**

Were the matter to proceed in this Court, of course, the task of contract interpretation would be undertaken not only by a federal district court judge well experienced in such matters but by the very judge who oversaw the creation of the settlement agreement and entered it as his own order.  In that sense, this Court is as much a party to the Shy Agreement as the litigants and is uniquely situated to interpret it.  Moreover, this Court has a well-developed understanding of the context in which the dispute arises, as it has continued to oversee disputes regarding that Agreement.

By contrast, consider the decision-maker under the dispute resolution process.  That process requires that, in the event the parties cannot agree on a "mutually acceptable third party

(such as an accounting firm) to resolve" the dispute (Supplemental Benefit Trust Profit Sharing Plan ("PSP") § 8.4.1), the parties will engage in a process of alternating strikes to a list of the seven largest accounting firms until only one firm remains, and that firm will resolve the dispute. PSP § 8.4.2.  The PSP says nothing about the parties' ability to select a particular accountant from within that firm.  This indicates that the dispute resolution procedure was intended for nothing more than routine accounting disputes that any minimally competent accountant could handle, and is simply not designed to produce an arbiter that is suited for this type of dispute.

Even if the parties could miraculously find an accountant who could match this Court's experience with contract interpretation and who could someday or somehow develop a comparable understanding of the context here, that person would still lack the specialized expertise of this Court that is critical to a fair resolution of the issues.  Accountants are trained to perform audits and certain other kinds of "attest work," not legal analysis, and the standards governing licensed accountants recognize as much:

> The auditor's education and experience enable him or her to be knowledgeable about business matters in general, but the auditor is not expected to have the expertise of a person trained for or qualified to engage in the practice of another profession or occupation.  During the audit, however, an auditor may encounter complex or subjective matters potentially material to the financial statements.  Such matters may require special skill or knowledge and in the auditor's judgment require using the work of a specialist to obtain appropriate audit evidence.

Statement of Auditing Standards ("SAS") No. 73 ("Using the Work of a Specialist"). Significantly, the SAS specifically identifies contractual interpretation as a matter for attorneys. *Id*. at .02 ("For example, attorneys may be engaged by a client or by the auditor as specialists in a variety of other circumstances, including interpreting the provisions of a contractual agreement."); *see also id*. at .07 (noting that accountants may be required to consult attorneys when the work involves the "[i]nterpretation of technical requirements, regulations, or

3

agreements (for example, the potential significance of contracts or other legal documents or legal title to property)").

Navistar understands this distinction and interaction between the role of an accountant and the role of a lawyer, as evidenced by Navistar's General Counsel Steven Covey's February 9, 2005 letter to Deloitte & Touche in the context of its audit of the PSP, attached hereto as Exhibit A.  Mr. Covey wrote, "You have requested my views regarding the treatment of Medicare subsidy payments to the Company for purposes of calculating qualifying profits for the *Shy* Supplemental Benefit Trust Profit-Sharing Plan (the 'Plan')."  Ex. A at 1 (2/9/2005 S. Covey Letter to Deloitte & Touche).  Mr. Covey then set forth his legal opinion that Medicare Part D subsidies should not be considered pre-tax income, *id.*, and thus the accountants did not question Navistar's position in their audit of Navistar's PSP contributions.  As Mr. Covey recognized, interpretation of the PSP is appropriate for someone trained in the law, not an accountant.

**B. Discovery**

The intent of the Committee's prior request for information was to determine whether there were grounds to believe that Navistar has violated the Shy Agreement, and, if so, whether the amount at issue was material.  The Committee's approach was to obtain basic financial information and then do a rough calculation of what should have been paid under the Committee's interpretation of the Shy Agreement.  That process led to the Amended Complaint, in which the Committee not only identified the areas of disagreement regarding the interpretation of the Agreement, but also set forth its inference from the available information that Navistar had engaged in a deliberate attempt to evade the requirements of the Agreement.

The discovery that the Committee intends to conduct in this litigation will be aimed at proving those two basic claims.  For example, where Navistar previously provided financial

4

information regarding a given subsidiary, the Committee will now seek documents relating to the purposes or goals of acquiring or creating that subsidiary, along with documents relating to the allocation of income and expenses among such subsidiaries and affiliates.  To support its claims that Navistar engaged in a concerted scheme to decrease its profit-sharing obligations, the Committee will seek evidence from both Navistar and its accounting firms on how Navistar's interpretation of the Shy Agreement changed in or around 2000, as well as evidence that Navistar encouraged and rewarded employees for devising ways to lessen the impact of profit-sharing contributions on the Company's financial situation.

