# EXHIBIT A



**NAVISTAR INTERNATIONAL CORPORATION**

**4201 WINFIELD ROAD, WARRENVILLE, IL 60555**

T 630 753 2502

F 630 753 2261

**STEVEN K. COVEY - SENIOR VICE PRESIDENT AND GENERAL COUNSEL**

February 9, 2005

Deloitte & Touche
180 N. Stetson
Chicago, Illinois 60601
Attn: Kerry Sharpee

**Re:    Navistar International Corporation and Subsidiaries**

Dear Ms. Sharpee:

As General Counsel of Navistar International Corporation ("NIC") and International Truck and Engine Corporation ("International") together with their subsidiaries (collectively, the "Company"), I advise you as follows in connection with your examination of the accounts of the Company, as of October 31, 2004.

You have requested my views regarding the treatment of Medicare subsidy payments to the Company for purposes of calculating qualifying profits for the *Shy* Supplemental Benefit Trust Profit-Sharing Plan (the "Plan"). This matter involves provisions in the Medicare Modernization Act passed in 2003 that allow for federal tax subsidy payments (the "Medicare subsidy payments") to private sponsors of health care plans whose benefits substitute for Medicare coverage (the "plan sponsor"). The Company is a plan sponsor, and will receive the Medicare subsidy payments starting in 2005 or 2006, depending on the regulations. Accounting rules allowed for accrual of these forthcoming payments in 2004.

My review of the *Shy* settlement agreement establishing the Supplemental Benefit Trust, along with my knowledge of the intent of the parties to the Plan, and my understanding of the purposes of the Medicare Modernization Act and the Medicare subsidy payments, leads to the conclusion that these Medicare subsidy payments should not be considered "Pre-tax Income" for purposes of calculating "Qualifying Profits" under the Supplemental Trust Profit-Sharing Plan for the following reasons.

First, these payments should be considered "Extraordinary Items" as noted in Section 5.2.2 of the Plan. While that phrase has an accepted connotation under generally accepted accounting principles, the fact that the parties capitalized it and then chose not to provide a definition of the phrase in the Plan was reflective of an intent that

Deloitte & Touche
February 9, 2005
Page 2

inequities not happen, as they would if the Medicare subsidy payments were included. The subsidy payments were not contemplated by the parties and therefore should constitute, as to the Plan, an Extraordinary Item.

Second, the Medicare subsidy payments are not payable as a consequence of the Company's operation of its "Covered Operations" as defined in the Plan. Rather, the subsidy payments are payable with respect to post-employment benefits paid to former employees, not those in Covered Operations. Therefore, the income derived from the subsidy should not be considered income from Covered Operations.

Third, since a substantial number of the recipients of the benefits from which the subsidy payments are derived are former employees of discontinued operations, the subsidy payments should be considered income from discontinued operations.

Fourth, the Medicare subsidy payments properly should be characterized as arising from the adoption of Statement of Financial Accounting Standards No. 106 and therefore, in accordance with the intent of Section 5.7 of the Plan, should not be included as income.

Finally, in establishing the payment of profit-sharing to the Supplemental Benefit Trust, the parties did not intend to include payments received to subsidize health care benefits the Company chooses to provide, but are not provided by Medicare. To include Medicare subsidy payments in the calculation of profit-sharing payable to the Supplemental Trust, which payments the Trust can use to enhance benefits the Company is already providing in addition to Medicare, would frustrate the purpose of the Medicare Modernization Act and would produce an inequitable result.

Very truly yours,

Steven K. Covey