**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| ART SHY, et al.<br>　　　　　　Plaintiffs,<br>　　v.<br>NAVISTAR INTERNATIONAL<br>CORPORATION, et al.,<br>　　　　　　Defendants.<br>_____<br><br>SUPPLEMENTAL BENEFIT COMMITTEE OF<br>THE NAVISTAR INTERNATIONAL<br>TRANSPORTATION CORP. RETIREE<br>SUPPLEMENTAL BENEFIT PROGRAM,<br>　　　　　　Intervenor-Plaintiff,<br>　　v.<br>NAVISTAR, INC.,<br>　　　　　　Defendant. | Case No.: 3:92-cv-00333<br><br>Judge Walter Herbert Rice |

**DEFENDANT NAVISTAR'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS INTERVENOR-PLAINTIFF'S
AMENDED COMPLAINT AND COMPEL DISPUTE RESOLUTION PROCESS**

Defendant Navistar, Inc. ("Navistar" or the "Company") asks this Court to dismiss the Amended Complaint of Intervenor-Plaintiff Supplemental Benefit Program Committee (the "SBC") of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program and compel that the allegations asserted therein be resolved by the dispute resolution process required by the Supplemental Benefit Trust Profit Sharing Plan ("PSP").

The SBC's response to Navistar's motion to dismiss suggests that Navistar is improperly trying to evade judicial review of the present profit-sharing dispute. In its zeal to

hurl accusations against Navistar, the SBC completely misses and ignores the substance of Navistar's arguments.

### I. The SBC Fails to Rebut the Supreme Court Precedent Presuming Arbitrability

As noted in Navistar's initial brief, where a contract contains an arbitration clause, there is a strong presumption in favor of arbitrability, and where, as here, the parties agreed to a dispute resolution process, that process must be followed. Dkt. No. 438, pp. 6-7. The SBC makes no response to this argument; it does not even address the well-established Supreme Court and circuit court precedent governing the interpretation and enforcement of third-party dispute resolution agreements. The dispute resolution process prescribed in the PSP is legally equivalent to an agreement to arbitrate and is entitled to the deference to arbitration clauses mandated by the Federal Arbitration Act. *See Salt Lake Tribune Pub. Co. v. Mgmt. Planning, Inc.*, 390 F.3d 684, 689 (10th Cir. 2004); *see also* Navistar's Mot. to Dismiss, Dkt. No. 438, pp. 6-7 (citing cases).

The SBC does not cite a single case in opposition. It cites no legal authority indicating that the FAA does not govern the arbitrability of the instant dispute, nor does it refute the Supreme Court's holding that any reasonable doubts regarding the scope of the dispute resolution provision must be resolved in favor of arbitration. *Granite Rock Co. v. International Bhd. of Teamsters*, 130 S.Ct. 2847, 2857 (2010); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). The SBC's failure to respond compels the conclusion of the applicability of the FAA and the presumption that deferral to the ADR process selected by the parties must be compelled.

### II. The SBC's Argument that the Court is Better Suited to Decide the Dispute Does Not Override the Contract Language

The SBC's primary argument against enforcement of the dispute resolution clause is its belief that this Court is better suited to decide the present dispute than a third party.  This argument has no bearing on whether the Court should hear this matter, because the parties to the Consent Decree agreed over twenty years ago that disputes over Navistar's profit sharing contributions would be decided by third party dispute resolution.  Parties enter into arbitration agreements for a variety of reasons that have nothing to do with the courts' abilities as compared to a third party's abilities to handle complicated disputes, and the "emphatic federal policy" in favor of arbitration protects the right of parties to enter into such agreements.  *See KPMG LLP v. Cocchi*, 132 S.Ct. 23, 25 (2011).  Again, the SBC cites no legal authority to the contrary.

Arbitration is a matter of contract. *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772, 2776 (2010). "Courts must 'rigorously enforce' arbitration agreements according to their terms." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238 (1985).  Courts are to enforce terms that "specify with whom [the parties] choose to arbitrate their disputes," *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010), and "the rules under which that arbitration will be conducted." *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Thus, the SBC's contention that a federal judge could do a better job than a qualified third party is irrelevant. The parties chose a third party dispute resolution process for disputes regarding profit-sharing

contributions. The process was approved by this Court and should be enforced by this Court. The SBC cannot override the Agreement's terms because it now prefers a different forum.[1]

The Sixth Circuit's recent decision in *Elsevier, Inc. v. Crockett*, 2013 WL 5911219 (6th Cir. Nov. 5, 2013), underscores this principle. There, Crockett's law firm signed a contract with LexisNexis that included an arbitration clause. *Id.* at *1. The terms of the arbitration clause were such that it made arbitration of individual claims economically unfeasible, and so Crockett sought a class-wide arbitration. *Id.* The Sixth Circuit acknowledged that the arbitration agreement was one-sided and to LexisNexis' advantage, but in affirming a decision by this Court, held that those concerns notwithstanding, the arbitration agreement was to be enforced as written, and as written it did not allow for class-wide arbitration. *Id.* at 4-5. So too here, the SBC's concerns about the ability of a third party to hear and decide the profit-sharing dispute do not allow this Court to ignore the terms of the parties' Agreement, which include the dispute resolution process.

