IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| ART SHY, et al., | : | Case No. 3:92-cv-00333-WHR |
| | : | |
| Plaintiffs, | : | (District Judge Walter H. Rice) |
| v. | : | |
| | : | |
| NAVISTAR INTERNATIONAL | : | |
| CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| SUPPLEMENTAL BENEFIT | : | |
| COMMITTEE OF THE NAVISTAR | : | |
| INTERNATIONAL TRANSPORTATION | : | |
| CORP. RETIREE SUPPLEMENTAL | : | |
| BENEFIT PROGRAM, | : | |
| | : | |
| Intervenor-Plaintiff, | : | REPLY BRIEF IN SUPPORT OF |
| v. | : | MOTION TO STAY PROCEEDINGS |
| | : | <u>PENDING APPEAL</u> |
| NAVISTAR, INC., | : | |
| | : | |
| Defendant. | : | |

Defendant Navistar, Inc. ("Navistar" or the "Company") asks this Court to stay the proceedings in this matter pending its appeal of the Court's March 20, 2014 Order (Dkt. No. 451) denying Navistar's motion to compel arbitration of the disputes raised in the Amended Complaint of Intervenor-Plaintiff Supplemental Benefit Program Committee (the "SBC") of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (now known as Navistar, Inc. Retiree Supplemental Benefit Program). For reasons presented in Navistar's motion and supporting memorandum, the Court should enter a stay on the grounds that Navistar's appeal divests the Court of jurisdiction over the dispute pending appeal. Alternatively, the stay should be granted because Navistar's appeal raises serious questions and

the Company will be irreparably harmed if the case proceeds in this Court and the Sixth Circuit subsequently finds that it should have been referred to arbitration.

The SBC offers little substantive response to Navistar's arguments in support of a stay. Instead, it condemns Navistar for exercising its right to seek appellate review of the Court's decision to deny referral to arbitration and for requesting the Court to temporarily stay proceedings so that the very purpose of its appeal is not obviated.  Moreover, the SBC accuses Navistar of "sitting on its rights," while ignoring the fact that the SBC itself waited over a decade before bringing its allegations to the Court's attention.  The SBC fails to demonstrate why this case must proceed forward before the Sixth Circuit resolves the threshold issue of whether the dispute should be submitted to arbitration.

I.      **The SBC's Argument against an Automatic Stay Ignores Predominant Judicial Authority**

In the absence of direct Sixth Circuit authority, Navistar urges the Court to adopt the view of the majority of federal circuits that an interlocutory appeal of a district court's decision to deny referral to arbitration automatically divests the district court of jurisdiction over the merits of the underlying dispute.  The SBC has advanced the only argument it can make under the circumstances: that the Court should follow the small minority of jurisdictions that have held that entry of a stay is not automatically required.

As explained in Navistar's initial memorandum, the Third, Fourth, Seventh, Tenth, Eleventh and D.C. Circuit hold the majority view that Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a)(1), divests the district court of jurisdiction to continue proceedings that are the subject of an appeal of denial of arbitration.  *See e.g. Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 264-65 (4th Cir. 2011); *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.,* 413 F.3d 1158, 1160 (10th Cir. 2005);

*Blinco v. Green Tree Serv., LLC*, 366 F.3d 1249, 1251-52 (11th Cir. 2004); *Bombardier Corp. v. Nat'l R.R. Passenger Corp.,* 2002 WL 31818924, at \*1 (D.C. Cir. Dec. 12, 2002); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997).

In addition, district courts in the First, Sixth and Eighth Circuits have adopted the majority view. *See, e.g., Huffman v. The Hilltop Cos.*, 2014 WL 695844, at \*1-2 (S.D. Ohio Feb. 24, 2014); *Dental Assocs., P.C. v. American Dental Partners of Mich., LLC*, 2012 WL 1555093, at \*2-4 (E.D. Mich. Apr. 30, 2012); *Levy v. Cain, Watters & Assocs., P.L.L.C.*, 2010 WL 2560395 (S.D. Ohio June 23, 2010); *Cambio Health Solutions, LLC v. Reardon*, 228 F.Supp.2d 883 (M.D. Tenn. 2002); *see also, e.g., Combined Energies v. CCI, Inc.*, 495 F.Supp.2d 142, 143-44 (D. Me. 2007); *Industrial Wire Prods., Inc. v. Costco Wholesale Corp.*, 2008 WL 2906716, at \*1 (E.D. Mo. July 24, 2008); *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 2007 WL 1040938, at \*1-2 (E.D. Mo. Apr. 3, 2007).  The parties have only identified one district court decision in the Eastern District of Michigan denying a motion to stay an appeal of a denial of arbitration, which was subsequently reversed by the Sixth Circuit.  *Tillman v. Macy's, Inc.*, 2012 WL 12737 (E.D. Mich.  Jan. 4, 2012); *Tillman v. Macy*'s, *Inc.*, No. 11-2580 (6th Cir. June 19, 2012) (order granting stay pending appeal) (Dkt. No. 452, Ex. A).  In granting the stay, the Sixth Circuit did not opine on whether a stay under FAA § 16(a) is automatically mandated.  Dkt. No. 452, Ex. A.[1]

