FILED
JOHN P. HEHMAN
CLERK

2014 APR 29 PM 1:04

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF OHIO

## WESTERN DIVISION

**ART SHY**, et alia,

      Plaintiffs

Vs.                                        Case No. C-3:92 cv 333

                                      Judge Walter H. Rice

**NAVISTAR, INC**. et alia,

      Defendants

---

*PETITIONERS' REBUTTAL TO THE JOINT RESPONSE OF THE UAW MEMBERS AND NAVISTAR MEMBERS OF THE HEALTH BENEFIT PROGRAM COMMITTEE TO THE* **PETITION TO REPLACE SHY PLAN "OTHER MEMBER" OF THE HEALTH BENEFIT PROGRAM COMMITTEE.**

Now comes WILLIAM W. JONES, *pro se*, as a non-UAW-represented Shy Plan Participant, as a member of the Shy Retiree plaintiff class established by this Court under the Shy Consent Judgment on July 1, 1993 and as a Petitioner and presents to the Court the Petitioners' **Rebuttal** to the Joint Response of the UAW Members and Navistar Members of the Health Benefit Program Committee ("HBPC") filed with the Court on April 25, 2014 (Docket no.459).

The Joint Response by the individual incumbent members of the Health Benefit Program Committee is an inappropriate and inadequate response to this Court's Entry Sustaining the Pro Se Motion to File Petition to Replace the Shy Plan "Other Member" of the HBPC filed on March 7, 2014 (Docket no. 448). The Court's Order "invited" the HBPC members to file a Motion for Rule to Show Cause Why This Court Should Not Grant Petitioners' Request to Replace the Current Other Member of the HBPC. No HBPC Member has filed such a Motion within the extended time limit established by the Court and the Petitioners pray that the Court will therefore immediately approve the appointment, effective immediately, of Mr. Hall to replace Mr. Mindiola as the Other Member of the HBPC as requested in the Petition filed on March 7, 2014 (docket no. 449).

In the event that this Court nevertheless considers the contents of the Joint Response from the current HBPC Members the Petitioners offer the following rebuttal:

1. Petitioners assert that under the terms of Article VI, Section 6.6 of the Shy Plan it appears that there are only three factual arguments that can be made to this Court against granting the relief requested by the Petitioners:

   a. Facts refuting the Petitioners' allegations that Mr. Mindiola has failed to "adequately represent" the non-UAW-represented Participants;

   b. Facts refuting the Petitioners' allegations that Mr. Hall is qualified to adequately represent the non-UAW-represented Participants;

   c. Facts refuting that the Petition is properly authorized or factually or legally sufficient.

2. The Joint Response by the incumbent HBPC Members, including Mr. Mindiola himself, provides no *fact* supporting any of these potential arguments other than general and conclusionary denials of the allegations of fact made in the Petition. Petitioners' claim that Mr. Mindiola has failed to adequately represent the non-UAW-represented Participants is tacitly confirmed by Mr. Mindiola's failure to reference even a single example of (his) alleged success in effectively representing the non-UAW-represented Participants while serving more than 20 years on the HBPC. Petitioners nevertheless will herein provide "evidence" of Mr. Mindiola's recent failures to adequately represent the non-UAW-represented Participants:

   a. First it may be helpful for the Court to understand that the several Navistar improper assaults on the Shy Plan in recent years were likely carefully planned and implemented by the most senior Navistar executives. Attached as **Exhibit A** is a 2009 announcement by the then Navistar CEO, Daniel Ustian, that he had appointed Mr. Gary Holdren as a Navistar executive consultant **to find ways to reduce Navistar's retiree healthcare costs.** We believe that Mr. Holdren, Mr. Ustian and Navistar's General Counsel (and Chief Ethics Officer), Mr. Steven Covey, are likely directly responsible for:

      i. the unauthorized implementation of the SilverScript Part D prescription drug plan and the inane and wasteful Navistar litigation strategy to "defend" Navistar's actions. A corollary, and equally improper, $505 million Aggregated Post-retirement Benefit Obligation ("APBO") reduction taken by Navistar in 2010 appears to be the actual goal for the SilverScript strategy as the implementation of a Part D plan itself did not save Navistar any costs that would affect the APBO, as Navistar was already receiving a substantial annual Medicare subsidy for the single existing Shy Prescription Drug Plan. (This matter was litigated before this Court and Navistar was ordered to retroactively restore the single Shy prescription drug plan for the Shy Plan 2 (Medicare) Participants. Navistar did not, in fact, restore those benefits and even today these Participants remain on a separate

