**WILLIAM W. JONES**
Attorney at Law (Retired) (Illinois only)
407 Mistwood Court
Spring Hill, Florida 34609

billyachts @aol.com
352.666.6434 (h)

September 16, 2013

Jeffrey A. Monhart
Acting Regional Director
Chicago Regional Office
Employee Benefits Security Administration
Suite 1600
200 West Adams Street
Chicago, IL 60606

    Re: COMPLAINT OF FIDUCIARY DUTY VIOLATIONS.
        Navistar Inc. Retirement Plan for Salaried Employees ("RPSE")
        Plan No: 001
        Navistar, Inc. Retiree Health Benefit and Life Insurance Plan
        ("Shy Plan") Plan No: 584
        Navistar, Inc. EIN: 36-1264810

Dear Mr. Monhart:

I am writing to EBSA on behalf of the 36,034 participants in the Shy Plan (many of whom are also participants in the RPSE pension plan) who have been subjected to at least six alleged immoral and illegal initiatives by Navistar, Inc. (the Plan Administrator for each Plan) over the past three years that we believe constitute flagrant violations of the Plan Administrator's ERISA fiduciary duties, as well as its duties and obligation under the respective Plan documents. These Navistar actions have caused (and continue to cause) material financial harm and sometimes severe emotional distress to the Plan(s) participants. One issue has been resolved through three years of litigation in the federal courts, one is presently (successfully, to date) being litigated in the same federal district court, and one has been resolved through an April, 30, 2013 Voluntary Fiduciary Correction Program agreement (and a voluntary Navistar restoration of $28 million to the Shy Plan VEBA Trusts). I am writing to the EBSA Director seeking Department of Labor intervention for the remaining three for which we do not (yet) have identified counsel willing and able to help us and also asking EBSA to identify and take appropriate actions against the individual Navistar leaders who have caused these allegedly intentional ERISA and Plan violations and damages.

**Below is a brief overview of the three issues (Paragraphs Nos. 1, 2 and 3) referenced above as well as the three (Nos. 4, 5 and 6) remaining active issues. We are therefore now earnestly requesting EBSA's direct and immediate help in stopping the last three of these**

1



**continuing ERISA violations that are impacting both of these Plans as well as to force Navistar to adhere to the required ERISA fiduciary standards (and perhaps for EBSA to take appropriate enforcement and remedial action for prior and current violations).**

I am a former General Counsel for Navistar Financial Corporation and Associate General Counsel for Navistar, Inc. I retired from Navistar in 2001 and became (and still am) a participant under the RPSE and Shy Plan. I am filing this Complaint on behalf of myself and pursuant to my ERISA rights, including a prohibition from any employer retaliation.

## HISTORY OF NAVISTAR'S RECENT ERISA FIDUCIARY DUTY VIOLATIONS

1. **Forced Implementation of a Part D Prescription Drug Plan (Shy Plan) [Status: Resolved through litigation]**

Ever since Navistar attempted to unilaterally, and without legal authority, shift about 22,000 Shy Plan 2 (Medicare) participants to a Part D prescription drug plan (with materially burdensome new premiums and a drastically reduced formulary of covered medications) in early 2010 I have become personally involved in trying to understand what Navistar was doing and whether it had the authority under the Plan documents and ERISA laws to do it. I then began a campaign of letter writing to Navistar's executives and then to its Board of Directors advising them of my findings and conclusions. Navistar engaged in a pattern of ill-advised legal delaying tactics against the retirees' Motion to Enforce the Shy Consent Judgment (that was agreed to by Navistar in 1993) that forms the legal foundation of the Shy Plan. Navistar even filed (but did not serve and later withdrew) a legally baseless Declaratory Complaint (with attendant media hype) seeking to void and nullify the 1993 Shy Consent Judgment in its entirety based on untrue and legally unsupportable facts and arguments. As that litigation dragged on and I witnessed Navistar improperly make a $525 million reduction from its reported APBO on its 2010 Balance Sheets and attribute the reduction to the implementation of the prescription drug plan change, I became alarmed that Navistar's public financial reporting as a whole was thereby rendered materially misleading.

