IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ART SHY, et al., :

    Plaintiffs, :

v. : Case No. 3:92cv333

NAVISTAR INTERNATIONAL : JUDGE WALTER H. RICE
CORPORATION, et al.,

    Defendants. :

---

ENTRY AND ORDER GRANTING THE RELIEF REQUESTED IN THE PETITION TO REPLACE SHY PLAN OTHER MEMBER OF THE HEALTH BENEFIT PROGRAM COMMITTEE (DOC. #449); THE COURT ORDERS THE REMOVAL OF THE CURRENT OTHER MEMBER OF THE HEALTH BENEFIT PROGRAM COMMITTEE, JOHN MINIDOLA, FROM SAID COMMITTEE, AND THE APPOINTMENT OF JACK D. HALL AS MR. MINDIOLA'S REPLACEMENT; THE COURT ORDERS STRICKEN THE DOCUMENT AND EXHIBITS THAT WERE SENT BY WILLIAM W. JONES AND FILED BY THE CLERK AT DOC. #460

---

On March 7, 2014, the Court sustained the *Pro Se* Motion to File Petition to Replace Shy Plan Other Member of the Health Benefit Program Committee ("Petition") (Doc. #447), which had been sent to the Court by William W. Jones on behalf of the Petition's other signatories ("Petitioners"). Doc. #448. Petitioners are members of the Plaintiff class and are beneficiaries of the Navistar International Transportation Corporation ("Navistar") Retiree Health Benefit and Life Insurance Plan ("Plan"), a creation of the Settlement Agreement approved by this Court on June 8, 1993. Doc. #327. The Settlement Agreement terminated the

above-captioned class action, brought by retired employees and their union representatives against Navistar, after the company had reduced the benefits of its retired employees.

Article VI of the Plan created the Health Benefit Program Committee ("HBPC"). Section 6.1 of Article VI provided for a seven-member committee: two members appointed by the UAW, three members appointed by Navistar, one member to represent the non-UAW retirees ("HBPC Other Member"), and the final member to be appointed by a majority of the other members. Section 6 of Article VI describes several procedures for the appointment and replacement of the HBPC Other Member, including the following:

> The HBPC Other Member . . . may also be replaced by the Court upon petition signed by not less than 50 Participants who are Non-Represented Employees, Present Employees who are not represented by the UAW or Retirees who were not represented by the UAW at the time of their retirement, for failure to adequately represent the Participants.[1]

Petitioners invoked the process in Article VI, § 6.6 of the Plan, alleged that the HBPC had violated its fiduciary obligations under the Plan and ERISA, and sought the replacement of the HBPC Other Member, their current representative to the HBPC. Doc. #449 at 2. The multiple violations alleged include the failure to oversee millions of dollars of life insurance proceeds that Navistar improperly paid

---

[1] In addition to the express grant of authority to the Court to replace the HPBC Other Member in Article VI § 6, Section 15.4 of the Settlement Agreement provides that "[t]his Court will retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of this Settlement Agreement except for disputes relating solely to eligibility of entitlement to benefits hereunder."

2

out of trusts instead of its own corporate accounts; the failure to monitor Navistar's compliance with this Court's Order of September 30, 2011, regarding prescription drug benefits; and other violations related to Plan eligibility and Medicare requirements. *Id.*

With specific reference to the current HBPC Other Member, John Mindiola, the Petition alleged that he "never communicated with non-represented Shy participants to inform them about the current status of their Shy Plan benefits, changes to the Shy Plan, or any issues or disputes with Navistar, Inc. or those acting as the Shy Plan Administrator." *Id.* Petitioners sought an order from the Court that replaces the current HBPC Other Member with Jack D. Hall under the procedure set forth in Article VI, § 6.6 of the Plan.

On March 7, 2014, the Court ordered the HBPC to show cause why the Court should not grant Petitioner's request and replace Mr. Mindiola with Mr. Hall. Doc. #448. On April 25, 2014, the HBPC members filed a response, entitled Joint Response of the UAW Members and Company Members of the Health Benefit Program Committee to the Petition to Replace the Other Member of the Health Benefit Program Committee ("Joint Response"). Doc. #459. Therein, Mr. Mindiola stated only that he "denies that he has failed adequately to represent the Participants" of the Plan. *Id.* at 2. Other than this general denial, Mr. Mindiola offered no other response or reason why he should not be replaced.

The remaining members of the HBPC stated that they "believe that it would be inappropriate for them to take a position on the question of whether Mr.

3

Mindiola has failed to adequately represent the Participants, and therefore take no position on the issue." *Id.* at 2. Instead, they made several "observations regarding the Petition," each of which the Court will summarize and address.

First, the HBPC members pointed out that the Petition attributes a "lengthy list of alleged wrongful or inappropriate conduct" to the HBPC as a whole, which "cannot provide the basis for determining that Mr. Mindiola has failed individually to adequately represent Plan Participants." *Id.* The Court agrees, and takes no position on Petitioners' general allegations against HBPC of wrongful conduct. However, those allegations are not relevant to the basis for the removal of the HBPC Other Member by petition as set forth in Article VI, § 6.6 of the Plan, which is simply failure to adequately represent the non-UAW represented retirees. Petitioners claim that Mr. Mindiola's representation has been inadequate because he has failed to communicate with them about benefits, plan changes or other issues, and that he should therefore be replaced. Those allegations are sufficient to trigger scrutiny under Article VI, § 6.6 of the Plan.

