RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0056p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ART SHY, et al.,

                         *Plaintiffs*,

    *v.*

NAVISTAR INTERNATIONAL CORPORATION, et al.

                         *Defendants*,

NAVISTAR, INC.,

                         *Defendant-Appellant*,

SUPPLEMENTAL BENEFIT COMMITTEE OF THE NAVISTAR INTERNATIONAL TRANSPORTATION CORP. RETIREE SUPPLEMENTAL BENEFIT PROGRAM,

                         *Intervenor-Appellee*.

No. 14-3251

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:92-cv-00333—Walter H. Rice, District Judge.

Argued: January 14, 2015

Decided and Filed: March 27, 2015

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Sally J. Scott, FRANCZEK RADELET, P.C., Chicago, Illinois, for Appellant. Sarah A. Zumwalt, GROOM LAW GROUP, CHARTERED, Washington, D.C., for Appellee. **ON BRIEF:** Sally J. Scott, David P. Radelet, Abizer Zanzi, William R. Pokorny, FRANCZEK RADELET, P.C., Chicago, Illinois, David P. Pierce, COOLIDGE WALL CO., L.P.A., Dayton, Ohio, for Appellant. Sarah A. Zumwalt, Edward A. Scallet, GROOM LAW GROUP, CHARTERED, Washington, D.C., Kevin L. Murphy, GRAYDON HEAD & RITCHEY LLP, Fort Mitchell, Kentucky, for Appellee.

      ROGERS, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined. CLAY, J. (pp. 15–23), delivered a separate dissenting opinion.

No. 14-3251                    *Shy, et al. v. Navistar Int'l Corp., et al.*                    Page 2

——————————————

## OPINION

——————————————

ROGERS, Circuit Judge.   This appeal concerns whether a particular contract-interpretation dispute involving corporate structure is subject to the provision in the contract for arbitration by an accounting firm, and also whether the party seeking arbitration waived its right to arbitrate through its conduct before and during litigation.  Under a consent decree in a lawsuit relating to employee retirement benefits, Navistar makes annual contributions to a Supplemental Benefit Trust managed by a Supplemental Benefit Committee (SBC).  The size of Navistar's contributions is determined by a formula provided in the agreement that takes as inputs data on Navistar's economic performance, and Navistar must under the agreement regularly provide data to the SBC to permit it to evaluate whether Navistar is applying the formula correctly.  The agreement provides for arbitration before an accounting firm in the event that the SBC disputes the "information or calculations" Navistar provides to it.  The SBC intervened in the original lawsuit, ultimately claiming that Navistar was improperly classifying various aspects of its business activities and structuring its business so as to evade its profit-sharing obligations under the agreement.  Navistar claimed that under the accountant arbitration mechanism provided for in the agreement, which applies to disputes over the "information or calculations" provided by Navistar, the SBC's claims were subject to arbitration.  The district court correctly agreed with Navistar that the claims were subject to arbitration.  However, contrary to the district court's ruling, Navistar's conduct before and during litigation did not amount to a waiver of its right to arbitrate the claims.  Arbitration is therefore required.

The arbitration clause at issue is contained in a settlement agreement and consent decree in a class action lawsuit (*Shy et al. v. Navistar International Corporation*) relating to Navistar's obligations to its retired employees.  As part of the agreement and consent decree, Navistar had an obligation to make yearly profit-sharing payments to a Supplemental Benefit Trust.  The agreement created the SBC as the fiduciary and administrator of the Supplemental Benefit Trust.  The methods for calculating and enforcing Navistar's obligation were outlined in a Profit Sharing Plan (Plan) attached as an appendix to the agreement and decree.  Section 8 of the Plan

required a regular report by Navistar to the SBC of financial information necessary to confirm that Navistar was making contributions in the amounts required by the plan. Section 8 also contains a dispute resolution clause that requires disputes over the "information or calculation[s]" provided by Navistar to be referred for binding determination to an accountant (or other neutral decisionmaker) chosen by the parties. In full, the clause provides:

> 8.4. If, following a review of the information and calculations provided pursuant to Sections 8.1, 8.2, and 8.3 the [SBC] disputes such information or calculation[s], it shall inform the Company of such dispute within 30 calendar days of the receipt by the UAW and the [SBC] of such information. The Company and the [SBC] shall thereafter attempt, for a period not to exceed 30 calendar days, to resolve such dispute.

> 8.4.1. If such dispute cannot be resolved during that period, the parties to that dispute will attempt to identify a mutually acceptable third party (such as an accounting firm) to resolve such disputes.

> 8.4.2. If the parties to such dispute cannot identify a mutually acceptable third party to resolve such dispute, the parties to such dispute shall obtain a list of the seven largest accounting firms, measured by the number of certified public accountants practicing in the United States. The Company and the [SBC] shall then alternately, beginning with the Company, strike one name off such list until only one name remains. The remaining firm shall be empowered to resolve the dispute.

> 8.4.3. Following selection of the party to resolve the dispute as provided in Section 8.4.1 or 8.4.2, the parties to the dispute shall present evidence and argument in support of their position and the individual or firm shall render a decision which shall be final and binding on all parties to the dispute.

On July 2, 2009, the SBC sent Navistar a letter requesting additional financial information and disputing Navistar's classification of Medicare Part D subsidies in its calculations of its profit sharing obligations. On August 3, 2009, Navistar replied, providing at least some of the requested information and declining to pursue dispute resolution over the Medicare subsidy classification issue on the grounds that reclassifying the subsidies would not affect Navistar's overall obligations. On May 4, 2010, the SBC formally requested that Navistar arbitrate the Medicare subsidy issue and additionally requested other financial information. It appears that Navistar did not respond directly, but instead provided updated financial information (without directly addressing the SBC's requests for arbitration and information) on April 6, 2011. On November 14, 2011, the SBC again requested more detailed financial

information and threatened to go to court if Navistar failed to provide it. On February 15, 2012, Navistar replied to the SBC, listing general and itemized objections to the SBC's information requests. Navistar also noted that it had not specifically responded to the SBC's May 4 request because its response depended on ongoing litigation with the original parties to the *Shy* agreement.

On March 23, 2012, the SBC filed a motion to intervene in the *Shy* litigation, followed shortly by a motion to enforce the settlement agreement, seeking an order requiring Navistar to provide the information the SBC had requested. On April 13, 2012, Navistar filed a motion for extension of time seeking the court's permission to delay Navistar's response to the SBC's motion to enforce until after the court ruled on the SBC's motion to intervene. On April 25, 2012, Navistar filed a response to the SBC's motion to intervene, arguing that the SBC's intervention was not proper. On February 6, 2013, the district court granted the SBC's motion to intervene with instructions for the SBC to file a complaint, which it did on February 15, 2013. On March 11, 2013, Navistar filed a response to the SBC's motion to enforce, as well as a motion to dismiss the SBC's subsequent complaint, arguing for the first time, among other things, that the SBC's requests for information were subject to the alternative dispute resolution procedures outlined in the Plan. On March 29, 2013, the district court sustained the SBC's motion to enforce, finding that its dispute over what information Navistar had to provide under the Plan was not subject to the alternative dispute resolution procedures, and ordering Navistar to provide the information requested by the SBC. After Navistar provided this information, the SBC on August 21, 2013 filed a motion to amend its complaint, charging that Navistar had manipulated its corporate structure and accounting analysis to eliminate its profit-sharing obligations, in violation of the terms of the Plan. In particular, the SBC alleged the following four violations:

> (1) forming entities which [Navistar] then treats as acquired businesses [treated more favorably from Navistar's point of view under the Plan] and then reallocating their revenues or not properly or completely allocating costs and expenses among the Covered Operations; (2) excluding dividends and similar payments from the calculation of Qualifying Profits; (3) excluding . . . Medicare Part D subsidy payments from the calculation of Qualifying Profits; and (4) failing to exclude Bonus Eligible employees from the calculation of Qualifying Hours.

After the district court granted leave to amend, Navistar moved to dismiss the SBC's amended complaint on the ground that the questions it raised were subject to arbitration under the Plan.

On March 6, 2014, the district court denied Navistar's motion to dismiss the SBC's amended complaint. The district court found that in all of the allegations in the amended complaint, the SBC was disputing the "information or calculations" provided by Navistar, and that therefore these claims fell under the scope of the arbitration clause. However, the court also held (although the SBC had not argued) that Navistar had waived its right to arbitrate those questions through its behavior before and during litigation. In particular, the court noted Navistar's reluctance to enter into arbitration over the Medicare subsidy payments prior to litigation, and the fact that Navistar did not seek to arbitrate the SBC's first claim requesting information until after the court granted the SBC's motion to intervene. The court found that these decisions were "completely inconsistent with any reliance on the Plan's dispute resolution procedures," and also caused a delay that prejudiced the SBC by delaying the resolution of the dispute and any payments that the SBC might be entitled to. The district court denied Navistar's motion to dismiss, and Navistar appeals. *See* 9 U.S.C. § 16(a)(1)(B).

The SBC's claims against Navistar are all subject to arbitration, as the district court ruled, notwithstanding the SBC's argument for affirmance on the alternative ground that the claims are not subject to arbitration under the arbitration clause. In each claim the SBC is "disput[ing] . . . information or calculation[s]" regarding Navistar's obligations to the Supplemental Benefit Trust that Navistar provided under its reporting obligations under the settlement agreement. This places each claim within the scope of the arbitration clause.

The parties do not dispute for purposes of this appeal that § 8.4 is an arbitration agreement—albeit one with a narrow scope—to which the Federal Arbitration Act (FAA) applies. The First Circuit has persuasively held that the following elements, all present in this case as well, amounted to "arbitration in everything but name": finality, "an independent adjudicator, substantive standards (the contractual terms . . .), and an opportunity for each side to present its case." *See Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004). The FAA applies even when the agreement is limited to only a particular class of disputes. *Id.*

Because the SBC's claim, at its core, is that Navistar misclassified various aspects of its business, resulting in incorrect information being provided to the SBC, the SBC's claims are within the scope of the arbitration agreement. Disputes over how earnings, hours worked, and similar aspects of a business should be categorized for the purposes of an accounting analysis are disputes over "information." To the extent that the SBC's claims extend beyond categorization to the operational practices of Navistar, the claims are so closely tied to the information provided to the SBC that the arbitration agreement still applies.

The SBC, in its underlying claims, disputes the categorization of various aspects of Navistar's business in the reports Navistar provides, and so the SBC is disputing the "information" provided by Navistar. The SBC's claims—about whether subsidiaries are "businesses acquired," about the inclusion of various revenue sources and Medicare Part D subsidies in "Qualifying Profits," and about the inclusion of the hours of certain workers in "Qualifying Hours"—all directly concern the "information" provided by Navistar pursuant to its obligations under Section 8. In the agreement, "information" refers to the contents of "a worksheet detailing the calculation of the Contribution obligation, the Qualifying Hours, and the Qualifying Profits, [including] a listing by category of the employees included and excluded in the calculation of Qualifying Hours and all information reasonably necessary to review the calculation of Qualifying Profits." If—taking one of the SBC's claims as an example—some employees were wrongly included in the calculation of Qualifying Hours when, under the terms of the contract, they should have been excluded, then the information in the worksheet is incorrect. The arbitration agreement applies when the SBC "disputes information or calculation[s]" provided by Navistar, and is not limited by its terms to disputes over the calculations involved. If the SBC disputes Navistar's classification of employees, it is plainly disputing the information Navistar has provided in its worksheet and its dispute is subject to arbitration. Thus the SBC's classification disputes are subject to arbitration.

It is true that classification disputes, unlike calculation disputes, potentially involve questions of contract interpretation as well as accounting, but this does not fall outside the plain text of the arbitration agreement, for two reasons. First, the accountant-based nature of the dispute resolution procedure at most creates some ambiguity as to whether the scope of disputes

over "information or calculation[s]" was intended to be restricted to disputes in which no legal analysis whatsoever might be necessary. However, the otherwise unqualified language of the agreement trumps any assumption that the parties would not have committed legal disputes to an accountant's resolution. The ambiguity—if there is any—must be "resolved in favor of arbitration" even when an arbitration clause is limited in scope. *Bratt Enters. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).

Second, the contract disputes involved in the SBC's classification-based arguments are relatively simple and closely related to accounting; it is reasonable to suppose that the parties to the agreement intended such disputes to be arbitrated. To support its claim that Navistar misclassified newly formed subsidiaries as "businesses acquired," the SBC points in its complaint to the agreement's invocation of "generally accepted accounting principles." The SBC's second and third claimed contract violations relate to particular components of the Qualifying Profits calculation—income and dividends from acquired foreign entities and Medicare Part D subsidies. At first blush, the contract interpretation issues here appear to depend on questions of accounting—whether foreign entities were controlled by Navistar and whether the subsidies constituted "income." Also, the SBC's fourth claimed violation concerns whether employees were properly classified as "Bonus Eligible" for the calculation of "Qualifying Hours." This appears to depend on how employees were compensated, which again is likely to be an area that accountants are familiar with. When accountants analyze businesses' balance sheets, they necessarily categorize various aspects of the businesses' performance in order to find the inputs to calculations. Thus it appears that an accountant arbitrator could resolve the SBC's claims effectively, at least to the extent that they concern classifications in what is essentially an accounting analysis. In *Fit Tech*, while declining to order accountant arbitration for allegations of "business misconduct unrelated to accounting conventions," the First Circuit nonetheless ordered accountant arbitration for "accounting issues." 374 F.3d at 8.

While two of the SBC's claimed violations—Navistar's creation of and reallocation of profits to subsidiaries, and its exclusion of dividends earned from subsidiaries—are phrased in part as though they were operational violations involving business misconduct, they are still

subject to arbitration.  To the extent that they are operational issues rather than classification issues, they are still so closely connected to the information Navistar provides to the SBC that they count as disputes over that information.  The SBC claims that Navistar created a number of domestic and foreign subsidiaries that it classified as "acquired businesses," a classification that reduced the obligation to the Supplemental Benefits Trust created by the subsidiaries' profit. Further, Navistar structured these subsidiaries in a way that minimized its obligations, for example, by having a foreign subsidiary not subject to the settlement agreement "nominally purchase" other subsidiaries.  At bottom, these are classification disputes rather than operational disputes.  The SBC alleges that the economic substance of Navistar's business is not reflected in the structure of its subsidiaries, but it does not allege, for instance, that Navistar substantively hurt the performance of any aspects of its business in order to reduce its obligations.  In contrast, in *Fit Tech*, the plaintiffs alleged—in a portion of their claim the First Circuit held was not subject to arbitration—that the defendants actively directed customers away from fitness centers whose profits determined the defendants' obligations to the plaintiffs.  *Id.* at 4.  At its core, then, the SBC's claim appears to be that Navistar's use of subsidiaries does not alter the economic reality of its business and should not alter the accounting analysis of its profit sharing obligations.  Since the operational decisions the SBC complains of affected only the information provided to the SBC and not the substance of Navistar's business, these are still disputes about information.

We have twice required accountant arbitration for operational disputes directly affecting information relevant to accounting.  *JPD Inc. v. Chromined Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008); *PureWorks, Inc. v. Unique Software Solutions, Inc.*, 554 F. App'x 376, 378 (6th Cir. 2014).  In *JPD*, the arbitration clause required arbitration for disputes over an earnings calculation, and also "all issues having a bearing on such dispute."  539 F.3d at 391.  We held that this language applied to allegations that the defendant had engaged in business practices that had hurt the business whose earnings were at issue, in violation of "contractual commitments to maximize earnings."  *Id.*  The language in the arbitration agreement in this case is slightly narrower: arbitration is required only when the SBC "disputes [the] information or calculation[s]" provided by Navistar, and not when it merely has a dispute bearing on the information.  But the operational dispute in *JPD* was less closely connected to accounting

calculations than in Navistar's case, as the defendant's alleged misconduct in *JPD* affected the performance of the business (hurting the business of entities whose earnings were subject to profit sharing) as well as the information provided. In short, operational disputes may be committed to accountant arbitration, if the language of the arbitration clause, as in *JPD*, can fairly be read to cover such disputes.

The accountant arbitration clause in *PureWorks* applied to "disagreement[s] as to any item included in the [earnout report]," language that is much closer to this arbitration agreement. 554 F. App'x at 378 (second alteration in the original). In an unpublished opinion, we required arbitration of "operational disagreements affecting the earn-out report—including disputes about performance of the earn-out covenants." *Id.* Such disputes "concern and affect the numbers that were included in the earn-out report," and therefore were at least arguably included in the arbitration clause. *Id.* at 380. This analysis applies equally to the operational disputes here. The SBC challenges Navistar's corporate structure not fundamentally because it wishes to restructure the company but because it wishes to change the way business information was reported by Navistar; the SBC cares about operations only insofar as they affect the accounting. It is plausible to interpret "dispute the information [provided by Navistar]" as including a claim that the information ought to change because the corporate structure the information reflects violates the settlement agreement. Therefore, the federal policy in favor of arbitration requires arbitration. As we held in *Nestle Waters North America, Inc. v. Bollman*, the strong federal policy in favor of arbitration resolves any doubts as to the parties' intentions in favor of arbitration. 505 F.3d 498, 503 (6th Cir. 2007).

In addition, Navistar did not waive arbitration. Navistar's pre-litigation conduct and failure to raise arbitration in its response to the SBC's motion to intervene at the start of litigation did not constitute a waiver of its right to arbitrate the claims raised by the SBC. A party waives arbitration if it acts in a manner "completely inconsistent with any reliance on an arbitration agreement" or delays asserting arbitration "to such an extent that the opposing party incur[red] actual prejudice." *Hurley v. Deustsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010). Both inconsistency and actual prejudice are required, and neither is present here. In contrast, in *Johnson Associates. Corp. v. HL Operating Corp.*, 680 F.3d 713, 720 (6th Cir. 2012),

we held there was waiver after holding that both factors were present.  Moreover, much of Navistar's conduct at issue here concerned a question that the district court has already decided: whether Navistar must comply with the SBC's request for information.  Even if Navistar's conduct waived Navistar's right to arbitrate that question, the conduct was consistent with reliance on the arbitration agreement for resolution of disputes arising after Navistar supplied the information.

The district court's ruling on waiver relies on the following actions by Navistar, which are a subset of the total interactions between Navistar and the SBC that led to the present dispute:

1.  On August 3, 2009, Navistar declined the SBC's request to arbitrate the classification of Medicare Part D subsidies, claiming that even if the SBC prevailed this would not affect Navistar's obligations under the plan.

2.  Navistar did not respond to a further notice of dispute sent on May 4, 2010 by the SBC relating to Navistar's treatment of Medicare Part D subsidies and requesting further information about the company's finances; in its next letter on April 6, 2011, Navistar simply provided an update as to its calculation of qualifying profits and did not mention the dispute.

3.  On April 25, 2012, Navistar opposed the SBC's motion to intervene (in which the SBC sought an order compelling Navistar to provide the information required by the Plan) without raising arbitration as a defense. Navistar first argued that arbitration was required on March 11, 2013 in its answer to the SBC's complaint and its simultaneously filed reply to the SBC's motion to enforce the settlement agreement.

None of these three actions, individually or as a whole, amounts to a waiver of arbitration.  Navistar's letter to the SBC regarding Medicare Part D subsidies on August 3, 2009—item 1 in the list above—explicitly acknowledges that, in the abstract, a dispute over the classification of the subsidies is arbitrable.  In declining to arbitrate the dispute on the grounds that in no event would Navistar owe payments to the Supplemental Benefit Trust, Navistar noted: "[W]e must at this time respectfully decline your request that the parties initiate the dispute resolution procedures in the Plan, as the dispute you identify has no impact whatsoever on the profit sharing payments due . . . .  Navistar will agree, however, that this issue has been timely raised by the [SBC] in the event the dispute becomes material in any future year."  This appears to be a reference to the requirement in § 8.4 of the Plan—the arbitration clause of the agreement—that the SBC notify Navistar of any dispute within 30 days of the receipt of the

information that the dispute is about. Such a statement is completely consistent with a willingness to arbitrate.

Navistar's failure to respond to the SBC's May 4, 2010 notice of dispute as to the Medicare Part D subsidies—item 2 in the list above—is more concerning, but it still does not come close to waiver. Ignoring a formal invocation of arbitration procedures (if that is in fact what Navistar did, and the record does not provide evidence otherwise) is consistent with reliance on arbitration, at least in these circumstances. There is no evidence in the record that the SBC explained, either in its May 4 notice or at any other time, why it believed that the dispute over the subsidies was not moot, as previously suggested by Navistar. Navistar may have ignored the notice, therefore, not because it disclaimed reliance on arbitration but simply because it still considered the dispute moot and doubted that it was worth the SBC's time to pursue that matter. We have repeatedly determined that there was no waiver when a party refused to arbitrate, prior to the commencement of litigation, on the grounds that its opponent's claims were substantively weak. *JPD Inc.*, 539 F.3d at 394; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 574 (6th Cir. 2003). A reply explaining why Navistar was unwilling to arbitrate would have been helpful, but in the context of its previously stated reason for not arbitrating, Navistar's silence can easily be seen, in the words of the *Highlands* decision, as "the typical posturing that may occur where one party is attempting to 'stare down' the other party in the hope that the other party will simply give up." 350 F.3d at 574. This silence is therefore consistent with reliance on arbitration and not sufficient for waiver.

Moreover, Navistar's pre-litigation behavior did not delay proceedings in a way that actually prejudiced the SBC. While the dispute over the subsidies is still unresolved several years after Navistar's indifference to the SBC's request for arbitration, this delay cannot be solely attributed to Navistar. The SBC could have sought a court order compelling arbitration at any time after Navistar refused to arbitrate the issue, but it never did so and now argues that the question is not subject to arbitration. Navistar's conduct is thus not the sole cause of any prejudice the SBC may have suffered.

Waiver can also not be inferred from Navistar's delay, once litigation commenced, in seeking arbitration of what information it had to provide to the SBC. Navistar raised arbitration as a defense in its second substantive submission in the litigation.[1] In its first, its opposition to the SBC's motion to intervene, Navistar argued only that the SBC's intervention was improper. It sought to delay any response to the SBC's claims—including defenses that might force dismissal—until the district court determined that the intervention was proper to begin with. This approach is reasonable. In this context, Navistar's suggestion that the SBC could have filed a complaint in new litigation does not amount to acknowledging that litigation was the appropriate dispute resolution method. Instead, the court overseeing the new litigation, and not the *Shy* litigation court, would have resolved Navistar's objections to the SBC's suit for information, including the applicability of arbitration. This procedural posture distinguishes this case from *Johnson Associates*, in which we held there was a waiver of arbitration when the defendant failed to raise arbitration as a defense in its answer to the plaintiff's complaint. 680 F.3d at 718. Navistar's response to the SBC's motion to intervene properly did not raise arbitration as a defense because the motion addressed only the SBC's right to intervene and not the validity of the SBC's claims. In this context, arguing that the SBC ought to bring a fresh lawsuit instead of intervening does not waive arbitration because it does not imply a willingness to litigate the substantive dispute, only a desire to raise all defenses, including arbitration, in the context of fresh litigation.

A further distinction with *Johnson Associates* lends additional support for this point. In that case, the defendant engaged in litigation, including discovery, after not raising arbitration in its answer and before invoking it. *Id.* at 720. That is not the case here. Between its response to the SBC's motion to intervene and the court's decision to allow the intervention, Navistar did not actively pursue litigation in any way. Its only substantial filing on the record was a response to the SBC's motion to amend its motion to enforce the settlement agreement, in which it simply reiterated its position that it would respond to the motion to enforce after the district court ruled

---

[1] Navistar's motion to dismiss the SBC's first complaint and response to the SBC's motion to enforce did not use the word "arbitration," but both argued that the SBC's claims were subject to the dispute resolution procedure identified in the Plan and were therefore not properly before the district court. The district court correctly held—and the SBC does not dispute—that these arguments in effect invoked arbitration. In these filings, Navistar affirmatively displayed its desire to submit the SBC's claims to the alternative dispute resolution procedure and its belief that the Plan required Navistar and the SBC to do so. This is sufficient to invoke arbitration.

on the motion to intervene.  Thus Navistar's conduct did not suggest that it intended to litigate rather than arbitrate its dispute with the SBC.

Navistar's not engaging in litigation while the SBC's motion to enforce was pending also means that it did not prejudice the SBC by failing to raise arbitration earlier.  In the context of a motion to amend a complaint, "[d]elay alone, . . . without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."  *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).  Adopting this rule in the waiver context, we held that the defendant in *Johnson Associates* caused prejudice by delaying its invocation of arbitration because the plaintiffs had expended expense and effort in discovery that would not be helpful in arbitration.  680 F.3d at 720.  That is not the case here, because the litigation did not advance at all while the SBC's motion to intervene was pending, so the SBC wasted relatively few resources on unnecessary litigation.

Finally, the SBC was not prejudiced because of Navistar's allegedly untimely request for arbitration of a dispute that was not subject to arbitration in the first place.  All of the claims in the SBC's amended complaint except for the dispute as to the classification of Medicare Part D subsidies arose *after* the actions by Navistar that allegedly constitute waiver.  The district court allowed the SBC's motion to intervene and ordered Navistar to provide the information that the SBC requested, in the process ruling that the dispute over whether Navistar was obligated to provide the requested information was not subject to arbitration.[2]  The SBC subsequently amended its complaint to include further specific claims as to the information and calculations provided by Navistar, and it is the arbitrability of those claims that is now at issue.  Thus even if Navistar's conduct waived the right to arbitrate the extent of its reporting obligations to the SBC, it does not make sense to apply that waiver to disputes that arose after it (finally) fulfilled those obligations.  Had Navistar not attempted to arbitrate the extent of its reporting obligations at all and left the arbitration defense out of its answer to the SBC's first complaint, the course of

---

[2]The SBC's motion to enforce put Navistar on notice that the SBC suspected that Navistar was "intentionally manipulating the placement of revenues and costs in its various business units" to reduce its profit-sharing obligations, but the motion did not seek relief for harm arising from such manipulation and did not explicitly state that the SBC intended to litigate rather than arbitrate any claims arising from such manipulation.  Instead, the motion only explicitly requested that the district court order Navistar to provide the information required by the Settlement Agreement.

No. 14-3251　　　　　　*Shy, et al. v. Navistar Int'l Corp., et al.*　　　　　　Page 14

litigation would have been unaffected.  It would then be unreasonable to maintain that Navistar's failure to seek arbitration of an issue that the district court found was not covered by the arbitration clause waived Navistar's right to seek arbitration of other disputes.  Even if Navistar's eventual attempt to arbitrate the preliminary question of how much information it had to provide to the SBC proved that its prior conduct was a bad faith attempt to delay the resolution of the dispute, the SBC was not harmed by Navistar's behavior.  This is because the question Navistar tardily sought to arbitrate could not be arbitrated in the first place; seeking to arbitrate earlier would not in itself have advanced proceedings.  While Navistar may bear some responsibility for the long duration of its dispute with the SBC, its behavior with regard to arbitration does not satisfy the particular elements of waiver.

　　　　For the foregoing reasons, the district court's decision is **VACATED** and **REMANDED** with instructions to order arbitration of the claims in the SBC's Second Amended Complaint.

---

## DISSENT

---

CLAY, Circuit Judge, dissenting.  I respectfully dissent.  I cannot conclude that the parties to the Shy Agreement in § 8.4 of the Profit Sharing Plan ("PSP") agreed to submit a dispute of these dimensions to arbitration.  Even if the dispute were arbitrable, I would find that Navistar waived its right to require arbitration by engaging in an unmistakable campaign of avoidance and delay both before and after the SBC intervened to enforce the settlement agreement in the instant litigation.  Rather than zealously guarding its right to require arbitration of the instant dispute, Navistar sat quietly on that right until receiving an adverse ruling from the district court.  Those are precisely the circumstances in which this Court has found waiver in the past, and the majority errs in straying from that precedent today.

### I.

A more direct statement of the factual background to this case is perhaps necessary.  As this Court recently summarized, the underlying litigation was filed as a class action in 1992 "when Navistar attempted to reduce its costs for retired employee health and life insurance benefits."  *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 526 (6th Cir. 2012).  Navistar claimed it would become insolvent if it were required to comply with its obligation to retirees.  *Id.*  Under the threat of facing even deeper cuts to retirees' benefits if the company entered bankruptcy, the retirees' representatives negotiated a settlement to restructure the level and funding of those benefits.  *Shy v. Navistar Int'l. Corp.*, No. C-3-92-222, 1993 WL 1318607 (S.D. Ohio May 27, 1993).  The district court, though expressing concern that "the settlement agreement will impose hardship on many retirees," in due course accepted the agreement of the parties ("the Shy Agreement") and entered it as a consent decree.  *Id.* at *1, *12-13.

The Supplemental Plan, which is at the heart of the dispute before this Court today, formed a central component of the Shy Agreement.  The Shy Agreement replaced retirees' prior benefits package with two plans:  the "Base Plan" and the "Supplemental Plan."  *Id.* at *4.  The Base Plan dramatically cut retirees' basic life and health insurance benefits and reduced

Navistar's funding obligation to well below half its pre-settlement value.  *Id.*  In accepting the Shy Agreement, the district court noted that the painful cuts to retirees would be offset by the Supplemental Plan, explaining:

> [T]he Supplemental Plan, which is a truly innovative concept, turns over much of the ownership of Navistar to the very retirees who must sacrifice benefits under the settlement agreement, a Plan which could well alleviate some (perhaps as much as one-half or more) of the hardship which the settlement will require retirees to endure. The Supplemental Plan is a trust which will be administered by retirees and their representatives. Navistar must contribute 50% of the shares of its common stock and a portion of its future profits to the trust established under the Supplemental Plan. The income generated by the Supplemental Plan can be used, for instance, to reduce the premiums which retirees must pay for their health insurance. Thus, if the retirees' sacrifices allow Navistar to return to prosperity, the retirees will own a significant share of the consequent gain in the value of the company.

*Id.*  The SBC was formed to administer the Supplemental Plan.  The terms governing the profit sharing element of the Shy Agreement are contained in a document referred to by the parties as the Profit Sharing Plan, or "PSP."  Navistar's obligation to pay a portion of its profits to fund the Supplemental Plan, however, is a constituent part of the larger settlement agreement and consent decree.

The PSP sets the amount of Navistar's profit to be contributed to the Supplemental Plan as a function of the performance of certain "covered operations" and the number of qualifying hours worked by employees in those covered operations.  Covered operations, in turn, are defined in the PSP quite broadly to include Navistar International Transportation Corporation, its parent company Navistar International Corporation, and "their successors and all of their affiliates and subsidiaries, with the exception of Navistar International Corporation Canada."  (R. 399-5, PSP, PGID 1668.)  The PSP also includes provisions for the treatment of any entities acquired after the effective date of the agreement, with profit-sharing obligations for those entities varying based on the percent ownership by Navistar and whether the acquisitions are located in the United States.

Each year from 1994 to 2000, Navistar made contributions of varying—but generally substantial—size pursuant to the PSP, ranging in amount from $100,000 in 1995 to $71.6 million in 1999.  In 2000, however, the annual contribution dropped to zero and remained there, with the

sole exception of a $1.4 million contribution paid in 2004. The company now claims that the $1.4 million contribution was paid in error. As alleged in SBC's amended complaint, Navistar has claimed not to owe any profit sharing contribution under the PSP even in years where the company as a whole reported a net income of hundreds of millions or even billions of dollars. This outcome stands in marked contrast to the terms of the Shy Agreement that call for Navistar to contribute a portion of its profits to the Supplemental Plan, and to the PSP provisions that so broadly define the covered operations. While Navistar's contributions under the Profit Sharing Plan have dwindled to zero, the corporate structure has shown a marked increase in the number of business entities owned or controlled by Navistar and its affiliates, a development that the SBC believes reflects a concerted effort to shield the company's profits from its obligation to the Supplemental Plan.

In the years prior to intervening in the litigation, the SBC encountered significant difficulty obtaining information from Navistar that the company was obligated to disclose under the PSP. The company excused its failure to provide timely profit sharing calculations and disclosures based on a restatement of its financial results following irregular audit results and an investigation by the SEC. Beginning in 2009, the SBC sent a number of letters to Navistar requesting additional information and attempting to initiate a dispute resolution process under § 8.4 of the PSP regarding the company's calculation of the amount it owed to the Supplemental Plan. By 2011, the SBC's information requests focused on Navistar's corporate structure and its allocation of costs and revenues among subsidiaries and allied entities for purposes of the PSP. These efforts were unsuccessful, as described in the majority opinion, prompting the SBC to move to intervene in the litigation in order to enforce the terms of the Shy Agreement.

Since its initial intervention in the litigation, the SBC has consistently raised the overarching claim "that Navistar has allocated revenues, costs and profits within the consolidated group for the explicit purposes of robbing the Supplement Program of the profit-sharing payments to which it is entitled." (R. 395-1, Motion to Enforce, PGID 117.)

II.

I cannot agree with the majority that the present dispute falls within the scope of the arbitration clause set out at § 8.4 of the PSP. The majority places significant weight on the

federal presumption in favor of arbitration, but that presumption cannot be used as a means of rewriting the clause to encompass a dispute, like the present one, that goes beyond simply contesting the content of Navistar's disclosures. "The duty to arbitrate a dispute derives from the parties' agreement and a party cannot be required to submit to arbitration any dispute that the party has not agreed to so submit." *Bratt Enterprises, Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) ("[W]e have never held that [the federal policy favoring arbitration] overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

The arbitration clause at issue in this case covers disputes about "the information or calculations" provided to the SBC by Navistar pursuant to three enumerated sections of the PSP. Thus, the clause has a narrow scope which is defined in reference to the reporting requirements. Moreover, the recourse provided by § 8.4 must be understood in context of the larger Shy Agreement and consent decree, which included in § 15.4 a provision in which the district court retained jurisdiction to "resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation" of the parties' agreement. (R. 399-2, Shy Agreement § 15.4, PGID 1455.)

The SBC's allegations, as articulated in the initial motion to enforce and as detailed to a greater degree in the First Amended Complaint, state a claim that Navistar's manipulation of its corporate and earnings structure constitutes an intentional, material breach of the company's obligation under the Shy Agreement to annually contribute a share of its profits to the Supplemental Plan. Under our precedent, a consent decree is "strictly construed to preserve the bargained for position of the parties." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983); *see also* 23 Williston on Contracts § 63.3 (4th ed.) (a material breach exists where "the breach substantially defeats the contract's purpose"). Here, it is undeniable that Navistar's ongoing commitment to pay a portion of its profits to the Supplemental Plan was integral to the "bargained for position of the parties," *id.*, representing a means of mitigating retirees' losses if their "sacrifices allow[ed] Navistar to return to prosperity," *Shy*, 1993 WL 1318607 at *4. The SBC's claim for enforcement of Navistar's obligation to comply with its profit sharing

No. 14-3251          *Shy, et al. v. Navistar Int'l Corp., et al.*          Page 19

agreement falls naturally within the scope of § 15.4 of the Shy Agreement as a dispute "relating to . . . the enforcement" of the parties' agreement.  (R. 399-2 at PGID 1455.)

The majority acknowledges, as it must, that the SBC's allegations go beyond reporting requirements to Navistar's substantive operational conduct insofar as the SBC asserts that Navistar created sham entities, manipulated legal ownership of the newly formed entities with the intent of shielding them from profit-sharing, and reallocated revenue streams away from existing operations to those entities.  Maj. Op. at 7-8.  Yet the majority determines this dimension insignificant because the operational questions "are still so closely connected to the information Navistar provides to the SBC that they still count as disputes over that information." *Id*. at 8.  This theory admits no limiting principle.  If applied as a general rule, *any* form of misconduct or bad faith dealing, or any fundamental change in the nature of the relevant business or transaction, could be characterized as an informational dispute merely because one party owes reporting duties to the other party.  If the parties to the *Shy* litigation meant to submit all their disputes about Navistar's compliance with the profit sharing obligation to arbitration, they undoubtedly would have stated so directly.

Simply stated, the gravamen of the SBC's allegations is that Navistar is engaging in a bad faith scheme to negate its substantive contractual duty to contribute a portion of its profits to fund the benefits of its retirees.  No fair reading of a provision governing the resolution of disputes about the "information or calculations" disclosed by the company comes close to encompassing such a claim.  Therefore, I would hold that § 8.4 cannot be applied to require the SBC to submit its claim to arbitration.

III.

Even under the majority's premise that the dispute is arbitrable, I would find that Navistar waived its right to require arbitration by its purposeful delay in raising the issue.  Both prongs of our Court's waiver inquiry—inconsistency with reliance on arbitration and actual prejudice—are met in this case.  *See Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010).

This Court has explained that the first factor, inconsistency with reliance on an agreement to arbitrate, "typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate." *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) (citing *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 574 (6th Cir. 2003)). In *Hurley*, this Court found waiver where the defendants "consistently and actively litigated [the] action in court," not only responding to the plaintiff's motions but also filing "multiple dispositive and non-dispositive motions of their own, including motions to dismiss, motions for summary judgment, and a motion to change venue." 610 F.3d at 339. We noted that "[b]y filing a motion to change venue, [d]efendants proactively selected the forum in which they wished to defend against [p]laintiffs' claims." *Id.* at 339. We additionally observed that, as in other cases where waiver was found, the defendants "did not attempt to enforce their arbitration rights until *after* the district court entered an unfavorable decision." *Id.*

Navistar's conduct is comparable. The SBC moved to intervene in the *Shy* litigation on March 23, 2012. Three days later, on March 26, the SBC filed its motion to enforce the settlement agreement. The supporting memorandum clearly notified the court and Navistar of the nature of the dispute. Namely, the SBC contended that Navistar was violating the PSP and the Shy Agreement by its failure to timely make its required disclosures, its refusal to respond to the SBC's information requests, and, as the SBC asserted it had "reason to believe," by "intentionally manipulating the placement of revenues and costs in its various business units in a manner that, if true, is wholly inconsistent with the intent of the Settlement Agreement." (R. 395-1, Motion to Enforce, PGID 1117.) The motion thus put Navistar squarely on notice of the nature of the dispute and provided the company with a basis to seek arbitration.

Rather than rely on its right to arbitrate, Navistar deliberately avoided raising the issue. First, Navistar moved to defer any response to the motion to enforce until after the district court ruled on whether the SBC's intervention was proper. Next, Navistar opposed the SBC's intervention arguing, *inter alia*, that if the SBC had a cognizable legal claim "there is absolutely no reason why such a claim could not be asserted in a separate action." (R. 404, Response, PGID 1734.) Navistar also alluded multiple times to the possibility of an "independent action"

in the section of its opposition memorandum arguing that the SBC had other "adequate means for asserting its rights." (*Id.* at 1735.) If Navistar intended to invoke its right to arbitrate, these assertions were disingenuous. Indeed, Navistar's argument that the SBC should initiate a separate court action cannot be distinguished in substance from the efforts of the defendants in *Hurley* to "proactively select[] the forum in which they wished to defend against [p]laintiffs' claims." 610 F.3d at 339.

Significantly, as the district court found, Navistar's failure to raise arbitrability in opposing the motion to intervene is comparable to *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713 (6th Cir. 2012), where we found that the defendant's failure to raise arbitration as an affirmative defense showed an "intent to litigate rather than arbitrate." *Id.* at 718. We explained that "as a practical matter, an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit." *Id.* The quasi-jurisdictional nature of an enforceable arbitration clause is just as pertinent at the motion to intervene stage because, "as a practical matter," if a party's claim must be arbitrated there is no basis for that party to intervene in the action. *See id.* The majority attempts to distinguish *Johnson Associates* by arguing that Navistar's failure to raise arbitrability merely implied "a desire to raise all defenses, including arbitration, in the context of fresh litigation." Maj. Op. at 12. This is not only unpersuasive—neither Navistar nor the majority can identify any sound legal purpose for deferring its request for arbitration to "fresh litigation"—it is also inconsistent with the practical inquiry that governs the waiver analysis under *Johnson Associates*. *See* 680 F.3d at 718.

Contrary to the majority's suggestion, Navistar's delaying tactics did not end once the district court approved the SBC's intervention on February 6, 2013. On March 11, 2013, Navistar filed its response to the SBC's motion to enforce the settlement agreement and its first motion to dismiss. For the first time, both documents cited to the dispute resolution clause of the PSP; neither document, however, argued that § 8.4 was a binding arbitration clause, or even mentioned the word "arbitration." It is impossible to understand how Navistar could have failed to request enforcement of the Federal Arbitration Act at this juncture if it truly intended to rely

on its right to arbitrate.[1]  Navistar's failure to forthrightly press the issue in these substantive filings clearly telegraphs an "intent to litigate rather than arbitrate."  *Johnson Associates*, 680 F.3d at 718.

Moreover, Navistar's decision to oppose the SBC's motion to enforce and to file a motion to dismiss without clearly invoking its right to compel arbitration entailed further unwarranted delay and unnecessary litigation comparable to the circumstances in *Hurley*, where the defendants responded to the plaintiff's motions and filed "multiple dispositive and nondispositive motions" before requesting arbitration.  *See* 610 F.3d at 338-39.  Only after the district court granted in part the SBC's motion to enforce and ordered Navistar to disclose the information requested, and after the SBC used that information to file an amended complaint that detailed in over twenty pages the various ruses used to shield profits from the SBC and the Supplemental Plan—only then did Navistar seek to compel arbitration.  Under Sixth Circuit precedent, a party that persists in litigation until the tide begins to turn against it has waived its right to require arbitration under an otherwise valid arbitration clause.  *Id.* at 339.

Though our precedent compels a finding of waiver based on Navistar's litigation conduct alone, the company's strategy of delay and avoidance is also apparent from its pre-litigation interference with the SBC's attempts to arbitrate.  Navistar may have had a valid reason for declining arbitration in 2009 regarding the Medicare Part D subsidy, but the same cannot be said for its complete failure to respond to the May 2010 letter, which raised a broader set of issues that previewed the full dispute now at issue.  The majority characterizes Navistar's year long silence as "concerning" but ultimately acceptable as "typical posturing" under *Highland Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 574 (6th Cir. 2003).  In *Highland Wellmont*, however, the parties "were in a discussion stage about their respective claims and their positions" and the defendant stated that it would decline "'at [that] point'" to engage in arbitration.  *Id.* at 574 (editing in original).  The majority opinion distorts the

---

[1] The majority avoids addressing the misleading nature of Navistar's argument, instead simply asserting that Navistar's briefing was "sufficient to invoke arbitration."  Maj. Op. at 12, n.1.  It appears that the briefing at this stage was not, however, sufficient to alert the SBC or the district court to the nature of Navistar's request, since neither the SBC's replies nor the district court addressed Navistar's argument regarding the alternative dispute resolution clause as an arbitration issue governed by the Federal Arbitration Act.  That the district court later, in hindsight, recognized the arbitration issue hidden in Navistar's reference to § 8.4 does not take away from the fact that Navistar's conduct was both misleading and inconsistent with any good faith intention to rely on its right to arbitrate.

rationale of *Highland Wellmont* by applying it in these circumstances.  Rather than reasonably accounting for the nature of back-and-forth between potentially adverse parties, as the Court did in *Highland Wellmont*, the majority in the instant case condones obstruction and unjustifiable avoidance.  I would hold that total failure to respond to a timely noticed dispute constitutes interference with a plaintiff's efforts to arbitrate rising to the level of waiver.  *See JPD, Inc. v. Chronimed Holding, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008).

Finally, Navistar's delay has caused the SBC "actual prejudice."  *Hurley*, 610 F.3d at 338. The majority incorrectly asserts that Navistar raised arbitration in "its second substantive submission in the litigation."  Maj. Op. at 12.  In fact, Navistar waited until its *fourth* substantive submission to raise the issue, sitting quietly on its arbitration rights while the parties litigated the SBC's right to intervene, the SBC's motion to enforce the settlement agreement, and Navistar's initial motion to dismiss.  These litigation costs, though not as extreme as some cases, are sufficient to qualify as actual prejudice under our precedent.  *Compare Johnson Associates Corp.*, 680 F.3d at 720 (affirming district court's finding of waiver where "plaintiffs were prejudiced by unnecessary delay and expense because 'the right to arbitrate was not asserted for eight months, during which motions were filed, requests for discovery materials were made and responses were prepared, and a judicial settlement conference was held.'").

## CONCLUSION

In sum, I would hold that the instant dispute is not within the scope of the arbitration clause, and that even if the dispute were arbitrable, Sixth Circuit precedent compels a conclusion that Navistar waived its right to demand arbitration.  I therefore respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 14-3251

ART SHY, et al.,

            Plaintiffs,

    v.

NAVISTAR INTERNATIONAL CORPORATION, et al.,

          Defendants,

NAVISTAR, INC.,

          Defendant - Appellant,

SUPPLEMENTAL BENEFIT COMMITTEE OF
THE NAVISTAR INTERNATIONAL TRANSPORTATION
CORP. RETIREE SUPPLEMENTAL BENEFIT PROGRAM.,

          Intervenor - Appellee.

```
┌──────────────────────────┐
│         FILED            │
│       Mar 27, 2015       │
│   DEBORAH S. HUNT, Clerk │
└──────────────────────────┘
```

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Southern District of Ohio at Dayton.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is VACATED and REMANDED with instructions to order arbitration of the claims in the Supplemental Benefits Committee's Second Amended Complaint.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  March 27, 2015

Ms. Julia Penny Clark
Bredhoff & Kaiser

Mr. Kevin L. Murphy
Graydon, Head & Ritchey

Mr. David Philip Pierce
Coolidge Wall

Mr. William R. Pokorny
Mr. David P. Radelet
Ms. Sally J. Scott
Mr. Abizer Zanzi
Franczek Radelet

Mr. Edward A. Scallet
Ms. Sarah Adams Zumwalt
Groom Law Group

Re:  Case No. 14-3251, *Supplemental Benefit Committee, et al v. Navistar, Inc., et al*
Originating Case No. : 3:92-cv-00333

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Dixie Aerni
Deputy Clerk

Enclosures

Mandate to issue.