IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ART SHY, et al.,

      Plaintiffs,

    v.

NAVISTAR INTERNATIONAL
CORPORATION, et al.,

      Defendants.

:

:

:

:

Case No. 3:92-cv-333

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART THE PRO SE MOTION BY JACK D. HALL FOR
INTERPRETATION AND ENFORCEMENT OF THE SHY CONSENT
JUDGMENT REGARDING EXPENSES (DOC. #464); ORDER TO
DEFENDANT NAVISTAR, INC.

---

Pending before the Court is the motion filed by Jack D. Hall, captioned "*Pro Se* Motion by Jack D. Hall for Interpretation and Enforcement of the Shy Consent Judgment, Shy Plan Section 6.7 Expenses." Doc. #464. Mr. Hall requests that the Court order Navistar, Inc. ("Navistar"), to reimburse him for the expenses he has incurred while serving on the Health Benefit Program Committee ("HBPC") of the Navistar International Transportation Corporation Retiree Health Benefit and Life Insurance Plan ("Plan").

For the reasons set for the below, Mr. Hall's motion is SUSTAINED in part and OVERRULED in part.

I.      **RELEVANT PROCEDURAL BACKGROUND**

On August 21, 1992, a number of Navistar's employees and retirees, along with their union representatives, filed a class action lawsuit alleging that Navistar had improperly and unilaterally reduced its employees' benefits. Doc. #1. After extensive settlement negotiations, the parties entered into a Settlement Agreement that the Court approved on June 8, 1993, as a Consent Decree. Doc. #327. The Settlement Agreement created the Plan, which established a number of health and life insurance benefits for Navistar employees and retirees, as well as the processes to administer those benefits, in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Under Section 15.4 of the Settlement Agreement, the Court retained "exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of th[e] Settlement Agreement, except for disputes relating solely to eligibility of entitlement to benefits[.]" Doc. #398-2 at 23.

A.      **The Health Benefit Program and the HBPC**

One of the benefits created by the Plan was the Health Benefit Program, which provided health care benefits to Plan Participants. Plan Art. I § 1.3(a) (Doc. #399-2 at 36). Article VI of the Plan identified the HBPC as an ERISA fiduciary and vested it with a number of "powers, rights and duties." For example, Article VI granted the HBPC the power "to adopt such rules of procedure consistent with

2

the Health Benefit Program . . . as it may deem appropriate in its sole discretion in

connection with the exercise or discharge of its powers, rights and duties[.]" *Id.*

§ 6.2(a) (Doc. #399-2 at 54). Article VI also allowed the HBPC "to resolve

disputes with respect to determinations of the Plan Administrator regarding

benefits eligibility," "to review any and all determinations made by the Actuary

under the Health Benefit Program," "to bring to the attention of the Plan

Administrator . . . administrative problems," and granted certain investigatory

powers and the power to enforce Navistar's compliance with the obligations of the

Health Benefit Program. *Id.* § 6.2(b)-(i) (Doc. #399-2 at 54-55).

Article VI also defined the HBPC as a seven-member committee with two

members appointed by the UAW, three members appointed by Navistar, one

member to represent the non-UAW retirees (the "HBPC Other Member"), and the

final member to be appointed by a majority of the other members. *Id.* § 6.1 (Doc.

#399-2 at 54). It provided the following procedure for the appointment and

replacement of the HBPC Other Member:

> The HBPC Other Member . . . may also be replaced by the Court upon
> petition signed by not less than 50 Participants who are Non-
> Represented Employees, Present Employees who are not represented
> by the UAW or Retirees who were not represented by the UAW at the
> time of their retirement, for failure to adequately represent the
> Participants.

*Id.* § 6.6 (Doc. #399-2 at 58).

Article VI also entitled "all HBPC Committee Members that are not employed

by the Company, any Employer or the UAW, [to] reasonable compensation for time

3

spent on Health Benefit Program Committee matters, [and] ii) to each HBPC UAW Member, the HBPC Other Member and any HBPC Other Member Alternate, the amount of any and all out-of-pocket expenses, including reasonable travel expenses, incurred by him in exercising or discharging his powers, rights and duties" under the Plan. *Id.* § 6.7 (Doc. #399-2 at 58).

### B. The Petition to Appoint Mr. Hall

In a petition dated November 29, 2013, a number of Plan Participants invoked the petition process in Article VI, § 6.6 of the Plan to replace the HBPC Other Member. Doc. #449. The petition alleged that the HBPC had violated its fiduciary obligations under the Plan and ERISA and requested that the Court replace the then-current HBPC Other Member, John Mindiola, due to his alleged failure to communicate with Plan Participants about the status of their benefits, changes to the Plan, or a number of issues that had surfaced with Navistar, the Plan Administrator. *Id.* at 2. The petitioners sought an order from the Court that replaced Mr. Mindiola with Jack D. Hall, their chosen representative, as the HBPC Other Member, in accordance with the procedure set forth in Article VI, § 6.6 of the Plan.

On March 7, 2014, the Court ordered the HBPC to show cause why the Court should not grant the petition's request and replace Mr. Mindiola with Mr. Hall. Doc. #448. On April 25, 2014, the HBPC members filed a response, in which Mr. Mindiola stated only that he "denie[d] that he ha[d] failed adequately to

4

represent the Participants" of the Plan.  Doc. #459 at 2.  Other than this general denial, Mr. Mindiola offered no other response or reason why he should not be replaced.

In a Decision and Entry dated May 7, 2014, the Court found that Petitioners had complied with the process set forth in the Plan, and that neither Mr. Mindiola nor the HBPC had demonstrated good cause why it should not grant Petitioners' request.  Doc. #461.  Accordingly, the Court ordered Mr. Mindiola's removal from the HBPC and appointed Mr. Hall to replace him as the HBPC Other Member.  *Id.*

### C.    Mr. Hall's Present Dispute with the HBPC

On October 30, 2014, Mr. Hall filed the instant motion, seeking an order from the Court that requires Navistar to pay the expenses he has incurred serving as the HBPC Other Member.  Doc. #464.  According to Mr. Hall, Navistar has not complied with its obligations under Article VI, § 6.7 of the Plan to provide him with "reasonable compensation for time spent" and to reimburse him for "any and all out-of-pocket expenses, including reasonable travel expenses," that he has incurred while performing his duties as the HBPC Other Member.

Mr. Hall makes the following allegations, which he supports with a number of exhibits attached to his motion.  He submitted two expense statements to Navistar: one in the amount of $2,993.90, for the period of May 19, 2014, through July 8, 2014, and another for $3,156.25, for the period of July 8, 2014, through August 29, 2014.  Ex. A & Ex. B, Doc. #464.  On July 14, 2014, in a

5

letter from Brian Delphey, Associate Director of Corporate Compensation, Navistar approved $981.40 of Mr. Hall's first request, but denied the remainder of the claimed expenses on the basis that they were for "various other matters" outside the scope of allowable HBPC expenses. Ex. C, Doc. #464-3. Furthermore, Mr. Delphey informed Mr. Hall that the HPBC's:

> past practice consistent with the [] Plan has been for the Committee itself to pre-approve requests from Committee members for compensation/expense reimbursement for Committee matters outside of scheduled Committee meetings. In other words, the Committee itself – not individual Committee members – decides in advance what is a Committee matter for which compensation/expense reimbursement is permitted.

*Id.*

Mr. Hall then retained counsel, Mr. David Schellenberg, who replied to Mr. Delphey on August 18, 2014. Ex. D, Doc. #464-4. Mr. Schellenberg argued that Section 6.7 of the Plan did not contain any pre-approval requirement for the compensation or reimbursement of expenses to the HPBC Other Member, and demanded that Navistar reimburse Mr. Hall for the full amount of the invoices. *Id.*

In response, Jeffrey L. Dash, Senior Counsel for Navistar, sent a letter to Mr. Schellenberg on October 15, 2014. Ex. E, Doc. #464-5. Mr. Dash stated that under Section 6.2(a) of the Plan, the HBPC had the discretion to adopt appropriate rules of procedure for carrying out its duties, including a pre-approval process for compensation and expense reimbursement. He stated that the HBPC had adopted a preapproval procedure during a meeting held on September 29, 2009, and that Mr. Hall should "discuss the issue with other HPBC members" if he disagreed with

the rule they had adopted. However, acknowledging that Mr. Hall may not have been aware of the pre-approval procedure, Navistar agreed to reimburse him for the expenses he had submitted for the dates before Mr. Hall's receipt of the letter from Mr. Delphey. Navistar also agreed to reimburse Mr. Hall for $587.10 in legal fees paid to Mr. Schellenberg, but, "going forward," Mr. Hall would have to comply with the HBPC's preapproval process for expense reimbursement and pay for his own attorneys' fees.

On behalf of Mr. Hall, Mr. Schellenberg replied to Mr. Dash on October 20, 2014. Ex. F (Doc. #464-6). Therein, he countered Navistar's position that Mr. Hall was required to obtain preapproval from the HBPC for expense claims, and its position that the company had no obligation to reimburse him for attorneys' fees, with the following arguments. *Id.* at 1. First, the HBPC members who are also Navistar employees "have an inherent and intractable conflict of interest," based on the fact that they "owe [] Plan and ERISA fiduciary duties for the exclusive benefit of the [] Plan Participants, which have clearly been shown to be exactly contrary to their primary employment goals as Navistar, Inc., corporate managers to reduce retiree benefit plan costs." *Id.* at 2. He accused HBPC members of consulting with Mr. Dash, Navistar's Senior Counsel, for "legal interpretation" and issues "medical coverage issues" under the Plan. *Id.* Mr. Schellenberg stated that Mr. Dash's "legal advice is impermissibly discriminatory to Mr. Hall and the non-UAW-represented [] Plan Participants who he represents," because, under Mr. Dash's interpretation, Mr. Hall is the only member of the HBPC with "no legal

7

representation advising him and protecting his rights." *Id.* Furthermore, Mr. Hall is the only member "who is being economically coerced to limit his HBPC activities to only what Navistar, Inc., preapproves." *Id.*

Second, Mr. Schellenberg argued that HBPC's power to adopt rules and procedures under Section 6.2(a) of the Plan cannot "modify the clear mandate of Section 6.7 Expenses" regarding the HBPC Other Member's compensation and expense reimbursement because:

> Section 6.7 Expenses relate[] only to Navistar, Inc., payment obligations and they are outside the payment obligations of the Shy base Plan VEBA Trusts. There is therefore no basis or intent for these Navistar payments to be subject to review by the other HBPC Members, as no Shy Plan assets are affected by such payments. The entire purpose of the HBPC is to provide over-sight [of] Navistar as the Shy Plan Administrator. Obviously the Shy Plan drafters would not permit Navistar [to have] "over-sight," control (or economic coercion) of the activities of the non-Navistar HBPC Members. If over-sight, prior approval, post-approval, et cetera, of the HBPC Other Member activities were intended by the drafters they would have to have been described in Section 6.7 Expenses and [they are] not.

*Id.* at 2.

Third, Mr. Schellenberg contested the assertion that the September 29, 2009, meeting minutes provided by Mr. Dash demonstrated that the HBPC had adopted a preapproval process because the transcript contained neither a "reference to Section 6.2(a)" nor a "recognizable motion" acted upon by the HBPC. *Id.* Futhermore, Mr. Schellenberg had advised Mr. Hall that "under no circumstances should he seek prior approval" from the HBPC or Navistar for his activities or expenses incurred as the HBPC Other Member. *Id.* at 3. Mr. Schellenberg concluded by stating that Mr. Dash and Navistar should communicate

8

directly with Mr. Hall going forward because he could no longer represent Mr. Hall,

based on Navistar's refusal to pay for the attorneys' fees of the HBPC Other

Member.  *Id.* at 3.

### D.    The Briefing Addressing Mr. Hall's Motion (Doc. #464)

On October 30, 2014, Mr. Hall filed the instant motion, invoking the

jurisdiction the Court retained to interpret and enforce the Settlement Agreement.

He seeks an order from the Court that:

> 1) confirms the proper judicial/legal interpretation and application of
> the terms of Section 6.7 Expenses with regard to Mr. Hall's past-due,
> current and future statements for compensation and reimbursement as
> the HBPC Other Member; [2] orders Navistar to comply with the terms
> of 6.7 Expenses and promptly pay Mr. Hall the amounts claimed in his
> statements submitted and to be submitted in the future to Navistar,
> including, but not limited to, reimbursement claims for legal fees and
> expenses incurred by Mr. Hall in obtaining legal counsel that supports
> his duties, rights and obligations as the HBPC Other Member.

Doc. #646 at 7-8.

Navistar filed a Memorandum in Opposition to Mr. Hall's Motion on

November 20, 2014.  Doc. #466.  Therein, Navistar argues that Mr. Hall's request

for compensation is moot because the Company paid him for all invoices "as of

November 19, 2014, without admitting the legitimacy of those fees and

expenses."  *Id.* at 1.  According to Navistar, the Court should defer to the HBPC's

interpretation of what activities are compensable and reimbursable under Section

6.7 of the Plan.  *Id.* at 8.

9

Navistar also presents the following legal arguments in opposition to Mr. Hall's motion. First, he has no standing to move the Court for an interpretation or an order enforcing the Consent Decree because, as an individual member of the HBPC, he is a "non-party" to the Settlement Agreement. Second, as a non-party, he cannot request relief from the Court without filing a motion to intervene under Rule 24 of the Federal Rules of Civil Procedure. Navistar points out that, unlike the petition that resulted in Mr. Hall's appointment, "which was expressly authorized by Section 6.6 of the Plan, there is no provision in the Plan that permits [him] to directly petition the Court for relief under the instant circumstances." *Id*. at 9. Third, Navistar argues that Section 6.2 of the Plan "clearly delegates" powers to the HBPC that include overseeing and regulating Mr. Hall's requests for compensation and expenses. *Id.* The expenses described in Section 6.7 must be "reasonable" and "spent on [HBPC] matters," which demonstrates that Mr. Hall may not "unilaterally decide the activities for which he is entitled to receive compensation and expense reimbursement[.]" *Id.* The company criticizes certain matters invoiced by Mr. Hall as outside the scope of HBPC matters. *Id.* at 9-10. Finally, Navistar argues that only the HBPC, not its individual members, is granted the authority to retain "consultants and other professionals" under Section 6.2(g) of the Plan, and that Section 6.7 expressly exempts "consultants and other professionals" from the "costs and expenses" for which it must reimburse the HBPC. *Id.* Thus, there is no basis in the Plan for reimbursing Mr. Hall for the services of an attorney. *Id.*

10

Mr. Hall filed a Reply Brief on November 25, 2014. Doc. #467. Therein, he contests Navistar's assertion that he lacks standing to file the instant motion, pointing out that he was a both a member of the original class that prosecuted this action and a Participant in the Plan, apart from his role as the HBPC Other Member. *Id.* at 1. He believes that Navistar "seeks to control" his activities through the preapproval process and its refusal to reimburse him for counsel fees, and points to the HBPC members' use of Navistar's attorneys to respond to the petition to seat him on the HBPC as evidence that the Section 6.7 prohibition on Navistar paying for "consultants and other professionals" is not being enforced. *Id.* at 2. Mr. Hall also believes that his motion is not moot because he requests an order stating that, in the future, he will not be subject to preapproval or oversight for expenses. *Id.* at 3. He also provides detailed descriptions of the activities he has engaged in that he believes are compensable under Section 6.7 as the HBPC Other Member, including the following: reviewing appeals files prior to meetings, researching the issues raised by the appeals, reviewing denials prior to his tenure on the HBPC that he believes were "wrongly decided," and continuing to provide the "*pro bono* information, guidance and counselling to Plan Participants concerning how the Shy Plan works, how to access the benefits, [and] how to appeal from adverse Navistar decisions" that he provided to Plan Participants before his appointment to the HBPC. *Id.* at 5-6. Mr. Hall also criticizes Navistar's administration of the Plan's life insurance benefits, which he claims does not adequately inform beneficiaries of their rights under the policies, and describes steps he has taken to educate

11

beneficiaries in response. *Id.* at 6. He "strongly believes that it is one of his HBPC Other Member duties to help develop and disseminate information about the benefits of the Shy Plan to the Participants . . . and provide relevant (and simplified) information" on benefits. *Id.* Mr. Hall also "strongly believes" that his HBPC Other Member duties include creating a "two-way, open flow of information" with the members of the Supplemental Benefits Committee, a separate benefits committee, although the HBPC has resisted this idea. *Id.* at 7. He further asserts that one of his compensable duties as the HBPC Other Member should be "visiting any Navistar retiree club that invites him in order to provide information about the Shy Plan benefits and how to access them," particularly because the HBPC UAW Member, Craig Miller, has visited UAW retiree groups and "made presentations." *Id.* at 7.

Mr. Hall's Reply Brief makes two final points. First, he compares the compensation of two other HBPC members in 2010 that ranged from $22,000 to $31,000 to his own estimated annual compensation of $24,000, which he believes demonstrates that he is not seeking "carte blanche" in expenses or compensation from Navistar. *Id.* at 8. Finally, he repeats his accusation that Navistar's HBPC members suffer from a conflict of interest and have breached their fiduciary duty by imposing the preapproval process on him, which he argues is solely in Navistar's interest. *Id.* at 8-9.

12

With leave of the Court, Navistar filed a Sur-Reply in Opposition on December 17, 2014, and made the following replies to Mr. Hall's arguments.[1] Doc. #470. First, Mr. Hall lacks standing to enforce the Consent Decree because, although he is a member of the original class that prosecuted this action, his motion seeks to recover his expenses based on his capacity as the HBPC Other Member, not in his capacity as a class member. *Id.* at 470. Second, Navistar protests Mr. Hall's assertion that the company is trying to control his actions, as it is simply arguing that he should comply with the procedures in place "to review and determine what activities are compensable as Committee business under the Plan[.]" *Id.* at 2. Furthermore, under the Plan, the activities Mr. Hall believes should be compensable are not within the scope of the HBPC's powers or duties. Compensable and reimbursable activities "should be decided by the [HBPC] as a whole and not unilaterally by individual members." *Id.* at 3. Navistar also points out that, contrary to Mr. Hall's assertion, the UAW Member, Craig Miller, "has never requested or received compensation from Navistar pursuant to Section 6.7 of the Plan for his participation in the [] UAW Meeting" cited by Mr. Hall. Finally, with regard to Mr. Hall's argument that he is entitled to an attorney paid for by Navistar, the company argues:

---

[1] The Court sustained Navistar's Motion for Leave to File a Sureply on December 16, 2014. Doc. #468. Mr. Hall filed a Memorandum in Opposition to the motion the next day, December 17, 2014. Doc. #469. The issue of whether to grant Navistar leave to file the Sureply was, therefore, moot when he filed the Memorandum in Opposition.

Contrary to Hall's assertions, Navistar has never taken the position that Hall is not entitled to personal legal representation. Like all of the HBPC Members, Hall is free to consult with whomever he chooses. But the Shy Settlement Agreement does not authorize reimbursement for Hall's or anyone else's personal legal expenses under circumstances described in Hall's motion and reply brief. The fact that HBPC Company Members and HBPC UAW Members may have at times sought advice from counsel representing the Company or the UAW, respectively, does not change the terms of the Plan or provide an exception for Hall. Rather, as explained by in Navistar's response brief (Dkt. No. 466), allowing Hall to retain personal counsel at his sole discretion but at the sole of expense of Navistar would contradict the Plan and could create substantial conflicts of interests between Hall, the HBPC and Hall's personal attorney.

*Id.* at 4-5.

## II.  ANALYSIS

In its analysis, the Court will first turn to the procedural issues raised by Navistar, including Mr. Hall's standing to file the motion, and whether he must formally intervene under Rule 24 of the Federal Rules of Civil Procedure. After resolving these issues, the Court will turn to the merits of his motion.

### A.  Two Procedural Issues

Navistar argues that Mr. Hall does not have standing to file his motion because the Sixth Circuit "has consistently and unequivocally held that a non-party lacks standing to enforce a consent decree." The two published cases cited by Navistar, *Aiken v. City of Memphis*, 37 F.3d 1155 (6th Cir. 1994) and *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir. 1992), concerned third-party beneficiaries of consent decrees that resolved charges of racial discrimination

14

against municipalities' hiring practices. Doc. #466 at 9. In *Vogel*, the Sixth Circuit held that the plaintiff could not bring a claim "contending that the City has gone beyond the scope of the consent decree in administering its affirmative hiring policy" because, as a non-party, he sought "collaterally to enforce it according to his own interpretation of it."[2] In *Aiken*, the plaintiffs brought "reverse-discrimination" claims alleging that the terms of the consent decree did not actually require the city to actually apply the affirmative action policy that allegedly caused their injuries. 37 F.3d 1155. The Sixth Circuit found that they lacked standing to bring such claims because "even *intended* third-party beneficiaries of a consent decree lack standing to enforce its terms." *Id.* at 1168 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)).

For several reasons, *Vogel* and *Aiken* do not control the issue of Mr. Hall's standing to bring his motion. First, in the capacity that Mr. Hall has brought his motion, he is not a third-party beneficiary of the Consent Decree. He is a member of the HBPC, a committee created by the Plan, which itself is a creation of the Consent Decree. The Court previously rejected Navistar's argument that the Supplemental Benefit Committee, another entity created by Consent Decree through the Plan, lacked standing to enforce its terms. Doc. #426. The Court observed that the Supplemental Benefit Committee was "a creation of the Plan itself, with the express purpose and duty of enforcing the terms" of the consent

_____

[2] The Plaintiff did, however, have standing to bring an action alleging that policy was unconstitutional as applied to him. 959 F.2d at 599.

15

decree. *Id.* at 22. The same reasoning applies to the HPBC, and, by extension, its members. Unlike the plaintiffs in *Vogel* and *Aiken*, Mr. Hall's motion does not allege that the Consent Decree, as enforced, has resulted in a personal injury that he seeks to remedy. Rather, the injury he alleges concerns his role as a member of the HBPC, and, as a consequence, his ability to serve Plan beneficiaries with the requisite degree of care required of a member of a decision-making body that is a named fiduciary under the Plan. *See* Plan Art. VI § 6.2 (stating that the HBPC "shall be a fiduciary under ERISA with respect to its fiduciaries"); 29 U.S.C. § 1104(a)(1) (stating that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). Under these circumstances, the Court concludes that Mr. Hall unquestionably has standing to bring allegations to the Court's attention of a party's non-compliance with Plan terms that threatens his ability to discharge his duties thereunder.

The Court also rejects Navistar's assertion that because Mr. Hall is a non-party, "he cannot request relief from the Court in this matter without filing a motion to intervene and an intervenor complaint pursuant to Federal Rule of Procedure 24." The Court expressly retained "exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of th[e] Settlement Agreement, except for disputes relating solely to eligibility of entitlement to benefits[.]" Doc. #398-2 at 23. The Court declines to impose the requirement of filing a formal motion and complaint under Rule 24 on Mr. Hall, who has brought to the attention of the Court

16

a dispute that falls within its exclusive jurisdiction.  At this stage, the filing of such

a motion to convince the Court of Mr. Hall's ability to present this issue would

value form over substance, particularly in light of the foregoing discussion of Mr.

Hall's standing to file the present motion.

**B.    The Relief Sought by Mr. Hall**

Mr. Hall's request, and Navistar's opposition thereto, require a comparison

and reconciliation of various provisions of the Plan.  The first provision to consider

is Article VI, § 6.7, which describes Navistar's obligation to compensate and

reimburse members of the HBPC:

> 6.7 <u>Expenses</u>.  **The Company agrees that, upon demand and the Company's receipt of such detailed supporting documentation as the Company may reasonably request, it will forthwith pay (i) to all HBPC Committee Members that are not employed by the Company, any Employer or the UAW, <u>reasonable compensation for time spent on Health Benefit Program Committee matters</u>**, (ii) **to** each HBPC UAW Member, **the HBPC Other Member** and any HBPC Other Member Alternate, **the amount of any and all out-of-pocket expenses, including reasonable travel expenses, incurred by him in exercising or discharging his powers, rights and duties hereunder** and (iii) to the Health Benefit Program Committee, the amount of any and all out-of-pocket costs and expenses (other than expenses of consultants and other professionals) incurred by it in connection with reviewing the administration of the Health Benefit Program and the Life Insurance Program.

Doc. #399-2 at 58 (emphasis added).

The second provision to consider is Article VI, § 6.2(a), which states that

the HBPC shall have the power:

> **to adopt such rules of procedure consistent with the Health Benefit Program and the Life Insurance Program** as it may deem appropriate in

17

> its sole discretion **in connection with the exercise or discharge of its powers, rights and duties hereunder**[.]

Doc. #399-2 at 54.

After reviewing the plain language of both provisions, the Court concludes that the Plan does not authorize the HBPC to implement a preapproval process that determines whether Navistar must pay compensation or expenses to its members. The following observations illustrate this conclusion. First, Section 6.7 explicitly states that the "Company," Navistar, agrees to pay "reasonable compensation" to HBPC members not in its employ, such as Mr. Hall, for time spent on committee matters. This provision does not impose a preapproval process on the member seeking such compensation. Rather, it imposes only one condition precedent on Navistar's obligation to pay the compensation: the "receipt of such detailed supporting documentation as the Company may reasonably request."[3] Other than this requirement, there is no mention of a process for obtaining compensation or reimbursement, much less preapproval by the HBPC.

Second, the Court does not read Section 6.2(a), the provision that grants the HBPC the power "to adopt such rules of procedure . . . in connection with the exercise or discharge of its powers, rights and duties" as a source of the committee's authority to implement a preapproval process for its members' compensation or expenses. Although the language of this provision is broad, it

---

[3] There is no such condition precedent to trigger Navistar's obligation to pay "any and all out-of-pocket expenses, including reasonable travel expenses," although any HBPC member expecting to be reimbursed should, of course, adequately document such expenses.

18

does not grant the HBPC the authority to adopt a "rule of procedure" over a duty it does not owe.  The duty in question is the obligation to pay compensation and expenses, and Section 6.7 exclusively imposes this duty on Navistar.  The HBPC's power to adopt "rules of procedure" cannot be read to encompass a duty outside the sphere of its own "powers, rights and duties."  Even if the HBPC and Navistar considered the preapproval process efficient, administratively convenient, and relatively uncontroversial before Mr. Hall's appointment, there is no authority for it in the language of the Plan.

Section 6.7 speaks only of Navistar's obligation to pay, and does not say who has the final say in determining what amount of compensation or expenses is "reasonable."  The Plan gives neither Navistar nor the HBPC the power to impose a preapproval process on HBPC members for obtaining compensation or expense reimbursement, and therefore does not grant either entity the authority to determine if they are "reasonable."  Section 6.7, Expenses, gives Navistar no discretion in deciding whether to award HBPC members their compensation and expenses, stating only that the company "agrees" to pay them.  As discussed, HBPC does not share the duty to pay, and therefore has no power to regulate how and whether compensation and expenses to its members are paid.  Rather, the Court, as the final arbiter of "disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation" of the Settlement Agreement, and, therefore, the Consent Decree and the Plan, must resolve

19

disputes over the reasonableness of compensation and expenses claimed by HBPC members, like Mr. Hall, who find their expense submissions rebuffed by Navistar.

In this case, it appears that the compensation and expense requests that prompted Mr. Hall to file the present motion have been paid by Navistar, which moots his motion to the extent that he and Navistar disagreed over the appropriateness of those particular requests.  It would be naïve, however, to conclude that this moots Mr. Hall's motion, as Navistar asserts.  The disagreement over the "reasonableness" of Mr. Hall's compensation and expenses is only a symptom of an underlying disagreement over the appropriate scope of his activities as the HBPC Other Member.  Accordingly, the Court must decide what activities (and the expenses so incurred) are appropriate for Mr. Hall to engage in as the HBPC Other Member.

Once again, the plain language of the Plan guides the analysis.  Article VI expressly identifies the role of the Other Member as the "representative of the non-UAW retirees."  Plan Art. VI § 6.1 (Doc. #399-2 at 54).  Indeed, Mr. Hall was appointed as the HBPC Other Member *because* the non-UAW retirees petitioned for Mr. Mindiola's replacement, based on a "failure to adequately represent" them.  *Id.* § 6.6 (Doc. #399-2 at 58).  The Plan expressly provides this remedy to the non-UAW retirees to protect their interest in being represented on the HBPC.  *Id.*  This representative capacity is not confined to the HBPC Other Member.  Every member of the HBPC, except one, is appointed as a "representative" of a particular stakeholder.  *Id.* § 6.1 (Doc. #399-2 at 54).  Its composition demonstrates that the

20

HBPC is not a simply body of dispassionate evaluators reviewing appeals of denied benefits claims.  Rather, by design, its membership reflects and represents the interests of the stakeholders reconciled by the Settlement Agreement.  Because the HBPC Other Member represents the non-UAW retirees, it is entirely appropriate for Mr. Hall to consider meeting with those retirees to be an activity within the scope of his duties on the HBPC.  The Court is also in agreement with Mr. Hall that one of "his HBPC Other Member duties [is] to help develop and disseminate information" to the persons he represents.  He is, therefore, entitled to request reasonable compensation and reimbursement for these activities from Navistar.

Navistar argues that Mr. Hall incorrectly stated that it had compensated the one of the three HBPC UAW Members, Craig Miller, for a meeting with UAW retirees held on October 14, 2014, and asserts that he "never requested or received compensation from Navistar" for the meeting.  Doc. #470 at 3.  However, whether or not one of the three HBPC UAW Members sought compensation from Navistar for the meeting is irrelevant.  If Mr. Miller met with the UAW retirees in his capacity as their "representative" on the HBPC, he certainly could have sought compensation and expense reimbursement from Navistar.  Likewise, Mr. Hall may do the same for the non-UAW retirees.

Navistar does not contest the appropriateness of many of the activities described by Mr. Hall, such as reviewing appeals files prior to meetings, or researching the issues raised by the appeals.  There are several activities that Mr. Hall describes, however, that the Court does not find authority for in the language

21

of the Plan. First, Mr. Hall states that he reviews claim denials that occurred before he was appointed to the HBPC because he believes that they were "wrongly decided." Doc. #467 at 5. Unless there is a procedural method that a claimant has invoked to bring a denial back before the HBPC as a live controversy, such activity is not contemplated by the Plan. Under Article 6.2(b), the HBPC has the power "to resolve disputes with respect to the determinations of the Plan Administrator regarding benefits eligibility," but this power does not extend to claims that have been resolved and are no longer "disputes." Regardless of his personal opinion on the determination of past claims, Mr. Hall's responsibilities as the HBPC Other Member concern the claims currently before the HBPC, not those decided before his appointment. Because the HBPC acts as an arbiter of appeals, claimants dissatisfied with its determinations with regard to benefits presumably have exhausted the administrative process after receiving a denial. At that point, such claimants may look to ERISA as a source of recourse, but the work of the HBPC Other Member is done. *See, e.g.*, 29 U.S.C. § 1132(a)(1)(B) (entitling a beneficiary "to recover benefits due to him under the terms of his plan" in a civil action).

Second, although Mr. Hall "strongly believes" that the HBPC should engage in a "two-way, open flow of information" with the members of the Supplemental Benefits Committee, he identifies no language in the Plan that supports such activity as a duty of the HBPC or its members. Doc. #467 at 7. The "rights, powers, and duties" of the HBPC described in Section 6.2 concern the Health

22

Benefit Program and the Life Insurance Program. Section 6.2 nowhere mentions the Supplemental Benefit Committee, which is a separate creation under Article VII of the Plan. Mr. Hall is free to consult with whom he chooses, but he is not entitled to seek compensation from Navistar, in his capacity as the HBPC Other Member, for engaging in a colloquy with members of a committee that administers a separate benefit.

Third, the Court agrees with Navistar that the HBPC Other Member is not entitled to seek compensation from the company for legal advice or representation concerning his service on the HBPC. Under Section 6.7(ii), the Other Member is entitled to reimbursement for "any and all out-of-pocket expenses, including reasonable travel expenses, incurred by him in exercising or discharging his powers, rights and duties" on the HBPC. Doc. #399-2 at 58. However, the foregoing provision must be read in conjunction with Section 6.7(iii). Subsection (iii) entitles the HBPC to reimbursement for "any and all out-of-pocket costs and expenses (other than expenses of consultants and other professionals)[.]" *Id.* As a matter of interpretation, it would make no sense for the drafters to prevent the committee as a whole from seeking reimbursement for consulting "professionals" if an individual member could dodge the exception by seeking reimbursement for such services on his or her own behalf under Subsection (ii). Once again, Mr. Hall is free to engage in the activity in question, but there is no textual authority in the Plan for seeking reimbursement from Navistar for the expense that such activity entails.

23

Finally, the Court must address Mr. Hall's accusations of conflicts of interest and breaches of fiduciary duty by other members of the HBPC and Navistar. The Court takes no position on these allegations, other than to observe that a motion filed to recover compensation and out-of-pocket expenses for serving as a member of the HBPC is not the appropriate vehicle for either making such allegations or expecting a judicial remedy for them. ERISA provides a cause of action to fiduciaries who seek to "to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). It is incumbent upon anyone seeking a remedy for a breach of fiduciary duty to properly bring it before the Court by filing suit under this provision. Such an action is the only method that adequately protects the rights of all parties in the search for truth. In the present context, such accusations serve as nothing more than incendiary fodder that clouds the issue before the Court. Accordingly, the allegations were not considered by the Court in resolving the present dispute.

## III.    CONCLUSION

Based on the foregoing discussion and interpretation of the Plan, the Court rules as follows:

Mr. Hall's motion (Doc. #464) is SUSTAINED IN PART and OVERRULED IN PART.

24

Under Section 6.7 of the Plan, neither Navistar nor the HBPC may require preapproval of requests for compensation and expense reimbursements by the HBPC Other Member.

The HBPC Other Member may seek compensation and expense reimbursements for activities he engages in as the non-UAW retirees' representative, but such activities must be congruent with that role and the "powers, rights and duties" of the HPBC.  Mr. Hall is entitled to reasonable compensation and expense reimbursement for meetings with the non-UAW retirees.  He is not entitled to compensation or expense reimbursement from Navistar for reviewing claims denials that predated his appointment to the HBPC, interactions with the Supplemental Benefits Committee and its members, or the services of an attorney.

Accordingly, Navistar is ORDERED to pay Mr. Hall the balance of any unpaid compensation and expenses accrued since the filing of his motion, in accordance with the foregoing terms, along with any future such.


Date: September 18, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE