IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| ART SHY, et al., | : | Case No. 3:92-cv-00333-WHR |
| | : | |
| Plaintiffs, | : | (District Judge Walter H. Rice) |
| v. | : | |
| | : | |
| NAVISTAR INTERNATIONAL | : | DEFENDANT'S MOTION FOR |
| CORPORATION, et al., | : | CLARIFICATION OF THE COURT'S |
| | : | SEPTEMBER 18, 2015 ORDER |
| Defendants. | : | <u>REGARDING JACK HALL EXPENSES</u> |

Defendant Navistar, Inc. ("Navistar" or "the Company") respectfully asks the Court to clarify its September 18, 2015 Order Regarding Jack Hall Expenses ("Order"). Doc. # 476. In that Order, the Court addressed the scope of Navistar's obligation to pay Jack Hall compensation for time spent and reimburse expenses incurred by Mr. Hall for services rendered as a member of the Health Benefit Program Committee ("HBPC") of the Navistar International Transportation Corp. Retiree Health Benefit and Life Insurance Plan, now known as the Navistar, Inc. Retiree Health Benefit and Life Insurance Plan. As more fully set forth in the accompanying Memorandum of Law, Navistar seeks further guidance from the Court as to the application of its Order to some of the specific requests for payment submitted by Mr. Hall. Alternatively, and in order to minimize potential future disputes on these issues, Navistar respectfully requests that the Court identify a reasonable monthly flat fee that can be adopted by the parties in lieu of an hourly rate. In order to facilitate consideration of all pertinent issues in an efficient manner, Navistar respectfully proposes that the Court schedule a telephonic conference with the parties to address these matters.

                                          Respectfully submitted,

                                          */s/ David P. Pierce*
                                          David P. Pierce (0061972)
                                          COOLIDGE WALL CO., L.P.A.
                                          33 W. First Street, Suite 600
                                          Dayton, OH  45402
                                          Phone:  937-223-8177
                                          Fax:     937-223-6705
                                          E-mail: pierce@coollaw.com

                                          *TRIAL ATTORNEY FOR DEFENDANTS*
                                          *NAVISTAR INTERNATIONAL*
                                          *CORPORATION, et al.*

OF COUNSEL:
David P. Radelet, Esq.
Sally J. Scott, Esq.
William R. Pokorny, Esq.
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone:  (312) 986-0300
Fax:  (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendants*
*Navistar International Corporation, et al.*

**MEMORANDUM**

I.  **THE COURT'S ORDER**

Mr. Hall currently serves as the "HBPC Other Member" on the seven-member HBPC. On October 30, 2014, Mr. Hall filed a Motion For Interpretation and Enforcement of the Shy Consent Judgment, Shy Plan Section 6.7 Expenses" (Doc. #464), seeking from Navistar compensation and reimbursement of expenses incurred by him for services rendered as the HBPC Other Member. In its Order, the Court considered and resolved various procedural arguments raised by the parties that are not germane to the present Motion, and ultimately turned to Navistar's obligation to pay compensation and reimburse expenses incurred by Mr. Hall. In considering this issue, the Court interpreted Section 6.7 of the Plan, which provides in relevant part as follows:

> "6.7 Expenses. The Company agrees that, upon demand and the Company's receipt of such detailed supporting documentation as the Company may reasonably request, it will forthwith pay (i) to all HBPC Committee Members that are not employed by the Company, any Employer or the UAW, reasonable compensation for time spent on [HBPC] matters, [and] (ii) to each HBPC UAW Member, the HBPC Other Member and any HBPC Other Member Alternate, the amount of any and all out-of-pocket expenses, including reasonable travel expenses, incurred by him in exercising or discharging his powers, rights and duties hereunder … ."

As to matters germane to the present Motion, the Court first determined that the Court, as opposed to the HBPC or Navistar, "must resolve disputes over the reasonableness of compensation and expenses claimed by HBPC members, like Mr. Hall, who find their expense submissions rebuffed by Navistar." Doc. 476 at 19-20. The Court further determined that Mr. Hall, as the HBPC Other Member, serves in a representative capacity specifically on behalf of

non-UAW[1] retirees, i.e., retirees who were not represented by the UAW when they were active employees. Doc. 476 at 20-21. On this basis, the Court made the following determinations:

- Navistar is required to compensate Mr. Hall for time spent on meeting with non-UAW retirees, and/or helping to develop and disseminate information to non-UAW retirees, and for time spent reviewing appeals prior to HBPC meetings at which those appeals will be considered, or researching the issues raised by those appeals. Doc. 476 at 21.

- Navistar is not required to compensate Mr. Hall for time spent reviewing claim denials that occurred before he was appointed to the HBPC, or interacting with members of the Plan's Supplemental Benefits Committee ("SBC"). Doc. 476 at 22-23.

- Navistar is not required to reimburse Mr. Hall for attorneys' fees incurred by Mr. Hall. Doc. 476 at 23.

## II. EVENTS SUBSEQUENT TO ENTRY OF THE COURT'S ORDER

Upon receipt of the Court's Order, Navistar endeavored to apply the Court's Order to the specific time and expense claims that had been submitted to date by Mr. Hall. To do so, Navistar prepared a detailed spreadsheet that charted every monthly invoice that had been submitted by Mr. Hall (a total of 17 monthly invoices), and every entry on each invoice. Navistar then considered whether or not the activity reflected in each entry was compensable under the terms of the Court's Order, and provided entry-by-entry commentary as to its thought process on each entry.

On October 23, 2015,[2] Mr. Brian Delphey, Navistar's Associate Director of Compensation & Benefits who is a Company member of the HBPC and currently serves as

---

[1] UAW is the United Autoworkers Union.

acting secretary of the HBPC, sent this spreadsheet to Mr. Hall along with a cover letter explaining the process that the Company had used to evaluate Mr. Hall's submissions. *See* Exhibit A.[3] In reviewing the 17 monthly invoices that had been submitted by Mr. Hall, which collectively sought reimbursement for 18,500 minutes of activity, Mr. Delphey advised Mr. Hall that in the Company's estimation, 5,655 minutes (approximately 30%) appeared to be compensable under the terms of the Court's Order. *See* summary page of spreadsheet, Exhibit A.[4] As to any item that it had marked as non-payable, Mr. Delphey invited Mr. Hall to provide any information he had if he believed any of those entries were payable. Mr. Delphey also requested information from Mr. Hall as to how he had determined his hourly rate to be $75, as the requested rate substantially exceeded the hourly rate that Navistar was paying to the UAW Retiree Liaison ($18.75), which serves a function for UAW retirees that is a directly comparable to the activities submitted for compensation by Mr. Hall. Lastly, Mr. Delphey expressed Navistar's willingness to consider paying Mr. Hall a reasonable monthly flat fee in lieu of paying him by the hour, as this would eliminate the need to submit detailed records and would minimize potential disputes as to compensable time going forward.

On October 26, Mr. Hall sent a response to Navistar. *See* Exhibit B. Mr. Hall summarily cast aside Navistar's analysis, claiming categorically that "none of my invoices contained any charges for the activities for which the Court found that I should not be compensated" (Exhibit B, p. 1), and threatening to file a motion for contempt with the Court unless Navistar

---

[2] All dates hereinafter are 2015, unless otherwise noted.
[3] This exhibit has been redacted. A clean copy can be made available to the Court if requested.
[4] As part of its review, Navistar conducted a review of some early monthly invoices from Mr. Hall that Navistar had paid without prejudice pending the Court's ruling on Mr. Hall's motion. As it turned out, when all invoices were reviewed under the Court's Order, Navistar had already paid Mr. Hall an amount that exceeded the total amount due (even accepting Mr. Hall's stated hourly rate of $75, which Navistar has not agreed is reasonable), so no further payment was tendered by Navistar to Mr. Hall with its October 23 letter. *See* Exhibit A.

3

immediately paid all the of the time he had submitted (Exhibit B, p. 1), save for a couple of items that Mr. Hall grudgingly admitted were not compensable.

Undaunted, Navistar again attempted to reasonably engage with Mr. Hall. On Saturday, October 31, Mr. Delphey responded to Mr. Hall (*see* Exhibit C) by suggesting that the parties focus on attempting to agree on a monthly flat fee, as that would alleviate the need to continue to debate the application of the Court's Order to Mr. Hall's submissions. In that vein, Mr. Delphey stated that Navistar would submit all of Mr. Hall's past invoices for review and approval pending internal review of a monthly flat fee arrangement. Mr. Delphey committed to further respond to Mr. Hall with Navistar's thoughts on a monthly flat fee approach "as soon as possible." (*See* Exhibit C, p. 2).

Mr. Hall was not content to wait even a day. In a return email to Mr. Delphey later that same Saturday, Mr. Hall demanded that full payment be sent to him by overnight courier. *See* Exhibit D. A couple of days later, on November 4, Mr. Hall again emailed Mr. Delphey demanding that he receive full payment by Friday, November 6. *See* Exhibit E. Then on Thursday, November 5, Mr. Delphey received another email, this time from Mr. William Jones, who identified himself as "Administrative Assistant to Mr. Hall."[5] *See* Exhibit F. Mr. Jones attached a draft Motion to Show Cause that he claimed Mr. Hall was going to file with the Court on Monday, November 9, unless Mr. Hall received full payment for all outstanding invoices by that date. *See* Exhibit F. The draft Motion sent by Mr. Jones is chock full of strident declarations and threats, even going so far as to threaten to seek contempt orders against several Company representatives in their individual capacity, including the Company's Chief Financial Officer, one of its attorneys, and Mr. Delphey. *See* Exhibit F, p. 4-5.

---

[5] As previously advised in other pleadings filed with the Court, Mr. Jones is a former in-house attorney for Navistar, and is also a participant in the Plan. Mr. Jones has actively assisted Mr. Hall in prior filings with the Court.

4

Because it is clear that the parties are in dispute as to the application of the Court's Order to Mr. Hall's submissions, and it is apparent that attempts at further dialogue with Mr. Hall would be fruitless, Navistar now brings this Motion seeking clarification from the Court as to how its Order should be applied to certain submissions made by Mr. Hall.

## III. REQUESTS FOR CLARIFICATION

Navistar hereby requests clarification from the Court as to the application of its Order to each of the items that are listed below.

### A. Time Spent in Meetings or Consultations with UAW Retirees as to Matters Not Before the HBPC

Mr. Hall's invoices seek compensation from Navistar for approximately 6,740 minutes of time that he spent communicating with individuals who have been identified as UAW retirees, and had no appeal or other matter then pending before the HBPC. *See* Exhibit A. As noted above, the Court's Order specifically provides that time spent by Mr. Hall meeting with non-UAW retirees is compensable due to the representative status that Mr. Hall holds with regard to such individuals. While Navistar believes this clearly means that time spent by Mr. Hall interacting with UAW retirees is <u>not</u> compensable (except where a UAW retiree has an appeal or other matter pending before the HBPC), Mr. Hall now takes issue with this conclusion. Indeed, in his October 26 letter, and in direct contradiction to the Court's Order, Mr. Hall brazenly declares as follows: "I have to trust that Navistar is not suggesting that I represent only Non-UAW Participants as it is crystal clear under that Shy Plan documents and under ERISA law that each HBPC Member represents ALL Shy Plan Participants."[6] *See* Exhibit B, p. 3. Given Mr. Hall's position, Navistar seeks clarification that time he spends communicating with UAW

---

[6] Interestingly, in addition to being directly contrary to the Court's Order, Mr. Hall's declaration is also completely inconsistent with his own letterhead, which identifies him as "Other Member, representing non-UAW Shy Plan Participants." *See* Exhibit B, top of p. 1.

5

retirees is not compensable under the Court's Order, except where the UAW retiree has an appeal or other matter pending before the HBPC.

### B. Time Spent in Meetings or Consultations With Persons Who Cannot be Identified

Mr. Hall's invoices seek compensation from Navistar for approximately 1,150 minutes of time that he spent communicating with individuals who do not appear in any Company database and thus cannot be identified by the Company. *See* Exhibit A. As noted above, in order to be compensable, the time claimed by Mr. Hall must be attributable to non-UAW retirees, or to UAW retires who have an appeal or other matter pending before the HBPC. If the person identified in Mr. Hall's submission cannot be identified by the Company, then the Company obviously cannot determine whether or not the person is a non-UAW retiree, or indeed even a participant in the Plan. Accordingly, Navistar seeks clarification that time spent by Mr. Hall communicating with persons who cannot be identified is not compensable under the Court's Order, unless and until the Company obtains sufficient information (from Mr. Hall or otherwise) to allow it to identify the person.

### C. Time Spent in Meetings or Consultations with Non-UAW Retirees that is Duplicative of Services Already Provided by Plan Vendors or the Company

Mr. Hall's invoices seek compensation from Navistar for at least 1,405 minutes of time[7] that he spent communicating with representatives of Aetna and Silverscript, the third-party administrators for benefit claims under the Plan, as well as MetLife, Medicare, and Navistar's internal benefits assistance center.[8] By way of background, considerable resources are expended to maintain apparatus to assist retirees in submitting benefit claims under the Plan. All claims are

---

[7] There are many more minutes that are not included in this total where it appears that Mr. Hall was interacting with these vendors but did not specifically name the vendor in his activity description.
[8] These entries reference communications or interaction with individuals such as Wendy Glick or Dee Hill (both of whom are Aetna representatives), or reference the vendor by name.

6

initially submitted (by the retiree or directly by the service provider) to the vendors for processing. If the retiree has any questions about the process or the outcome of the claim, the retiree can contact the vendors at any time. In fact, a vendor will adjust and revise its initial determination on the claim where information is provided to establish that its initial determination is wrong. Further, an internal assistance center known as the Employee/Retiree Information Center ("ERIC") is maintained that is widely available to answer retiree questions regarding benefits, benefit claims or the claims process. With these resources in place, there is no need for HBPC members to become involved in the initial claims process, other than to refer the retiree to either the appropriate vendor or ERIC.

As it relates to benefit claims, the function of the HBPC is to consider appeals of benefit claim denials, not to assist retirees in the initial claims process. The Company has no dispute with compensating Mr. Hall for time spent responding to inquiries from non-UAW retirees regarding the claims process and referring them to a vendor or ERIC for more assistance; however, compensating Mr. Hall for time he spends by directly contacting a vendor or ERIC on the retiree's behalf creates an unnecessary and costly redundancy. Accordingly, Navistar seeks clarification that time spent by Mr. Hall communicating with representatives of Aetna or ERIC regarding an individual retiree benefit claim is not compensable under the Court's Order.

### D. Time Spent in Meetings or Consultations Regarding Benefits that are Not Provided Under the Plan

Mr. Hall's invoices seek compensation from Navistar for approximately 285 minutes of time that he spent communicating with individuals regarding benefits that are not provided under the terms of the Plan. For example, the invoices identify time spent by Mr. Hall assisting retiree James Widger with a dependent life insurance matter concerning Widger's daughter who passed away on December 23, 1979, more than 12 years before the Plan was created. Indeed, the Plan

does not even provide dependent life insurance benefits. Similarly, the invoices identify time spent working on a hearing aid claim for retiree Sandy Oxford, even though hearing aids are a benefit provided under the separate Supplemental Benefit Program over which the HBPC has no authority. Accordingly, Navistar seeks clarification that time spent by Mr. Hall in meetings or consultations regarding benefits that are not provided under the Plan is not compensable under the Court's Order.

### E. Time Spent in Developing a Traditional Medicare Proposal

Mr. Hall's invoices seek compensation from Navistar for approximately 960 minutes of time that he spent developing what he refers to as "a traditional Medicare proposal." Mr. Hall's explanation of his work in this regard, and his arguments that this time should be considered compensable, are set forth in his October 26 letter to the Company. *See* Exhibit B, p. 3-4. The responsibility to engage in this kind of activity goes far beyond any individual member of the HBPC. Indeed, the very provisions of the Plan cited by Mr. Hall in his letter as supporting his claim for compensation actually conclusively refute his claim. Section 6.2(f) of the Plan (erroneously cited by Mr. Hall as Section 6.1(f)) is one of several recitals of the powers, rights and duties of the HBPC itself, not of its individual members. This Plan language confirms the obvious conclusion that activity of this magnitude is to be undertaken by the HBPC as a whole, not by individual HBPC members.[9] Indeed, by claiming that he is entitled to compensation for time spent on this endeavor, Mr. Hall is essentially asserting the right to unilaterally hire himself to provide services to the Committee – in this case, services that are already being provided by

---

[9] In fact, the HBPC as a whole has been actively evaluating and monitoring this very issue for a number of years. The HBPC initially decided in 2006 that Medicare Advantage was a better arrangement for the Plan than the traditional fee-for-service approach used by Medicare, and the change was made effective in 2007. Since then, the Company has retained an actuary, PwC, to continuously monitor this arrangement to ensure that it best serves the Plan.

8

the Company's outside actuary. Accordingly, Navistar seeks clarification that time spent by Mr. Hall in developing a traditional Medicare proposal is not compensable under the Court's Order.

### F. Time Spent Evaluating Affordable Care Act Rules Compliance

Mr. Hall's invoices seek compensation from Navistar for approximately 240 minutes of time that he spent evaluating the Plan's compliance with the Affordable Care Act. Again, Mr. Hall's explanation of his work in this regard, and his arguments that this time should be considered compensable, are set forth in his October 26 letter to the Company. *See* Exhibit B, p. 4. And again, the very provisions of the Plan cited by Mr. Hall in his letter as supporting his claim for reimbursement – Section 6.1(f) of the Plan -- actually conclusively refute his claim, for the same reasons as set forth in E above. In short, activities of this kind are reserved to the HBPC as a whole, not its individual members. Again, by claiming that he is entitled to compensation for time spent on this endeavor, Mr. Hall is essentially asserting the right to unilaterally hire himself to provide services to the Committee. Accordingly, Navistar seeks clarification that time spent by Mr. Hall in evaluating Affordable Care Act compliance is not compensable under the Court's Order.

### G. Mr. Hall's Hourly Rate

Mr. Hall has unilaterally determined that he should be compensated for his time at the rate of $75 per hour. Although the issue of Mr. Hall's hourly rate was not specifically raised by Navistar in the briefing on Mr. Hall's earlier motion, Navistar argued that the entirety of Mr. Hall's claims (which would necessarily include his claimed hourly rate) should be denied based on procedural grounds or, alternatively, because compensation and expense issues (again, necessarily including Mr. Hall's hourly rate) should be determined by the HBPC. In its Order, the Court did not specifically address the issue of Mr. Hall's hourly rate, but the parties are now in dispute on this matter, so guidance from the Court is required.

9

As noted above, in its October 23 letter to Mr. Hall (*see* Exhibit A), the Company requested information from Mr. Hall as to how he had determined his hourly rate of $75 to be reasonable, noting that his requested rate substantially exceeded the hourly rate that Navistar was paying to the UAW Retiree Liaison ($18.75), which serves a function for UAW retirees that is a directly comparable to the activities submitted for reimbursement by Mr. Hall. In his October 26 letter, in response to the Company's request for information on this issue, Mr. Hall again summarily dismisses the legitimacy of any such questions, and conclusively asserts that his designated rate is justified because his duties "far exceed" the duties of the UAW Liaison. *See* Exhibit B, p. 2. Mr. Hall then characteristically threatens that "[i]f I am forced to take this matter back to Judge Rice I will seek his approval for a higher rate." *See* Exhibit B, p. 2.

The Company maintains that payment to Mr. Hall at the same hourly rate as the UAW Liaison ($18.75) is most appropriate if an hourly rate is to be used.[10] Navistar would also continue to pay Mr. Hall the additional amount that it currently pays to all HBPC Non-Company Members (including Mr. Hall) for days on which there is an in-person HBPC meeting at the rate of $650 per meeting (which includes related travel time). The duties of these two positions are comparable in subject matter, scope and frequency. Mr. Hall presents no information compelling a different conclusion, other than he thinks the hourly rate of the UAW Liaison is too low for him. Accordingly, Navistar seeks clarification that the hourly rate paid to the UAW Liaison ($18.75) is a reasonable hourly rate for compensating Mr. Hall for time spent that is compensable under the Court's Order.

---

[10] The Company believes that a much better approach is to establish a monthly flat fee for Mr. Hall's services, as further explained in the following section of this memorandum.

**H.     In the Alternative, the Court Should Identify a Reasonable Monthly Flat Fee That May Be Paid to Mr. Hall in Lieu of an Hourly Rate**

The present Motion reveals not only that the parties disagree over the application of the Court's Order to certain activities, but also that such disagreements are likely to continue to arise in the future at least sporadically if not frequently. As a means to minimize or even eliminate any such ongoing disputes, Navistar respectfully requests in the alternative that the Court identify a monthly flat fee arrangement that it would consider reasonable and that could be adopted by the parties in lieu of paying Mr. Hall on an hourly basis.

In its October 23 letter, Navistar invited a proposal from Mr. Hall regarding a monthly flat fee. In response, in his October 26 letter, Mr. Hall implicitly endorsed the concept, but proposed a very high flat fee in the amount of $2,500 per month, which would amount to $30,000 per year. *See* Exhibit B, p. 4-5.

While Navistar welcomes further deliberation on this issue, Navistar submits that Mr. Hall's proposal is not reasonable. Indeed, it is belied by his own experience as the HBPC Other Member. As Mr. Hall summarizes in his October 26 letter, as part of his discussion of his proposes $75 hourly rate, "[m]y first year of monthly billings to Navistar at $75 per hour rate totals only $14, 541.25." *See* Exhibit B, p. 2. Thus, based on his own experience over one year's time in the position of HBPC Other Member, Mr. Hall's compensable time (even using his inflated hourly rate and including time that he spent on activities that are clearly not compensable as further detailed above) averaged approximately $1,200 per month. If the reasonable hourly rate suggested above by the Company ($18.75) is used, Mr. Hall's monthly average would be $300, even if all of the activities he claims to be compensable are included. In an effort to facilitate a reasonable compromise on this issue, Navistar would request that the Court identify a reasonable monthly flat fee at the level of $1,000 per month. Navistar would

also continue to pay Mr. Hall the additional amount that it currently pays to all HBPC Non-Company Members (including Mr. Hall) for days on which there is an in-person HBPC meeting at the rate of $650 per meeting (which includes related travel time).

### IV. CONCLUSION

Based upon the foregoing, Navistar respectfully requests that the Court clarify how its September 18, 2015 Order Regarding Jack Hall Expenses should be applied to some of the specific requests for compensation submitted by Mr. Hall, as further specified above. Alternatively, and in order to minimize potential future disputes on these issues, Navistar respectfully requests that the Court identify a reasonable monthly flat fee that can be adopted by the parties in lieu of an hourly rate. In order to facilitate consideration of all pertinent issues in an efficient manner, Navistar would respectfully suggest that the Court schedule a telephonic conference with the parties.

Respectfully submitted,

*/s/ David P. Pierce*
David P. Pierce (0061972)
COOLIDGE WALL CO., L.P.A.
33 W. First Street, Suite 600
Dayton, OH 45402
Phone: 937-223-8177
Fax: 937-223-6705
E-mail: pierce@coollaw.com

*TRIAL ATTORNEY FOR DEFENDANTS NAVISTAR INTERNATIONAL CORPORATION, et al.*

OF COUNSEL:
David P. Radelet, Esq.
Sally J. Scott, Esq.
William R. Pokorny, Esq.
FRANCZEK RADELET P.C.
300 South Wacker Drive, Suite 3400
Chicago, IL 60606
Phone:  (312) 986-0300
Fax:  (312) 986-9192

*Admitted Pro Hac Vice as*
*One of the Attorneys for Defendants*
*Navistar International Corporation, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2015, a copy of the foregoing ***DEFENDANT'S MOTION FOR CLARIFICATION OF THE COURT'S SEPTEMBER 18, 2015 ORDER REGARDING JACK HALL EXPENSES*** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's CM/ECF system and copies will be sent via regular mail on:

    Jack D. Hall
    40 East Ash Street
    Suite H
    Canton, IL 61520

Parties may access the filing through the Court's system.

                                                */s/ David P. Pierce*
                                                David P. Pierce

w:\wdox\client\009025\00384\00781766.docx