IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| ART SHY, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>NAVISTAR INTERNATIONAL<br>CORPORATION, et al.,<br><br>      Defendants. | Case No. 3:92-cv-00333<br><br>Judge Walter Herbert Rice |

### RESPONSE OF THE COMPANY MEMBERS OF THE HEALTH BENEFIT PROGRAM COMMITTEE TO THE COURT'S "SHOW CAUSE" ORDER OF APRIL 18, 2016

On December 11, 2015, Petitioner William Jones filed a *"Pro Se* Motion to File Petition to Appoint (Or Replace) Two Shy Plan HBPC Other Member Alternates of the Health Benefit Program Committee" and an accompanying Petition (Docket No. 481 and 481-1) (the "Petition"), seeking to replace the two current "Other Member Alternates" (the "Alternates") with Mr. Jones and John Stiso (the "Petitioners") under Section 6.6 of the Navistar, Inc. Retiree Health Benefit and Life Insurance Plan (the "Plan"). On January 7, 2016, the Company Members[1] of the Health Benefit Program Committee ("HBPC") filed a Response to Mr. Jones's Petition (Docket No. 483). On January 14, 2016, Mr. Jones filed a *pro se* Reply (Docket No. 484). On April 18, 2016, this Court entered an order requiring the Company Members to show cause why their Response should not be stricken for lack of standing (Docket No. 485) (the "Order").

The Company Members respectfully submit that the standard for asserting subject matter jurisdiction over a case or controversy under Article III of the Constitution is not in question

---

[1] At the time of the Company Members' January 7 Response, Dan Pikelny and Brian Delphey were the only two active Company Members. Doug Elston was subsequently appointed to the HBPC as the third Company Member and now joins this Response.

here, as this Court has previously held that the Company Members represent a party to this litigation – Navistar, Inc. – and they are responding on behalf of the Company to a motion filed in a case over which the Court has already determined it has subject matter jurisdiction. Alternatively, even if standing were an issue, the Company Members satisfy conventional standing requirements because they have presented an injury that is concrete, particularized, and actual or imminent; fairly traceable to the Petitioners' challenged action; and redressable by a favorable ruling. The Company Members therefore ask the Court not to strike their Response, and to deny the pending Motion and Petition.

## I. Article III Standing Is Not At Issue In The Present Circumstances

The Company Members respectfully submit that the requirement of standing applicable to plaintiffs seeking to maintain a new claim in federal court does not apply to the Company Members' response brief in the circumstances presented here. The Petition now before the Court does not assert a new, independent lawsuit or third-party claim, but rather asks the Court to take a specific action under the terms of a consent decree resolving a lawsuit that unquestionably meets the standard of an Article III "case or controversy." In this regard, the cases cited by the Court in its Order are clearly distinguishable from the circumstances presented here.

For example, this is not a case, such as *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), in which the Court confronts a threshold question as to whether the dispute before it is one "appropriately resolved through the judicial process" under Article III of the Constitution. The Company Members are not seeking to assert new claims, either independently or as strangers to this litigation. To the contrary, the Company Members come to this matter in a hybrid capacity. On the one hand, as this Court states in its Order, the Company Members "represent Navistar" (Order at 2). That is accurate insofar as they are appointed to the HBPC by

the Company and speak on behalf of the Company for purposes of their Response to the Petition. However, the Company Members also serve as members of the HBPC, a body created by the *Shy* consent decree approved by this Court. In this capacity, like all members of the HBPC, the Company Members have a fiduciary responsibility to administer the Plan in accordance with its terms and in the interests of all Plan participants. They are, in short, both representatives of a named party to this litigation, and also interested in their own right as Plan fiduciaries. Accordingly, the Company Members are merely responding to a motion filed in a case to which the Company that they represent is already a party, and which directly concerns the committee on which they serve.

This is also not a case like *Clevenger v. Dillard's Dept. Stores, Inc.*, No. 1:02-cv-558, 2007 WL 2902933 (S.D. Ohio Oct. 7, 2007). There, a class of plaintiffs reached a settlement with a group of third-party litigants. A separate defendant, Towers Perrin, objected to certain language in the settlement agreement allocating the settlement payment among the claims at issue. The court approved the settlement despite this objection, stating that the allocation was merely a "subjective assessment" of issues by the parties to the settlement, and would not prejudice Towers Perrin if the case went to trial on the claims against Towers Perrin. Without further analysis, the court stated by way of background that "[t]he Court therefore overruled Towers Perrin's objections to the Settlement Agreement for lack of standing." *Id.* at *6.

As an initial matter, it appears that the language from *Clevenger* regarding Towers Perrin's standing to object to the settlement agreement between two other parties is at most *dicta*, offered without citation or analysis in the court's recitation of background facts rather than in its substantive ruling on the issues then before the court. It is not at all clear from the decision that the court ruled that it lacked subject matter jurisdiction under Article III to consider Towers

3

Perrin's objection to the settlement. After all, Towers Perrin was a party to the case. To the contrary, it appears that the court may have made a substantive determination that Towers Perrin's objection was unfounded because the language to which it objected would not prejudice Towers Perrin in a later trial.

Regardless, the present circumstances present a scenario very different than *Clevenger*. Again, as stated above, the Company Members filed their Response to the Petition both as representatives of the Company and in their capacity as members of the HBPC. Their views are expressed on behalf of themselves and the Company, not third parties to the underlying litigation.[2] For these reasons, the Company Members respectfully submit that conventional standing analysis cannot be applied to strike their submission in the circumstances presented here.

## II. The Company Members Have A Sufficient Interest In This Matter To Satisfy The Requirements of Standing

Even if standing under Article III of the Constitution were in question, the Company Members respectfully submit that they meet the requirements for standing with respect to their Response to the Petition. As the Court states in its Order, to establish standing a plaintiff "must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Docket No.* 485 at 4, *quoting Horne v. Flores*, 557 U.S. 433, 445 (2009). As explained more fully below, the Company Members are not asserting hypothetical objections to matters that have no substantive effect on them or the Company. Rather, they are asking the Court to enforce the terms of the Plan and to exercise its proper authority as gatekeeper over the appointment of new Alternates.

---

[2] Indeed, the Court has previously recognized that it is appropriate for the HBPC to respond to a petition under Section 6.6 of the Plan, having directed the HBPC to respond to the petition to appoint Jack Hall as HBPC Other Member. (*See* Order dated March 7, 2013, Docket No. 448).

4

A.   **The Company and Company Members Have Concrete, Particularized Interest In Enforcing The Terms Of The Plan**

Navistar is a party to the *Shy* settlement and consent decree. It is both Sponsor and Administrator of the Plan. Navistar, and the Company Members on its behalf, plainly have an interest in ensuring that the Plan and Settlement Agreement are administered pursuant to their terms, including the process for replacement of the HBPC Other Member and Alternates.

Among the material terms of the Plan is the process for replacing the Alternates. Specifically, Section 6.6 of the Plan provides different mechanisms for replacing the HBPC Other Member or either of the Alternates in two different scenarios. First, in the event of "death, incapacity, or resignation" of the existing Other Member or an Alternate, a successor is appointed by a majority vote of the Other Member and the Alternates (provided they are not dead or incapacitated). Second, the Other Member or Alternates may be replaced by the Court "upon petition signed by not less than 50 Participants who are Non-Represented Employees, Present Employees who are not represented by the UAW, or Retirees who were not represented by the UAW at the time of their retirement, for failure adequately to represent the Participants."[3]

The Petition that is now before the Court invokes the second scenario noted above: it is based on the assertion that the current Alternates have failed to adequately represent Participants. The language of the Plan makes clear that, where a petition is filed asserting that the Other Member or Alternate has failed to adequately represent Participants, the Court's role is not merely to count the signatures on a petition and approve it, but rather to act as a gatekeeper. The Plan states not that the Court "shall" replace the Other Member or Alternates upon a petition

---

[3] This group (Non-Represented Employees, Present Employees who are not represented by the UAW, and Retirees who were not represented by the UAW at the time of their retirement), is referred to in this Brief as the "Non-UAW Participants." In the Order, the Court uses the term "Union" to refer to the UAW, and therefore refers to the Non-UAW Participants as the "non-Union Plan participants." The term "Non-UAW Participants" is used here because the group includes individuals represented by unions other than the UAW.

5

with the requisite signatures, but that it "may" do so. It further states the condition that must be met before the Court takes this step: it may replace an Other Member or Alternate only "for failure adequately to represent the Participants." Such a finding must necessarily be grounded in the determination that the Alternate had some responsibilities that may have been inadequately performed. Further, because the Participants do not have an opportunity to participate directly or be heard as part of this proceeding, the Court must ensure that the appointment sought by a petition filed on this basis benefits not just the individuals who signed the petition, but is in the interests of all of the Non-UAW Participants.

As a party to the *Shy* settlement, Navistar has a compelling interest in ensuring that this process is followed, and that the HBPC Other Member or Alternates are not simply replaced by any individual who can muster 50 signatures on a petition without some critical and informed review by the Court. That is particularly true where, as here, the Petitioners have presented absolutely no evidence that the current Alternates have ever had any responsibilities, and where the record shows that the Petitioners appear to have misrepresented the terms of the Plan in order to secure signatures from the Non-UAW Participants.[4]

As members of the HBPC, the Company Members have an additional and direct interest in ensuring the smooth operation of the HBPC according to the terms of the Plan. While they are appointed by the Company, the Company Members owe an independent duty to the Plan and to Plan Participants to ensure that the Plan is properly administered according to its terms. Both Navistar, and the Company Members as members of the HBPC, have a direct interest – indeed, arguably an obligation – to alert the Court where the Petitioner to replace the current Alternates

---

[4] As noted in the initial Response filed by the Company Members, Mr. Jones circulated the petition to the signatories with a cover email that stated, among other things, that "[w]ithout this relief being in place Navistar would have the power to designate a successor HBPC Other Member." (Docket No. 483-1, p. 2, PAGEID # 3108). This statement is simply false.

is not and could not be supported by any showing that the current Alternates have failed to "adequately represent the Participants" as required by Section 6.6 of the Plan, and where signatures were solicited with false information.

In short, the provisions of the Plan cannot be read in isolation. The process for replacement of the Other Member and Alternates must be considered as part of the overall structure agreed to by the *Shy* parties and approved by the Court – provisions upon which the parties should be entitled to rely and which they have standing to enforce through the HBPC Members who represent them.

### B. The Injury Is Actual Or Imminent

In its Order, the Court states that any injury to the Company Members or Navistar from granting the Petition would not be "actual or imminent," because "Jones or Stiso becoming the Other Member would require death, incapacity, or resignation of Hall, or evidence that Hall failed to represent adequately the non-Union Plan participants." However, the injury at issue here does not arise merely when Mr. Jones or Mr. Stiso exercise their authority as Alternates to replace the current Other Member. Navistar and the Company Members have an actual and imminent interest in ensuring that the Plan is enforced in accordance with its terms, which include the Court enforcing the terms of the Plan in ruling upon any petition to replace the Alternates for failure to adequately represent the Participants.

Moreover, as the Petitioners have stated in their communications to Participants, the express goal of their Petition is allow them to freely appoint all future Other Members and Alternates without having to secure the votes of the current Alternates or enduring the Court's oversight function, stating "With this structure in place the actual succession does not have to be approved by Judge Rice and can be accomplished immediately when necessary or desired." (Petition, Docket No. 483-1, at p. 2, PAGEID# 3108). This shift in authority from the current

7

Alternates and the Court to the Petitioners will occur not at some remote and speculative time in the future, but immediately upon granting the instant Petition.

This is not a case in which the Company or Company Members can adopt a "wait and see" attitude and seek relief from the Court once the Petitioners exercise their authority as Alternates after appointment. Under the Plan, the only opportunity for the Court to enforce the terms of the Plan in selecting Alternates is at this stage, in its ruling on a petition to replace the current Alternates. The Court cannot serve its function as a gatekeeper unless it is fully informed, now, and the Company Members are uniquely positioned to bring any issues with a pending petition to the Court's attention on behalf of the party they represent, the Company. Accordingly, the injury that concerns the Company and Company Members in this case is both actual and imminent, and it is proper for the Court to consider the concerns raised in their Response.

The Company Members further submit that if the injury at issue were not actual or imminent based upon the fact that the Alternates act only upon the death, incapacity or resignation of the existing Other Member, the Petitioners would likewise lack standing to bring their petition. The Petitioners do not dispute that the current Alternates have never been called upon to exercise their authority; thus, any prospect that they may be required to do so in the future is likewise speculative. If that prospect is not so remote as to deprive the Petitioners of standing, the same prospect is sufficient to allow the Company Members to bring their concerns with the Petition to the Court's attention so that the Court can make a fully informed determination on the issue.

### C. The Limited Role Of The Alternates Does Not Deprive The Company and Company Members Of Standing To Object To The Petition

The Court also observes in its Order that the Company's concern about Mr. Jones' stated intention to use his position as an Alternate to "compel consideration of [his] legal opinions" is

8

undercut by the fact that the Alternates do not have any duties beyond selection of a new Other Member in the event of death, incapacity or retirement. Again, however, the concern of the Company and the Company Members is with process and with ensuring that the Plan is administered in accordance with its terms. While the Court is correct in its assessment that the Alternates do not have any duties beyond selection of a new Other Member, Mr. Jones' communication to the Participants strongly suggests that he will seek to expand the role of Alternate and have a direct say in the workings of the HBPC, something not contemplated in the Plan. This is a matter of clear and immediate concern to Navistar and the Company Members, as it suggests that Mr. Jones is prepared to disregard the actual language of the Plan to attempt to "compel" consideration of his views. This is also a concern that is appropriate for the Court to consider, and is appropriately raised by the Company Members on behalf of the Company as well as themselves in their capacity as HBPC Members.

### D. Consideration of the Views Expressed by the Company Members Will Advance, Not Interfere With, The Rights Of The Participants

In its Order, the Court states that "[t]o allow the Company Members to block the appointment of Jones and Stiso as OMAs would constitute interference by Navistar in the interests of the non-Union Plan participants." The Company Members respectfully submit that they are not simply seeking to block appointment of the new Alternates by the Court. Rather, they are asking the Court to consider the merits of the Petition in light of the terms of the Plan and all of the relevant facts. Those facts include that the Petitioners apparently made material misrepresentations about the terms of the Plan to the individuals who signed the Petition; that they have presented no evidence whatsoever of any failure by the current Alternates to perform their duties; and that they cannot possibly present any such evidence, since it is undisputed that the conditions that would require the Alternates to act under Section 6.6 have never occurred.

Far from interfering with the rights of the Participants, allowing the Company Members to respond to the Petition is the only apparent way for the Court to be informed of these issues. It is highly doubtful that most Participants know about Mr. Jones's petition, or that they have either the knowledge or wherewithal to bring any concerns that they may have to the attention of the Court. Likewise, Petitioners have acknowledged that they do not even know who the current Alternates are, and the current Alternates have not been given an opportunity to respond to the Petition or to Plaintiffs' assertion that they have failed to adequately represent the non-represented Participants.

The Company Members do not ask the Court to accept their views uncritically. But in the absence of any direct method of obtaining the informed feedback of the Participants, allowing the Company Members to comment on petitions filed under Section 6.6 of the Plan is not only proper, but necessary to allow the Court to fulfill its proper function of review.

### E. The Injury At Issue Is Directly Traceable To The Petitioners And Can Be Redressed By A Favorable Ruling.

The Company Members also satisfy the last two elements of the test for Article III standing. The injury summarized above that will occur if the Petition is granted without any evidence of inadequate representation by the current Alternatives, and even though the signatures were solicited based on false information, is directly traceable to the Petitioners. Only a ruling by the Court denying the Petition would fully redress any injury that might result from granting the Petition.

### III. Even If the Company Members Lack Standing, The Court Should Consider The Matters Raised In Their Response

Finally, the Company Members respectfully submit that even if the Court determines that they do not have standing to raise a direct objection to the Petition, the Court nevertheless can and should exercise its discretion to consider the concerns raised in the Company Members'

Response. The *Shy* Settlement and Consent Decree leaves it to the Court to determine whether a petition under Section 6.6 is supported by evidence that the current Alternates have failed to adequately represent the Participants. In making that determination, the Court should consider not just the interests and assertions of the Petitioners seeking appointment as Alternates, but also the interests of all Non-UAW Participants. If the Court determines that the Company Members lack standing to raise their concerns and the concerns of the Company, the Court must necessarily scrutinize on its own accord the Petition, the Petitioners' communications with the signors, and their compliance with the requirements of the Plan in determining whether the Petition should be granted.

## IV. Conclusion

The Company Members respectfully submit that subject matter jurisdiction and Article III standing are not at issue with respect to their response to the Petition before the Court, as the Company Members represent an existing party to this case and are not seeking to bring any independent claims. In the alternative, the Company Members submit that they independently satisfy the requirements for standing. If the Company Members lack standing because the harm that concerns them is too remote or speculative to warrant relief, then so too do the Petitioners. Conversely, if the Petitioners have standing, then as representatives of Navistar and members of the HBPC, the Company Members certainly have a sufficient interest in the Petition to satisfy the requirements of Article III standing, and their brief in opposition to the Petition should be considered by the Court. The Company Members therefore respectfully request that the Court not strike their Response to the Petition, and that the Court deny the Motion and Petition for the reasons stated in their January 7 Response and reiterated herein.

        Respectfully submitted,

        *s/ David P. Pierce*
        David P. Pierce (0061972)
        COOLIDGE WALL CO., L.P.A.
        33 W. First Street, Suite 600
        Dayton, OH 45402
        Phone: 937-223-8177
        Fax: 937-223-6705
        E-mail: pierce@coollaw.com
        *TRIAL ATTORNEY FOR DEFENDANTS*
        *NAVISTAR INTERNATIONAL*
        *CORPORATION, et al.*

        OF COUNSEL:
        David P. Radelet
        Sally J. Scott
        William R. Pokorny
        FRANCZEK RADELET P.C.
        300 South Wacker Drive, Suite 3400
        Chicago, IL 60606
        Phone: (312) 986-0300
        Fax: (312) 986-9192

w:\wdox\client\009025\00384\00818071.docx

Submitted on Behalf of:

_____
Dan Pikelny, HBPC Company Member

Date Signed: 5/9/2016

_____
Brian Delphey, HBPC Company Member

Date Signed: 5/9/16

_____
Doug Elston, HBPC Company Member

Date Signed: 5/8/2016