IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ART SHY, *et al.*,                          :

    Plaintiffs,

v.                                          :

NAVISTAR INT'L CORP., *et al.*,             :

    Defendants.

—————————————————————          :       Case No. 3:92-cv-333-WHR

SUPPLEMENTAL BENEFIT                            JUDGE WALTER H. RICE
COMMITTEE OF THE
NAVISTAR, INC., RETIREE          :
SUPPLEMENTAL BENEFIT
PROGRAM,                         :

    Intervenor-Plaintiff,

v.                                          :

NAVISTAR INT'L CORP., *et al.*,

    Defendants.                  :

---

DECISION AND ENTRY SUSTAINING DEFENDANTS NAVISTAR
INTERNATIONAL CORPORATION, NAVISTAR FINANCIAL
CORPORATION AND INDIANAPOLIS CASTING CORPORATION'S
MOTION TO DISMISS INTERVENOR-PLAINTIFF SUPPLEMENTAL
BENEFIT COMMITTEE OF THE NAVISTAR, INC., RETIREE
SUPPLEMENTAL BENEFIT PROGRAM'S COMPLAINT FOR
ENFORCEMENT OF SETTLEMENT AGREEMENT (DOC. #498);
INTERVENOR-PLAINTIFF'S COMPLAINT (DOC. #491) IS DISMISSED
WITH PREJUDICE; JUDGMENT SHALL ENTER IN FAVOR OF
DEFENDANTS AND AGAINST INTERVENOR-PLAINTIFF; CAPTIONED
CAUSE REMAINS TERMINATED

---

Intervenor-Plaintiff Supplemental Benefit Committee of the Navistar, Inc., Retiree

Supplemental Benefit Program ("Intervenor-Plaintiff" or "the SBC"), purports to

represent retirees who are participants in the Navistar, Inc., Retiree Health Benefit and Life Insurance Plan (the "Health Plan" or "Base Plan"), and has filed a Complaint to Enforce Settlement Agreement ("Complaint"). Doc. #491.[1] The Base Plan was established by a Settlement Agreement that is discussed in greater detail below, and is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and provides prescription drug benefits to participants. Doc. #491, ¶¶ 1-2, PAGEID #3158-59. The SBC alleges that, beginning in 2012, Defendants Navistar International Corporation ("Navistar" or the "Company"), Navistar Financial Corporation and Indianapolis Casting Corporation (collectively "Defendants") began misappropriating subsidies paid to Navistar, as the Base Plan's Administrator and Named Fiduciary, by the Center for Medicare and Medicaid Services ("CMS"). The SBC alleges that Navistar distributed the subsidies solely to Defendants, rather than using a portion of the subsidies to lower the amount of retiree contributions to the Base Plan. *Id.*, ¶ 3, PAGEID #3159. The SBC argues that, by misappropriating the subsidies, Defendants have breached the Settlement Agreement. *Id.*, ¶¶ 61-62, PAGEID #3172-73.

Defendants have filed a Motion to Dismiss Intervenor-Plaintiffs' Complaint for Enforcement of Settlement Agreement ("Motion"), arguing that the SBC lacks standing to enforce the terms of the Base Plan. Doc. #498. For the reasons set forth below, their Motion is SUSTAINED.

---

[1] All citations docket entries refer to the captioned cause unless otherwise specified.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

On July 28, 1992, Defendants "announced major reductions in the insurance and health benefits offered to the company's retired employees and their dependents." Doc. #446, PAGEID #2170 (citation omitted).  A group of retirees led by an Art Shy ("*Shy* plaintiffs") filed suit against Defendants, and a Settlement Agreement was reached on May 27, 1993.  *Id*.  The Settlement Agreement, incorporated by the Court as a consent decree, established the Base Plan, under which Defendants and the retirees (or "participants") were required to make annual contributions to the Navistar International Transportation Corporation Retiree Health Benefit Trust (the "Trust"); the "Trust then pays for the participants' health benefits, including prescription drug costs." Doc. #491, ¶ 3, PAGEID #3159.  The Settlement Agreement required Defendants and Plan participants to make periodic contributions to the Trust as part of the Base Plan's cost-sharing requirement.  *Id*., ¶ 20, PAGEID #3162-63.  Navistar became the Base Plan's Administrator and Named Fiduciary, "subject to the review authority of the Health Benefit Program Committee [('HBPC').]"  Doc. #498-1, § 1.5, PAGEID #3249-50.[3]

The Settlement Agreement also created the Navistar, Inc. Retiree Supplemental Benefit Program ("Supplemental Benefit Program"), and created the SBC to be the Supplemental Benefit Program Administrator and Named Fiduciary.  Doc. #498-1, §§ 6.1, 6.2, PAGEID #3329-30.  The Settlement Agreement required Navistar to

---

[2] As Defendants' Motion is brought under Rule 12(b)(6), the Court, for the purposes of the Motion, must treat Plaintiffs' well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

[3] The SBC made reference to Settlement Agreement in their Complaint, but did not attach it as an exhibit thereto.  As the Settlement Agreement is central to the SBC's claim, the Court may consider the contents of the Settlement Agreement without converting Defendants' Motion to one for summary judgment. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

"cooperate with the [SBC] and Supplemental Benefit Trust to provide for the reduction of premiums, co-payments, deductibles and other amounts which would otherwise be required to be paid by or on behalf of Enrolled Participants under the [Base Plan.]" *Id.*, § 6.5(a), PAGEID #3332.

While initially, participants' drug benefits were provided directly by the Base Plan itself, Doc. #491, ¶ 24, PAGEID #3163, the passage of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 created a prescription drug benefit ("Medicare Part D") administered by CMS. Pub. L. 108-173, 117 Stat. 2066. Effective July 1, 2010, Navistar unilaterally eliminated the Base Plan's prescription drug benefit for Medicare-eligible participants (including Plaintiffs), and required those participants to enroll in Medicare Part D. *Id.*, ¶ 26, PAGEID #3164. From July 1, 2010, through December 31, 2011, Navistar, through the Trust, paid "fixed monthly premiums for a fully-insured Series 800 Medicare Part D Plan [('Fully-Insured PDP')]." *Id.*, ¶ 31, PAGEID #3164. Despite decisions and orders from this Court requiring Navistar to reinstate the Base Plan's prescription drug benefit, Navistar never did so, and the Medicare-eligible participants were still required to obtain prescription drug coverage through the Fully-Insured PDP. *Id.*, ¶ 28 (citing Doc. #373, 383).

Under the Fully-Insured PDP, CMS and certain pharmaceutical manufacturers would remit subsidies intended to offset the cost of prescription drugs to SilverScript Insurance Company ("SilverScript"), which was the underwriter and administrator of the Fully-Insured PDP, and which later became part of CVS Caremark ("Caremark"). Doc. #491, ¶¶ 31-35, PAGEID #3164-65. In turn, SilverScript, and later Caremark, used the subsidies "to reduce the cost of the insurance premiums it charged the [] Trust to

4

provide the drug benefit." *Id.*, ¶ 36, PAGEID #3166. Under the Fully-Insured PDP, then, both Plan participants and Defendants, as contributors to the Trust, had their out-of-pocket costs for the prescription drug benefit reduced through the subsidies.

However, Navistar, as Base Plan fiduciary, subsequently amended its contract with Caremark, and effective January 1, 2012, the "Trust assumed the liability for paying the underlying prescription drug claims (the 'Self-Funded PDP')." Doc. #491, ¶ 37, PAGEID #3166. Because the Trust became the payor of the claims, CMS and the pharmaceutical manufacturers paid the subsidies directly to Navistar. *Id.*, ¶ 38. However, Navistar did not use the subsidies to lower the premiums paid by the Base Plan participants. Rather, Navistar distributed the subsidies to the Defendants, in essence, "using the Participants' share of the Subsidies to reduce their own obligation to make contributions to the . . . Trust." *Id.*, ¶ 40, PAGEID #3167. The SBC claims that, from January 1, 2012 through April 2015, Defendants misappropriated approximately $26 million in subsidies that should have been passed on to the participants. *Id.*, ¶ 41.

Navistar's administration of the Base Plan has been subject to prior litigation in this Court. On June 4, 2010, Navistar (and the other Defendants in this case) filed a complaint against, among other persons and entities, the SBC. Case No. 3:10-cv-211, Doc. #1. In the complaint, Navistar alleged that it contributed shares of stock to the Supplemental Benefit Trust, which the SBC sold, *id.*, ¶¶ 39-40, PAGEID #11, and used the proceeds therefrom to fund "comprehensive dental coverage, a comprehensive vision program, and hearing aid coverage." *Id.*, ¶ 38, PAGEID #10. Navistar claimed that the SBC and others were preventing Navistar from obtaining the permanent and definite reduction in its accumulated postretirement benefit obligation ("APBO"). That

reduction in its ABPO, Navistar alleged, was the "benefit of the bargain" it was supposed to obtain from the Settlement Agreement. *Id.*, ¶ 77, PAGEID #17-18. Navistar sought a declaratory judgment capping its APBO or, in the alternative, rescinding or modifying the Settlement Agreement. *Id.*, ¶¶ 87-119, PAGEID #20-26. A motion to dismiss was filed, Case No. 3:10-cv-211, Doc. #21, but before the Court could rule on the motion, Navistar dismissed the lawsuit. Case No. 3:10-cv-211, Doc. #22, PAGEID #663 (citing Fed. R. Civ. P. 41(a)(1)(A)(i)).

On April 26, 2010, several unions and individual Base Plan participants filed a Motion to Compel Compliance with the Settlement Agreement, in response to Navistar's decision to abolish the Base Plan's prescription drug benefit and create the Fully-Funded PDP. Doc. #343.[4] On February 24, 2011, the Court sustained in part and overruled in part that motion, declaring "that Navistar was without authority to unilaterally substitute [the Fully-Funded PDP] for the prescription drug benefit adopted by the parties in accordance with the Settlement Agreement[,]" but overruled the motion "to the extent that the [Plaintiffs] seek injunctive relief." Doc. #373, PAGEID #916. On September 30, 2011, after settlement negotiations between the retirees and Defendants failed, the Court ordered "Navistar to reinstate, on an immediate basis, the prescription drug benefit that was in effect before Navistar unilaterally substituted Medicare Part D for that benefit." Doc. #383, PAGEID #1000. Navistar was also ordered to reimburse the participants for any increased premiums they had paid from July 1, 2010, until that date. *Id.*

---

[4] At various points in their briefing, the parties refer to that particular motion and subsequent proceedings as the "SilverScript Litigation." *See, e.g.*, Doc. #501, PAGEID #3476; Doc. #502, PAGEID #3487.

On March 26, 2012, the SBC moved to intervene to enforce the Settlement Agreement, claiming that Navistar "failed to meet their [*sic*] obligations under the [S]ettlement [A]greement, with respect to the [SBC]." Doc. #395, PAGEID #1107, *amended at* Doc. #407. On February 6, 2013, the Court allowed the SBC to intervene, Doc. #414, and on February 15, 2013, the SBC filed a formal complaint to enforce the Settlement Agreement, Doc. #415, which Navistar subsequently moved to dismiss. Doc. #422. On March 29, 2013, the Court sustained the SBC's motion to enforce the Settlement Agreement. Doc. #426, *vacated and remanded*, *Shy v. Navistar Int'l Corp.*, 781 F.3d 820 (6th Cir. 2015). In so doing, the Court held that the SBC had standing to enforce the Supplemental Benefit Trust Profit Sharing Plan ("PSP"), as the "SBC is a creation of the [Supplemental] Plan itself, with the express purpose and duty of enforcing the terms of the Supplemental Plan and the PSP." *Id.*, PAGEID #1964.

Further, the Settlement Agreement named both the SBC and Navistar as Program Administrator and Named Fiduciary for the Supplemental Benefit Program. *Id.*, PAGEID #1965 (citation omitted). The SBC's status as a fiduciary, the Court noted, allowed the SBC to enforce the terms of the Supplemental Plan. *Id.* (citing 29 U.S.C. §§ 1002(21)(A), 1132). This Court, in so holding, concluded that the SBC's "dispute over what information Navistar had to provide under the Plan was not subject to the alternative dispute resolution procedures" set forth in the settlement agreement. *Shy*, 781 F.3d at 824. The Sixth Circuit, however, held that because "[i]n each claim[,] the SBC is disputing information or calculations regarding Navistar's obligations to the Supplemental Benefit Trust that Navistar provided under its reporting obligations under the [S]ettlement [A]greement. This places each claim within the scope of the arbitration

clause." *Id*. at 824-25. Consequently, the Sixth Circuit concluded, this Court was without jurisdiction to adjudicate the claims set forth in the SBC's complaint, and, upon remand, this Court was compelled to order arbitration of the dispute. *Id*. at 831.[5]

Finally, on October 21, 2016, the SBC filed the instant Complaint, alleging that the Base Plan contemplates that "Retiree Contributions would increase at a certain set rate (*e.g.*, 6%) each year. This assumed increase in the monthly contribution formed the 'base line' for the calculation of Retiree Contributions." Doc. #491, ¶ 45, PAGEID #3168. Each year, the Base Plan's actuary, based on data provided by Navistar, makes a series of adjustments to arrive at the Total Actual Drug Cost, from which the retirees and Defendants' respective contribution amounts are calculated. *Id*., ¶¶ 44-53, PAGEID #3168-70. The SBC alleges that Navistar "ignores the fact that considerable amounts of Subsidies reduced the amounts the [Base] Plan actually paid for the drugs[,]" *id*., ¶ 52, PAGEID #3170, and that, "[b]y misinterpreting the term Total Actual Drug Cost, the Company . . . fail[ed] to provide accurate information to the actuary . . . , thereby increasing the required contribution from the participants." *Id*., ¶ 54. The SBC claims that "[e]ach year, [it] has expended Supplemental Trust assets to alleviate a portion of this [increased] burden on the retirees." *Id*., ¶ 55, PAGEID #3171. The SBC claims that

> By: (1) failing to implement the Plan through the . . . Trust; (2) keeping the full amount of the Subsidies for themselves; (3) misinterpreting the term "Total Actual Drug Cost"; (4) inflating the Retiree Contributions to the Plan; and (5) decreasing the Employer Contributions to the Plan, Defendants have, . . . breached the terms of the Settlement Agreement and this Court's Consent [Decree], causing damages to Plaintiffs and the Plan participants.

*Id*., ¶ 62, PAGEID #3172-73.

---

[5] To date, the Court is unaware of any arbitration award having been made, and neither Navistar nor the SBC has filed a motion with this Court to confirm, modify or vacate any such award. 9 U.S.C. §§ 9-11.

## II.    RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this

standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id.* at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).


III.    **ANALYSIS**

A.    **SBC's Claim Properly Arises Under ERISA**

In their Motion, Defendants argue that "[t]he single count of the Complaint, whether viewed as an attempt to plead a state law breach of contract claim or an effort to invoke federal common law, is preempted by ERISA and must be dismissed." Doc. #498, PAGEID #3202. Defendants claim (and Plaintiffs do not dispute) that any "state law claim is expressly preempted by ERISA." *Id.*; *see also* 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA-governed] employee benefit plan[.]"). Further, Defendants argue that "[w]here, as here, ERISA governs the action and provides a remedy to redress the alleged violation, a plaintiff cannot resort to federal common law." Doc. #498, PAGEID #3204-05 (citing *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 420-22 (6th Cir. 2014); *Central States, Se. & Sw. Areas Pension Fund v.*

10

*Mahoning Nat'l Bank,* 112 F.3d 252, 257 (6th Cir. 1997); *Muse v. Int'l Bus. Mach. Corp.,* 103 F.3d 490, 495 (6th Cir. 1996); *Farm Bureau Gen. Ins. Co. of Michigan v. Blue Cross Blue Shield of Michigan*, No. 15-2323, 655 F. App'x 483, 487-89 (6th Cir. 2016)). Moreover, this Court has expressed "substantial reason to doubt the validity of such a breach of contract claim . . . , given the 'very limited' federal common law that courts have allowed to develop under ERISA[.]" Doc. #446, PAGEID #2206 (citing *Mahoning Nat'l Bank*, 112 F.3d at 256), *vacated and remanded on other grounds*, *Shy*, 781 F.3d 820.

The Settlement Agreement vests in the Court continuing jurisdiction to hear any claims relating to the Settlement Agreement. Doc. #498-1, § 15.4, PAGEID #3239.[6] Thus, the SBC is correct that "a claim for breach of the Settlement Agreement, and thus its encapsulating federal court order, is a federal cause of action." Doc. #501, PAGEID #3474. However, simply because a claim for breach of the Settlement Agreement could properly invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331 does not mean that the SBC's allegations—even if based on the Settlement Agreement— constitute a claim for common law breach of contract. As Defendants correctly note, the gravamen of the Complaint is that Navistar breached the Settlement Agreement because it received the subsidies from CMS and drug manufacturers, but failed to pass on a *pro rata* share to retirees, instead distributing the entire amount of the subsidies to its fellow Defendants, who kept those distributed amounts for themselves. Doc. #502, PAGEID #3490 (citing Doc. #491, ¶¶ 4, 16-23, 37-59, 62, PAGEID #3159-60, 3162-63,

---

[6] Defendants do not argue that the SBC's claim is preempted by the Settlement Agreement's arbitration clause.

3166-73). That alleged misconduct is actionable under ERISA as claims for breach of fiduciary duty and prohibited transactions, 29 U.S.C. §§ 1104, 1106, rendering relief under federal common law both unnecessary and inappropriate.[7]

Finally, the SBC notes that Navistar previously brought a breach of contract claim based on alleged Settlement Agreement violations. Doc. #501, PAGEID #3474-75 (citing Case No. 3:10-cv-211, Doc. #1). Thus, the SBC argues, Defendants are judicially estopped from taking the contrary position in asserting that the SBC may not bring a breach of contract change based on alleged violations of the same Settlement Agreement. *Id.*, PAGEID #3475-76 (citing *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990); *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988)). However, "[i]n order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." *Teledyne*, 911 F.2d at 1218. Faced with a motion to dismiss, Case No. 3:10-cv-211, Doc. #21, Navistar voluntarily dismissed its unverified complaint prior to filing its memorandum *contra* or the Court's ruling on the motion. *Id.*, Doc. #22. The SBC cannot show that Navistar took a "contrary position under oath"; nor can it show that this Court ever accepted Navistar's position. Thus, the doctrine of judicial estoppel is inapplicable.

In light of the above, the SBC's claim is properly construed as breach of fiduciary duty and prohibited transaction claims under ERISA; consequently, the SBC has no claim for common law breach of contract. This conclusion is consistent with the

---

[7] Notably, in the companion case of *Krzysiak v. Navistar Int'l Corp.*, the plaintiffs, who are Base Plan participants and parties to the Settlement Agreement, used a virtually identical set of facts to bring claims for violations of 29 U.S.C. §§ 1104, 1106, but not for breach of the Settlement Agreement. Case No. 3:16-cv-443, Doc. #1.

approach taken by the Supreme Court and the Sixth Circuit, which have consistently rejected attempts by plaintiffs to artfully plead their way out of an ERISA claim. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 214, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 681 (6th Cir. 2008); *Briscoe v. Fine*, 444 F.3d 478, 499 (6th Cir. 2006)). Thus, the SBC's Complaint must be construed as a claim for relief under ERISA.

## B.    The SBC lacks standing to Raise Claims

Defendants argue that, as to the Base Plan, the SBC is not a participant, beneficiary or fiduciary, and thus lacks standing under ERISA to bring a claim arising out of alleged violations of the Base Plan. Doc. #498, PAGEID #3206 (citing 29 U.S.C. § 1132(a); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 247, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000); *Girl Scouts*, 770 F.3d at 421). The SBC does not dispute that a plan's participants, beneficiaries, and fiduciaries are the only private actors who may raise an ERISA claim; nor does the SBC claim that it falls into one of those categories with respect to the Base Plan. However, it argues that: (1) as an Intervenor-Plaintiff, it has standing "equal to that of the *Shy* plaintiffs"; (2) this Court settled the standing issue in the SBC's favor when it sustained the SBC's motion to intervene; and (3) the SBC "has standing to bring to the Court's attention the Defendants' violations of the Settlement Agreement that threaten the SBC's ability to prudently manage the Supplemental Trust's assets." Doc. #501, PAGEID #3478-79.

As an Intervenor-Plaintiff, the SBC "is treated as if [it] were an original party and has equal standing with the original parties." 7C CHARLES ALAN WRIGHT & ARTHUR R.

MILLER, FEDERAL PRACTICE & PROCEDURE § 1920 (3d ed. 1998). However, to satisfy Article III to the United States Constitution, the SBC still must plausibly allege in the instant Complaint that it has suffered and injury that is: (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the defendant's challenged action; and (3) likely to be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Put another way, just because the Court concluded that the SBC had standing to seek redress for the injury that <u>it</u> had suffered, Doc. #426, does not mean that the SBC has standing to seek redress for an injury that <u>a different party</u> suffered.

Moreover, through 29 U.S.C. § 1132(a), Congress has set forth more stringent requirements for standing under ERISA than merely meeting the *Lujan* threshold. *See Girl Scouts*, 770 F.3d at 421 (emphasis added) (internal quotation marks and citation omitted) ("[t]he statute's standing provision, § 502, lists four categories of persons empowered to bring a civil action—namely, participants, beneficiaries, plan fiduciaries, and the Secretary of Labor—<u>and this list is exclusive</u>."). As Defendants note, the Settlement Agreement designates only Navistar and the HBPC as fiduciaries for the Base Plan; the SBC does not have "any discretion to exercise fiduciary functions with respect to the [Base Plan]." Doc. #502, PAGEID #3496 (citing Doc. #498-1, § 6.2, PAGEID #3330). Further, while the Court has previously acknowledged that the SBC "clearly has standing to enforce the terms of the Supplemental Plan[,]" Doc. #426, PAGEID #165, it also noted that the parties, through the Settlement Agreement, viewed the Supplemental Plan and Base Plan to be distinct, "constituent parts" of the overall benefits plan for retirees. *Id*. (citation omitted). Thus, even though the SBC, as a

fiduciary, can properly file an action under 29 U.S.C. § 1132 as to violations of the Settlement Agreement pertaining to the Supplemental Plan or Supplemental Trust, it cannot do so for any violations pertaining to the Base Plan.

Finally, in neither its Complaint nor its memorandum *contra* does the SBC claim that its payments from the Supplemental Trust to the retirees to offset the increased prescription drug premiums, Doc. #491, ¶ 7, PAGEID #3160, create a right of subrogation, by which the SBC could step into the shoes of the HBPC or retirees and assert claims against the Defendants for their ERISA violations with respect to the Base Plan.[8] Nor does the SBC claim that the HBPC or the Base Plan participants have assigned their fiduciary duties or beneficiary rights, respectively, under the Base Plan to the SBC. In sum, the SBC has failed to allege facts to show that it has standing under ERISA, and the Settlement Agreement's plain language means that the SBC will never have standing for any claim concerning the Base Plan. As an amended complaint could not survive a renewed motion to dismiss, and thus, leave to amend would be futile, the SBC's Complaint must be dismissed with prejudice. *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 355 (6th Cir. 2014) (citations omitted).

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the SBC's Complaint for Enforcement of Settlement Agreement, Doc. #498, is SUSTAINED. The SBC's Complaint, Doc. #491, is DISMISSED WITH PREJUDICE. Judgment shall enter in favor of Defendants and against the SBC.

_____

[8] If the SBC could do so, then there would have been no reason for Wayne Krzysiak and Michael LaCour, as Base Plan participants, to bring the parallel action.

The captioned case remains terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: May 10, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE