**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | |
|---|---|
| ART SHY, et al. | |
| Plaintiffs, | |
| vs. | Case No. 3:92-CV-00333 |
| NAVISTAR INTERNATIONAL | District Judge Walter H. Rice |
| CORPORATION, et al. | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF CLASS REPRESENTATIVES'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND APPROVAL OF AMENDMENTS**
**TO THE SUPPLEMENTAL BENEFIT PROGRAM**

TABLE OF CONTENTS AND SUMMARY OF ARGUMENT

I.    INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................5

    A.  Procedural History of the Disputes and the Settlement Negotiations ................................................................................5

        1.  The *Shy* Agreement ................................................................5

        2.  The Disputes Between the SBC and Navistar ........................6

            a.  The Profit-Sharing Disputes ......................................6

            b.  The Medicare Part D Subsidies Dispute ...................8

            c.  The Settlement Negotiations ......................................9

    B.  Overview of the Proposed Class Action Settlement Agreement ....................11

        1.  Economic Terms ................................................................11

        2.  Releases ............................................................................12

        3.  Amendments to the *Shy* Agreement ........................................13

        4.  Certification of a New Rule 23 Class ........................................14

        5.  Class Notice Program ............................................................14

        6.  Fees and Expenses ................................................................14

    C.  The Effect of the Settlements on the Class Members ........................................15

III.    ARGUMENT ................................................................................................16

    A.  The Proposed Class Action Settlement Warrants Preliminary Approval Under Fed. R. Civ. P. 23 ................................................................16

Settlement of class actions is generally favored and encouraged. There are three steps for approval: 1) preliminary approval; 2) notice; and 3) a fairness hearing. The considerations for granting preliminary approval are simpler than for final approval, and primarily concern whether the settlement negotiations were made at arm's-length, the settlement has no obvious deficiencies or improper preferential treatment, and it is within the range of

possible approval. *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 372 (S.D. Ohio 2006); *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (citations omitted).

**1. The Class Action Settlement Was Reached After Serious, Informed, And Arm's-Length Negotiations ................................................17**

The proposed Class Action Settlement was the result of arm's-length negotiations lasting almost a year, providing prima facie evidence of a fair settlement. *Roland v. Convergys Customer Mgmt. Grp. Inc*., No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017).

**2. The Class Action Settlement Has No Obvious Deficiencies And Fall Within The Range Of Reasonableness ........................................18**

The Class Representatives, Class Counsel, ERISA counsel retained by Class Counsel, and the SBC (an independent fiduciary) and its counsel all support the proposed Class Action Settlement as a substantial benefit for the class. There is no obvious deficiency such as preferential treatment of a Class Representative or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009).

**a. The Value Of The Class Action Settlement In Its Totality .................................................................................................19**

Approval of the Class Action Settlement would lead to an immediate increase in the supplemental benefits of the Class Members, and an increase over time valued at an estimated $742 million plus interest. The alternative of moving forward with litigation carries risk of failure. The number of Class Members is decreasing significantly every year. The proposed settlement would allow the Class Members to receive benefits while they are still alive to enjoy them and would provide benefits comparable to the those in place before the cutbacks that led to the 1992 litigation, which was an important goal of the 1993 settlement.

**b. The Value Of The Individual Settlements Viewed In Isolation ...............................................................................20**

**i. The Profit-Sharing Settlement ........................................21**

The Profit-Sharing Settlement provides for Navistar to pay $292 million plus interest, the full value of the arbitration award plus SBC's calculation of the profit-sharing owed for post-arbitration years.

ii.  The *Krzysiak* Settlement ...................................................................21

The payment of $3 million fully reimburses fees and expenses incurred, and the payment of $17 million to the Base Plan resolves the claims in *Krzysiak* for alleged losses in that plan. The payment of an estimated 33 percent of potential recovery is warranted based on the risks of dismissal as well as other factors. A release of potential Medicare Part D subsidies claims is in the best interest of the Class Members and is in part justified by the value of the future relief achieved in the proposed Settlement.

**B.  To Effect The Settlement, The Court Should Amend The Class Definition, Appoint New Class Representatives, And Certify A Settlement Class** ...........................................................................22

**1.  The Court Should Adopt A New Class Definition** ......................................22

The existing class definition should be expanded to include all current and potential Shy Plan participants or beneficiaries. The Court has broad discretion to modify the class definition. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

**2.  The Court Should Appoint Additional Class Representatives** .................23

Class Representatives seek the appointment of two additional class representatives—Robert Bergmann and Fred Cortright—to ensure representation by the main employee groups. The Court has wide discretion to add representatives who are without conflict, as is the case here. *In re Auto. Parts Antitrust Litig.*, No. 12-00101, 2018 WL 2181100, at *8 (E.D. Mich. Jan. 31, 2018) (citation omitted).

**3.  The Court Should Certify A Settlement Class** ............................................24

The Supreme Court has recognized certification of a settlement class. The class must satisfy the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The proposed Settlement Class meets the requirements of Rule 23(a) and may be certified under Rule 23(b)(1), (2), or (3). *Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997); *Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016).

**a.  The Proposed Class Is Ascertainable** ....................................................24

The implied requirement of ascertainability is met because the proposed class is defined by objective criteria: current participation or eligibility for future participation in the *Shy* benefits. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citation omitted)

**b. Numerosity Is Met**.............................................................**25**

There are thousands of Class Members, satisfying the numerosity requirement under Fed. R. Civ. P. 23(a)(1). *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996).

**c. Commonality Is Met** ...........................................................**25**

Commonality is met under Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact common to the class, including whether Navistar properly provides benefits under the *Shy* Plan. Commonality is "easily satisfied" in ERISA cases. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542–43 (6th Cir. 2012); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *10 (S.D. Ohio Feb. 18, 2021).

**d. Typicality Is Met** ................................................................**26**

Typicality is met under Fed. R. Civ. P. 23(a)(3) because the claims of the Class Representatives arise from the same conduct that gives rise to claims of other class members. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation omitted).

**e. Adequacy is Met** ..................................................................**26**

Adequacy is met under Fed. R. Civ. P. 23(a)(4) because: 1) the Class Representatives have common interests, and no conflicts, with the proposed Class; and 2) the Class Representatives have shown a willingness to vigorously prosecute the interests of the Class through qualified counsel. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996).

**4. The Class Should Be Certified Under Fed. R. Civ. P. 23(b)(1), (2), or (3)** ...............................................................................**27**

A class action on behalf of plan participants is a paradigmatic Rule 23(b)(1) case because of the risk of inconsistent adjudications. Courts have also certified ERISA class actions under Rule 23(b)(2) and can do so in this case because Navistar has acted or refused to act on grounds applicable to the proposed class. Finally, the proposed class also satisfies the requirements of Rule 23(b)(3): common questions of liability predominate and a class action is superior given that class members have little interest in individual control of prosecution and this case has already been prosecuted as a class action. *See* Advisory Committee Notes to FRCP Rule 23 (1966); 2 William B. Rubenstein, Newberg on Class Actions § 4:21 (5th ed. Dec. 2021 update); *In re Schering Plough Corp ERISA Litig.*, 420 F.3d 231, 239 (3d Cir. 2005); *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at

*12 (E.D. Mich. Mar. 31, 2006); *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017).

**C. The Class Action Settlement Includes The Appropriate Rule 23 Protections** ........................................................................................**30**

**1. The Proposed Form And Manner Of Notice To The Class Is Reasonable And Should Be Approved** ..........................................**30**

The Notice Plan set forth in the Class Action Settlement Agreement provides the best notice practicable under the circumstances, including: 1) direct mail notice to the vast majority of Class Members; 2) email notice; 3) publication notice; 4) a settlement website; and 5) a toll-free line for those with questions. This notice is reasonably calculated to reach interested parties and meets the requirements of Fed. R. Civ. P. 23(e)(1). The notice also includes reference to the proposed attorneys' fees and expenses, to be paid by Navistar and capped at $750,000, meeting the requirements of Fed. R. Civ. P. 23(h)(1). The fees—based on lodestar without a multiplier—are reasonable. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *43 (W.D. Ky. Dec. 22, 2009) (quotation omitted); *Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012).

**2. The Class Action Settlement Agreement Includes A Reasonable Schedule Leading Up To A Fairness Hearing** ...............................**32**

The Notice Plan provides a timeline with appropriate sequencing of events leading up to a Fairness Hearing. If preliminary approval is granted on January 10, 2022, notice would take place on February 9, 2022 and a Fairness Hearing on June 9, 2022, with a sufficient period for Class Members to raise objections.

**D. The Court Should Approve The Amendments To the Shy Agreement** ..........**33**

An amendment under Fed. R. Civ. P. 60(b)(5) is appropriate when there is a significant change of circumstance, or under Rule 60(b)(6) where necessary to do justice in a particular case. *Rufo v. Inmates of the Suffolk Cty. Jail*, 502 U.S. 367 (1992); *Ford Motor Co. v. Mustangs Unltd., Inc.*, 487 F.3d 465, 470 (6th Cir. 2007) (quotation omitted).

**1. The Medicare Part D Subsidies Modification Meets The Rule 60 Standards** ........................................................................................**33**

The modification to the definition of "Total Actual Drug Cost" is warranted given the significant change of circumstance that the Medicare part D

subsidies in this case did not exist until 2006, after the 1993 Settlement was negotiated. The amendment is tailored to the current circumstance and would "do justice" by allowing Class members to enjoy the benefit of the estimated $118 million of value the amendment would provide.

**2. The Court Should Approve The Amendment Of The Supplemental Plan Relating To Future Profit-Sharing** ........................................................**35**

The SBC agreed in the Profit-Sharing Settlement to Amend the Supplemental Plan to exchange the Supplemental Trust's right to receive future profit-sharing contributions for an immediate payment of $264 million. Section 9.1(c) of the Supplemental Plan contemplates that the SBC may seek approval by the Court of any amendment with appropriate notice to the Class Members. There has been a significant change of circumstance—Navistar's access to capital—that allows and warrants the proposed amendment. The proposal would "do justice" in the estimation of the SBC and its advisors, due to the uncertainties relating to future contributions.

**IV.** **CONCLUSION** ...............................................................................................**37**

vii

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S 591 (1997) ......................................................................................... 24

*Amos v. PPG Indus.*,
   2015 WL 4881459 (S.D. Ohio Aug. 13, 2015) ......................................... 16

*Bailey v. Verso Corp.*,
   337 F.R.D. 500 (S.D. Ohio 2021) ............................................................ 28, 29

*Bautista v. Twin Lakes Farms, Inc.*,
   2007 WL 329162 (W.D. Mich. Jan. 31, 2007) ........................................ 17

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ...................................................................... 26

*Bovee v. Coopers & Lybrand*,
   216 F.R.D. 596 (S.D. Ohio 2003) ............................................................. 26

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................. 17, 18

*Daffin v. Ford Motor Co.*,
   458 F.3d 549 (6th Cir. 2006) ...................................................................... 25

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..................................................................................... 30

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ...................................................................... 30

*Ford Motor Co. v. Mustangs Unltd, Inc.*,
   487 F.3d 465 (6th Cir. 2007) ...................................................................... 33

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) ................................................................... 16

*Frost v. Household Realty Corp.*,
   61 F. Supp. 3d 740 (S.D. Ohio 2004) ...................................................... 31

*Ganci v. MBF Inspection Servs., Inc.*,
   323 F.R.D. 249 (S.D. Ohio 2017) ............................................................. 25

*Griffin v. Flagstar Bancorp, Inc.*,
   2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................................... 28

*Harman v. Pauley*,
   678 F.2d 479 (4th Cir. 1982) ........................................................ 33

*Hicks v. State Farm Fire & Cas. Co.*,
   965 F.3d 452 (6th Cir. 2020) ........................................................ 24

*Hyland v. Homeservs. of Am., Inc.*,
   2009 WL 2525587 (W.D. Ky. Aug. 17, 2009) ................................ 17

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ........................................ 25, 26, 27, 28

*In re Auto. Parts Antitrust Litig.*,
   2018 WL 2181100 (E.D. Mich. Jan. 31, 2018) ............................. 24

*In re Broadwing, Inc. ERISA Litig.*,
   252 F.R.D. 369 (S.D. Ohio 2006) ................................................. 16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ............................... 30

*In re IKON Office Sols., Inc., Secs. Litig.*,
   191 F.R.D. 457 (E.D. Pa. 2000) ................................................... 28

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................... 17

*In re Schering Plough Corp. ERISA Litig.*,
   420 F.3d 231 (3d Cir. 2005) ......................................................... 28

*In re Skechers Toning Shoe Prod. Liab. Litig.*,
   2012 WL 3312668 (W.D. Ky. Aug. 13, 2012) ................................ 17

*In re S. Ohio Corr. Facility*,
   173 F.R.D. 205 (S.D. Ohio 1997) ................................................. 17

*Jones v. United Behav. Health*,
   2021 WL 1318679 (N.D. Cal. Mar. 11, 2021) ............................. 28

*Karpik v. Huntington Bancshares Inc.*,
   2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ............................... 25

*Lee v. Javitch, Block & Rathbone, LLP*,
   522 F. Supp. 2d 945 (S.D. Ohio 2007) .................................... 25, 26

*Lowther v. AK Steel Corp.*,
   2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) ........................ 31, 32

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) ............................................................. 18

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................... 28

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) ......................................................... 24

*Pichardo v. Ashcroft*,
  374 F.3d 46 (2d Cir. 2004) ................................................................... 33

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
  501 F.3d 592 (6th Cir. 2007) .......................................................... 22, 23

*Roland v. Convergys Customer Mgmt. Grp. Inc.*,
  2017 WL 977589 (S.D. Ohio Mar. 10, 2017)................................... 17, 18

*Rufo v. Inmates of the Suffolk Cty. Jail*,
  502 U.S. 367 (1992) ............................................................................... 33

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ................................................................ 27

*Swigart v. Fifth Third Bank*,
  288 F.R.D. 177 (S.D. Ohio 2012)..................................................... 25, 26

*Thacker v. Chesapeake Appalachia, LLC*,
  259 F.R.D. 262 (E.D. Ky. 2009) .......................................................... 18

*UAW v. Gen. Motors Corp.*,
  2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ................................... 28

*Wal-Mart Stores Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................... 25

*Wal-Mart Stores, Inc. v. Visa USA Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................... 31

*Wash. Mut. Bank v. Ditter*,
  2015 WL 5562317 (S.D. Ohio Sept. 22, 2015) ................................... 33

*Willis v. Big Lots, Inc.*,
  2017 WL 1063479 (S.D. Ohio Mar. 17, 2017)..................................... 29

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ................................................................ 25

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 23(a) ....................................................................................... 24, 26, 27

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 25

Fed. R. Civ P. 23(a)(2) .......................................................................................... 25, 26

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 26

Fed. R. Civ. P. 23(a)(4) ................................................................................................ 26

Fed. R. Civ. P. 23(b) ....................................................................................... *passim*

Fed. R. Civ. P. 23(b)(1) .............................................................................. 1, 24, 27, 28

Fed. R. Civ. P. 23(b)(1)(A) .......................................................................................... 28

Fed. R. Civ. P. 23(b)(1)(B) .......................................................................................... 28

Fed. R. Civ. P. 23(b)(2) ....................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) ....................................................................................... *passim*

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................... 30

Fed. R. Civ. P. 23(e) ............................................................................................ 16, 30

Fed. R. Civ. P. 23(e)(1) ................................................................................................ 30

Fed. R. Civ. P. 23(h)(1) ................................................................................................ 31

Fed. R. Civ. P. 60 ................................................................................................ *passim*

Fed. R. Civ. P. 60(b)(5) ........................................................................................ 33, 34, 37

Fed. R. Civ. P. 60(b)(6) ................................................................................................ 33

**Regulations**

42 CFR 423 ........................................................................................................ 12, 34

42 CFR 423.2300 ............................................................................................... 12, 34

42 CFR 423.2345 ............................................................................................... 12, 34

42 CFR 423.301 ................................................................................................. 12, 34

42 CFR 423.360 ................................................................................................ 12, 34

42 CFR 423.771 ................................................................................................ 12, 34

42 CFR 423.800 ................................................................................................ 12, 34

**Other Authorities**

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ........... 18

2 William B. Rubenstein, *Newberg on Class Actions* § 4:21 (5th ed. Dec. 2021 update) ............ 28

68 Fed. Reg. 75639, 75633 ................................................................................... 19

75 Fed. Reg. 33836 .............................................................................................. 19

Annotated Manual for Complex Litigation (Fourth) § 21.662 (2012) ......................................... 17

# I.    INTRODUCTION

As this Court is aware from prior pleadings, in October 2021 Intervenor Plaintiff Supplemental Benefit Program Committee of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (the "SBC") entered into a letter of intent to settle disputes with Defendants Navistar International Corporation and Navistar, Inc. (collectively, "Navistar"), supported by other interested parties. To help effectuate the proposed settlement, the Court granted a motion appointing as class representatives Richard Zounes and Miller Rodgers, in addition to sole remaining class representative Carl Potts ("Class Representatives") and appointing the undersigned as Class Counsel. Doc. No. 592.

The proposed settlement outlined in the letter of intent has now been documented in a detailed Class Action Settlement Agreement. The proposed settlement and related agreements will provide a substantial value to the proposed settlement class estimated at $742 million plus interest.

Class Representatives, by and through their attorneys, have filed a motion (the "Motion") seeking an order from the Court under Federal Rules of Civil Procedure Rule 23: (1) preliminarily approving the Class Action Settlement Agreement as fair, adequate and reasonable to the settlement class; (2) modifying the class definition and conditionally certifying a proposed Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1), (2) and (3); (3) adding Robert Bergmann (Ret. USW) and Fred Cortright (Ret. UAW) as additional Class Representatives; (4) approving the form, content and method of Class Notice; (5) establishing procedures and scheduling deadlines for notice to the Class Members, and for Class Members to object to the Settlement; (6) scheduling deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses; (7) setting a time and date for a hearing (the "Fairness Hearing") for consideration of

1

final approval of the Class Action Settlement as well as Class Counsel's fees and expenses; and (8) establishing other requirements and procedures necessary to effectuate the Class Action Settlement.

The Motion also asks the Court to approve modifications of the prior consent judgment entered in this matter pursuant to Fed. R. Civ. P. 60.[1] One modification would amend a single term in Appendix A-6 of the *Shy* Agreement, the Actuarial Definitions Supplement, to reflect the settlement concerning Medicare Part D prescription drug subsidies. The Motion also seeks the Court's approval of the SBC's proposed amendment of the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (the "Supplemental Plan") pursuant to Section 9.1(c) of the Supplemental Plan. These modifications would become effective concurrent with the effective date of the Class Action Settlement.

The Class Action Settlement Agreement is one of three related settlements that would resolve disputes that have arisen under the prior settlement that is memorialized in a consent judgment of this Court (alternately, the "*Shy* Agreement" or the "1993 Settlement"). Doc. No. 327. The claims resulting in the 1993 Settlement concerned the retiree life and health benefits of most of Navistar's then-active and retired employees and their spouses and eligible dependents. The 1993 Settlement created the Navistar International Transportation Corp. Retiree Health Benefit and Life Insurance Plan (the "*Shy* Plan") to provide those benefits. The *Shy* Plan consists of several benefit programs. The Navistar International Transportation Corp. Retiree Health Benefit Program and the Navistar International Transportation Corp. Retiree Life Insurance Program (together, the

---

[1] The Class Action Settlement Agreement is attached as Exhibit 1 and includes a description of the proposed Notice Plan and related documents. A proposed timeline is attached as Exhibit 2 ("Timeline"). A proposed Preliminary Approval Order is attached as Exhibit 3. The proposed modifications to the prior consent judgment are set out in attached Exhibit B to Exhibit 1.

"Base Plan") provide major medical and basic life insurance benefits to the *Shy* Plan participants. The "Supplemental Plan" provides additional benefits to *Shy* Plan participants (dental, vision, hearing, prescription drug, and supplemental life insurance) and covers some out-of-pocket healthcare costs such as deductibles and the monthly premiums participants are required to contribute to the Base Plan.

The SBC is the fiduciary with principal responsibility for the Supplemental Plan and the Navistar International Transportation Corp. Retiree Supplemental Benefit Trust (the "Supplemental Trust") that holds the assets of the Supplemental Plan. For the past ten years, Navistar and the SBC have been involved in disputes concerning Navistar's obligation under the *Shy* Agreement to make profit-sharing payments to the Supplemental Trust (the "Profit-Sharing Dispute").

Separately, for the past five years, Navistar and the SBC have been involved in a dispute concerning subsidies paid to the Base Plan under the Medicare Part D prescription drug program (the "Medicare Part D Subsidies Dispute"). Navistar and the SBC disagree about how the subsidies affect the calculation of the monthly participant contributions. The SBC sponsored a lawsuit arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") to resolve the Medicare Part D Subsidies Dispute. The case was filed against Navistar by two *Shy* Plan participants (who were also SBC members) (the "*Krzysiak* Plaintiffs") under the case caption *Krzysiak v. Navistar International Corp.*, S.D. Ohio No. 3:16-CV-00443-WHR ("*Krzysiak*").

The SBC, Navistar, and the *Krzysiak* Plaintiffs have been negotiating settlements of these disputes for the past eleven months. The SBC and Navistar have now conditionally agreed to a settlement of their Profit-Sharing Dispute (the "Profit-Sharing Settlement"). Navistar and the *Krzysiak* Plaintiffs have also conditionally agreed to a settlement of their Medicare Part D

Subsidies Dispute (the "*Krzysiak* Settlement"). Both settlements are contingent upon the agreement of a class of *Shy* Plan participants (the "Class Members") to release their claims relating to the Profit-Sharing Dispute and the Medicare Part D Subsidies Dispute (the "Releases").

In addition to resolving the contested matters, the SBC has agreed to amend the Supplemental Plan to exchange future profit-sharing payments for an immediate cash payment from Navistar into the Supplement Trust. This would constitute a material change in the funding provisions of the Supplemental Plan within the meaning of Section 9.1(c) of the Supplemental Plan and would therefore require Court approval "after appropriate notice" to the Class. The SBC has requested that Class Representatives move for approval of this amendment in this Motion so that appropriate notice can be provided to the Class.[2]

The Class Action Settlement Agreement incorporates the economic terms of the Profit-Sharing and *Krzysiak* Settlements as the consideration for the Releases. Exh. 1, Settlement Agreement, at Exh. F. The SBC concluded that the value of the two settlements to the Class Members is approximately $700 million. Declaration of Edward Scallet ("Scallet Dec."), ¶ 18. In addition, as a result of the settlement negotiations, the Health Benefit Program Committee of the Base Plan (the "HBPC") has directed $48 million of current Base Plan assets towards the reduction of future monthly participant contributions (the "HBPC Resolution"). Scallet Dec., ¶ 19.

The Motion seeks approval of the Class Action Settlement Agreement under Rule 23 because the disputes being resolved arose out of the 1993 Settlement and the Releases from the Class Members are part of the consideration that Navistar negotiated in exchange for the consideration set out in the Profit-Sharing Settlement and the *Krzysiak* Settlement. The Motion

---

[2] For the avoidance of doubt and except as otherwise stated herein, the *Shy* Agreement remains effective prior to the date of Final Effectiveness as defined in the Class Action Settlement Agreement, attached as Exh. 1.

also seeks approval of an amendment to the 1993 Settlement to reflect the *Krzysiak* Settlement and the SBC's proposed amendment of the Supplemental Plan concerning future profit-sharing payments.

## II.    BACKGROUND

### A.    Procedural History Of The Disputes And The Settlement Negotiations

#### 1.    The *Shy* Agreement

The 1993 Settlement resolved a lawsuit challenging Navistar's decision to reduce the health and life insurance benefits provided to most of Navistar's retirees at the time and their spouses and eligible dependents, and forego the promises of retiree benefits Navistar had made to its then-active employees and their spouses and eligible dependents. Scallet Dec., ¶ 5. Navistar believed that it could not stay in business unless it reduced its estimated $2.6 billion of liability for these benefits. The 1993 Settlement made a series of changes to the retiree health and life insurance benefits. *Id*. The *Shy* Agreement primarily consists of documents effectuating the new rights and obligations in the new Base Plan and Supplemental Plan. *Id*.

The new Base Plan guaranteed that the then-current and certain future retirees and their spouses and eligible dependents would receive the major medical and basic life insurance benefits enumerated in the *Shy* Agreement. *Id*., ¶ 6. Navistar agreed to make contributions to the Base Plan that were sufficient to provide those benefits, and the participants and beneficiaries in the Base Plan were required to make monthly contributions to be eligible to receive the Base Plan benefits. *Id*. These changes reduced Navistar's liability for the retiree benefits to approximately $1 billion. *Id*.

The Supplemental Plan was created to provide as much of the remaining $1.6 billion of pre-*Shy* Agreement retiree medical and life benefits as possible. Unlike the Base Plan, the benefits

provided by the Supplemental Plan are neither fixed nor guaranteed. *Id.*, ¶ 7. The provisions for funding the Supplemental Plan also differ from those in the Base Plan. Initial funding for the Supplemental Plan came from stock contributed by Navistar in 1993, but the only source of new contributions after 1993 was Navistar's contingent obligation to make profit-sharing payments. *Id.* The SBC's duty is to manage the Supplemental Trust assets and to determine the supplemental benefits that can be provided based on the current assets and the projected return on them. Declaration of Donn Viola ("Viola Dec."), ¶ 9. While the SBC has the authority and responsibility to reduce the supplemental benefits if necessary, its practice has been to offer a level of benefits that can be supported by the current assets, and it has never made a decision on the level of supplemental benefits based on an expectation that it will receive any future profit-sharing payments. *Id.*

### 2. The Disputes Between The SBC And Navistar

#### a. The Profit-Sharing Disputes

Navistar made a total of $286 million in profit-sharing contributions from 1994 through 2000. Scallet Dec., ¶ 8. Navistar, however, calculated that it owed no profit-sharing from 2001 through 2010. *Id.* In 2012, the SBC initiated proceedings in this case concerning the lack of profit-sharing payments. *Id.* In 2015, the Sixth Circuit Court of Appeals ruled that the dispute had to be resolved by an arbitrator selected from among the five largest accounting firms in the United States. *Id.* In 2016, the arbitration of the SBC's dispute with Navistar over past profit-sharing payments from 2001-2014 began with the accounting firm of Clifton Larson Allen LLP ("CLA") serving as the arbitrator. *Id.*

After approximately four years of discovery in the arbitration proceeding, and the consideration of several motions, the parties submitted briefs regarding the merits of their

arguments to arbitrator Martin Laffer, a Principal of CLA, between February and April 2020. *Id.*, ¶ 9. Between May and August 2020, CLA requested and received additional documentation from both parties, heard argument from Navistar and the SBC on multiple contested issues, and had numerous meetings with the accountants on both sides. *Id.*

On February 4, 2021, CLA issued a final award concluding that Navistar owed the Supplemental Trust past profit-sharing of $159 million plus $80 million in prejudgment interest. *Id.*, ¶ 10. The SBC filed a motion in this Court seeking to confirm the arbitration award, and Navistar filed a motion seeking to overturn it. Doc. Nos. 561, 568. The motions have been stayed because of the settlement negotiations. Doc. No. 585.

In 2020, Navistar and the SBC agreed to postpone the arbitration of their disputes concerning profit-sharing payments for years following 2014 pending the decision of the arbitrator. Scallet Dec., ¶ 11. The SBC calculates that Navistar owes an additional $53 million in profit-sharing and interest for those years under the reasoning of the arbitration award. Declaration of Jonathan Cocks ("Cocks Dec.), ¶ 7.

Finally, the SBC and Navistar dispute when Navistar's obligation to make profit-sharing contributions ends. The *Shy* Agreement refers to this as the Profit-Sharing Cessation Date (the "PSCD") and defines circumstances under which the PSCD will be deemed to have occurred. The resolution of this PSCD dispute would have a material impact on the value of future profit-sharing payments. Declaration of Stuart Wohl ("Wohl Dec."), ¶ 19. The SBC and Navistar are not currently engaged in a contested proceeding concerning their interpretations of the PSCD, but the issue has been the subject of pleadings filed with the Court. *See* Doc. Nos. 557-560.

### b.    The Medicare Part D Subsidies Dispute

The *Shy* Agreement provides that each year Navistar and the actuary for the *Shy* Plan must calculate the participants' monthly contribution rate for the upcoming year. Scallet Dec., ¶ 12. The contribution calculation formula in the *Shy* Agreement is based, in part, on the total claims and administrative expenses of the Base Plan in the prior year. *Id*. Beginning in 2012, the Base Plan received payments from the federal government generated by the purchase of prescription drugs by the participants in the Base Plan. *Id.* Navistar, as Plan Administrator, did not reduce the Base Plan's costs by the amount of Medicare Part D prescription drug subsidies the Base Plan received when it calculated the applicable participant premium rate. *Id*.

The SBC believes that Navistar's past and future calculations of the participant contribution rate should reflect the net cost of the prescription drugs; that is, the cost of the drugs after the receipt of the Medicare Part D subsidies. *Id*., ¶ 13. Using this method, the Base Plan's costs that are used in the calculation of the monthly contribution rate would be lower, which would in turn lower the level of required participant contributions. *Id*. The SBC believes that the failure to reflect the receipt of the Medicare Part D subsidies in the calculation of the participant contribution rate causes the participants and the Supplemental Trust to pay more of the Base Plan's costs – and Navistar to pay less – than was intended in the *Shy* Agreement. *Id*. Navistar disputes these allegations.

In 2016, two *Shy* Plan participants who were SBC members, Wayne Krzysiak and Michael LaCour, filed *Krzysiak* seeking relief under ERISA to resolve the Medicare Part D Subsidies Dispute (the "*Krzysiak* Plaintiffs"). *Krzysiak*, Doc. No. 1. The *Krzysiak* Plaintiffs sought to require Navistar to pay back into the Base Plan the participants' share of the Medicare Part D subsidies that had not been reflected in the calculation of the participant rates since 2012, and to require

Navistar to offset the Base Plan costs by the amount of the Medicare Part D subsidies in the calculation of the participant contribution rate in future years. *Id.*, ¶ 14. The SBC paid the fees and expenses of the *Krzysiak* Plaintiffs in support of the litigation. *Id.*

Navistar filed a motion for summary judgment (*Krzysiak*, Doc. No. 31) contending that *Krzysiak* is time-barred because it was filed more than three years after the *Krzysiak* Plaintiffs had actual knowledge of an alleged violation of ERISA. The Court decided that motion must be decided before the *Krzysiak* Lawsuit can proceed further. There has been extensive discovery in the case, and the Court conducted trials on this motion in both 2019 and 2020. (*Krzysiak*, Doc. Nos. 68-69, 76). The Court has not made a decision whether the *Krzysiak* Lawsuit can proceed or must be dismissed.

### c. The Settlement Negotiations

New developments in January 2021 caused Navistar and the SBC to begin discussions to resolve their ongoing disputes. CLA had issued a decision on the merits of the arbitration in December prior to the issuance of a final award including damages, and it appeared likely that a merger of Navistar into Traton SE would proceed. Scallet Dec., ¶ 15. The parties then engaged in eight months of negotiations. *Id.*, ¶ 16. The SBC relied on the lawyers that had been representing the SBC throughout its disputes with Navistar (Groom Law Group, Chartered; and EascoLaw, PLLC), its longtime benefits consultants and actuaries (Segal Co.) and its accounting expert throughout the Profit-Sharing Disputes (Jonathan Cocks). Viola Dec., ¶ 14. The SBC also retained Duff & Phelps, an international financial advisory firm, to help the SBC determine the estimated value of the potential future profit-sharing and to assist on the structuring of any possible settlement. *Id.*, ¶ 15. When the discussions with Navistar expanded to include the Medicare Part D Subsidies Dispute, the *Krzysiak* Plaintiffs became involved and worked with their counsel

9

(Groom and EascoLaw) and Segal Co. throughout the settlement process. Declaration of Wayne Krzysiak ("Krzysiak Dec."), ¶ 9 and Declaration of Michael LaCour ("LaCour Dec."), ¶ 7.

Navistar, the *Krzysiak* plaintiffs and the SBC exchanged offers and demands on May 5, June 22, July 12, July 16, and August 6, 2021. Scallet Dec., ¶ 17. During that time, the five members of the SBC participated in at least ten meetings concerning the settlement process where they received information and analysis from their advisors. *Id*. The SBC deputized two members, Chairman Donn Viola and Wayne Krzysiak, to work more closely with the SBC's advisors. Viola Dec., ¶ 16; Krzysiak Dec., ¶ 8. Mr. Viola communicated and negotiated directly with Navistar's CEO in furtherance of the broader negotiations. Viola Dec., ¶ 17. The *Krzysiak* Plaintiffs participated in numerous meetings with their lawyers and relied on analysis from Segal Co. to evaluate the proposals. Scallet Dec., ¶ 17; Krzysiak Dec., ¶ 9; LaCour Dec., ¶ 7.

On August 11, 2021, Navistar, the SBC and the *Krzysiak* Plaintiffs agreed to a term sheet outlining potential settlements of the Profit-Sharing Dispute and the Medicare Part D Subsidies Dispute, as well as the terms of an exchange of the Supplemental Trust's right to receive future profit-sharing for an immediate cash payment that would be implemented by an amendment to the Supplemental Plan. Scallet Dec., ¶ 18. The term sheet also referred to an agreement by Navistar to recommend that the HBPC approve the HBPC Resolution. *Id*. On October 22, 2021, Navistar, the SBC, the *Krzysiak* Plaintiffs, and the UAW entered into a Letter of Intent (the "LOI"). *Id*., ¶ 20.[3] On December 22, 2021, the SBC and Navistar entered into the Profit-Sharing Settlement, and the

---

[3] Following review of the proposed settlement terms, the UAW agreed in the LOI to support approval of a class action settlement that incorporated the proposed Profit-Sharing and *Krzysiak* Settlements and to recommend to the HBPC that it adopt the HBPC Resolution. Scallet Dec., ¶ 20.

*Krzysiak* Plaintiffs and Navistar entered into the *Krzysiak* Settlement. Scallet Dec., ¶ 21.[4] *Id*. The two settlements are Attachments D and E to the Class Action Settlement Agreement filed as Exhibit 1 to this memorandum. The Profit-Sharing Settlement and the *Krzysiak* Settlement both provide that they do not become effective unless this Court approves a settlement with the *Shy* class that incorporates the terms of the Profit-Sharing Settlement and the *Krzysiak* Settlement and includes the Releases. *See* Exh. 1, Class Action Settlement Agreement.

Class Counsel and current and proposed Class Representatives reviewed the Class Action Settlement Agreement as well as the Profit-Sharing Settlement and *Krzysiak* Settlement that also affect the class. Declaration of W. B. Markovits ("Markovits Dec."), ¶ 6. All support the Class Action Settlement. *Id*.; Declaration of Carl Potts ("Potts Dec."), ¶ 5; Declaration of Miller Rodgers ("Rodgers Dec."), ¶ 6; Declaration of Richard Zounes ("Zounes Dec."), ¶ 5; Declaration of Fred Cortright ("Cortright Dec."), ¶ 5; Declaration of Robert Bergmann ("Bergmann Dec."), ¶ 6.

### B. Overview Of The Proposed Class Action Settlement Agreement

#### 1. Economic Terms

Pursuant to the Profit-Sharing Settlement, Navistar will pay $556 million (plus interest) to the Supplemental Trust to resolve the Profit-Sharing Dispute and in exchange for the amendment of the Supplemental Plan to eliminate Navistar's obligation to make profit-sharing or other contributions to the Supplemental Trust in the future. Scallet Dec., ¶ 22. Navistar agreed to pay $100 million in pre-settlement approval payments with the remainder (plus interest) due three business days following the effective date of the Class Action Settlement Agreement. *Id*. Pursuant to the *Krzysiak* Settlement, Navistar committed to share the benefit of future Medicare part D

---

[4] The SBC acted in its capacity as a fiduciary to the Supplemental Plan when it entered into and authorized these settlements and had no relationship to or interest in Navistar that affected the exercise of its independent fiduciary judgment in doing so. Scallet Dec., ¶ 33.

subsidies (currently estimated at a value of $118 million) so as to reduce *Shy* Plan participant premiums. Wohl Dec., ¶ 21. Navistar also agreed to pay $17 million to the Base Plan that is earmarked for the payment of future participant contributions, and it has agreed to pay $3 million to the Supplemental Trust in exchange for the reimbursement of the SBC's litigation expenses incurred in support of *Krzysiak* and the SBC's release of its claims relating to the Medicare Part D subsidies. Scallet Dec., ¶ 23. The agreement with respect to the contribution rate would be effective January 1, 2022; the two cash payments would be made three business days after the effective date of the Class Action Settlement Agreement. *Id.*

The total value of the consideration set forth in the Class Action Settlement and the related HBPC Resolution is an estimated $742 million plus interest. Scallet Dec., ¶ 24.

### 2. Releases

The Class Action Settlement would require the Class Members to agree to the following Releases:

> The Modified Shy Class fully and finally releases Navistar and its present and former affiliates, directors, officers, employees, service providers and agents (collectively, the "Navistar Released Parties") of any and all rights, claims and causes of action that the Modified Shy Class or anyone claiming on behalf of, through or under the Modified Shy Class by way of subrogation or otherwise, has, had, or may have, or may be entitled to assert, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to:
>
> a. the receipt or application, prior to and including October 31, 2021, of any of the following Medicare Part D subsidies by the Retiree Health Benefit and Life Insurance Plan and/or Navistar: the manufacturer discount under 42 CFR 423 Subpart W: Medicare Coverage Gap Discount Program (42 CFR 423.2300 – 42 CFR 423.2345); the federal reinsurance subsidy, the direct subsidy and the low income cost-sharing subsidy under 42 CFR 423 Subpart G: Payments to Part D Plan Sponsors for Qualified Prescription Drug Coverage (42 CFR 423.301 – 42 CFR 423.360); and the low income premium subsidy under 42 CFR 423 Subpart P: Premiums and Cost-Sharing Subsidies for Low-Income Individuals (42 CFR 423.771 – 42 CFR 423.800); and

   b. the Profit-Sharing Plan, including, without limitation, any obligation of the Navistar Released Parties thereunder or under Section 7.1 of the Supplemental Benefit Program."

Exh. 1, Settlement Agreement, Exh. F.

### 3. Amendments To The *Shy* Agreement

The parties agreed in the Class Action Settlement to support two principal changes to the various plan documents comprising the *Shy* Agreement. The first would implement Navistar's commitment in the *Krzysiak* Settlement with respect to the Medicare Part D Subsidies by amending the definition of "Total Actual Drug Costs" in Appendix A-6 of the *Shy* Agreement. Scallet Dec., ¶ 25. In addition, the Class Representatives agreed to seek approval of the SBC's amendment of the Supplemental Plan to exchange Navistar's obligation to make profit-sharing and post-PSCD contributions[5] to the Supplemental Trust for an immediate cash payment so that the Class Members would receive "appropriate notice" prior to the Court's approval, as provided in Section 9.1(c) of the Supplemental Plan. *Id.*[6]

---

[5] Although Navistar is not required to make profit-sharing contributions to the Supplemental Plan following the profit-sharing cessation date, Section 7.2 of the Supplemental Plan currently provides that Navistar must make contributions to cover actuarial losses after that date.

[6] The SBC is in the process of updating the current Summary Plan Description for the Supplemental Plan (the "SPD") and the Supplemental Trust Agreement to reflect the settlements and changes in the law and in the operation of the Supplemental Plan since 1993. Although the 1993 versions of these documents are part of the *Shy* Agreement, changes to those documents have not historically been filed with the Court because the changes have not affected the substantive rights of the *Shy* Plan participants. Nevertheless, the SBC intends to file the updated SPD and Supplemental Trust Agreement with the Court prior to sending notice to the Class Members and those documents will be made available for them to review prior to the approval of the Class Action Settlement Agreement. Scallet Dec., ¶ 34.

### 4. Certification of a New Rule 23 Class

The Class Action Settlement includes the certification of a new Settlement Class consisting of all present and future participants and beneficiaries of the *Shy* Plan to be defined as follows:

> Present participants (including spouses and dependents) and those eligible to become participants, whether upon retirement or election (including eligible spouses and dependents), in the Navistar International Transportation Corp. Retiree Health Benefit and Life Insurance Plan (n/k/a the Navistar, Inc. Retiree Health and Life Insurance Plan). This includes all eligible present retirees, individuals eligible upon retirement or election, and participating, eligible, or future-eligible spouses and dependents in the Navistar International Transportation Corp. Retiree Health Benefit Program (n/k/a the Navistar, Inc. Retiree Health Benefit Program), the Navistar International Transportation Corp. Retiree Life Insurance Program (n/k/a the Navistar, Inc. Retiree Life Insurance Program), and the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (n/k/a the Navistar, Inc. Retiree Supplemental Benefit Program).

Nothing in the new definition of a Settlement Class or in the Class Action Settlement would affect the provisions of the *Shy* Agreement that determine who is eligible to be a participant or beneficiary of the *Shy* Plan.

### 5. Class Notice Program

The Class Action Settlement provides for a class notice program, as more fully described below.

### 6. Fees and Expenses

Navistar agreed to pay the fees and expenses of Class Counsel in this matter, subject to a $750,000 cap that Navistar and Class Counsel agreed to and believe is reasonable. Navistar agreed to pay these fees and expenses regardless of Class Counsel's recommendations with respect to the Profit-Sharing and *Krzysiak* Settlements and whether or not the Class Action Settlement is ultimately approved. This agreement came after the material financial terms of the Class Action Settlement were determined and has no effect on any payments to Class Members. Payment to

Class Counsel will be made following Court review of the fees, if any, or at the time the settlement process is terminated.

The fees and expenses of the SBC's lawyers are reviewed by the SBC and have been paid by the Supplemental Trust out of its current assets. Viola Dec., ¶ 30. The out-of-pocket expenses of the Class Representatives, if any, will be reimbursed by Class Counsel and included in the Court's review. The Class Representatives are not requesting any class representative incentive awards.

### C. The Effect of the Settlements on the Class Members

The total value of the estimated $742 million (plus interest) that would be generated from the Profit-Sharing Settlement, the *Krzysiak* Settlement and the Class Action Settlement, and the related HBPC Resolution, will be used solely to fund additional supplemental benefits for the Class Members. The SBC believes that, if the settlements become effective, based on reasonable assumptions and projections, it can provide the following annual supplemental benefits to all Class Members, effective January 1, 2022:

- The current prescription drug, dental, vision, hearing and supplemental life insurance benefits;

- Zero-dollar deductibles for Medicare-age participants and a reduction of the out-of-pocket maximum for pre-Medicare participants to $400;

- A fixed participant premium rate of $5 per month; and,

- Reimbursement of the base Medicare Part B premium (approximately $1,800 per participant in 2021 and increasing to $2,000 per participant in 2022).[7]

---

[7] The base Medicare Part B premium is approximately $1,800 in 2021 and increases each year. The SBC's initial modeling indicates that approval of the proposed Class Action Settlement would enable it to reimburse the Class Members for all or virtually all of their base Medicare Part B premiums each year for the rest of their lives. However, the SBC would need to monitor the costs

Viola Dec., ¶¶ 25-26; Wohl Dec., ¶ 13.

The proposed settlements would not change the benefits provided to the Class Members by the Base Plan, or the operation and administration of the Base Plan. Scallet Dec., ¶ 26. The only effect of the settlements on the Base Plan would be to reduce the participant's premiums and increase Navistar's contributions to the Base Plan in the future. *Id.*

### III. ARGUMENT

The Motion seeks the approval of the Court of the Class Action Settlement under Fed. R. Civ. P. 23, and it seeks amendments of the 1993 Settlement to effectuate the Rule 23 settlement pursuant to the terms of the Supplement Plan and Fed. R. Civ. P. 60.

**A. The Proposed Class Action Settlement Warrants Preliminary Approval Under Fed. R. Civ. P. 23.**

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co*., 649 F.2d 1216, 1224 (6th Cir. 1981). Rule 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (same). Class Representatives request that the Court preliminarily approve the proposed settlement, the first step in the three-step process.

---

and the earnings on the Supplemental Trust's investments to determine the actual amount that can be reimbursed each year. Wohl Dec., ¶13.

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012) (quoting David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.662 (2012)). Instead, the Court should evaluate only whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservs. of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (W.D. Ky. Aug. 17, 2009) (quoting *In re Nasdaq Mkt.–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).[8] The Court must preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod. Liab. Litig.*, 2012 WL 3312668, at *7; *see also Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001)*; In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 211 (S.D. Ohio 1997)*.

### 1.    The Class Action Settlement Was Reached After Serious, Informed, And Arm's-Length Negotiations.

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc*., No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was

---

[8] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (citation omitted).

"reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton*, 141 F. Supp. 2d at 906 (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable"); *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002).

The SBC and Navistar engaged in ten years of litigation in this Court and in arbitration. They spent nine months this year negotiating a resolution of those disputes. The stakes were high and it is apparent from review that the parties treated them as such. Class Counsel conducted an independent review of the negotiations leading up to the LOI and are convinced they were arm's-length and know from participation that this is true with respect to the efforts to finalize the proposed Class Action Settlement Agreement. Markovits Dec., ¶ 10. *See also* Scallet Dec., ¶ 28; Declaration of Curt Kramer ("Kramer Dec."), ¶ 2.

### 2. The Class Action Settlement Has No Obvious Deficiencies And Fall Within The Range Of Reasonableness.

There are no "obvious deficiencies" in the Class Action Settlement such as unduly preferred treatment of the Class Representatives or excessive attorney compensation. *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 271 (E.D. Ky. 2009). The consideration provided in the Class Action Settlement would be used to increase the supplemental benefits of all *Shy* Plan participants and not just the Class Representatives. Attorneys' fees and payment of expenses will be approved by the Court assuming final approval of the Class Action Settlement and will be paid by Navistar.

It is also clear that the value of the settlements in total, and viewed in isolation, fall well within the range of reasonableness. In fact, Class Counsel, ERISA counsel hired by Class Counsel, current and proposed Class Representatives, and the SBC (an independent fiduciary of the *Shy*

18

Plan participants and Class Members) and its counsel, all support the proposed Class Action Settlement as a substantial benefit for the Class. Markovits Dec., ¶ 11; Declaration of Natasha Fedder ("Fedder Dec."),[9] ¶¶ 7, 41, 48; Potts Dec., ¶ 5; Rodgers Dec., ¶ 6; Zounes Dec., ¶ 5; Cortright Dec., ¶ 5; Bergmann Dec., ¶ 6; Scallet Dec., ¶ 29.

### a. The Value Of The Class Action Settlement In Its Totality.

It is possible that the SBC or the *Krzysiak* Plaintiffs could generate more than the $742 million (plus interest) of value provided by the Class Action Settlement at some time in the future by continuing their existing litigation, or through future profit-sharing payments. It is also possible that Navistar could ultimately prevail in the existing disputes and the future profit-sharing payments would never materialize. Any continuing litigation would be time-consuming, continue to drain Supplemental Trust assets and resources, and the eventual outcome would be uncertain.

---

[9] MSD retained Natasha Fedder of Scale LLP to review the Class Action Settlement Agreement and the related Profit-Sharing and Krzysiak Action Settlement Agreements from an ERISA perspective. Fedder Dec., ¶ 2. Ms. Fedder did so, and advised MSD that, in her opinion, the settlements do not violate ERISA's so-called "prohibited transaction" rules, which categorically prohibit certain transactions between a plan and a party in interest, subject to certain exemptions. The U.S. Department of Labor granted Prohibited Transaction Exemption ("PTE") 2003-39, which exempts, "The release by the plan or a plan fiduciary of a legal or equitable claim against a party in interest in exchange for consideration, given by, or on behalf of, a party in interest to the plan in partial or complete settlement of the plan's or the fiduciary's claim," if the relevant conditions set forth in the exemption are met. 75 Fed. Reg. 33836. In Ms. Fedder's opinion, the Profit-Sharing Settlement is subject to PTE 2003-39 insofar as it involves a release by a plan fiduciary (the SBC) in settlement of claims against a party in interest (Navistar) in exchange for consideration from the party in interest. To the extent there is an open question as to whether the Profit-Sharing Settlement would be a "prohibited transaction," *see* 68 Fed. Reg. 75639, 75633 ("[T]he fact that a transaction is subject to [PTE 2003-39] is not dispositive of whether the transaction is, in fact, a prohibited transaction."), any concern is, in her opinion, alleviated because the settlement satisfies the relevant conditions for PTE 2003-39. Ms. Fedder further advised MSD that she supports the position of the Class Representatives and Class Counsel that the Releases by the Class Members of their potential claims, including potential ERISA claims, are fair and in the best interest of the Class Members for the reasons set forth herein and in her Declaration.

Similarly, the amount and timing of future profit-sharing payments are almost impossible to predict.

By contrast, approval of the Class Action Settlement would lead to an immediate increase in the supplemental benefits of the Class Members. Every settlement involves consideration of the likely duration of litigation, but that is a particularly important consideration here. In 1993, there were almost 73,000 current and future *Shy* Plan participants. Wohl Dec., ¶ 23. There were less than 40,000 when the Profit-Sharing Dispute began. *Id*. There are less than 24,000 participants now. *Id*., ¶ 24. By 2030, Segal projects that the number of covered participants will be close to 12,000. *Id*. Obtaining a large amount of money through the settlements in 2021-2022 would allow the SBC to provide benefits to the Class Members while they are still alive to enjoy them. Wohl Dec., ¶¶ 23-24; Viola Dec., ¶18.

The Profit-Sharing Settlement, *Krzysiak* Settlement and the Class Action Settlement, and related HBPC Resolution, should also be evaluated in terms of the fundamental purpose of the Supplemental Plan. The SBC believes that, based on reasonable assumptions and projections, the estimated total value of $742 million (plus interest) when added to the existing assets of the Supplemental Trust would be sufficient to provide health care benefits to the Class Members that are comparable to the healthcare benefits that the Class Members had before the cutbacks that led to the 1992 *Shy* litigation in the first place. Wohl Dec., ¶ 12. That would fulfil the purpose of the Supplemental Plan and realize one of the most important goals of the 1993 Settlement.

        **b.**      **The Value Of The Individual Settlements Viewed In Isolation.**

It is also appropriate to consider the Profit-Sharing Settlement and the *Krzysiak* Settlements individually because approval of the Class Action Settlement would require the Class Members to

agree to separate Releases relinquishing their rights to file future claims concerning the Profit-Sharing Dispute and the Medicare Part D Subsidies Dispute.

### i.     The Profit-Sharing Settlement

The Profit-Sharing Settlement between Navistar and the SBC relating to past profit-sharing provides for Navistar to pay a total of $292 million plus interest. That represents the full value of the arbitration award in addition to SBC's calculation of the profit-sharing owed by Navistar for the post-arbitration years. Cocks Dec., ¶ 8. For these reasons and those set forth above, the Class Representatives and Class Counsel believe that the Release by the Class Members of their past profit-sharing claims is fair and in the best interest of the Class Members. The Class Representatives and Class Counsel further believe that the Release by the Class Members of their future profit-sharing claims is fair and in the best interest of the Class Members for the reasons set forth at length in section D below, discussing modification of the consent decree.

### ii.     The *Krzysiak* Settlement

Navistar's commitment to share Medicare Part D subsidies in the *Krzysiak* Settlement would provide the future relief sought by the *Krzysiak* plaintiffs. The payment of $3 million to the Supplemental Trust is reasonable because this amount would fully reimburse the fees and expenses incurred in support of *Krzysiak*. Viola Dec., ¶ 21.

The payment of $17 million to the Base Plan earmarked for the payment of future participant contributions would resolve the claim in *Krzysiak* for alleged losses of the Base Plan caused by Navistar's calculation of the contribution rate from 2012 through 2021. Scallet Dec., ¶ 23. The SBC does not have complete information concerning the amount of subsidies that have been paid in each year to the Base Plan, but it believes that the recovery represents somewhat less than 33 percent of the potential recovery on this claim. Wohl Dec., ¶ 21. The *Krzysiak* Plaintiffs

and the SBC believe that this is a reasonable settlement based on the risk that the case could be dismissed, the value of the future relief achieved in the settlement of the Medicare Part D Subsidies Dispute, and the total value of the settlements that would become effective if the Class Action Settlement is approved by the Court. Viola Dec., ¶ 27; Krzysiak Dec., ¶ 10; LaCour Dec., ¶ 8; Scallet Dec., ¶ 30.

The Class Representatives and Class Counsel believe that the Release by the Class Members of their potential Medicare Part D subsidies claims relating to 2012 through 2021 is fair and in the best interest of the Class Members because the value of such claims is uncertain. The claims could be time-barred. No Class Member suffered any out-of-pocket loss from Navistar's alleged actions because the Supplemental Trust covered 100% of the lost Medicare Part D subsidies when the SBC bought down the premiums in those years. Viola Dec., ¶ 12. This undercuts the merits and diminishes the value of any claim that a Class Member suffered out-of-pocket loss from the Company's alleged actions. Class Representatives and Class Counsel believe that the Release of these claims by the Class Members is justified by the value of the future relief achieved in the settlement of the Medicare Part D Subsidies Dispute, and the total value of the settlements. Markovits Dec., ¶ 11; Potts Dec., ¶ 5; Rodgers Dec., ¶ 6; Zounes Dec., ¶ 5; Cortright Dec., ¶ 5; Bergmann Dec., ¶ 6. The Release of claims for prospective relief is justified because Navistar's agreement to reflect the subsidies in the calculation of the participant contribution rate secures the future relief sought in *Krzysiak*.

### B. To Effect The Settlement, The Court Should Amend The Class Definition, Appoint New Class Representatives, And Certify A Settlement Class.

#### 1. The Court Should Adopt A New Class Definition.

Class Representatives propose that the Court certify a new and conditional Settlement Class that includes all present and future *Shy* Participants. Courts have "broad discretion to modify

class definitions" to "ensure that a certified class is properly constituted." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

The class in the 1993 Settlement consisted of then-retirees receiving benefits, certain former employees who were not yet at normal retirement age, active salaried employees, and eligible dependents and spouses. Notably, the class did not include active employees or their dependents and spouses who would become eligible for the *Shy* Plan benefits as a result of collective bargaining agreements between Navistar and the unions. Accordingly, to assure that all affected *Shy* Plan participants receive notice and have an opportunity to object, the existing class definition should be expanded to include all current or potential *Shy* Plan participants or beneficiaries, regardless of the source of their eligibility. As noted, nothing in the new definition of a Settlement Class or in the Proposed Class Action Settlement would affect the provisions of the *Shy* Agreement that determine who is eligible to be a participant or beneficiary of the *Shy* Plan.

### 2. The Court Should Appoint Additional Class Representatives.

The current Class Representatives are Carl Potts (the sole remaining Class Representative from the original appointment), along with Richard Zounes and Miller Rodgers. Class Counsel and Class Representatives believe it would be helpful to add as additional Class Representatives Robert Bergmann (Ret. USW) and Fred Cortright (Ret. UAW). These two proposed representatives would reflect the proposed expansion of the Settlement Class. They are both current *Shy* Plan participants who are not in the current class because they became eligible through collective bargaining agreements (with the UAW and United Steelworkers, respectively). While all *Shy* Plan participants are equally affected by the proposed settlements, the *Shy* Agreement has always provided for representation of the three main employee groups at Navistar—UAW represented, salaried, and other union-represented—the addition of Messrs. Cortright and

Bergmann would restore that balance. These gentlemen would fall under the new class definition and will aid in ensuring that the Class is appropriately represented. Markovits Dec., ¶ 7.

The Court has "wide discretion" to add representatives, so long as they have no conflict with the class, which is the case here. *See In re Auto. Parts Antitrust Litig.*, No. 12-00101, 2018 WL 2181100, at *8 (E.D. Mich. Jan. 31, 2018) (citation omitted); Markovits Dec., ¶ 7; Bergmann Dec., ¶ 7; Cortright Dec., ¶ 6.

### 3.    The Court Should Certify A Settlement Class.

The Supreme Court recognized that at times the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997). While there is a settlement class in the 1993 Settlement, Class Representatives seek conditional certification of a new Settlement Class as set forth above in order to effectuate the Class Action Settlement Agreement.

For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *Pelzer v. Vassalle*, 655 F. App'x 352, 363 (6th Cir. 2016). The proposed Settlement Class meets the requirements of Rule 23(a) and Class Representatives seek certification of the Settlement Class pursuant to Rule 23(b)(1), (2) or (3).

### a.    The Proposed Class Is Ascertainable

The Sixth Circuit has implied a Rule 23 ascertainability requirement – an assurance that the class definition is sufficiently definite so that it is "administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citations omitted). Here, the proposed class is defined by objective criteria: current participation or eligibility for future participation in the *Shy* benefits. Scallet Dec., ¶ 31. Navistar also identified the members of the proposed class for purposes of providing notice. Kramer Dec., ¶¶ 3-4.

### b.      Numerosity Is Met

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no magic number needed to satisfy numerosity; in the Sixth Circuit, numerosity has been satisfied with a class of 35. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("[T]he Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement.") (citation omitted); *see also Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249, 255 (S.D. Ohio 2017) (numerosity satisfied with 67-member class). Certainly, thousands of members satisfy the numerosity requirement. *Daffin v. Ford Motor Co*., 458 F.3d 549, 553 (6th Cir. 2006) ("substantial numbers" satisfy, and thousands are "substantial").

Here, the proposed class here consists of over 20,000 people. Wohl Dec., ¶ 11. Accordingly, joinder of all members would be impracticable and the numerosity requirement is satisfied.

### c.   Commonality Is Met

The second requirement of Rule 23(a)(2)—commonality—is satisfied where there are questions of law or fact common to the class. *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542–43 (6th Cir. 2012). Establishing commonality should not be an "onerous task." *Lee v. Javitch, Block & Rathbone, LLP*, 522 F. Supp. 2d 945, 957 (S.D. Ohio 2007). And it is "easily satisfied in ERISA cases." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *10 (S.D. Ohio Feb. 18, 2021) (citation omitted).

Moreover, "[c]ommonality is not required on every question raised;" rather, Rule 23(a)(2) is "satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012)

(citation omitted); *see also Lee*, 552 F. Supp. 2d at 957 ("Factual differences among putative class members do not defeat commonality.").

The "commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (citation omitted). All members of the proposed Settlement Class are current or future participants or beneficiaries in the *Shy* Plan, and whether Navistar properly accounts for the Medicare Part D subsidies in the calculation of the participant contribution rate affects all participants and beneficiaries in the *Shy* Plan. The alleged failure of Navistar to make the required profit-sharing payments affects the supplemental benefits of every participant in the *Shy* Plan because it has prevented the SBC from increasing the supplemental benefits that are made available to every *Shy* Plan participant and beneficiary. The commonality requirement of Fed. R. Civ P. 23(a)(2) is met.

### d. Typicality Is Met

The third requirement of Rule 23(a) is that the claims of the class representatives be typical of the claims of the class as a whole. Fed. R. Civ P. 23(a)(3). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082).

The claims of the current and proposed Class Representatives are typical because they are current participants in the *Shy* Plan. As noted, the claims here stem from actions that affected every *Shy* Plan participant, including the current and proposed Class Representatives.

### e. Adequacy Is Met

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: 1) the

"representative must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

The current and proposed Class Representatives have common interests, and no conflict, with unnamed members of the class. Markovits Dec., ¶¶ 6-7; Potts Dec., ¶ 5; Rodgers Dec., ¶ 6; Zounes Dec., ¶ 5; Cortright Dec., ¶ 6; Bergmann Dec., ¶ 7. All have worked with Class Counsel, and experts retained by Class Counsel, to educate themselves regarding the proposed Class Action Settlement Agreement and its terms. Markovits Dec., ¶ 6; Potts Dec., ¶ 3; Rodgers Dec., ¶ 3; Zounes Dec., ¶ 2; Cortright Dec., ¶ 2; Bergmann Dec., ¶ 3. They have demonstrated that they are willing and able, without remuneration, to serve unnamed class members through their representation. Markovits Dec., ¶ 7.

As to the question of whether the representatives will prosecute the interests of the class through "qualified counsel," the Court previously addressed this issue when it appointed Markovits, Stock & DeMarco, LLC ("MSD") as new Class Counsel. Doc. 592. MSD has a history of handling longstanding class action cases such as this one including successfully modifying the terms of previous class action settlement agreements when it was in the class's best interests. Markovits Dec., ¶ 3. MSD is performing a similar role here. The adequacy requirement of Rule 23(a) is satisfied.

### 4. The Class Should Be Certified Under Fed. R. Civ. P. 23(b)(1), (2) or (3).

Finally, to certify a settlement class, the class must satisfy one of the subsections of Fed. R. Civ. P. 23(b). *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 ("Once [the] conditions [of Rule 23(a)] are satisfied, the party seeking certification must also demonstrate that it falls within at least *one*

of the subcategories of Rule 23(b).") (emphasis in original). The proposed class satisfies all three subsections of Rule 23(b).

Rule 23(b)(1) allows class certification if the prosecution of separate actions would create a risk of inconsistent adjudications with respect to individual members of a class that would either (A) establish incompatible standards of conduct for defendants; or (B) as a practical matter, be dispositive to the interests of other members not a party to the adjudications. Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re IKON Office Sols. Inc., Secs. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). *See generally Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 830-36 (1999) (discussing history of Rule 23(b)).

A class action on behalf of plan participants is a paradigmatic Rule 23(b)(1) case. *See* Advisory Committee Notes to FRCP Rule 23 (1966); 2 William B. Rubenstein, *Newberg on Class Actions* § 4:21 (5th ed. Dec. 2021 update); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (citing cases). That is because every person in the proposed class of *Shy* Plan participants and beneficiaries could assert an ERISA claim with respect to the Medicare Part D subsidies, and each of them could seek to enforce Navistar's obligation to make profit-sharing payments as beneficiaries of the *Shy* Agreement. Those potential future actions could lead to inconsistent results and/or raise issue preclusion problems for later individual plaintiffs. Most ERISA class actions are certified under Rule 23(b)(1) as mandatory, non-opt out classes. *Jones v. United Behav. Health*, No. 19-CV-06999-RS, 2021 WL 1318679, at *7 (N.D. Cal. Mar. 11, 2021) (citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *5 (E.D. Mich. Dec. 12, 2013).

Courts have also certified ERISA class actions under Fed. R. Civ. P. 23(b)(2). *Bailey v.*

*Verso Corp.*, 337 F.R.D. 500, 508 (S.D. Ohio 2021) (noting that "numerous courts" have found certification proper under Rule 23(b)(2) in ERISA cases). Rule 23(b)(2) is satisfied when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *12 (E.D. Mich. Mar. 31, 2006) (quoting Fed. R. Civ.P. 23(b)(2)). In such circumstances, "the common claim is susceptible to a single proof and subject to a single injunctive relief." *Id.* (citation omitted). "Courts routinely certify, under Rule 23(b)(2), claims challenging an employer's modification of health care benefits, holding that in such cases, the employer's alleged conduct is directed at the class as a whole and hence class-wide injunctive or declaratory relief is appropriate." *Id.* Here, the claims related to the Profit-Sharing Settlement and the *Krzysiak* Settlement affect all Class Members and are "susceptible to a single proof and subject to a single injunctive relief" and thus meet the requirements of a mandatory, non-opt out class under Rule 23(b)(2).

Finally, the proposed Settlement Class also satisfies the requirements of Rule 23(b)(3) that (1) common issues predominate over individual issues and (2) a class action be a superior means of adjudicating the claims. As demonstrated above, the common issues requirement is met because the alleged conduct affects each Class Member in the same way. Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making the superiority determination: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 642-43 (S.D. Ohio 2017). All of these factors are met. The class members

have no strong interest in prosecuting separate actions, as demonstrated by the proposed Class Action Settlement's resolution of related disputes. While there are separate actions, they all relate to the interests of the class members. It makes sense to concentrate the litigation in this forum, where the Court has managed related disputes for almost thirty years. There is no difficulty in managing this as a class action, as it has already been managed as one. A class action meets the superiority requirement of Rule 23(b)(3).

### C. The Class Action Settlement Includes The Appropriate Rule 23 Protections.

#### 1. The Proposed Form And Manner Of Notice To The Class Is Reasonable And Should Be Approved.

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In order to satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The Notice Plan set forth in the Class Action Settlement Agreement provides the best notice practicable under the circumstances. Contact information is available for current plan participants as well as employees who are future plan participants, which are the vast majority of the proposed Class. Kramer Dec., ¶¶ 3-4. These putative Class Members will be contacted directly by mail with a detailed long form notice. *Id.*, ¶ 3., Agreement, Exh. 1, at Exh. G. Those with email addresses

will also receive a shorter notice by email. *Id*., ¶ 4,  Agreement, Exh. 1, at Exh. H. There will also be publication notice provided.  *Id*.,  Agreement, Exh. 1, at Exh. I. At the same time notice is sent out: 1) Navistar will have a settlement website providing additional information regard the proposed Settlement, including a "Frequently Asked Questions" page and copies of key court documents; and 2) Navistar will have a toll-free line the putative Class Members with questions regarding the Settlement may call. The Notice Plan is described in more detail in the Settlement Agreement and its attachments. Exh. 1, Settlement Agreement.

This Notice Plan will "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of providing notice, which includes individual notice by mail and email to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004).

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). Here, the proposed Notice Plan satisfies this requirement, as it notifies Class Members that Class Counsel's fees and expenses, up to a cap of $750,000, will be paid by Navistar. Markovits Dec., ¶ 12, *See* Exh. 1, at Exh. G. This amount does not detract from any possible payments to Class Members inasmuch as it was negotiated subsequent to the material financial terms that are incorporated into the Class Action Settlement Agreement. Markovits Dec., ¶ 12.  These fees, based on lodestar with no multiplier, are in any case well within the range of reasonable attorneys' fees awarded within the Sixth Circuit as well as other federal district courts.

31

*See, e.g.*, *Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving multiplier of 3.06 and collecting cases).

> ### 2. The Class Action Settlement Agreement Includes A Reasonable Schedule Leading Up To A Fairness Hearing.

The Notice Plan also provides a timeline with appropriate sequencing of scheduled events leading up to a Fairness Hearing. *See* Exh. 2, Timeline. This timeline includes, *inter alia*, deadlines for notice to Class Members and for Class Members to object to the Class Action Settlement. *Id.* Class Members would have 60 days from the beginning of the notice period to object. *Id.* The Fairness Hearing would take place approximately 120 days from the beginning of the notice period. *Id.*

If, for example, preliminary approval is granted on January 10, 2022,[10] the timeline would be:

| | |
|---|---|
| Notice: | February 9, 2022 |
| Website, toll-free line | February 9, 2022 |
| Final Approval Motion | March 27, 2022 |
| Fee and expense application | March 27, 2022 |
| Objection Deadline | April 11, 2022 |
| Appearance Deadline | April 11, 2022 |
| Reply by Class Counsel | May 26, 2022 |
| Report on Notice | May 26, 2022 |
| Fairness Hearing | June 9, 2022 |

*See* Timeline, Exh. 2.

---

[10] If preliminary approval is granted either earlier or later these dates would have to be adjusted accordingly.

At the Fairness Hearing, the Court may hear all evidence and argument necessary to make its final evaluation of the Class Action Settlement. Proponents of the Class Action Settlement may offer fact and argument in support of final approval. Additionally, Class Members who have properly objected to the Class Action Settlement may be heard at this hearing. The Court will determine through the Fairness Hearing whether to finally approve Class Action Settlement, and whether to approve requested Class Counsel fees and expenses.

### D.     The Court Should Approve the Amendments to the *Shy* Agreement

This Court has previously held that the standard for modification of the *Shy* Agreement under Rule 60(b)(5) is set forth in *Rufo v. Inmates of the Suffolk Cty. Jail*, 502 U.S. 367 (1992):

> Under this standard, Navistar must initially show that "a significant change in circumstances warrants revision of the decree." *Rufo,* 502 U.S. at 383. Assuming this is established, a court must then determine whether the proposed modification is "suitably tailored to the changed circumstance." *Id.* at 383.

Doc. No. 574 at 5. This Court has recently held in another case that Rule 60(b)(6) can provide relief even if it is not warranted under Rule 60(b)(5). *Wash. Mut. Bank v. Ditter*, No. 2:07-CV-320, 2015 WL 5562317, at *5 (S.D. Ohio Sept. 22, 2015). That subsection "constitutes a grand reservoir of equitable power to do justice in a particular case." *Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted). As the Sixth Circuit has held, "the trial judge should use his discretion to determine if the granting of [a Rule 60(b)(6) motion] would further justice." *Ford Motor Co. v. Mustangs Unltd., Inc.*, 487 F.3d 465, 470 (6th Cir. 2007) (quoting *Harman v. Pauley*, 678 F.2d 479, 480, 481 (4th Cir. 1982)).

### 1.     The Medicare Part D Subsidies Modification Meets The Rule 60 Standards.

The Class Action Settlement and the *Krzysiak* Settlement require Navistar to offset the Medicare Part D subsidies from the calculation of the participant contribution rate in the future.

The Class Representatives seek to amend the definition of "Total Actual Drug Cost" in the Appendix A-6 of the *Shy* Agreement to implement that relief (changes from current shown underlined):

> Commencing with the Measurement Year to be used for determining the Contributing Participants' Annual Contribution for the 2022 Plan Year, "Total Actual Drug Cost" shall equal (i) the sum of paid drug claims and administrative expenses and applicable HMO premiums (including an allocated portion of Plan Expenses based upon the ratio of paid drug claims to all paid drug and medical claims) for Contributing Participants and their Eligible Dependents for such Measurement Year, less (ii) the total amount of any subsidies, manufacturer rebates or similar payments for Medicare Part D Plans that are payable to and received by the Retiree Health Benefit and Life Insurance Plan for Plan Participants and their Eligible Dependents during the Measurement Year, including, but not limited to, the manufacturer discount under 42 CFR 423 Subpart W: Medicare Coverage Gap Discount Program (42 CFR 423.2300 – 42 CFR 423.2345); the federal reinsurance subsidy, the direct subsidy and the low income cost-sharing subsidy under 42 CFR 423 Subpart G: Payments to Part D Plan Sponsors for Qualified Prescription Drug Coverage (42 CFR 423.301 – 42 CFR 423.360); and the low income premium subsidy under 42 CFR 423 Subpart P: Premiums and Cost-Sharing Subsidies for Low-Income Individuals (42 CFR 423.771 – 42 CFR 423.800), less (iii) manufacturer rebates for non-Medicare Part D prescription drug plans that are payable to and received by the Retiree Health Benefit and Life Insurance Plan for Plan Participants and their Eligible Dependents during the Measurement Year.

This modification meets the standards of both Rule 60(b)(5) and (6). Class Representatives seek to modify the *Shy* Agreement to deal with the Medicare Part D subsidies in 2021 because of the "significant change of circumstances" in that those subsidies did not exist until 2006, long after the 1993 Settlement had been negotiated. The modification is also "suitably tailored to that circumstance" because the only provision of the 1993 Settlement that would change to implement the Medicare Part D subsidies settlement is the definition of Total Actual Drug Costs. Approving the modification would "do justice" by allowing the Class Members to enjoy the benefit of the estimated $118 million of value that the modification would provide to the Class Members.

34

### 2. The Court Should Approve The Amendment Of The Supplemental Plan Relating To Future Profit-Sharing.

The SBC agreed in the Profit-Sharing Settlement to amend the Supplemental Plan to exchange the Supplemental Trust's right to receive future contributions from Navistar for an immediate payment of $264 million. The Class Representatives agreed to move for the Court's approval of these Supplemental Plan amendments.

The *Shy* Agreement is comprised primarily of the documents relating to the operation of the benefit plans it created, and it is clear from those plan documents that the negotiators assumed that there would have to be changes during the fifty-plus years that the plans would exist under the 1993 Settlement. Thus, Section 9 of the Supplemental Plan gives the SBC wide discretion to amend the Supplement Plan. Section 9.1(c) of the Supplemental Plan expressly acknowledges the possibility of a future modification proceeding in this Court by providing that any "material amendment" would be "subject to approval of the Court after appropriate notice to the Class Members." The Class Action Settlement provides that the Class Representatives will move for the approval of the SBC's amendment in order to provide "appropriate notice" to the Class Members.

The negotiators of the 1993 Settlement would likely agree that there has been a "significant change of circumstances" that supports the proposed profit-sharing modification here. The instigating factor for both the *Shy* litigation and the 1993 Settlement was Navistar's lack of access to sufficient capital to make the cash contributions necessary to fund the retiree benefits. The use of restricted common stock and contingent profit-sharing to fund the supplemental benefits represented the best that could be done under that circumstance.

Navistar and the SBC are well aware of the weaknesses in the funding structure of the Supplemental Plan that the negotiators of the 1993 Settlement were forced to create in the absence of access to enough cash to make contributions. The uncertainty in the timing and amount of profit

sharing hampers the ability of Navistar to manage its business. Kramer Dec., ¶ 5. That same uncertainty prevents the SBC from increasing the supplemental benefits because that requires it to have the cash in hand. Viola Dec., ¶ 9. Neither Navistar nor the SBC wants to spend its assets on litigation. Kramer Dec., ¶ 5; Viola Dec., ¶ 27. But there was a "significant change of circumstances" when Navistar was merged into Traton SE and gained access to capital. As noted, that was a primary catalyst for negotiations to resolve a ten-year long dispute because both parties sensed an opportunity to change a funding structure that neither believes is in the best interest of either Navistar or the Class Members.

The remaining question is whether approving the economic terms of the proposed cash contribution in lieu of future contributions would "do justice" for the Class Members. The Profit-Sharing Settlement allocates $264 million of the total cash payments in exchange for future contributions. The SBC's experts provided a wide range in the present value of future profit-sharing based on projections of Navistar's financial performance that were made available in connection with the Traton merger. Viola Dec., ¶ 23. The SBC was willing to accept a payment that was on the low end of that range in large part because it provided an opportunity to implement a large increase in the supplemental benefits immediately. *Id*. But its advisors also identified numerous factors that created significant concerns about the amount of future profit-sharing. *Id*.:

- The determination of the PSCD has a material effect on the value of the future profit-sharing, and there is no guarantee that the SBC would be successful in any future legal dispute with Navistar on how to interpret it (Scallet Dec., ¶ 8; Wohl Dec., ¶ 19);

- The timing and amount of future profit-sharing payments depend on Navistar's future financial results, which are impossible to predict with certainty (Cocks Dec., ¶ 9);

- Although the *Shy* Agreement has a provision for calculating profit-sharing if another company acquires Navistar, the provision is not clear and the acquisition by Traton would likely lead to a reorganization of Navistar that

36

could make the arbitration award less relevant to the calculation of future profit-sharing (*id*.);

- Traton could reduce profit-sharing by making business decisions that realize profits produced by Navistar's operations in other subsidies within the global entity (*id.*); and,

- The acquisition would make it difficult for the SBC to monitor future profit-sharing because there would no longer be publicly available financial information about Navistar's operations separate from Traton (*id*.).

In sum, Class Counsel believe that making tailored modifications to the Supplemental Plan to take advantage of changed circumstances to substantially improve the way the supplemental benefits are funded would do justice within the meaning of Fed. R. Civ. P. 60(b)(5) and (6).

## IV.    CONCLUSION

Class Counsel and Class Representatives respectfully request that the Court grant preliminary approval of the Class Action Settlement, enter the proposed Preliminary Approval Order, and approve the proposed plan amendments.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Terence R. Coates (0085579)
Justin C. Walker (0080001)
Dylan J. Gould (0097954)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*
*dgould@msdlegal.com*

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2021, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will provide notice of the filing to all parties of record. Parties may access the filing through the Court's CM/ECF system.

*/s/ W.B. Markovits*
W.B. Markovits (0018514)