**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | |
|---|---|
| ART SHY, et al.<br><br>                              Plaintiffs,<br><br>vs.<br><br>NAVISTAR INTERNATIONAL<br>CORPORATION, et al.<br>                    Defendants. | Case No. 3:92-CV-00333<br><br>District Judge Walter H. Rice |

**MEMORANDUM IN SUPPORT OF CLASS REPRESENTATIVES'**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AGREEMENT AND ATTORNEY FEES AND EXPENSES**

**I.    PRELIMINARY STATEMENT**

Class Representatives respectfully request that the Court grant final approval of the Class

Settlement Agreement[1] it preliminarily approved and approve Class Counsel's fees and expenses.

Plaintiffs will not repeat at length but will summarize below the background and arguments that

supported preliminary approval and that also support final approval.[2] The events since the grant of

preliminary approval, however, are set out in more detail below and further demonstrate why the

proposed Settlement is fair, reasonable, and adequate and should be given final approval. An

effective notice process resulted in an overall positive reaction to the Settlement and no objections

_____

[1] Capitalized terms not defined herein are as stated in the Class Settlement Agreement filed as Exh. 1 to the preliminary approval memorandum (Doc. 598-2) and the preliminary approval memorandum (Doc. 598-1).

[2] The detailed procedural background, along with facts and argument supporting certification and settlement, may be found in the preliminary approval filings of this docket. *See* Docs. 598, 598-1 through 598-18.

to date.[3] This speaks to the fairness of the Settlement and supports final approval. Class Counsel's fees and expenses should also be finally approved because they are fair and reasonable, were agreed to *after* agreement on the other major terms of the Settlement, and are subject to a cap suggested by Navistar.

## II. FACTUAL BACKGROUND

### A. Litigation, Settlement, and Preliminary Approval

The 1993 *Shy* Agreement resolved a lawsuit challenging Navistar's decision to reduce the health and life insurance benefits provided to most of Navistar's retirees at the time (and their spouses and eligible dependents) and forego the promises of retiree benefits Navistar had made to its then-active employees (and their spouses and eligible dependents). Doc. 598-5, Scallet Dec., ¶ 5. Navistar believed that it could not stay in business unless it reduced its estimated $2.6 billion of liability for these benefits. The settlement made a series of changes to the retiree health and life insurance benefits. *Id*. The *Shy* Agreement primarily consists of documents effectuating the rights and obligations in the new Base Plan and Supplemental Plan. *Id*.

Following the 1993 *Shy* Agreement, disputes arose regarding its implementation. The proposed settlement resolves two such disputes regarding: (1) Navistar's profit-sharing contributions; and (2) Navistar's treatment of Medicare Part D Subsidies. *Id*., ¶¶ 8-14.

After years of litigation and arbitration, the parties began discussions in 2021 to resolve these disputes. *Id*., ¶¶ 15-26. Following months of negotiation, on October 22, 2021, Navistar, the SBC, the Krzysiak Plaintiffs, and the UAW entered into a Letter of Intent setting out the framework for a settlement. *Id*. To effectuate the proposed settlement, on November 23, 2021, the SBC filed

---

[3] Class Members have until April 11, 2022 to object. Objections subsequent to the filing of this memorandum, if any, will be addressed in a reply memorandum due May 26, 2022.

an unopposed motion to appoint class representatives and class counsel. Doc. 591. On December 10, 2021, the Court granted that motion. Doc. 592.

On December 22, 2021, the Class Representatives, through Class Counsel, filed a motion seeking preliminary approval of the Settlement. Docs. 598, 598-1. The Settlement affords the following benefits to Class Members:

a. Navistar agreed to pay $292 million (plus interest) in the Profit-Sharing Settlement to resolve the past Profit-Sharing Disputes;

b. Navistar agreed to pay an additional $264 million in cash, less any amount paid by Navistar under the PSP for any plan year after the plan year ending October 31, 2020, in the Profit-Sharing Settlement in exchange for the obligation to make future profit-sharing payments;

c. Navistar committed to share all future Medicare Part D subsidies (then estimated at a value of $118 million) with the Base Plan through an agreement in the *Krzysiak* Settlement concerning the Medicare Part D subsidies and future calculations of the *Shy* Plan participant premiums pursuant to the *Shy* Agreement;

d. Navistar agreed to pay $17 million to the Base Plan Retiree Sub Account A in respect of the *Krzysiak* Settlement; and

e. Navistar agreed to reimburse the Supplemental Trust for $3 million of litigation expenses in the *Krzysiak* Lawsuit.

*Id.* Additionally, Navistar and the UAW agreed to recommend action by the Health Benefit Program Committee directing $48 million of Base Plan Retiree Sub Account A assets, plus the aforementioned $17 million, towards the reduction of future monthly participant contributions. *Id.*

On January 10, 2022, the Court issued an Order granting preliminary approval of the following class:

> **Present participants (including spouses and dependents) and those eligible to become participants, whether upon retirement or election (including eligible spouses and dependents), in the Navistar International Transportation Corp. Retiree Health Benefit and Life Insurance Plan (n/k/a the Navistar, Inc. Retiree Health and Life Insurance Plan). This includes all eligible present retirees, individuals eligible upon retirement or election, and participating, eligible, or future-eligible spouses and dependents in the Navistar International Transportation Corp. Retiree Health Benefit Program (n/k/a the Navistar, Inc. Retiree Health Benefit Program), the Navistar International Transportation Corp. Retiree Life Insurance Program (n/k/a the Navistar, Inc. Retiree Life Insurance Program), and the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (n/k/a the Navistar, Inc. Retiree Supplemental Benefit Program).**

Doc. 602, Order, at PageID 6765-66. The Court appointed Navistar, under the supervision of Class Counsel, to act as settlement administrator for the proposed Notice Plan. *Id.*, PageID 6766.

### B.     Notice, and Response of Class Members

On December 27, 2021, counsel for Navistar timely notified appropriate Federal and State officials of the proposed settlement as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 and this Court's Order.[4] Doc. 600, Declaration of Robert F. Kirsch Doc.; Doc. 610, Supplemental Declaration of Robert F. Kirsch.

Navistar: i) on January 27, 2022, provided notice to Class Members with readily identifiable mailing addresses via U.S. mail, substantially in the form of the Long Form Notice attached as Exhibit G to the Agreement; ii) subsequently provided notice to Class Members with readily identifiable email addresses via email, substantially in the form of the Email Notice attached as Exhibit H to the Agreement; iii) on January 28, 2022, caused the Publication Notice,

---

[4] On March 11, 2022, additional notices were sent to four attorney generals for which Navistar did not receive a return receipt. Doc. 610, Supplemental Declaration of Robert F. Kirsch.

substantially in the form attached as Exhibit I to the Agreement, to be published via PRNewswire; iv) on January 28, 2022, established a Settlement Website that includes the notices, a FAQ, and other information relevant to the Class, including important historical Court submissions as well as material Court submissions relating to the proposed settlement; and v) on January 28, 2022, established a toll-free line for Class Members to obtain answers to questions relating to the Settlement. Declaration of Brian R. Delphey ("Delphey Dec."), ¶¶ 4-14.

Navistar sent the Long Form Notices to each Class Member with an identifiable mailing address. *Id*., ¶ 4. If more than one Class Member was at a given address, a separate notice was sent to each. *Id*., ¶ 5. The envelopes in which the Long Form Notices were sent highlighted the importance of the document within. *Id*., and Exh. A to declaration. Navistar sent 23,005 Long Form Notices by mail, and 779 Email Notices by email. *Id*., ¶¶ 4, 11. Navistar made an effort to locate appropriate addresses for returned or undelivered notices. *Id*., ¶ 6. As a result, as of March 20, 2022, Navistar believes that at least 22,848 out of 23,005 Class Members directly received notice – or approximately 99.3 %. *Id*., ¶ 9.

The overall reaction of Class Members has been positive. As of March 20, 2022, there have only been 40 calls to the toll-free line with questions. *Id*., ¶ 15.[5] The primary question raised by Class Members is whether the Settlement will negatively affect their current benefits. *Id.* Once the Class Members are reassured that it will not, they are supportive of the Settlement. *Id*. Some Class Members contacted Class Counsel directly. Supplemental Declaration of W.B. Markovits ("Markovits Supp. Dec."), ¶ 4. Again, once the nature of the Settlement is explained, the reaction of Class Members has been generally positive. *Id.*, ¶ 4. The Class Representatives have had the

---

[5] As of March 20, 2022, the Settlement Website – which has a FAQ page and other information that can be used to answer questions – has been accessed 1,281 times, sometimes directly and sometimes through links from sources such as Facebook or PRNewswire. Delphey Dec., ¶ 16.

same experience in discussions with their Class Member colleagues and former colleagues. Supplemental Declaration of Carl Potts, ¶ 2; Supplemental Declaration of Miller Rodgers, ¶ 2; Supplemental Declaration of Robert Bergmann, ¶ 2; Supplemental Declaration of Fred Cortright, ¶ 2.[6]

While there have been some Class Members who have raised questions with Navistar, the Court, or with Class Counsel, there have been no objections to the Settlement as of this filing. Markovits Supp. Decl., ¶ 5.

**III.    ARGUMENT**

**A.  Final Class Certification is Appropriate.**

This Court preliminarily approved class certification for Settlement purposes in its January 10, 2022 Order (Doc. 602). At this juncture, final approval is appropriate.

       1.  <u>The Proposed Class is Ascertainable</u>

The Class is defined by objective criteria, and Class Members were identifiable for the purposes of providing notice. Doc., 598-5, Scallet Dec., ¶ 31, Doc. 598-17, Kramer Dec., ¶¶ 3-4. This meets the implied ascertainability requirement of Rule 23. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citations omitted).

       2.  <u>The Elements of Rule 23(a) are Satisfied</u>

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

---

[6] Class Counsel were unable to contact Mr. Zounes, who has always been responsive. They then learned that Mr. Zounes suffered a serious medical issue from which he is now recovering, so they do not submit a supplemental declaration from him. Delphey Decl., ¶ 19.

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, all four elements are satisfied.

### a. Numerosity

Rule 23(a)(l) requires that Plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, there are an estimated 23,005 Class Members, satisfying the numerosity requirement

### b. Commonality

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

In this case, there are numerous common questions of law and fact, including whether Navistar was required to make certain profit-sharing payments and appropriately treated the Medicare Part D subsidies. Commonality is, therefore, satisfied.

### c. Typicality

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on

the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082).

The claims of the Class Representatives are typical because they are all participants in the *Shy* Plan, and the claims stem from actions affecting every *Shy* Plan participant. Typicality is satisfied.

### d. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976).

The Class Representatives have common interests, and no conflicts, with unnamed Class Members. Doc. 598-1 at PageID 6146, and declarations cited therein. Class Counsel are qualified. *Id.* No challenge has been made with regard to adequacy, and the adequacy requirement is satisfied.

### 3. The Requirements of Rule 23(b) are Met in the Settlement Context.

The Court preliminarily certified a non-opt out Class pursuant to Fed. R. Civ. P. 23(b)(1). Order, Doc. 602, at PageID 6765-66. A class action on behalf of plan participants is a paradigmatic Rule 23(b)(1) case, and most ERISA class actions are certified under Rule 23(b)(1) as mandatory non-opt out classes. *See* Advisory Committee Notes to FRCP Rule 23 (1966); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *5 (E.D. Mich. Dec. 12, 2013).

**B. The Notice Program Preliminarily Approved by the Court Was the Best Notice Practicable Under the Circumstances and Was Successful.**

For class actions certified under Federal Rule of Civil Procedure 23(b)(1), such as this class action, the court "may direct appropriate notice to the class." Rule 23(c)(2)(A). Notice in a Rule

23(b)(1) case is discretionary. *Adams v. Anheuser-Busch Companies, Inc.*, No. 2:10-CV-826, 2012 WL 1058961, at *12 (S.D. Ohio Mar. 28, 2012). In this case, at the Parties' suggestion, the Court ordered notice consistent with the more stringent requirement of Rule 23(c)(2)(B), which requires the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B). *See In re Auto. Parts Antitrust Litig*., No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th ed. 2004). Even under Rule 23(c)(2)(B), there is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.,* 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC,* No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Class Counsel worked with Navistar to develop and implement the notice program preliminarily approved by the Court. Markovits Supp. Dec., ¶ 3; Delphey Dec., ¶ 2. Navistar had direct contact information for most Class Members because they are either current *Shy* Plan participants or beneficiaries, or future participants who are currently Navistar employees. Delphey Dec., ¶ 3. As a result, Navistar estimates that 99.3% of Class Members received the Long Form Notice. *Id*., ¶ 9. This goes well beyond the 70-95% notice that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action*

*Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The notice program provided Class Members with a clear and concise statement of their rights. *See*, *e.g*., Doc. 598-2, Long Form Notice, PageID 6641-57. The notices directed Class Members to the settlement website or a toll-free number for additional information regarding how they could object to the settlement. *Id*. The notice program more than met the requirements of Rule 23 and due process.

### C. The Settlement Agreement Merits Final Approval.

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc*., 908 F.2d 38, 42 (6th Cir. 1990). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2). These factors include:

> A. Whether the class representatives and class counsel have adequately represented the class;
>
> B. Whether the proposal was negotiated at arm's length;

C.   Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D.   Whether the proposal treats class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018 Amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276m at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval.

1.  <u>The Settlement resulted from arm's length negotiations without any risk or evidence of fraud or collusion.</u>

Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc*., No. 1:15- CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *see* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 90 (4th Ed. 2002).

This Settlement was the result of extensive, contentious, arm's length negotiations. Doc. 598-1, PageID 6137 and declarations cited therein. There has been no suggestion to the contrary.

2.  <u>The complexity, expense, and likely duration of the litigation warrant final approval of the Settlement.</u>

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11-CV-

01332, 2011 WL 3862363, at *16 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).[7]

The Medicare Part D and profit-sharing disputes are complex and have been ongoing for six and ten years, respectively. There is also the potential for additional litigation concerning other aspects of profit-sharing in the future regardless of the outcome of the current dispute. Absent a settlement these current and potential disputes could go on for many more years, all while the Class shrinks day-by-day as its predominantly elderly members pass away. Settlement provides substantial benefits to Class Members and, perhaps of more importance, it provides these benefits while the Class Members are still alive to enjoy them.

3.  Sufficient discovery was conducted in this case.

As the Court well knows, the Parties have engaged in sufficient and substantial discovery, both formal and informal, that allows them to understand their respective positions. This factor also lends support for granting final approval of the Settlement.

4.  The likelihood of success balanced against the amount and form of relief offered by the Settlement weigh in favor of approving the Settlement.

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action

---

[7] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (most class actions are inherently complex, settlement is beneficial); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (The "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant.").

settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Although Class Representatives remain confident in the claims being settled, they recognize the substantial risks involved in establishing liability and damages in aspects of the disputes. Navistar has vigorously defended itself from the outset of this litigation and has consistently maintained that the allegations relating to the settled disputes are without merit. Aside from the parties' respective positions in litigation and as a practical matter, even were the disputed claims all eventually resolved in the favor of the Class: 1) many Class Members would have passed away, and therefore would not have been able to benefit from the relief awarded; and 2) the resolution of the disputed claims could very well result in damages totaling less than the benefits available through the Settlement. The Settlement offers immediate, significant, and substantial relief to all Class Members.

Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

5. The fact that experienced counsel and Class Representatives recommend approval of the Settlement strongly indicates that the Settlement is fair, reasonable, and adequate.

The Sixth Circuit has observed that when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir.

13

1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by class representatives who support the Settlement. *Gascho v. Global Fitness Holdings*, *LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel, counsel for the SBC, the UAW, represented by experienced outside and in-house counsel who have closely monitored the negotiations leading to the Settlement, and the Class Representatives all support this Settlement because it provides Class Members with immediate and substantial benefits that will directly address the issues in dispute. Navistar counsel is also supportive of the Settlement, which will put an end to more than ten years of litigation. All interested parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the parties and their experienced counsel weigh in favor of granting final approval.

6.  The reactions of Class Members to date supports the Settlement.

The deadline for Class Members to object to the Settlement is April 11, 2022. Accordingly, Plaintiffs cannot yet fully assess the Class Members' reaction to the Settlement. After the April 11th deadline passes and two weeks before the Final Approval Hearing on June 9, 2022, Class Counsel will file a brief summarizing the objections received, if any, and responding as appropriate; however, as discussed above, to date the reaction of the absent Class Members is overall positive. This supports final approval.

7. <u>This Settlement serves the public interest.</u>

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)). *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[8] This Settlement serves the public's interest by ending already protracted litigation and freeing up judicial resources. *See In re Telectronics*, 137 F. Supp. 2d at 1025; *see also Hainey v. Parrott*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals.").

Particularly in light of the immediate benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

8. <u>The Other Rule 23(e) Factors Support the Settlement.</u>

To the extent not addressed above, the Rule 23(e) factors support the Settlement. Rule 23(e)(2). The relief will be distributed to the Class in the form of additional *Shy* Plan benefits and lower participant premiums in the same manner as benefits are currently provided. Delphey Dec.,

---

[8] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("noting that "[p]ublic policy generally favors settlement of class action lawsuits.").

¶ 18. As discussed below, attorney fees are hourly, will be paid after approval, and are fair and reasonable. There are no agreements required to be identified under Rule 23(e)(3) besides those already identified and attached to the preliminary approval motion (Doc. 598). Markovits Supp. Dec., ¶ 6. And finally, all Class Members are treated equitably relative to each other—the relief will result in additional benefits that are consistent with each *Shy* Plan participant's qualifications.

In total, all of the factors that are considered when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

### A. The Attorney Fee and Expense Agreement is Fair and Reasonable.

The fee and expense agreement entered into between Class Counsel and Navistar is fair and reasonable and should receive final approval. Navistar agreed to pay Class Counsel's fees and expenses, which included an agreement regarding hourly rates and a cap[9] suggested by Navistar and agreed to by Class Counsel. Markovits Supp. Dec., ¶ 7. The payment of these fees and expenses does not diminish in any respect the benefits afforded the Class and the agreement regarding attorney fees and expenses was negotiated after the Letter of Intent had preliminarily determined the settlement relief to be afforded the Class. *Id.*

Typically, in class actions such as this, Class Counsel are awarded a percentage of the settlement fund. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008) (noting Sixth Circuit preference for percentage approach in common fund cases); *Bailey v. Verso Corp.*, 337 F.R.D. 500, 506 (S.D. Ohio 2021), *judgment entered*, No. 3:17-CV-332, 2021 WL 5815727 (S.D. Ohio Dec. 6, 2021) (noting that Sixth Circuit courts evaluate fee awards in ERISA cases under the common fund doctrine). In this case, however, that would

---

[9] The agreed upon cap of $750,000 includes fees and expenses. Class Counsel has to date expended without reimbursement $58,617.65 in expenses, primarily for retention of ERISA consultant Natasha Fedder. Markovits Supp. Dec., ¶ 7.

provide a windfall to Class Counsel, who became involved in early November 2021 and were formally appointed by the Court on December 10, 2021. Sometimes courts will, in the alternative or in addition to the percentage approach, award a lodestar with a multiplier. *Lowther v. AK Steel Corp.,* No. 1:11-CV-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (applying lodestar multiplier of 3.06 in ERISA action). But again, Class Counsel were not responsible for negotiating the benefits received by the Class, so a multiplier seems unwarranted.

The question then becomes how to compensate Class Counsel. Navistar recognized that Class Counsel would need to be adequately compensated for the difficult and time-consuming task of getting up to speed regarding the various disputes in this complex litigation that has been going on for decades. *See Lowther*, 2012 WL 6676131, at *5 (noting that national rates may be appropriate, and hourly rates should be set to ensure attorneys are willing to take on complex cases). Navistar and Class Counsel reached an agreement that Navistar would pay Class Counsel's hourly fees and expenses, at rates consistent with those submitted by Class Counsel in other nationwide class actions. Markovits Supp. Dec., ¶ 7. Navistar would owe these amounts regardless of whether, following Class Counsel's review, Class Counsel supported, did not support, or sought to modify the Settlement. *Id*. Class Counsel agreed to front all expenses, and to wait until final approval for payment. *Id*.

As of March 9, 2022, Class Counsel's fee lodestar is $334,199.00, and its unreimbursed expenses are $58,617.65 . *Id*., ¶ 7. There will be additional time and expense moving forward as Class Counsel continues to respond to Class Member inquiries (and possible objections) and presents at the June 9, 2022 Fairness Hearing. As discussed, however, fees and expenses are capped at $750,000.

The fee and expense agreement is fair and reasonable, and should be approved.

**IV.** **CONCLUSION**

Because the proposed Settlement along with payment of attorney fees and expenses is fair, adequate, and reasonable, Class Representatives respectfully request that the Court grant final approval and enter the proposed Order attached as Exhibit 1.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Terence R. Coates (0085579)
Justin C. Walker (0080001)
Dylan J. Gould (0097954)
MARKOVITS, STOCK & DEMARCO, LLC
119 E. Court Street, Suite 500
Cincinnati, OH 45002
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*
*dgould@msdlegal.com*

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2022, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will provide notice of the filing to all parties of record. Parties may access the filing through the Court's CM/ECF system.

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
