**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | |
|---|---|
| ART SHY, et al. | |
|                   Plaintiffs, | |
| vs. | Case No. 3:92-CV-00333 |
| | District Judge Walter H. Rice |
| NAVISTAR INTERNATIONAL CORPORATION, et al. | |
|                 Defendants. | |

**ORDER GRANTING CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND**
**ATTORNEY FEES AND EXPENSES**

This matter comes before the Court on Class Representatives' Unopposed Motion for Final Approval of Class Action Settlement Agreement and Attorney Fees and Expenses (together with its exhibits, the "Final Approval Motion," Doc. 611). The Court has reviewed the Final Approval Motion and all related motions and exhibits and held a Final Fairness Hearing on this matter on June 9, 2022. The Final Approval Motion is now ripe for adjudication and for the reasons stated below, the Court grants the Final Approval Motion.

I.    **BACKGROUND**

**A.  Litigation, Settlement, and Preliminary Approval**

The 1993 *Shy* Agreement resolved a lawsuit challenging Navistar's decision to reduce the health and life insurance benefits provided to most of Navistar's retirees at the time (and their spouses and eligible dependents) and forego the promises of retiree benefits Navistar had made to its then-active employees (and their spouses and eligible dependents). Doc. 598-5, Scallet Dec.,

1

¶ 5.[1] Navistar believed that it could not stay in business unless it reduced its estimated $2.6 billion of liability for these benefits. The settlement made a series of changes to the retiree health and life insurance benefits. *Id*. The *Shy* Agreement primarily consists of documents effectuating the rights and obligations in the new Base Plan and Supplemental Plan. *Id*.

Following the 1993 *Shy* Agreement, disputes arose regarding its implementation. The Class Action Settlement Agreement resolves two such disputes regarding: (1) Navistar's profit-sharing contributions; and (2) Navistar's treatment of Medicare Part D Subsidies.

After years of litigation and arbitration, the parties began discussions in 2021 to resolve these disputes. *Id*., ¶¶ 15-26. Following months of negotiation, on October 22, 2021, Navistar, the SBC, the *Krzysiak* Plaintiffs, and the UAW entered into a Letter of Intent setting out the framework for a settlement. *Id*. To effectuate the proposed settlement, on November 23, 2021, the SBC filed an unopposed motion to appoint class representatives and class counsel. Doc. 591. On December 10, 2021, this Court granted that motion. Doc. 592.

On December 22, 2021, the Class Representatives, through Class Counsel, filed a motion (the "Preliminary Approval Motion") seeking preliminary approval of the settlement (as set out in Exhibit 1 to the Preliminary Approval Motion and its attachments, the "Settlement"). Docs. 598, 598-1.[2] The Settlement affords the following benefits to Class Members (defined below):

    a.  Navistar agreed to pay $292 million (plus interest) under the Profit Sharing Settlement Agreement to resolve all disputes related to its past Profit Sharing obligations;

    b.  Navistar agreed to pay $264 million under the Profit Sharing Settlement Agreement to resolve and eliminate all of its future Profit Sharing obligations;

---

[1] For purposes of this Order, unless otherwise specified, "Navistar" refers to Navistar, Inc. (f/k/a Navistar International Transportation Corp.) and Navistar International Corporation.

[2] Any capitalized terms not defined in this Order have the meanings given in the Settlement.

     c.   Navistar agreed to share all future Medicare Part D subsidies (with a then-estimated value of $118 million) with the Base Plan under the *Krzysiak* Settlement Agreement;

     d.   Navistar agreed to pay $17 million to the Base Plan Retiree Sub Account A under the *Krzysiak* Settlement Agreement; and

     e.   Navistar agreed to reimburse the Supplemental Trust for $3 million of litigation expenses in the *Krzysiak* Lawsuit.

*Id.* Additionally, Navistar and the UAW agreed to recommend action by the Health Benefit Program Committee directing $48 million of Base Plan Retiree Sub Account A assets, plus the aforementioned $17 million, towards the reduction of future monthly participant contributions. *Id.*

On January 10, 2022, this Court issued an Order granting preliminary approval of the following class (the "Modified Shy Class," and the members thereof, the "Class Members"):

**Present participants (including spouses and dependents) and those eligible to become participants, whether upon retirement or election (including eligible spouses and dependents), in the Navistar International Transportation Corp. Retiree Health Benefit and Life Insurance Plan (n/k/a the Navistar, Inc. Retiree Health and Life Insurance Plan). This includes all eligible present retirees, individuals eligible upon retirement or election, and participating, eligible, or future-eligible spouses and dependents in the Navistar International Transportation Corp. Retiree Health Benefit Program (n/k/a the Navistar, Inc. Retiree Health Benefit Program), the Navistar International Transportation Corp. Retiree Life Insurance Program (n/k/a the Navistar, Inc. Retiree Life Insurance Program), and the Navistar International Transportation Corp. Retiree Supplemental Benefit Program (n/k/a the Navistar, Inc. Retiree Supplemental Benefit Program).**

Doc. 602, Order, at PageID 6765-66. The Court appointed Navistar, under the supervision of Class Counsel, to act as settlement administrator for the proposed Notice Plan. *Id.*, PageID 6766.

### B. Notice, and Response of Class Members

On December 27, 2021, counsel for Navistar timely notified appropriate Federal and State officials of the proposed settlement as required by the Class Action Fairness Act of 2005, 28 U.S.C.

§ 1715 and this Court's Order granting the Preliminary Approval Motion.[3] Doc. 600, Declaration of Robert F. Kirsch; Doc. 610, Supplemental Declaration of Robert F. Kirsch.

Navistar: i) on January 27, 2022, provided notice to Class Members with readily identifiable mailing addresses via U.S. mail, substantially in the form of the Long Form Notice attached as Exhibit G to the Settlement; ii) subsequently provided notice to Class Members with readily identifiable email addresses via email, substantially in the form of the Email Notice attached as Exhibit H to the Settlement; iii) on January 28, 2022, caused the Publication Notice, substantially in the form attached as Exhibit I to the Settlement, to be published via PRNewswire; iv) on January 28, 2022, established a Settlement Website that includes the notices, a FAQ, and other information relevant to the Modified Shy Class, including important historical Court submissions as well as material Court submissions relating to the Settlement; and v) on January 28, 2022, established a toll-free line for Class Members to obtain answers to questions relating to the Settlement. Declaration of Brian R. Delphey ("Delphey Dec."), Doc. 611-2, ¶¶ 4-14.

Navistar sent the Long Form Notices to each Class Member with an identifiable mailing address. *Id*., ¶ 4. If more than one Class Member was at a given address, a separate notice was sent to each. *Id*., ¶ 5. The envelopes in which the Long Form Notices were sent highlighted the importance of the document within. *Id*., and Exh. A to declaration. Navistar sent 23,005 Long Form Notices by mail, and 779 Email Notices by email. *Id*., ¶¶ 4, 11. Navistar made an effort to locate appropriate addresses for returned or undelivered notices. *Id*., ¶ 6. As a result, as of May 22, 2022, Navistar believes that 22,846 out of 23,005 Class Members directly received notice – or

---

[3] On March 11, 2022, additional notices were sent to four attorneys general for which Navistar did not receive a return receipt.

approximately 99.3%. Supplemental Declaration of Brian R. Delphey ("Supp. Delphey Dec."), Doc. 612-2, ¶ 4.

The overall reaction of Class Members has been positive. *Id.*, ¶ 6. As of May 22, 2022, there have been 44 calls to the toll-free line with questions. *Id.* As of the same date, the Settlement Website – which has a FAQ page and other information that can be used to answer questions – has been accessed 1,513 times, sometimes directly and sometimes through links from sources such as Facebook or PRNewswire. *Id.*, ¶ 7. The primary question raised by Class Members is whether the Settlement will negatively affect their current benefits. *Id.*, ¶ 6. Once the Class Members are reassured that it will not, they are supportive of the Settlement. *Id.* This is consistent with the experience of the Class Representatives in speaking with Class Members. Docs. 611-4 through 611-7. There have been no objections to the Settlement.

## II. ANALYSIS

### A. Final Class Certification is Appropriate

#### i. The Proposed Class is Ascertainable

The Modified Shy Class is defined by objective criteria, and Class Members were identifiable for the purposes of providing notice. This meets the implied ascertainability requirement of Rule 23. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (citations omitted).

#### ii. The Elements of Rule 23(a) are Satisfied

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, all four elements are satisfied.

### a. Numerosity

Rule 23(a)(l) requires that Plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, there are an estimated 23,005 Class Members, satisfying the numerosity requirement. Delphey Dec., Doc. 611-2, ¶ 4.

### b. Commonality

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

In this case, there are numerous common questions of law and fact, including whether Navistar was required to make certain profit-sharing payments and appropriately treated the Medicare Part D subsidies. Commonality is, therefore, satisfied.

### c. Typicality

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on

the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082).

The claims of the Class Representatives are typical because they are all participants in the *Shy* Plan, and the claims stem from actions affecting every *Shy* Plan participant. Typicality is satisfied.

<em>d.    Adequacy of Representation</em>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976).

The Class Representatives, Carl Potts, Miller Rodgers, Fred Cortight, Richard Zounes, and Robert Bergmann, have common interests, and no conflicts, with unnamed Class Members. Doc. 598-1 at PageID 6146, and declarations cited therein. Class Counsel, the law firm Markovits, Stock & DeMarco, LLC, are qualified and are known within this District for handling complex cases including class action cases such as this one. *Bechtel v. Fitness Equipment Services, LLC*, 339 F.R.D. 462, 480 (S.D. Ohio 2021) (noting that Class Counsel "have appeared in this Court many times and have substantial experience litigation class actions and other complex matters.").

iii.  <u>The Requirements of Rule 23(b) are Met</u>.

This Court preliminarily certified a non-opt out class pursuant to Fed. R. Civ. P. 23(b)(1). Order, Doc. 602, at PageID 6765-66. A class action on behalf of plan participants is a paradigmatic Rule 23(b)(1) case, and most ERISA class actions are certified under Rule 23(b)(1) as mandatory

non-opt out classes. *See* Advisory Committee Notes to FRCP Rule 23 (1966); *Griffin v. Flagstar Bancorp, Inc*., No. 2:10-CV-10610, 2013 WL 6511860, at *5 (E.D. Mich. Dec. 12, 2013).

### B.  The Notice Program Was the Best Notice Practicable

For class actions certified under Federal Rule of Civil Procedure 23(b)(1), such as this class action, the court "may direct appropriate notice to the class." Rule 23(c)(2)(A). Notice in a Rule 23(b)(1) case is discretionary. *Adams v. Anheuser-Busch Cos., Inc.*, No. 2:10-CV-826, 2012 WL 1058961, at *12 (S.D. Ohio Mar. 28, 2012). In this case, at the Parties' suggestion, the Court ordered notice consistent with the more stringent requirement of Rule 23(c)(2)(B), which requires the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B). *See In re Auto. Parts Antitrust Litig*., No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th ed. 2004). Even under Rule 23(c)(2)(B), there is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.,* 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Class Counsel worked with Navistar to develop and implement the notice program preliminarily approved by the Court. Markovits Supp. Dec., Doc. 611-3, ¶ 3; Delphey Dec., Doc. 611-2, ¶ 2. Navistar had direct contact information for most Class Members because they are either

current *Shy* Plan participants or beneficiaries, or future participants who are currently Navistar employees. Delphey Dec., Doc. 611-2, ¶ 3. As a result, Navistar estimates that 99.3% of Class Members received the Long Form Notice. Delphey Supp. Dec., Doc. 612-2, ¶ 4. This goes well beyond the 70-95% notice that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The notice program provided Class Members with a clear and concise statement of their rights. *See*, *e.g.*, Doc. 598-2, Long Form Notice, PageID 6641-57. The notices directed Class Members to the settlement website or a toll-free number for additional information regarding how they could object to the settlement. *Id*. The notice program more than met the requirements of Rule 23 and due process.

### C. The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc*., 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2). These factors include:

A. Whether the class representatives and class counsel have adequately represented the class;

B. Whether the proposal was negotiated at arm's length;

C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D. Whether the proposal treats class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018 Amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval.

i. The Absence of Fraud or Collusion Supports Approval

Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc*., No. 1:15- CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *see* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 90 (4th Ed. 2002). This Settlement

was the result of extensive, contentious, arm's length negotiations. Doc. 598-1, PageID 6137 and declarations cited therein. There is no evidence of fraud or collusion.

ii. The Complexity, Expense and Likely Duration of Continued Litigation Support Approval

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11-CV-01332, 2011 WL 3862363, at *16 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).

The Medicare Part D and profit-sharing disputes are complex and have been ongoing for six and ten years, respectively. There is also the potential for additional litigation concerning other aspects of profit-sharing in the future regardless of the outcome of the current dispute. Absent a settlement these current and potential disputes could go on for many more years, all while the Class shrinks day-by-day as its predominantly elderly members pass away. Settlement provides substantial benefits to Class Members and, perhaps of more importance, it provides these benefits while the Class Members are still alive to enjoy them.

iii. The Amount of Discovery Supports Approval

The Court is aware that the Parties have engaged in sufficient and substantial discovery, both formal and informal, that allows them to understand their respective positions. This factor also lends support for granting final approval of the Settlement.

11

    iv. <u>The Likelihood of Success Balanced Against the Amount and Form of Relief Offered by the Settlement Weigh in Favor of Approving the Settlement</u>

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Navistar has vigorously defended itself from the outset of this litigation and has consistently maintained that the allegations relating to the settled disputes are without merit. There are substantial risks involved in establishing liability and damages in aspects of the settled disputes. Aside from the parties' respective positions in litigation and as a practical matter, even were the disputed claims all eventually resolved in the favor of the Modified Shy Class: 1) many Class Members would have passed away, and therefore would not have been able to benefit from the relief awarded; and 2) the resolution of the disputed claims could very well result in damages totaling less than the benefits available through the Settlement. The Settlement offers immediate, significant, and substantial relief to all Class Members.

Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

     v.   The Opinions of Class Counsel and Class Representatives
         Favor Approval

The Sixth Circuit has observed that when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by class representatives who support the Settlement. *Gascho v. Global Fitness Holdings*, *LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel, counsel for the SBC, the UAW, represented by experienced outside and in-house counsel who have closely monitored the negotiations leading to the Settlement, and the Class Representatives all support this Settlement. Navistar's counsel is also supportive of the Settlement. All interested parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the parties and their experienced counsel weigh in favor of granting final approval.

     vi.   The Reaction of Class Members Support the Settlement

The deadline for Class Members to object to the Settlement was April 11, 2022. No objections have been filed and the overall reaction of absent Class Members has been positive, supporting final approval.

vii. The Settlement Serves the Public Interest

Resolution of this longstanding dispute, with benefits that will be realized promptly for the aging Class Members, is in the public interest, supporting final approval.

viii. The Other Rule 23(e) Factors Support the Settlement

To the extent not addressed above, the Rule 23(e) factors support the Settlement. Rule 23(e)(2). The relief will be distributed to the Modified Shy Class in the form of additional *Shy* Plan benefits and lower participant premiums in the same manner as benefits are currently provided. Delphey Dec., ¶ 18. As discussed below, attorney fees are hourly, will be paid after approval, and are fair and reasonable. There are no agreements required to be identified under Rule 23(e)(3) besides those already identified and attached to the preliminary approval motion (Doc. 598). Markovits Supp. Dec., ¶ 6. And finally, all Class Members are treated equitably relative to each other—the relief will result in additional benefits that are consistent with each *Shy* Plan participant's qualifications. In total, all of the factors that are considered when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

**D. The Attorney Fee and Expense Agreement is Fair and Reasonable**

The fee and expense agreement entered into between Class Counsel and Navistar is fair and reasonable. Navistar agreed to pay Class Counsel's fees and expenses, which included an agreement regarding hourly rates and a $750,000 cap on fees and expenses suggested by Navistar and agreed to by Class Counsel. Markovits Supp. Dec., ¶ 7. The payment of these fees and expenses does not diminish in any respect the benefits afforded the Modified Shy Class and the agreement regarding attorney fees and expenses was negotiated after the Letter of Intent had preliminarily determined the settlement relief to be afforded the Modified Shy Class. *Id*.

14

Typically, in class actions such as this, Class Counsel are awarded a percentage of the settlement fund. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008) (noting Sixth Circuit preference for percentage approach in common fund cases); *Bailey v. Verso Corp.*, 337 F.R.D. 500, 506 (S.D. Ohio 2021), *judgment entered*, No. 3:17-CV-332, 2021 WL 5815727 (S.D. Ohio Dec. 6, 2021) (noting that Sixth Circuit courts evaluate fee awards in ERISA cases under the common fund doctrine). In this case, however, that would provide a windfall to Class Counsel, who became involved in early November 2021 and were formally appointed by the Court on December 10, 2021. Sometimes courts will, in the alternative or in addition to the percentage approach, award a lodestar with a multiplier. *Lowther v. AK Steel Corp.*, No. 1:11-CV-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (applying lodestar multiplier of 3.06 in ERISA action). But again, Class Counsel were not responsible for negotiating the benefits received by the Modified Shy Class, and acknowledge that based upon these facts a multiplier seems unwarranted.

The question then becomes how to compensate Class Counsel. Navistar recognized that Class Counsel would need to be adequately compensated for the difficult and time-consuming task of getting up to speed regarding the various disputes in this complex litigation that has been going on for decades. *See Lowther*, 2012 WL 6676131, at *5 (noting that national rates may be appropriate, and hourly rates should be set to ensure attorneys are willing to take on complex cases). Navistar and Class Counsel reached an agreement that Navistar would pay Class Counsel's hourly fees and expenses, at rates consistent with those submitted by Class Counsel in other nationwide class actions. Markovits Supp. Dec., ¶ 7. Navistar would owe these amounts regardless of whether, following Class Counsel's review, Class Counsel supported, did not support, or sought to modify the Settlement. *Id*. Class Counsel agreed to front all expenses, and to wait until final

approval for payment. *Id*. As of May 26, 2022, Class Counsel's fee lodestar is $525,863.50, and its unreimbursed expenses are $60,007.23. *Id*., ¶ 7.

The fee and expense agreement is fair and reasonable, and should be approved.

### E.  The *Krzysiak* Action

Class Counsel and counsel involved in the *Krzysiak* Action have indicated that a stipulated dismissal of that case will be filed immediately following entry of this Order.

### F.  The Relevant Settlement Documents, in Amended and Clean Form, Are Attached to this Order

On June 6, 2022, Class Representatives filed an unopposed motion requesting that the settlement documents be amended to reflect that the releases extend through the end of 2021. Doc. 613. Language to the contrary was the result of a clerical error.

In addition, as requested by Class Representatives, a clean copy of the Modified Consent Decree (defined below) is attached to this Order, to allow for clarity if any issue relating to this Settlement arises in the future.[4]

### III.  CONCLUSION

Based on the foregoing, the Final Approval Motion (Doc. 611) is **GRANTED**. Accordingly, the Court finds as follows:

1.     Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based on all of the parties' submissions, the Settlement is fair, reasonable and adequate. In reaching this conclusion, the Court considered the record in its entirety and heard the arguments of counsel for the parties. In addition, the Court has

---

[4] Two of the Summary Plan Descriptions to be attached to the Modified Consent Decree are in the process of being updated, and will be filed separately on the docket when complete. These exhibits are for beneficiaries' reference and do not affect the terms of the Settlement or beneficiaries' rights.

considered a number of factors, including: (1) the absence of fraud and collusion; (2) the complexity, expense and likely duration of the continued litigation; (3) the amount of discovery; (4) the likelihood of success balanced against the amount and form of relief offered by the Settlement; (5) the opinions of Class Counsel and Class Representatives; (6) the reaction of Class Members; (7) the public interest.

2.  The terms and provisions of the Settlement are the product of thorough, arms-length negotiation among experienced and competent counsel. Approval of the Settlement will result in substantial savings of time, money and effort for the Court and the parties, and will further the interests of justice;

3.  The Modified Shy Class and all Class Members are bound by this Order and by the terms of the Settlement;

4.  Class Representatives' Unopposed Motion to Amend Settlement Documents (Doc. 613) is GRANTED;

5.  The Court approves the amendments to the 1993 Consent Decree and its exhibits made pursuant to (i) the Settlement, (ii) Navistar's Unopposed Motion to Further Modify Consent Decree (Doc. 604) and the Court's Order granting the motion (Doc. 607), and (iii) Class Representatives' Unopposed Motion to Amend Settlement Documents (Doc. 613) (as granted herein) in the form attached hereto (collectively, the "Modified Consent Decree");

6.  The Supplemental Benefit Committee's Motion to Confirm Arbitration Award (Doc. 561) and Navistar's Motion to Vacate Arbitration Award (Doc. 565) are each DENIED with prejudice;

7.    Immediately upon Navistar's payment of each of the amounts set forth in paragraphs 14 and 15 of the Settlement, and consistent with paragraph 18 of the Settlement, the following Class Releases will be deemed effective and binding on the Modified Shy Class and the Class Members, without the need for further notice to any party:

> The Modified Shy Class fully and finally releases Navistar and its present and former affiliates, directors, officers, employees, service providers and agents (collectively, the "Navistar Released Parties") of any and all rights, claims and causes of action that the Modified Shy Class or anyone claiming on behalf of, through or under the Modified Shy Class by way of subrogation or otherwise, has, had, or may have, or may be entitled to assert, whether known or unknown, suspected or unsuspected, concealed or hidden, arising out of, based upon or otherwise related to:
>
> > a. the receipt or application, prior to and through 2021, of any of the following Medicare Part D subsidies by the Retiree Health Benefit and Life Insurance Plan and/or Navistar: the manufacturer discount under 42 CFR 423 Subpart W: Medicare Coverage Gap Discount Program (42 CFR 423.2300 – 42 CFR 423.2345); the federal reinsurance subsidy, the direct subsidy and the low income cost-sharing subsidy under 42 CFR 423 Subpart G: Payments to Part D Plan Sponsors for Qualified Prescription Drug Coverage (42 CFR 423.301 – 42 CFR 423.360); and the low income premium subsidy

under 42 CFR 423 Subpart P: Premiums and Cost-Sharing Subsidies for Low-Income Individuals (42 CFR 423.771 – 42 CFR 423.800); and

b. the Profit Sharing Plan (as defined in the Settlement), including, without limitation, any obligation of the Navistar Released Parties thereunder or under Section 7.1 of the Supplemental Benefit Program (as defined in the Settlement);

8.  The Court approves the attorney fee agreement entered into between Navistar and Class Counsel, and approves current and future payments of fees and costs pursuant to that agreement;

9.  Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement, and all matters ancillary thereto.

Dated:  June 13, 2022

WALTER H. RICE
UNITED STATES DISTRICT JUDGE