Given the wide-ranging nature of Navistar's scheme to avoid profit-sharing, discovery in this matter will inevitably give rise to disputes about any number of issues.  For example, the Committee expects that there will be many documents involving Navistar's lawyers because of their integral role in creating the subsidiaries at issue and, as shown by the correspondence with the accountants involving the Medicare Part D issue discussed above, there are undoubtedly many examples of interpretations of the Shy Agreement by Navistar's lawyers.  This Court, of course, routinely resolves discovery disputes and complex privilege issues.  But such complicated discovery matters are far outside any accountant's expertise.[1]

---

[1] Based on Navistar's motion to dismiss and to compel arbitration, it appears that Navistar anticipates that this Court will deny its motion, and that Navistar intends to then take an immediate appeal to the Sixth Circuit.  Even assuming such an appeal were permissible, the Committee does not believe that an appeal would prevent it from pursuing discovery in the meantime.  Because discovery would be necessary and available whether the parties proceed in this Court or through the dispute resolution process, there would be no reason to delay discovery until after the appeal.  See *Tillman v. Macy's Inc.*, where the court denied a defendant's request to stay the proceedings pending its interlocutory appeal under the Federal Arbitration Act, noting that a district court "retains the discretion to determine, on a case-by-case basis, whether the proceedings in [the] action should be stayed pending the appeal," and that "the issuance of a stay could injure Plaintiff in that it would delay resolution of her claims and prevent her from proceeding with discovery during the appeal—discovery that she would be entitled to regardless of whether the case proceeded in this Court or in arbitration."  No. 11-10994, 2012 WL 12737, at *2 (E.D. Mich. Jan. 4, 2012).  As this Court has noted, there is every reason to proceed with discovery in this matter forthwith to avoid further injury to the aging population of plan participants.

### C. Expert Testimony and Evaluation of Evidence

Although the Committee will continue to evaluate its need for experts as the facts are developed through the discovery process, the Committee currently anticipates presenting several experts. One is likely to address a couple of discrete accounting issues, but the bulk of that testimony would consist of examples of how the profit-sharing amounts would be calculated under different interpretations of the Agreement so the Court can understand the practical effect of Navistar's manipulation. But the Committee will also likely present expert testimony from an individual with experience as a corporate secretary or similar position to opine on the unusual nature of Navistar's practices and questionable justifications therefore, as well as a compensation and benefits expert to discuss how Navistar calculates the "qualifying hours" that are a major factor in the profit-sharing formula.

Evaluating such testimony and understanding how it relates to an interpretation of a complex legal document like the PSP are matters that have always been left to lawyers and ultimately courts. As the Sixth Circuit has consistently recognized, the interpretation of a contract is a *matter of law* for the court to decide. See *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) ("[T]he interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court.") (applying Ohio law); *Michigan Chem. Corp. v. Am. Home Assur. Co.*, 728 F.2d 374, 377 (6th Cir. 1984) (holding that interpretation of a contract "is a matter of law subject to de novo appellate review") (applying Illinois law).

### D. Decisions and Remedies

The Committee anticipates that, after sufficient discovery, it will move for partial summary judgment concerning the proper interpretation of the Shy Agreement with respect to

6

the various issues raised in the Amended Complaint. As noted, the Committee believes that only the Court can answer that question. Once it has obtained that ruling, the Committee believes that there are several options for quantifying the amount of the contributions that Navistar has failed to make in the past: that amount could be determined by the Court after taking evidence, the Court could appoint a special master to assist it with that determination, or the Court could simply order Navistar to recalculate the past profit-sharing amounts using the proper interpretations of the Shy Agreement.

Equally important to the Committee, however, is its request for an injunction requiring Navistar to comply with the Court's interpretations of the PSP in the future because the benefits that the PSP can offer today depend on accurate forecasts of future assets and liabilities. That is relief that only this Court can award. Even if an accountant were competent to resolve the legal issues presented by this litigation, the arbitrator-accountant cannot provide this critical aspect of the equitable relief sought by the Committee. Navistar dismisses this concern by noting that the accountant's decision is binding and that "nothing precludes either party from enforcing the third party's decision, if necessary, through this Court's remedial powers." Mot. at 12. While this may be true with respect to the remedy for Navistar's *past* wrongs, an arbitrator can only decide the dispute in front of him, not fashion equitable relief to enjoin *future* violations. Absent a decision-maker with the authority to bind Navistar to its interpretations of the PSP for future years, the Committee would have no assurance that the Company will not simply continue to apply its erroneous interpretations next year, and the next, and the next, forcing the Committee to bring its dispute again and again before an arbitrator—presumably a new arbitrator each time Navistar is unsatisfied with the results before the previous arbitrator. Without the Court's

equitable powers, the Committee has nothing to rely on but Navistar's word that it will comply with the proper interpretation of the PSP going forward.

## II.     Navistar has Presented No Other Reason to Dismiss the Amended Complaint.[2]

### A. The Committee is Not Required to Exhaust Administrative Remedies.

Navistar reiterates its argument that the Committee's "failure to utilize the dispute resolution process . . . amounts to a failure to exhaust administrative remedies, which bars its claim under ERISA," and then proceeds to copy and paste its original flawed analysis from its Opposition to the Motion to Amend.  Mot. at 1, 14-18.  It offers no new response to the Committee's argument that the exhaustion requirement is inapplicable to claims such as these— save a citation to a case that does not even mention exhaustion.  *Id*. at 15 (citing *VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664-669-70 (6th Cir. 2013).  Nor does Navistar acknowledge the disconnect between the process contemplated by the exhaustion doctrine and the dispute resolution process.  The ERISA doctrine of exhaustion, like exhaustion of administrative remedies generally, refers to an entity's internal process "providing a *non-adversarial* method of claims settlement" for decisions affecting an individual (*Costantino v. TRW, Inc.*, 13 F.3d 969, 974-75 (6th Cir. 1994) (emphasis added)), not an *adversarial* process governed by a third-party neutral.

---

[2] The Committee previously explained that, because the present dispute is one "relating to or arising out of or in connection with the enforcement, interpretation, or implementation of [the Shy] Agreement" rather than a dispute over the "information or calculation" provided to the Committee by the Company, this Court is the proper entity to decide this matter.  Dkt. No. 434 at 2-3.  The Committee incorporates that argument herein.  Navistar offers no new argument based on the PSP language other than to rely on the presumption of arbitrability under the Federal Arbitration Act.  Mot. at 6-7.  Even if the Act applied, however, the presumption of arbitrability does not dictate that the parties must arbitrate a matter not covered by the arbitration clause.  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2859 (2010) (explaining that "we have never held that this policy [favoring arbitrability] overrides the principle that a court may submit to arbitration only those disputes . . . that the parties have agreed to submit.") (ellipsis in original) (internal quotation omitted).

### B. The Relief Sought by the Committee is Permissible Under ERISA.

Navistar's final argument is a half-hearted swipe at the Amended Complaint "to the extent" that it seeks money damages that are impermissible under ERISA.

The Amended Complaint does articulate a request for damages—in connection with its claim for breach of contract. Amended Complaint at VI.A-B. The remedies sought for the ERISA violation are for equitable relief (*id*. at VI.C-F), as case law under ERISA makes clear that equitable remedies that require the transfer of money to the plaintiff do not necessarily constitute impermissible money damages under ERISA.

Navistar relies on *Mertens v. Hewitt Associates*, where the Court stated that section 502(a)(3) of ERISA allows for "those categories of relief that were typically available in equity (such as injunction, mandamus, restitution, but not compensatory damages)." 508 U.S. 248, 255-58 (1993). But in the years since *Mertens*, the Supreme Court has permitted payments of money as forms of equitable relief in a number of situations. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1880 (2011) (holding that "equity courts possess the power to provide relief in the form of monetary 'compensation' for a loss resulting from a breach of duty, or to prevent unjust enrichment") (citations omitted); *Sereboff v. Mid Atl. Med. Servs., Inc*., 126 S. Ct. 1869 (2006) (permitting as equitable restitution the payment of money owed under terms of ERISA plan).

Moreover, regardless of whether equitable relief is permitted under ERISA section 502(a)(3)(B)(i) to redress the wrongs alleged in the Amended Complaint, the Committee has also sought to "enforce . . . the terms of the plan" under section 502(a)(3)(B)(ii). An injunction ordering Navistar to comply with the terms of the PSP that require it to make contributions now past due is a classic form of equitable relief and precisely what that section contemplates. *See Vanderbilt Univ. ex rel. Vanderbilt Univ. Health Benefit Plan v. Pesak*, 3:08-CV-1132, 2011 WL

9

4001115, at *6 (M.D. Tenn. Sept. 8, 2011) ("As long as Vanderbilt requests 'appropriate equitable relief,' § 502(a)(3) is available as a means of enforcing the Pesaks' contractual obligations.").[3]

### III. Conclusion

For the reasons set forth above and in Intervenor-Plaintiff's Reply in Support of Motion for Leave to File Amended Complaint, Dkt. 434, Navistar's Motion to Dismiss Intervenor-Plaintiffs' Amended Complaint and Compel Dispute Resolution Process should be denied.

Dated: October 31, 2013

Respectfully submitted,

/s/ Kevin L. Murphy
Kevin L. Murphy (#0021810)
Graydon Head & Ritchey LLP
2400 Chamber Center Drive
Suite 300
Ft. Mitchell, KY 41017
Phone: 859-578-3060
Fax: 859-525-0214
kmurphy@graydon.com

*Trial Attorney for Intervenor-Plaintiff Supplemental Benefit Committee of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program*

Edward A. Scallet (admitted *pro hac vice*)
Sarah A. Zumwalt (admitted *pro hac vice*)
Will E. Wilder (admitted *pro hac vice*)
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW
Washington, DC 20006
202-857-0620 (p)
202-659-4503 (f)
eas@groom.com
szumwalt@groom.com

---

[3] Navistar also argues that the Committee lacks standing to assert a breach of contract claim. Mot. at 13-14. The Court has already held that the Committee has standing to enforce the terms of the PSP. Dkt. No. 426 at 21-25. The Committee reiterates the arguments made in its opposition to Navistar's motion to dismiss the Committee's original complaint, Dkt. 423 at 3-4, and relies on the Court's previous ruling on this issue.

wwilder@groom.com

*Attorneys for Intervenor-Plaintiff Supplemental Benefit Committee of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program*

<b><u>CERTIFICATE OF SERVICE</u></b>

  I hereby certify that on the 31st day of October, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed to those parties to whom electronic notice has not been sent.

<u>/s/ Kevin L. Murphy</u>
Kevin L. Murphy (#0021810)