## III. The SBC Wrongly Asserts that a Third-Party is not Qualified to Decide the Dispute

The SBC's argument that an accounting firm is ill-equipped to resolve this dispute lacks merit. As an initial matter, the PSP's dispute resolution process directs the parties to attempt to agree upon a third party to resolve the dispute; the third party need not be an accounting firm. If the matter is referred to an accounting firm, the SBC offers no credible reason why an accounting firm cannot competently resolve this dispute. Indeed, the experts

---

[1] As noted in Navistar's initial brief, the SBC previously invoked the dispute resolution process regarding the treatment of certain Medicare Part D subsidies alleged in its Amended Complaint. In its response, the SBC fails to address why it changed its position.

which the SBC proposes it will need are all in accounting and business-related disciplines, which underscores why the parties to the Agreement contemplated resolution of these matters by an accounting firm.

The SBC argues that accounting firms have a limited range of abilities by quoting a portion of the Statements on Auditing Standards ("SAS").[2] The SBC's reliance on these statements is misplaced, because the PSP's dispute resolution process does not direct the third party or accounting firm to perform an audit, but to resolve disputes over profit sharing calculations. The SBC also mischaracterizes the SAS, which simply states that in the course of an audit, an auditor is permitted, but not required, to consider the opinions of a legal specialist to assist the auditor with interpretations of contracts or laws that may apply to the audit. SAS Nos. 73.02, 73.07(d). These statements are irrelevant to whether an accounting firm may serve as the decision-maker pursuant to the PSP.

Accounting firms do much more than perform audits; they resolve a broad range of complex accounting-related issues and business problems for their clients. Like any arbitrator, an accounting firm can determine what information and resources it needs from the parties to resolve these issues. Indeed, because of their expertise, they are uniquely qualified to resolve the matters at hand in an efficient and orderly manner without the formalities of civil procedure rules or the scorched-earth discovery in which the SBC proposes to engage.

The SBC's argument that the dispute resolution process is limited to "routine accounting disputes" renders the provision a nullity and belies any reasonable interpretation

---

[2] The SBC also attaches a letter from Navistar's General Counsel in response to a request for information from the Company's auditors and argues, without providing any context for the communication, that the letter is evidence that an accounting firm cannot handle matters that lawyers ordinarily handle. This communication has nothing to do with the issues at hand.

of the Decree.   Pl. Resp., Dkt. No. 441 at 3.  There is no such limitation in Section 8.4 of the PSP, and one cannot be read into the language without eviscerating the parties' Agreement.  *Dean Witter*, 470 U.S. at 221.  Nothing in Section 8.4 of the PSP suggests that only "routine" disputes over the information or calculations are subject to the dispute resolution process, while "non-routine" disputes are to be decided by the Court, nor does the SBC even attempt to define a "routine" dispute or support its interpretation with specific language in the PSP.  Further, by acknowledging that some disputes are to be heard by a third party, the SBC acknowledges that Section 8.4 of the PSP contains a process that is an exception to the Court's sole jurisdiction to resolve disputes arising in the enforcement or implementation of the Agreement. Put simply, enforcement of the Consent Decree requires enforcement of this exception.

      Finally, the SBC's insistence that the Court ignore the dispute resolution process is a thinly-veiled attempt to evade the consequences of its own delay in asserting the allegations in the Amended Complaint.  The parties to the Agreement anticipated that the SBC and Navistar may dispute some of Navistar's calculations from year to year and established deadlines and a streamlined process to resolve these issues so that the matters could be resolved expeditiously and efficiently, rather than being bogged down in extensive federal court litigation years after the fact.  If the SBC believed any of the information they received in past years was deficient or any of the calculations they received were erroneous, nothing prevented them from invoking the dispute resolution process within the prescribed deadlines.  The SBC chose to do nothing, and its inaction cannot now be relied on to justify an invalidation of the dispute resolution procedures.

Respectfully submitted,

\_s/ David P. Pierce_____
David P. Pierce (0061972)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH  45402
Phone:  937-223-8177
Fax:     937-223-6705
E-mail: pierce@coollaw.com

*TRIAL ATTORNEY FOR DEFENDANTS*
*NAVISTAR INTERNATIONAL*
*CORPORATION, et al.*

OF COUNSEL:

David P. Radelet
Sally J. Scott
William R. Pokorny
Abizer Zanzi
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone:  (312) 986-0300
Fax:  (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendants*
*Navistar International Corporation, et al.*

### CERTIFICATE OF SERVICE

     I hereby certify that on the 12th day of November 2013 a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail, postage prepaid, to those parties to whom electronic notice has not been sent.  Parties may access the filing through the Court's system.
.
     \_s/ David P. Pierce_____

w:\wdox\client\009025\00382\00653989.docx