The SBC makes no attempt to distinguish these cases or challenge the reasoning of the majority view.  Instead, it cites three circuit courts of appeals decisions expressing the minority view that an interlocutory appeal under FAA § 16(a) is akin to an appeal of a collateral order that

---

[1] The SBC mischaracterizes the Sixth Circuit's order in *Tillman* as holding that in the absence of a ruling by the Sixth Circuit on whether the district court is stripped of its jurisdiction pending appeal under the FAA, "there is no automatic stay in the district court proceedings."  Plf. Br. at 4.  The Sixth Circuit made no such determination.  It simply found the issue was moot because it had already determined that discretionary factors merited a stay in that case.  Dkt. No. 452, Ex. A.

is severable from the merits of the underlying dispute. *See, Weingarten Realty Investors v. Miller*, 661 F.3d 904 (5th Cir. 2011); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004); *Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990). Circuit courts of appeals representing the majority view have flatly rejected this reasoning, and for good reason. The very purpose of FAA § 16(a) is to allow litigants to immediately challenge a district court's decision to deny arbitration of a dispute before the dispute is decided on the merits. *See Bradford-Scott*, 128 F.3d at 504. An appeal of a district court order denying arbitration therefore directly impacts the underlying dispute because the precise issue on appeal is whether the litigation may go forward in the district court in the first place. *Id.*

Moreover, the majority view is more properly aligned with the intent of Congress in adding Section 16(a) to the FAA, which was to assure the expedited enforcement of arbitration agreements and prevent waste of the resources of the court and litigants. *See, e.g., Ehleiter*, 482 F.3d at 214 ("[T]he availability of interlocutory review under Section 16 of decisions favoring litigation avoids the possibility that a litigant seeking to invoke [its] arbitration rights will have to endure a full trial on the underlying controversy before it can receive a definitive ruling on whether it was legally obligated to participate in such a trial in the first instance."). If a party was not entitled to an automatic stay under these circumstances, and the case proceeded on the merits pending the appeal, that party would be no better off than it would have been had it been required to appeal the decision after a final judgment on the merits. The same would be true if a party were required to engage in full-blown discovery under the federal rules of procedure pending appeal of the denial of arbitration decision. *See Island Creek Coal Sales Co. v. City of Gainesville*, 764 F.2d 437, 441 (6th Cir. 1985) ("The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and

4

delay of extended court proceedings.").  Thus, to require Navistar to litigate a case it contends

should not proceed in the district court at all would render meaningless the congressional intent

and purpose of allowing immediate interlocutory appeals under FAA § 16(a).

Accordingly, the Court should grant a stay of proceedings on the grounds that Navistar's

appeal pursuant to FAA § 16(a) automatically divests the Court of jurisdiction over the case

pending resolution of the appeal.

**II.     The SBC Has Not Established Discretionary Factors against Granting a Stay**

As described in Navistar's initial memorandum, even if Navistar's motion is evaluated

under the discretionary standards, all four discretionary factors compel a stay of proceedings.

*See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  For reasons explained below, the SBC's

counter analysis of these factors is unavailing.

**A.      The SBC Cannot Show an Absence of a Serious Question on Appeal**

The SBC has not demonstrated that Navistar failed to raise a "serious question going to

the merits" on appeal, which is all that is required to satisfy the likelihood-of-success factor in

the stay-of-proceedings analysis.  *See Green Party of Tenn. v. Hargett*, 493 Fed.Appx. 686, 689

(6th Cir. 2012).  The issue presented to the Sixth Circuit on appeal is whether the Court erred in

holding that Navistar waived its right to arbitrate by finding the Company: 1) declined to initiate

arbitration in August 2009; and 2) failed to timely raise arbitration as an affirmative defense in

response to the SBC's motion to intervene.  Navistar's disagreement with the Court's conclusion

is supported by case law and the procedural record and undisputed facts, as explained in its

initial memorandum.  Dkt. No. 452 at 9-14.  The SBC's response simply mirrors the Court's

reasoning in its opinion without adding any additional points of argument.   The SBC's

agreement with the Court's ruling on this issue does not in any way diminish the seriousness or

merits of the question that Navistar has raised on appeal.  It is also worth noting that the Court

made these findings against Navistar *sua sponte*; the SBC never raised the issue of waiver in its

briefings, and the parties never presented argument or evidence relating to waiver.  Therefore,

Navistar's disagreement with the Court's determination raises a serious question on appeal.

Moreover, the SBC's assertion that Navistar "sat on its rights" by taking the position that

the parties' prior Medicare Part D subsidy dispute was moot is a clear example of the "pot

calling the kettle black."  When the SBC initiated the dispute relating to Navistar's treatment of

Medicare Part D subsidy payments and invoked the arbitration clause of the Supplemental

Benefit Trust Profit Sharing Plan ("PSP"), Navistar never contested the arbitrability of the

dispute, and acknowledged that the dispute had been timely raised.  In its August 2009 letter,

however, Navistar argued the dispute was moot because even if the SBC were to prevail in

arbitration, the amount in dispute was insufficient to trigger a profit sharing payment.  Dkt. No.

415-2 at 41-42.  If the SBC disagreed with Navistar's position that the dispute was moot, it was

incumbent upon the SBC, as the party who raised the dispute, to enforce its rights by filing a

petition to compel arbitration of the dispute pursuant to Section 4 of the FAA.  9 U.S.C. § 4.

Instead, the SBC chose to do nothing.

Indeed, if any party has been sitting on its rights, it is the SBC.  The SBC alleges in the

Amended Complaint that Navistar miscalculated its profit sharing obligations in four respects

going back as far back as 2000 (i.e. misidentification of entities as acquired businesses; exclusion

of cash dividends and other payments from Qualifying Profits; Medicare Part D subsidy

payments; and exclusion of employees' hours from Qualifying Hours).  However, the SBC has

provided no explanation for waiting until June 2012—over a decade after the miscalculations

allegedly began—to bring this dispute to the attention of the Court.[2]   The SBC could have pursued arbitration years ago and obtained a swift resolution, as the dispute resolution clause was designed to provide.   The SBC points its finger at Navistar for the delay in resolving these matters, but the SBC has always had the right to avail itself of arbitration and if necessary petition to compel arbitration.

**B.      The SBC Cannot Show Lack of Irreparable Harm to Navistar Absent a Stay**

Courts have repeatedly held that denying a party its contractual right to arbitrate constitutes irreparable harm.  *See, e.g., Bailey Shipping Ltd. v. American Bureau of Shipping*, 2013 WL 5312540, at *16 (S.D.N.Y. Sept. 23, 2010) (citing cases); *Olde Discount Corp. v. Tupman*, 805 F.Supp. 1130 (D. Del. 1992); *see also Alascom, Inc. v. ITT North Electric Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (if a party "must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever. We find this consequence 'serious, perhaps irreparable'.").  The SBC attempts to trivialize the harm that Navistar would suffer if forced to litigate a dispute it was entitled to resolve through arbitration as mere "costs of litigation."  In doing so, the SBC ignores decades of case authority underscoring the "emphatic federal public policy" in favor of arbitration of disputes as codified in the FAA.  *KPMG LLP v. Cocchi*, 132 S.Ct. 23, 25 (2011); *see also Ferro Corp. v. Garrison Indust., Inc.*, 142 F.3d 926, 933 (6th Cir. 1998) (recognizing "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts").  Forcing Navistar to litigate claims in federal court that it is contractually entitled to resolve through a streamlined arbitration

---

[2] The Court previously questioned the whether the SBC's delays in bringing issues arising under the PSP to the Court's attention have satisfied the SBC's fiduciary responsibilities.  Mar. 29, 2013 Order, Dkt. No. 426 at 18.  Once it is resolved on appeal whether this Court or an arbitrator will decide the merits of this dispute, Navistar will present arguments and evidence in more detail regarding the legal impact of the untimeliness of all or part of the SBC's claims.

process does more than subject the Company to additional legal costs and fees; it deprives the Company of a right it obtained through settlement negotiation and compromise, which is irreparable.  *See Bradford-Scott,* 128 F.3d at 506 (noting that the benefits of arbitration "are eroded, and may be lost or even turned into net losses, if it is necessary to proceed in both judicial and arbitral forums, or to do this sequentially").

The SBC appears to ascribe little value to the contractual right to arbitration, which is perhaps due to the fact that the SBC is not a party itself to the Consent Decree.  The actual parties to the agreement, however, designed the provisions of the PSP in response to Navistar's severe financial condition and possible insolvency at the time the Consent Decree was entered. *See* Consent Decree, Section 2.1 – Benefits of Settlement to the Class, Dkt. No. 399-2 at 8.  In doing so, both Navistar and the class members determined that a streamlined cost-effective dispute resolution procedure was more beneficial to all of the parties' interests than protracted litigation over disputes arising under the PSP.  Thus, from Navistar's perspective the right to arbitration is an essential part of the bargain it made when it settled the underlying *Shy* class action litigation over 20 years ago.

C.      **The SBC Cannot Show Substantial Injury to its Beneficiaries or Itself if a Stay Is Granted**

For its part, the SBC admits that the harm it will suffer if a stay is entered is entirely pecuniary in nature.  The SBC claims Navistar underpaid its profit sharing obligations to the Supplemental Benefit Trust.  If the SBC ultimately prevails, it will be entitled to money damages, nothing more.  The SBC complains that it needs to know immediately whether it will have access to additional funds as a result of this dispute in order to "make annual determinations regarding the funds and set[] current benefit levels based on projections of funding needs into the future."  Pl. Mem. at 10.  Again, this begs the question: why didn't the SBC raise these disputes

8

sooner?  Moreover, the SBC warns that plan participants are dying or forced to bear a greater amount of their healthcare costs.  But the SBC does not and cannot provide any evidence or even a single example of class members being denied coverage or provided reduced coverage.  Nor can the SBC claim that it lacks funds to provide coverage to its beneficiaries.  Indeed, the Supplemental Benefit Trust had over half a billion dollars in assets as of 2012, and by that time had spent over $40 million in benefits to its members.  Dkt. No. 452, Ex. B.  In other words, there is no imminent harm to the SBC or its beneficiaries, and there is no risk that staying proceedings in this Court pending the appeal would deprive the SBC of any opportunity to be made whole if it ultimately succeeds on the merits.

### D.      The SBC Cannot Show that Public Interests Require Denial of a Stay

The SBC offers no public policy justification for denying a stay.  Instead, the SBC simply repeats its unsupported arguments that Navistar has been sitting on its rights and that beneficiaries are paying higher medical costs while this dispute is pending.  The SBC makes no attempt to respond to Navistar's argument that federal public policy strongly favors arbitration and the enforcement of arbitration clauses.  Equally important, the SBC does not attempt to explain how the public, or for that matter the litigants and the court, will benefit from directing substantial resources to litigate a matter that the Sixth Circuit may well decide must be resolved in arbitration.  Navistar appreciates the SBC's stated desire to timely resolve this dispute.  However, everyone associated with this litigation will benefit, both now and going forward, by waiting for the Sixth Circuit to decide how and in what forum this dispute should be resolved.

9

**CONCLUSION**

Therefore, and for all of the reasons stated above and in its motion and supporting memorandum, Defendant Navistar, Inc. respectfully requests that its Motion to Stay Proceedings Pending Appeal be granted.

Respectfully submitted,

COOLIDGE WALL CO., L.P.A.

 s/ David P. Pierce
               DAVID P. PIERCE (0061972)
               33 W. First Street, Suite 600
               Dayton, OH 45402
               Phone:  937-223-8177
               Fax:  937-223-6705
               E-mail:  pierce@coollaw.com

*TRIAL ATTORNEY FOR DEFENDANTS*
*NAVISTAR INTERNATIONAL*
*CORPORATION, et al.*

OF COUNSEL:
David P. Radelet
Sally J. Scott
William R. Pokorny
Abizer Zanzi
FRANCZEK RADELET P.C.
300 S. Wacker Drive, Suite 3400
Chicago, IL 60606
Phone:  (312) 986-0300
Fax:  (312) 986-9192

*Admitted Pro Hac Vice as Attorneys for Defendants*
*Navistar International Corporation, et al.*

10

## **CERTIFICATE OF SERVICE**

        I hereby certify that on April 24, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's CM/ECF and copies will be mailed via U.S. Mail to those parties to whom electronic notice has not been sent.  Parties may access the filing through the Court's system.


                                            s/ David P. Pierce
                                            David P. Pierce


w:\wdox\client\009025\00382\00680239.doc