2

SilverScript Part D Plan that has been modified to generally correct the abuses of the original strategy.);

ii.  the manipulation of accounting and reporting related to Navistar's intentional avoidance of its obligations for making profit sharing payments under the Shy Supplemental Benefit Plan. (This matter is currently in extended litigation before this Court);

iii. the illegal payments of approximately $25 million of Shy life insurance premiums from Shy Plan VEBA trusts instead of from Navistar accounts. (Admitted to by Navistar and $28 million was repaid to the Trusts in May, 2013 under a Department of Labor Voluntary Fiduciary Correction Agreement.);

iv.  chronic failure to timely file required ERISA financial reports possibly to cover up Navistar's other improper activities;

v.   impermissible exclusion by Navistar of perhaps more than 2,000 qualified retirees from Shy Plan eligibility,

vi.  manipulation of the calculation of Shy Plan premiums by intentionally not offsetting Shy Plan costs with massive annual Medicare subsidies Navistar receives ($41 million in 2013).

With this understanding it then becomes transparent that the Shy Plan Administrator and the three HBPC Navistar Members were corrupted from exercising their fiduciary duties for the exclusive benefit of the Shy Plan Participants in order to implement the improper cost reduction strategy apparently ordered by Navistar's most senior executives. The incumbent non-Navistar HBPC Members have done little to nothing to confront this dreadful Navistar attempted (and sometimes successful) sabotage of the Shy Consent Judgment. The primary reason that the current HBPC is essentially non-functional is the natural result of Navistar's alleged ruthless assaults on its retirees as described. (Mr. Jones has filed several complaints and requests for investigations with the Navistar Board of Directors, the Securities Exchange Commission and the Department of Labor concerning Navistar's alleged assaults on its retiree benefit plans. While such investigations were made by each no findings or evidence of corrective or punitive measures were communicated to Mr. Jones. See **Exhibit B** which is such a letter to the Department of Labor that resulted in the most recent investigation, now closed.)

b.  In late 2013 Mr. Jones presented three HBPC Petitions seeking HBPC determinations for Shy Plan eligibility for a current Navistar employee and two Navistar recent retirees who each had more than 30 years of credited

3

service under the Retirement Plan for Salaried Employees ("RPSE") (one of these HBPC Petitions is attached as **Exhibit C** as an example).

   i. The HBPC Petitions were filed after a fruitless year of trying to obtain eligibility determinations from anyone at Navistar with the apparent or actual authority to act as the Shy Plan Administrator (as required under the Shy Plan). We never received a determination signed by anyone purporting to be acting as or even having the apparent authority to act as the Shy Plan Administrator. The denials that we did receive did not comply with the Shy Plan and Shy Settlement Agreement terms and specified eligibility determination procedures. The determinations very clearly demonstrated that Navistar was acting in its own (cost-reduction) interests in violation of its fiduciary duties of exclusive benefit of the retirees and in violation of the terms of the Shy Plan.

   ii. Navistar wrongfully claims that a person is required to have been an active Navistar employee as of July 1, 1993, the Shy effective date, to be eligible for the Shy Plan. The Shy Settlement Agreement, Shy Plan and the Summary Plan Description require instead only that a person be a (non-deferred-benefit) Participant in the Retirement Plan for Salaried Employees ("RPSE") with at least ten years of RPSE service credit. The eligibility cut-off date for RPSE participation for new Navistar hires, and therefore for the Shy Plan eligibility, is January 1, **1996.** (See excerpt from Navistar's 2014 Proxy Statement, **Exhibit D** by which Navistar apparently inadvertently confirms this conclusion.)

   iii. Mr. Jones provided detailed explanations to the individual HBPC Members, including specifically Mr. Mindiola, as to how the HBPC Members were required to make the eligibility determinations pursuant to the terms of the Shy Plan and the Shy Settlement Agreement documents and ERISA laws (**Exhibit E**). Mr. Jones stressed that each HBPC Member had separate, personal fiduciary duties owing to the exclusive benefit of Shy Plan eligible retirees. Each of the three HBPC Petitioners are non-UAW-represented employees or retirees who should have been championed or at least "adequately represented" by Mr. Mindiola. Mr. Jones insisted that the individual HBPC Members had to provide evidence to him as to how each HBPC Member voted (and why) with regard to the determinations of eligibility sought under the three HBPC Petitions (to create a meaningful record for appeal).

   iv. Following an optional 30 day delay beyond the ERISA allowed time to consider the Petitions the HBPC apparently discussed and considered the three HBPC Petitions and an unknown person issued three separate but essentially identical determinations of non-eligibility in an

*unsigned* document that did not disclose how each HBPC Member voted and that relied on the same illogical legal justification that Navistar had used previously. (**Exhibit F**)

    v.  Mr. Jones then wrote to each HBPC Member, including Mr. Mindiola to raise a number of procedural and substantive problems relating to the determinations (Letter to Mr. Mindiola attached as **Exhibit G**).

   vi.  There has been no acknowledgment or response to any of these letters by any HBPC member. Mr. Mindiola has been no help whatsoever in helping his "constituents."

  vii.  When appointed to the HBPC Mr. Hall intends to pursue appropriate supplemental actions for these HBPC Petitioners before the HBPC to obtain the proper HBPC determinations for Shy Plan eligibility.

c.  Mr. Hall has written several letters to the HBPC Members that raised significant Shy Plan issues for which he wanted corrective action taken or explanations given that affected either all Shy Plan Participants or only non-UAW-represented Participants. If he was sent any acknowledgement or response at all it was always an unsigned (and non-responsive) letter from the "Health Benefit Program Committee" with no indications as to positions or arguments taken or made by individual HBPC Members or even who had drafted the response itself. (For example see **Exhibit H**) There have been absolutely no communications from Mr. Mindiola. Mr. Hall has no evidence that Mr. Mindiola has even been made aware of his correspondence, questions and concerns. HBPC Navistar Member and Secretary, Mr. Brian Delphey, refused to give Mr. Jones or Mr. Hall a current mailing address for Mr. Mindiola; until we found his address ourselves Mr. Delphey was actively impeding our ability to communicate with our HBPC Member representative.

d.  Petitioners reconfirm that to our knowledge Mr. Mindiola has not provided *any* communication to the non-UAW-represented Shy Participants during his more than 20 years of service on the HBPC. The Joint Response claims that there is nothing in the Shy Plan that requires *or authorizes* any individual member of the HBPC to communicate directly with Participants on behalf of the HBPC. This statement is directly contradicted by Mr. Craig Miller's (one of the incumbent UAW Members) actions over the past 20 years where he is a frequent speaker at UAW retiree meetings across the country and where he provides UAW-represented Shy Participants with updates as to the "current status of their Shy Plan benefits, changes to the Shy Plan, or any issues or disputes with Navistar." Most recently Mr. Miller appeared at a Canton, Illinois retiree meeting in April, 2014 that was attended by Mr. Hall. Who else except Mr. Mindiola could possibly be responsible for such vital communications to the non-UAW-represented Shy Plan Participants? Mr.

Hall, more than any other person known to the non-UAW-represented Shy
Plan Participants, is ready, willing and able to insure that communications
from the HBPC are dramatically improved for every Participant but especially
for the non-UAW-represented Participants so that they will understand their
benefits, premiums, out-of-pocket liabilities, changes (and the reasons
therefore), the financial condition of the various VEBA trust accounts, and all
disputes over the Plan Administrator's duties and obligations.

e. In its 2013 annual report to the Shy Plan Participants the Supplemental
Benefit Committee ("SBC") reported that it had concerns about the
calculation of the Shy Plan premiums for 2014 by Navistar as the Plan
Administrator. Navistar had "calculated" that there would be an increase in
the Shy premiums of about $100 per month to be paid by the Participants (and
partially to be "paid-down" by the SBC). [These annual premium calculations
made by Navistar (and other financial reporting such as the Form 5500 filings
with the Department of Labor) are clearly HBPC responsibilities yet there is
no evidence that the HBPC Members have ever been involved in the
preparation or even the review of these critical functions such that the HBPC
Members were apparently totally unaware that Navistar had been illegally
paying Shy life insurance premiums for 10 years out of Shy VEBA Trusts
until an auditor reviewing a 2009 Form 5500 in 2012 noted the improper
payments that were reported therein. The auditor report triggered a
notification to the Department of Labor that led to Navistar entering into a
Voluntary Fiduciary Correction Agreement in May, 2013 at which time
Navistar repaid the Shy VEBA Trust some $28 million.] With regard to the
Shy premium calculation for 2014 the SBC, and not the HBPC Members,
apparently confronted Mr. Dan Pikelny [the designated Shy "Plan
Administrator" on Navistar's April 4, 2014 filing of the (years overdue) 2010
Form 5500], Navistar Director, Health Benefit Plans *and a Navistar Member
of the HBPC*. [Petitioners do not understand how the HBPC can provide
effective over-sight of the Plan Administrator when the designated Plan
Administrator also serves on the HBPC at the same time and while he has
simultaneous accountabilities to Navistar to reduce health care costs while
acting as Navistar's Director, Health Benefit Plans.] According to Navistar's
2013 Annual Report in 2013 Navistar received more than $41 million in
Medicare subsidies from the federal government that were "earned" under the
Shy Plan 2 (Medicare) plan structure. Mr. Pikelny currently claims that
Navistar can (and did) take this subsidy as Navistar corporate "income" and
did not apply the subsidy to Shy Plan costs as an offset in the calculation of
the Shy Plan premiums. The effect, of course, is to improperly transfer Shy
Plan costs to the Shy Plan Participants and the SBC in a Navistar scheme to

improperly reduce Navistar's costs. The HBPC Members (except Mr. Pikelny) are, for reasons that are not understood, not involved in this dispute but of course they should be and for years they should have been. (The misapplication of Medicare subsidies by Navistar has apparently been going on for several years without knowledge or comment by the HBPC Members.)

3. The Joint Response asserts that a Surviving Spouse cannot sign an Article VI, Section 6.6 Petition. Petitioners believe that a Surviving Spouse automatically becomes a Shy Participant upon the death of their spouse and should therefore be entitled to sign a Section 6.6 Petition. However, we are not aware that any of the more than three hundred signatories of the Petition were signing as a Surviving Spouse. Since only fifty valid signatures are necessary we believe that this is an irrelevant or moot issue raised in the HBPC Members' Joint Response.

4. In the Joint Response the current HBPC Members reveal a fundamental misunderstanding about the Shy Plan Section 6.6 Petition process and even the composition of the HBPC as a legal entity. The HBPC is not a legal entity; it cannot sue or be sued in a court of law. The HBPC is a group of "individuals" who have specific duties and obligations under the law and under the Shy Plan documents. The actions (or failures to act) of the "HBPC" as a "committee" are the cumulative actions (or failures to act) of the individual HBPC members. It is the individual member who has ERISA imposed fiduciary duty obligations and personal liability exposure. The HBPC Members appear to be seeking "anonymity" for their individual actions and thereby attempt to avoid personal accountability for their potential misfeasance and malfeasance.

5. Each HBPC member is the representative of either Navistar as the Plan Sponsor and/or the Plan Administrator or of one of two sub-classes of Shy Participants. Navistar is authorized under the Shy Plan to remove and appoint any of the three Navistar Members of the HBPC without this Court's over-sight or approval and without any vetting process by the Shy Plan Participants. The UAW is authorized by the Shy Plan to remove and appoint any of the two UAW Members without this Court's oversight or approval and without any vetting process by the Shy Plan Participants or even by the UAW-represented Participants. Under the Shy Plan the HBPC Other Member is the official representative for the non-UAW-represented Shy Plan Participants. The UAW Members and the Navistar Members are correct in their implied conclusion that they have no standing to voice an opinion as to Mr. Mindiola's performance on the HBPC in representing the non-UAW-represented Participants [Neither do they have a voice concerning Mr. Hall's qualifications or whether one of the persons named in a twenty-year-old Appendix A-7 that lists two HBPC Other Member Alternatives (about whom the non-UAW-represented Participants know nothing at all) is required to be named as a successor to Mr. Mindiola.] The Court is not bound by a twenty year old listing of names in an obscure

7

Appendix when a Shy Plan Article VI, Section 6.6 Petition is presented with a different name and a current description of that person's qualifications.

6. The Petition is a petition of more than three hundred individuals. It is not a petition brought by only Mr. Jones or Mr. Hall. It is a petition that informs the Court that at least three hundred non-UAW-represented Participants are of the opinion that Mr. Mindiola has not adequately represented *them* in his service on the HBPC and that they feel that Mr. Hall is qualified to serve as the HBPC Other Member. Mr. Mindiola is the only person with standing to argue that he did, in fact, adequately serve the non-UAW-represented Participants; he stands mute and has offered no meaningful refutation of the allegations made in the Petition . The single issue presented is not whether Mr. Hall is the absolutely best qualified person on earth today to serve as the HBPC Other Member. The single issue is that more than three hundred non-UAW-represented Participants signed a petition (that required only fifty signatures to be effective) asking the Court to appoint Mr. Hall as their representative on the HBPC. The Petition presents the "facts" about Mr. Hall's qualifications and no one has timely come forward (after this Court made its offer to consider a Motion for Rule to Show Cause) to dispute those stated facts. There is simply no formal "vetting" process by the Court contemplated or required by Shy Plan Article VI, Section 6.6 as alluded to in the Joint Response.

7. Petitioners find it significant that both the Navistar Members and the UAW Members are shown as represented by separate counsel for the preparation and filing of the Joint Response but that the Other Member is not represented. It may be appropriate to consider the idea that each HBPC Member has independent counsel available to him or her while serving on the HBPC. It is readily apparent to Petitioners that legal guidance with regard to each HBPC Member's fiduciary duty obligations is sorely needed. It is ironic that the Joint Response HBPC Members claim to be concerned about vetting of Mr. Hall for possible conflicts of interests while the HBPC Navistar Members display a virtual Pandora's box of these offenses in their actions and inactions to implement or cover up Navistar's improper cost-reduction initiatives.

8. The Petitioners are both somewhat surprised and of course dismayed to see the HBPC UAW Members prepare and file a document such as this Joint Response that appears to be in opposition to the Court making an appointment of Mr. Hall to the HBPC. In denying the HBPC's recent history of inaction, paralysis, dysfunction and apparent on-going flagrant violations of the Shy Plan documents and ERISA laws relating to the HBPC Member's fiduciary duties the UAW Members begin to appear complicit with Navistar instead of being guardians of the Shy Plan Participants' rights and benefits. Mr. Hall is anticipating that the UAW Members will be cooperative and supportive in looking for ways to bring the HBPC operations into compliance and productivity, if not "harmony." The UAW Member involvement in the Joint Response raises questions of concern.

8

9. This Court has already reviewed and approved the form and substance of the Petition:

> "The Court has reviewed the Petition, the allegations therein, and the signatures thereto. Accordingly, the Court Orders the HBPC to show cause within twenty (20) days, why it should not order the appointment of Mr. Hall as the HBPC Other Member, in accordance with Article VI, Section 6.6 of the Plan." (Docket no. 448, p.3)

THEREFORE, since no member of the HBPC has filed a Motion for Rule to Show Cause within the extended time limit set by the Court and the Court finding that no substantive issues or contrary "facts" were raised in the Joint Response filed by the HBPC Members, the Petitioners respectfully request that this Court Order that Mr. Hall be appointed as the current HBPC Other Member, effective as soon as possible, in place of Mr. Mindiola.

Respectfully submitted,

William W. Jones, *pro se*

Dated: April 28, 2014

Exhibits: A. Ustian announcement re Gary Holdren appointment
          B. Jones letter to Department of Labor
          C. Navistar 2014 Proxy Statement p. 42
          D. HBPC Petition for Determination of Shy Plan Eligibility
          E. Jones Letter to Mindiola re protocol for making determinations
          F. HBPC Shy Plan Eligibility Determination
          G. Jones Letter to HBPC Members raising issues of improper actions by the Members
          H. HBPC "response" to Hall

cc:    HBPC Members c/o Brian Delphey, Secretary

9