I wrote the Chairman of the Audit Committee and demanded that it conduct a confidential investigation into this internal accounting and reporting control problem. I also complained about the fact that Navistar had, without explanation or authority, ceased making its required profit-sharing contributions to the Shy Supplemental Benefit Plan VEBA Trust for the past 10 years (discussed in Paragraph 2, below). I was told that an Audit Committee investigation was initiated but I never was told of its findings and no changes were made to previously filed or subsequently filed financial reports. At that time I was contacted by the Chicago Regional Office of the SEC Compliance Division that had commenced another Confidential Investigation of Navistar at the time. I gave them the background and information that I had on these subjects. Not until the end of 2011 when the federal court ruled that Navistar's unilateral change to the prescription drug plan was unauthorized and in violation of the Shy Consent Judgment did Navistar restore the APBO. [All court documents for this matter are available on-line through PACER: Sixth Circuit Federal Court, Southern District of Ohio; Honorable Judge Walter Rice; 3:92cv333; Court of Appeals Case No. 11-4143 (Opinion *affirming* Decisions and Remedial Orders of Court below)]

2. **Shy Supplemental Benefit Plan Profit Sharing Contributions. [Status: presently in active litigation.]**

The Shy Supplemental Benefit Plan is a sub-plan of the Shy Plan and involves a Navistar pre-funded VEBA Trust. The Trust assets are used to restore certain benefits lost from the retiree healthcare plan that existed prior to the Shy Consent Judgment and to reduce Participants' healthcare premium, deductibles and co-pay obligations. Navistar has a continuing obligation to contribute a specified percentage of its corporate profits each year to the Supplemental Benefit Trust. After several years of contributing on average of about $30 million per year the contributions stopped without any supporting justification. The Supplemental Benefit Committee ("SBC"), as the Supplemental Benefit Plan fiduciaries, filed for intervention in the Shy Consent Judgment federal case and was permitted to intervene by Judge Rice who had retained continuing jurisdiction for enforcement and interpretation of the Shy Consent Judgment. The initial year of these proceedings has been a series of procedural denials and delaying tactics by Navistar. In May, 2013 the SBC filed an Amended Complaint against Navistar alleging that Navistar had improperly manipulated its holding company structure and its internal cost accounting process to avoid reporting profits that should have been subject to the Shy profit sharing formula. The SBC is claiming breach of the terms of the Shy Supplemental Benefit Plan and ERISA violations and seeks in excess of $50 million. A copy of the Amended Complaint is attached as **Exhibit A**. For the first time since this dispute began years ago Navistar finally disclosed the existence of the litigation in its 2013 3rd Quarter financial report (10Q). [All court documents for this matter are available on-line through PACER: Sixth Circuit Federal Court, Southern District of Ohio; Honorable Judge Walter Rice; 3:92cv333]

3. **$28 million misapplication of Shy VEBA Trust(s) Assets. [Status: May, 2013 voluntary Navistar admission of ERISA fiduciary violations and restoration of funds with interest.]**

In March, 2013 the Shy Plan Administrator filed two amended Forms 5500 for the 2009 Plan Year with the Department of Labor ("DoL") and the IRS. In the amended filings Navistar disclosed that it had paid $21,003,000 in Non-Exempt Transactions out of the Shy VEBA Trusts to pay for Shy Plan life insurance premiums over the previous eight years (these premiums were to be paid by Navistar directly). When I made inquiry about this disclosure to Navistar I was told by its SOX Compliance Officer that Navistar had filed a Voluntary Fiduciary Correction Program application (VFCP), had repaid the Shy VEBA Trusts $27.8 million and had obtained a "No-Action" letter from DoL. I could not find out from Navistar who was responsible (or held accountable) for the misapplication of $28 million of Shy VEBA Trust assets or for filing of Navistar's VFCP Application. (I have appealed a DoL decision to redact those names from the copy of the Application that I received though a FOIA request to the DoL). I can find no Navistar public disclosure about this situation in Navistar's current financial reporting materials.

4. **Missing and Late Summary Annual Reports and Forms 5500. [Status: Forms 5500 and Summary Annual Reports for the Shy Plan are still missing for Plan Years 2010 and 2011.**

3

Over the past 10 years Navistar has been, and currently is delinquent in the timely sending of ERISA required Summary Annual Reports ("SARs") for the Shy Plan to the retirees and in filing ERISA required Forms 5500. These reports are critical for trying to understand what is going on with our Shy Plan benefits. This problem continues today as no SAR or Form 5500 has been filed for 2010 or later. In trying to obtain Navistar's compliance with the Shy Plan documents and ERISA law it became apparent to me that no one individual at Navistar was being publically identified and held accountable for being the Shy Plan Administrator. During these three years I have assumed that Mr. Greg Elliott, SVP Human Resources to be the Shy Plan Administrator and my observations, opinions and complaints have been mostly directed to him. Mr. Elliott has consistently denied to me that he was accountable as the Shy Plan Administrator. I could not determine who was accountable for the missing and late SARs and Forms 5500 filings and I have now determined that it likely "defaults" to Navistar's CFO.

5. **Illegal Navistar Purge of Persons Eligible for Shy Plan. [Status: Shy Plan Administrator has not provided valid written Determinations of Shy Plan Eligibility for three Petitions filed this year; Plan Administrator or Navistar has obtained improperly coerced waivers of Shy Plan and pension benefits from an unknown number of UAW represented hourly employees.]**

Late last year I was contacted by several retirees who felt that they had been (wrongfully) denied eligibility for Shy Plan benefits. Each was a participant in the RPSE which in my opinion is the only controlling prerequisite for Shy Plan eligibility. I represent them under a Limited Power of Attorney and have attempted to obtain appropriate determinations from the Shy Plan Administrator that Navistar has simply ignored. Navistar's (original and twice amended in March, 2013) 2009 Forms 5500 prepared and filed by Navistar assert that there were 26,170 Shy participants and 135 Shy "future grow-ins" (current employees who will become Shy Plan participants when they retire). The 2011 Annual Report from the Supplemental Benefit Committee ("SBC") claims that there were 36,034 participants and 1709 Shy future grow-ins. These numbers should be essentially the same but Navistar claims there are **9,864** fewer participants and **1,574** fewer future grow-ins than as reported by the SBC. These discrepancies suggest a possible massive purge by Navistar of qualified individual from the official Shy listing of Shy Plan participants and future grow-ins. I have been unable to obtain a written Shy eligibility Determination for the three Petitions filed pursuant to the eligibility protocol in the Shy Consent Judgment from anyone who claimed to be acting as the Shy Plan Administrator. I am attaching a copy of my latest letter to Ms. Bertolo, a lower level member of Mr. Elliott's organization, concerning one of the eligibility claims I am pursuing that more completely illustrates the problems **(Exhibit B)**. I am also aware of reduction in force programs at Springfield, Ohio and Fort Wayne, Indiana where Navistar apparently illegally tied an agreement by represented workers to "voluntarily" give up their Shy Plan and pension plan eligibility and benefits in exchange for "new" jobs in Lisle, Illinois without retiree healthcare benefits or for apparently inequitably low lump sum payments. I have not pursued these claims but feel that they should be fully investigated by EBSA.

6. **Navistar's unilateral, unauthorized and clearly improper reduction of RPSE benefit payments and unsubstantiated claims for retroactive lump-sum reimbursements of alleged "over-payments." [Status: This is the latest )August 30, 2013) Navistar assault**

4

**on its retirees and the issue for which we are seeking immediate intervention by EBSA. Incredible damages will be incurred starting October 15, 2013 unless Navistar is stopped.]**

On August 30, 2013 Navistar sent out a very wide distribution of individual letters to an unknown number of RPSE participants claiming that Navistar had "discovered" that it had made (unspecified) "mistakes" in calculating their Estimated Social Security Offset at the time of their retirement. Navistar advised them that it had already proceeded to substitute a revised Estimate into their pension benefits formula, and intended to immediately reduce their monthly benefits by the amount shown. If the person had been receiving RPSE pension benefits after age 62 Navistar then made a demand that the preceding alleged "over-payments" must be paid in a lump sum by October 15, 2013 or that the pensioner could "agree" ( i.e. Navistar would *impose*) to an additional significant reduction to their pension benefits for the rest of their lives. At the time of this letter I have been asked by nearly forty RPSE retirees to please help them deal with Navistar's actions. As a starting point I wrote the attached letter to Mr. Elliott (as the RPSE Plan Administrator) seeking source documentation and legal justification for Navistar's actions and demanding that Navistar not proceed with any pension benefit reductions **(Exhibit C)**. I have a fear borne of experience that Mr. Elliott will dismiss (without response) my demands for information and that Navistar will continue to force many innocent and uninformed retirees into some very serious financial and emotional problems. I sincerely doubt that I can find and engage competent counsel to seek a Restraining Order or Injunction before Navistar's extremely unfair self-serving October 15, 2013 deadline. Hence I am making these pleas for help from EBSA. I am attaching as **Exhibit D** a dramatic example of an actual letter to one of these RPSE retirees dated August 30, 2013 that gave notice to him that his monthly pension benefit would be immediately reduced by $119.40 and that further demanded that he pay a lump sum of $3,009.44 by October 15, 2013 for past alleged over-payments (plus interest!). The pensioner sent me a copy of his Estimated Age 62 Benefits prepared by Social Security Administration that demonstrated that the Estimated Age 62 Benefit used by Navistar at his retirement and the new "corrected" Estimated Benefit used in the letter were both *overstated*. When I recalculated the Social Security Offset it appeared that this pensioner is, in fact (under Navistar's methodology) entitled to an *increase* to his monthly benefit of $100.80 and a lump-sum *reimbursement* from Navistar of $2,520 (plus interest) by October 15, 2013. Something is inherently wrong with Navistar's methodology even before we address the question of Navistar's authority under the RPSE or ERISA to do any of this. This pensioner did not know what to do and would otherwise have agreed to the reduction and to the factually unsupportable claim for repayment of an apparently "phantom" overpayment. I have direct evidence that some pensioners have actually already sent Navistar checks for their claimed overpayments. This is an unexpected and apparently unsupportable financial burden being placed upon essentially helpless retirees that must be stopped immediately.

**SHY PLAN HEALTH BENEFIT PLAN COMMITTEE.**

The Shy Plan contains an elaborate structure and attempts to balance the potential competing interests of various parties through the establishment of the Health Benefit Plan Committee ("HBPC"). The HBPC is comprised of three Navistar employees and three non-Navistar individuals (all of these members are currently union affiliated with two being International

5

UAW employees). There is a provision for the *ad hoc* appointment of a neutral seventh member as needed. The HBPC is charged with very specific powers and obligations with regard to the structure of, administration and financial oversight of the Shy Plan. For instance the HBPC is the final arbiter for eligibility issues and may make final determinations without deference to prior determinations of the Plan Administrator. While this structure appears to have worked as designed for the first ten years since 1993 Navistar has almost totally dismissed its purpose by ignoring it and by unilaterally proceeding to implement impermissible and unauthorized self-serving cost savings initiatives. The HBPC members are clearly ERISA "fiduciaries" and even the Navistar members must take actions for the exclusive benefit of the Plan participants under ERISA law. Any proposed change to the Shy Plan benefits must be approved by the HBPC but as Judge Rice noted in one of his Decisions in the Part D litigation Navistar did not even (or ever) present the proposed change to the HBPC as required under the Shy Plan. In his September 30, 2011 Order he added that "…a fully functioning HBPC does not even exist." Based on recent history it appears that the HBPC is not, nor has been, diligent with regard to its oversight duties and obligations. A colleague of mine contracted a non-Navistar HBPC member last week and determined that the HBPC non-Navistar members: a.) do not and did not review any SARs or Forms 5500 (either before or after filing), b.) were not aware of the $28 million wrongfully taken by Navistar as Plan Administrator from the Shy Plan VEBA Trusts to pay life insurance premiums, c.) were not aware of the existence of VFCP in which Navistar admitted its fiduciary violations to the VEBA Trusts that are under the control of the HBPC and d.) were not even aware of the fact that they had ERISA fiduciary duties and liability exposures. I do not believe that EBSA can allow this dire situation to continue. It should thoroughly investigate the HBPC's recent history and current operations and mandate needed remedial changes and, again, it should take any other appropriate actions against individuals it deems to have been in violation of their individual fiduciary duties. Unfortunately for loyal and dedicated individuals for whom I am fighting for their Shy eligibility I am now required by the Shy Plan documents to "appeal" the Shy Plan Administrator's non-compliant eligibility determinations to the HBPC (Judge Rice's retention of Shy Plan jurisdiction specifically excludes individual eligibility disputes).

**EMERGING EXECUTIVE LEADERSHIP (moral, ethical and legal) PROBLEMS.**

Over the course of time since 2010 a very distinct pattern of alleged illegal, unethical and immoral Navistar leadership conduct has emerged that is, in my opinion, the root cause of these assaults on the retirees. Other than being chronically and seriously underfunded for eons the RPSE has been administered without apparent problems until this month when the Social Security Offset claims were communicated by a Human Resources vice president, Ms. Annette Freund, who reported directly to Mr. Greg Elliott, SVP Human Resources. A very strange "coincidence" was that most of the Offset letters to the retirees were signed by Ms. Freund on her last day of work at Navistar before her sudden retirement. The Shy Plan had operated for ten years without any discernible problems but when Mr. Dan Ustian became Navistar CEO things changed. He publically announced his intention to deal with what he termed the "Retiree Legacy Problem" that was represented by Navistar's huge unfunded APBO. In November, 2009 he announced the appointment of a former Arthur Andersen partner named Gary Holdren to become a special consultant to help reduce Navistar's APBO (His appointment letter is attached as **Exhibit E**). Mr. Ustian apparently convinced his General Counsel, Mr. Steven Covey to give him unquestioned legal support in the effort. I believe that Mr. Holdren is the architect for the

6

implementation of the Shy Plan Part D strategy for the abortive massive APBO reduction and perhaps also for the manipulation of the profit-sharing internal accounting process to avoid future profit sharing contributions. He may have come up with the idea to purge the list of people who were otherwise Shy Plan eligible to illegally reduce costs and the APBO, as discussed above in Paragraph 5. Mr. Covey presumably provided the necessary legal "authority" for these initiatives and apparently managed the questionable (and unsuccessful) litigation strategy for the two issues that were or are being litigated (by 2011 he had been named as Navistar's "Chief Ethics Officer" as part of a Navistar plea bargain settlement agreement with the SEC over the SEC's claims that Mr. Ustian had circa 2004 intentionally violated Navistar's internal accounting and reporting controls with respect to Navistar's accounting for profits and net equity; Mr. Ustian forfeited $1.5 million of "unearned" incentive pay and signed a Cease and Desist agreement against further violations of the internal controls even as the improper Part D APBO reduction was implemented). It appears Mr. Elliott and his Human Resources team implemented the strategies. None of these executives has ever publically demonstrated an understanding of or appeared to pay *any* homage to the ERISA mandates relating to Navistar's fiduciary duty of taking actions for the "Exclusive Benefit" to the retirees when acting as a Plan Administrator; in fact, of course, all of these assaults were for Navistar's own self-serving cost and APBO reduction goals (for which these executive were highly rewarded). No one seems to know who was responsible for the false and incomplete profit-sharing records Navistar sent to the Supplemental Benefit Committee for ten years. No one has seemingly been held accountable for the Part D initiatives that turned out to be a (foreseeable and very expensive) litigation disaster for Navistar. Mr. Ustian and Mr. Holdren are now gone. However, remnants of an obviously less than ethical corporate culture remain; and so also do Mr. Covey and Mr. Elliott.

### REQUESTS FOR DEPARTMENT OF LABOR ACTIONS

**On behalf of the 36,034 Shy Plan and all of the RPSE participants we therefore most urgently request that the EBSA and Department of Labor:**

1. **Immediately investigate and then issue some sort of Cease and Desist Order or enter into a Stand Still Agreement with Navistar with respect to Navistar's unsupported pending demands against an unknown number of RPSE participants who were sent the above described threatening letters in which it is alleged Navistar made mistakes in the calculation of their Estimated Social Security Offset and for which Navistar intends to take unilateral action to reduce pension benefits and seek reimbursements for alleged pension benefit "over-payments" effective as of October 15, 2013.**
2. **Investigate the Shy Plan Administrator's failure to timely file the required Shy Summary Annual Reports and Form 5500 and obtain compliance for Plan Years 2010, 2011, 2012 and thereafter.**
3. **Investigate allegations that the Shy Plan Administrator has improperly and illegally denied otherwise eligible Navistar employees and retirees from their Shy Plan benefits through unsupported legal arguments and has engaged in inequitable "buyouts" of otherwise qualified employees' Shy Plan benefits though coercive and economically unfair tactics.**

4. **Investigate the "functional" history of the HBPC and implement corrective actions to insure members' compliance with the Shy Plan and ERISA law.**
5. **In addition and perhaps as a component aspect of the above requested investigations and actions we request that the Department of Labor investigate and assess Navistar, Inc. and the individual executives and managers who have or had the apparent or express authority to take actions as the Plan Administrator for the RPSE and Shy Plan with regard to possible violations of their personal fiduciary duties and obligations under ERISA and their obligations under the respective Plan(s) documents. We would also expect the Department of Labor to take the appropriate actions to deter further violations in the future.**

Please advise me immediately with the Department's decision relating to our first request. It now appears certain that Navistar intends to implement the threatened reductions in RPSE monthly benefits for the November, 2013 payments despite our vigorous and soundly based objections, complaints and evidence that Navistar's data and assumptions are clearly and dramatically wrong in some cases.

For the record, I certify that I have received absolutely no acknowledgment or response as of this date from Navistar, Inc., Mr. Elliott, Ms. Bertolo or from any of the noted copy recipients for the two letters from me attached hereto as Exhibit B and Exhibit C.

Thank you for your consideration of our requests. I will stand ready to provide you with any requested additional information or documentation that you may want.

Very truly yours,

*William W. Jones*

Attachments:   Exhibit A: SBC Amended Complaint Profit-sharing
        Exhibit B: Letter to Bertolo Petition for Shy Eligibility Determination
        Exhibit C: Letter to Elliott re RPSE Social Security Offset action
        Exhibit D: Sample (redacted) RPSE notice of benefits reduction; Social Security report showing both original and revised Offset calculations to be in error: pension increase and refund due retiree.
        Exhibit E: Ustian 2009 announcement letter re Gary Holdren appointment to reduce retiree healthcare and pension costs.

cc: all below listed officer copied via Navistar email service and w/o attachments:
    Mr. Troy Clarke, Navistar CEO
    Mr. Jack Allen, Navistar COO
    Mr. Walter Borst, Navistar CFO
    Mr. Greg Elliott, Navistar SVP Human Resources
    Mr. Steven Covey, Esq. Navistar SVP, General Counsel and Chief Ethics Officer
    Mr. Glenn Palmer, Navistar Pension Director