Second, the HBPC members dismissed the allegations directed against Mr. Mindiola by observing that "nothing in the Plan requires, or even authorizes, any individual member of the HBPC to communicate directly with Participants on behalf of the HBPC." *Id.* at 3. The HBPC members' statement may accurately characterize the literal language of the Plan, but the observation is beside the point. Petitioners do not complain about Mr. Mindiola's performance on behalf of the HBPC. Petitioners complain about his representation of them and their

4

interests. Under Article VI, § 6.1 of the Plan, the HBPC Other Member is the "representative of the non-UAW Retirees," not of the HBPC.

Third, the HBPC members stated in the Joint Response that they have not attempted to verify whether the Petitioners are actual Plan participants, and they contest the ability of a "Surviving Spouse" to sign the Petition. However, the fact that the HBPC chose to forego verification of Petitioners' signatures is not cause to reject the Petition. To the contrary, the HBPC is a presumably diligent body that would have investigated any apparent indication of inauthenticity. Each Petitioner provided his or her name, signature, address, and date of signature on the Petition. If genuine concern had arisen, this information could have been cross-referenced with known data about the Plan Participants. Even if the HBPC members did not have immediate access to the names or addresses of Plan Participants, under the authority granted by Section 6.2(d) and Section 6.2(e) of Article VI, they could have enlisted the assistance of the Plan Administrator to authenticate the status of Petitioners.[2] Furthermore, the HBPC members moved the Court for an extension of time to respond to the Petition, which the Court granted. Doc. #454. Thus, if the HBPC members seriously believed that the signatures were invalid, there was

---

[2] Section 6.2 describes the "powers, rights and duties" of the HBPC. Subsection (d) authorizes the HBPC "to bring to the attention of the Plan Administrator and discuss with the Plan Administrator such administrative problems under the Health Benefit Program of which it has knowledge as it may deem appropriate in its sole discretion." Subsection (e) authorizes the HBPC "to require the Plan Administrator to provide it with such information regarding the administration of the Plan as it may deem appropriate in its sole discretion." Either or both of the foregoing provisions could have been invoked to enlist the assistance of the Plan Administrator in authenticating the signatures to the Petition.

5

ample time to conduct an investigation before responding to the Court's show cause order.

The Court also notes that there are over three hundred signatures to the Petition. Section 6.6 only requires fifty signatures for removal of the HBPC Other Member. Even if "Surviving Spouses" were not eligible to petition for the HBPC Other Member's removal, it seems unlikely that over two hundred and fifty widows or widowers of retirees signed the Petition, and therefore unlikely that the signatures of "Surviving Spouses" could form a basis to invalidate the Petition. Again, the HBPC chose not to verify the status of the signatories, whether as Plan Participants, or "Surviving Spouses." Accordingly, the Court finds that the HBPC has shown no good cause to doubt the authenticity of Petitioners' status as Plan Participants or their standing to petition for removal of the HBPC Other Member.

Fourth, the HBPC members urge the Court to "thoroughly vet potential candidates for the position of HBPC Other Member prior to appointing any replacement to ensure that the selected candidate is qualified for the position and does not have any conflict of interest that may interfere with the candidate's ability to serve as a fiduciary for all Participants." Doc. #459 at 3-4. In particular, they suggest that if the Court replaces Mr. Mindiola, it should replace him with either of the two "HBPC Other Member Alternates" that were listed in Appendix A-7 of the Settlement Agreement. The Court declines to engage in an investigation of potential replacement candidates for Mr. Mindiola. Petitioners have chosen Mr. Hall to represent them on the HBPC, and the Court will not override their chosen

6

representative. For the same reason, the Court will not appoint either of the alternates.

Accordingly, pursuant to Article VI, Section 6.6 of the Plan, the Court ORDERS the removal of John Mindiola as the HBPC Other Member representative of the non-UAW retirees, and ORDERS the appointment of Jack D. Hall to replace Mr. Mindiola as the HBPC Other Member representative of the non-UAW retirees, effective immediately.

Finally, the Court notes that it received a document purporting to be the "Petitioner's Rebuttal to the Joint Response of the UAW Members and Navistar Members of the Health Benefit Program Committee to the Petition to Replace Shy Plan Other Member of the Health Benefit Program Committee." Doc. #460. The document is signed only by William W. Jones, one of the Petitioners, and has a number of attached exhibits. There is no indication that any Petitioner other than Mr. Jones is aware of the contents of this purported rebuttal made on behalf of them all. The documents sent by Mr. Jones to the Court are irrelevant to the matter before it, and they played no role in the Court's decision to grant the Petitioners' request. If Mr. Jones has evidence that he believes is relevant to this case, he should submit it to any of the attorneys who represent the named parties. Accordingly, the Court ORDERS, on its own motion, that said document and its accompanying exhibits (Doc. #460) be STRICKEN, as they are not relevant to the issue at hand.

Date: May 7, 2014

*[signature]*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE